ORIGINAL

THE VAN DE VELD LAW OFFICES, P.C.
Second Floor
123 Hernan Cortes Avenue
Hagåtña, Guam 96910
Office:    (671) 472-4396
Facsimile: (671) 472-2561

*Attorney for Plaintiffs:*
   Cyfred, Ltd., Class,
   Deceptive Acts Subclass
   Denied Claims Subclass.

**FILED**
DISTRICT COURT OF GUAM
DEC - 3 2007
JEANNE G. QUINATA
Clerk of Court

## IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| CYFRED, LTD for itself and other similarly situated,<br><br>    Plaintiffs,<br><br>vs.<br><br>FIRST AMERICAN TITLE INSURANCE COMPANY, PACIFIC AMERICAN TITLE INSURANCE COMPANY, MANU MELWANI and DOES One (1) through Two Hundred and Ninety-Eight (298), inclusive,<br><br>    Defendants. | Civil Case No.07-00024<br><br>**OPPOSITION TO FIRST AMERICAN TITLE INSURANCE CO., MANU MELWANI & PACIFIC AMERICAN TITLE INSURANCE CO.'S MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF.** |

COMES NOW Plaintiff, CYFRED, LTD. ("Cyfred"), and the proposed Class, by and through their counsel **THE VAN DE VELD LAW OFFICES, P.C.**, by Curtis Van de veld, who files this Opposition to First American Tile Insurance Co. ("First American"), Manu Melwani and Pacific American Title Insurance Co.'s (hereinafter jointly referred to as the "Named Defendants") Motion to Dismiss as follows:

### MEMORANDUM OF POINTS AND AUTHORITIES

### I. RELEVANT FACTS

First American did not obtain approvals from the Banking and Insurance Commissioner ("Commissioner") for the title insurance policy forms and rates First American

CYFRED, LTD. et al., Plaintiffs v. FIRST AMERICAN TITLE INSURANCE COMPANY et al., Defendants
OPPOSITION TO MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Civil Case No.07-00024                                                                                           Page 1

Case 1:07-cv-00024    Document 28    Filed 12/03/2007    Page 1 of 20

sold in Guam to plaintiffs, in violation of 22 G.C.A. § 18308 and §18501. When issuing these policies, First American did not inform plaintiffs that the title polices, and premiums charged had not been approved, and were illegal.

Cyfred tendered for a defense and requested indemnity from First American under one of First American's illegal policies seeking coverage for title claims alleged in *Sananap et al. v. Cyfred, Ltd., et al*, Superior Court of Guam Civil Case No. CV1448-02. First American summarily denied this claim without a proper investigation into the merits of Cyfred's tender.

As a result, Cyfred and the proposed Class filed the First Amended Complaint ("Complaint") alleging, *inter alia*, breach of contract, fraud, deceit and racketeering activities.

## II. LEGAL ANALYSES

First American presents four main arguments for dismissal; 1) Plaintiffs have failed to exhaust their administrative remedies under the Insurance Law; 2) Plaintiffs have failed to plead fraud with particularity; 3) Plaintiffs Unjust Enrichment claims are invalid; and 4) Plaintiffs cannot allege an independent breach of the duty of good faith and fair dealing.

### A. APPLICABLE STANDARD OF REVIEW FOR A RULE 12 MOTION

In reviewing a motion to dismiss under F.R.C.P. Rule 12(b)(6) the court must accept all facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff. *Karam v. City of Burbank*, 352 F.3d 1188, 1192 (9$^{th}$Cir. 2003). The complaint is dismissed if the complaint alleges no set of facts entitling the plaintiff to relief. Id.

### B. PLAINTIFFS ARE NOT REQUIRED TO EXHAUST ADMINISTRATIVE REMEDIES

Plaintiffs are not required to exhaust administrative remedies since: 1) There are no available administrative remedies for the injuries alleged; 2) Plaintiffs have a private right of action for the claims asserted; 3) Plaintiffs' RICO allegations are based on violations of

CYFRED, LTD. et al., Plaintiffs v. FIRST AMERICAN TITLE INSURANCE COMPANY et al., Defendants
OPPOSITION TO MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Civil Case No. 07-00024
Page 2

Case 1:07-cv-00024   Document 28   Filed 12/03/2007   Page 2 of 20

federal law; and 4) The Deceptive Trade Practices-Consumer Protection Act does not require exhaustion of administrative remedies.

## 1. THERE ARE NO ADMINISTRATIVE REMEDIES FOR THE CAUSES OF ACTION ALLEGED IN THE COMPLAINT.

The Complaint does not seek to enforce, or contest enforcement, of any provision of the Insurance Law. The Complaint alleges, *inter alia,* causes of action bases on fraudulent omissions and misrepresentations of First American's compliance with the Insurance Law. The "doctrine [requiring exhaustion of administrative remedies for violations of the Insurance Law] is not applicable where the administrative agency lacks jurisdiction to make a judicial determination of the type involved." (Citation omitted). *National Union Ins. Co. of Pittsburgh, Pa. v. Insurance Com'r of Guam*, 1984 WL 48863 at p. 5, (Not Reported in F.Supp.)(D.Guam App.Div.1984).

**a. The Board and the Commissioner have no Jurisdiction to address the Causes of Action in the Complaint.** The Banking and Insurance Board ("Board") and Commissioner have no authority to grant relief for tortious conduct, such as the extensive racketeering and fraudulent activities, and deceptive trade practices, alleged in the Complaint, and to determine and award damages for such torts. 11 G.C.A. § 103104(a)(2). They have no authority to address grievances against non-insurance entities as have been alleged against the non-insurance defendants. The Board and the Commissioner's power and authority are relegated simply to preventing future violations of the Insurance Law. 11 G.C.A. § 103104(a)(4)(ii).

Plaintiffs are not required to exhaust administrative remedies available solely to prevent future violations of the Insurance Law. *Penny v. Southwestern Bell Tel. Co.*, 906 F.2d 183, 186 (5th Cir.1990); *Northwinds Abatement, Inc. v. Employers Ins. of Wausau*, 69 f.3d 1304, 1309-1311 (5thCir.1985); *Randolph-Sheppard Vendors of Am. V. Weinberger*, 795 F.2d 90, 107 (D.C.Cir.1986).

CYFRED, LTD. et al., Plaintiffs v. FIRST AMERICAN TITLE INSURANCE COMPANY et al., Defendants
OPPOSITION TO MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Civil Case No.07-00024
Page 3

Case 1:07-cv-00024   Document 28   Filed 12/03/2007   Page 3 of 20

Plaintiffs' allegations are based on fraudulent omissions and misrepresentations made to them about First American's compliance with the Insurance Law. Their allegations do not dispute <u>filed</u> rates, and are therefore, not subject to review under the Insurance Law[1]. *Tricor California, Inc. v. State Compensation Ins. Fund,* 30 Cal.App.4th 230, 242, 35 Cal.Rptr.2d 550, 557 (Cal.App. 2 Dist.1994), *See also: State Compensation Ins. Fund v. Brown,* 32 Cal.App.4th 188, 199, 38 Cal.Rptr.2d 98, 103 (Cal.App. 3 Dist.,1995).

Authority to regulate the insurance industry and its practices, does not equate with authority to regulate all tort claims made against the insurance industry.

> The Commissioner's supervisory and regulatory power over the insurance industry does not give him power to adjudicate all insurance disputes-such as this one, which involves an alleged breach of contract with a demand for monetary damages-unless persuasive legislative intent to grant this authority can be identified.

*Lance Camper Manufacturing Corp. v. Republic Indemnity Co.*, 44 Cal.App.4th 194, 199, 51 Cal.Rptr.2d 622, 626 (Cal.App. 2 Dist.1996).

To bring an action against an insurance company, and its coconspirators, for their widespread fraudulent and racketeering activities, does not require a prior intervening administrative proceeding, simply because one of the perpetrators is an insurance company subject to administrative oversight. *Id* at 200.

> …[T]he courts retain jurisdiction to impose civil damages or other remedies against insurers in appropriate common law actions, based on such traditional theories as fraud, infliction of emotional distress, and (as to the insured) either breach of contract or breach of the implied covenant of good faith and fair dealing."

---

[1] First American's failure to file, and obtain approval for its rates, has deprived plaintiffs of a fairness review of these rates under 20 G.C.A. § 18502. (*See*: Complaint ¶ 17). This allegation is not synonymous with a challenge to the fairness of a filed rate, requiring complex factual determinations better left to the expertise of the Commissioner. Moreover, by definition, the Class includes only those individuals who were sold a policy whose rate or form had not been approved by the Commissioner, making it clear that this suit is not a contest of a filed rate. (*See*: Complaint ¶¶ 41 & 42).

CYFRED, LTD. et al., Plaintiffs v. FIRST AMERICAN TITLE INSURANCE COMPANY et al., Defendants
OPPOSITION TO MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Civil Case No.07-00024
Case 1:07-cv-00024    Document 28    Filed 12/03/2007    Page 4 of 20
Page 4

*Moradi-Shalal v. Fireman's Fund Ins. Companies*, 46 Cal.3d. 287, 304-305, 250 Cal.Rptr. 116, 758 P.2d 58 (Supreme Court, 1988).

**b. When an Insurance Company has not Filed its Rates and Forms, it Cannot Seek Administrative Protection.** First American has not filed either its rates or its forms with the Commissioner for the insurance policies at issue. "Here administrative review never occurred because the defendants never made an appropriate filing to trigger it. Defendants may not gain the legal protection of the administrative review process when they did not invoke it with an appropriate filing." *Upperman v. Grange Indemn. Ins. Co.*, 135 Ohio Misc.2d 8, 14 ¶ 17, 842 N.E.2d 132, 137 ¶ 17 (2005).

**c. It is Futile to Seek Administrative Relief from the Board or the Commissioner.** Any administrative remedy available for plaintiffs' causes of action before the Board or the Commissioner are so grossly inadequate that it would be futile to pursue them.

> Even were G.L.c. 152, § 14(2) (citation omitted ), applicable to Adams's action and the doctrine of exhaustion legally relevant to his situation, it would be inapplicable here under the well-settled "futility" exception. In this case, the "agency cannot afford [the] relief" sought, *Boston Edison Co. v. Selectmen of Concord*, 355 Mass. 79, 84, 242 N.E.2d 868 (1968), and resort to the DIA would be futile, because the administrative remedy that it could offer would be grossly inadequate. See cases cited in Cella Administrative Law and Practice § 1723 & n. 7 (1986 & Supp.2002). Under § 14(2), the only monetary sanction for fraud is assessment of the costs of the DIA proceedings, associated attorney's fees, and a penalty amounting to, at most, a few thousand dollars. (citation omitted). The DIA has no authority to compensate Adams for the claimed damage to his reputation, emotional pain and suffering, or multimillion dollar loss of professional income, or to impose the punitive remedy of multiple damages under G.L. c. 93A. The administrative remedy is self-evidently inadequate.

*Adams v. Liberty Mut. Ins. Co.*, 60 Mass.App.Ct. 55, 67, 799 N.E.2d 130, 139-140 (Mass.App.Ct.,2003)

Here a racketeering enterprise extending over decades is alleged. This enterprise involved numerous non-insurance persons and entities, who were organized to charge and collect illegal insurance premiums, and sell illegal insurance policies. The damages suffered are in the millions of dollars. Neither the Commissioner, nor the Board, has the legal authority

and administrative resources, necessary to address such extensive claims, and to award exemplary damages and attorneys fees available to plaintiffs under the RICO statutes, and under the Deceptive Trade Practices-Consumer Protection Act.

The 'administrative-futility doctrine' is applied where the regulatory entity lacks authority to implement the decision sought by plaintiffs. *Dozier v. Sun Life Assur. Co. of Canada*, 466 F.3d 532 (6th Cir.2006). Cyfred is not required to exhaust administrative remedies when it is futile to do so. *County of San Diego v. State of California*, 15 Cal. 4th 68, 89, 931 P.2d 312, 324 (1997).

**d. The Doctrine of Primary Jurisdiction does Not Apply to the Facts Here**. First American relies on the doctrine of primary jurisdiction to urge prior administrative review of plaintiff's claims. First American argues this will promote judicial economy. (*See:* First American's Memorandum at p. 5-6). First American cites to *Carlson v. Perez*, 2007 Guam 6, ¶ 70 to support its position. However, the Doctrine of Primary Jurisdiction is applied where a federal court has original jurisdiction, but finds it necessary to invoke the special expertise of an administrative agency to aid the court in creating a reviewable record in matters where the agency is especially competent and suited to act. *Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 303, 96 S.Ct. 1978, 1986 (1976). This doctrine is often applied in a dispute over the validity of a filed rate, or to complex tariff issues. Id. It is applied to promote uniformity in regulation and where the agency's special expertise is needed to resolve technical factual disputes. *Transway Corp. v. Hawaiian Exp. Service, Inc.*, 679 F.2d 1328, 1332 (9th Cir.1982).

In the insurance context, the 'doctrine of primary jurisdiction' or the 'doctrine of administrative review' is inapplicable where the claim is one for fraud, misrepresentation, racketeering and breach of contract, and does not implicate the insurer's tariff practice or other technical disputes of fact uniquely within the competence of the Board or Commissioner to review. *Id* at 304. Once it is determined that First American did not file its rates or forms

CYFRED, LTD. et al., Plaintiffs v. FIRST AMERICAN TITLE INSURANCE COMPANY et al., Defendants
OPPOSITION TO MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case 1:07-cv-00024    Document 28    Filed 12/03/2007    Page 6 of 20
Civil Case No.07-00024
Page 6

for the insurance it sold plaintiffs - a simple straightforward factual question - the more complex issues in this litigation surround First American's tortious omissions and misrepresentations and the consequences for them. This court is better suited to address these complex legal issues. *Brown v. MCI*, 277 F.3d 1166, 1171 (9thCir.2002).

## 2. PLAINTIFFS HAVE A PRIVATE RIGHT OF ACTION TO DIRECTLY PRESENT ITS RICO ALLEGATIONS IN FEDERAL COURT.

In any event, Plaintiffs have a private right of action to bring its RICO allegations. Guam statutes cannot preempt federal statutes by restricting this right. 48 U.S.C. §§1421c & 1423a. A litigant need not exhaust his or her state remedies before initiating an action in federal court to vindicate federal statutory rights. *McNeese v. Board of Ed. For Community Unit School Dist. 187, Cahokia, Ill.*, 373 U.S. 688, 671, 83 S.Ct. 1433, 1435 (1963).

First American implies that plaintiffs are required to exhaust administrative remedies, prior to bringing its federal RICO claims, under a reverse pre-emption theory by application of the McCarran Ferguson Act § 1 et seq., 15 U.S.C.A. § 1011 et seq. The McCarran Ferguson Act leaves regulation of the "business of insurance" to the individual states. However, a RICO claim does not conflict with a state's authority to regulate the "business of insurance." Instead a RICO claim, for insurance company fraud, complements state insurance regulation and is therefore not prescribed by the McCarran Ferguson Act.

The Ninth Circuit, construing California's insurance statutes, held that a private RICO action, based on state insurance law, seeking damages for the sale of unapproved insurance polices promotes the state insurance regulatory scheme and is not reverse preempted by McCarran Ferguson. *Merchant Home Delivery Ser., Inc. v. Frank Ball & Co., Inc.*, 50 F.3d 1486 (9th Cir.1995).

CYFRED, LTD. et al., Plaintiffs v. FIRST AMERICAN TITLE INSURANCE COMPANY et al., Defendants
OPPOSITION TO MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Civil Case No.07-00024

Case 1:07-cv-00024    Document 28    Filed 12/03/2007    Page 7 of 20

The Third Circuit reached the same conclusion in a recent decision in *Weiss v. First Unum Life Ins. Co.*, 482 F.3d 254 (3rd Cir.2007). The *Weiss* court applied standards defined by the United States Supreme Court in *Humana Inc. v. Forsyth,* 252 U.S. 299 (1999) to conclude that, Nevada's insurance regulatory statues do not pre-empt a direct federal RICO claim, based on violations of state insurance laws.

### 3. PLAINTIFFS NEED NOT EXHAUST ADMINISTRATIVE REMEDIES TO ALLEGE DECEPTIVE TRADE PRACTICES.

The Deceptive Trade Practices-Consumer Protection Act ("DTPA") is made specifically applicable to "insurance policies purchased for the protection of a person or property." 5 G.C.A. § 32103(g). The DTPA allows any "aggrieved consumer … to maintain an action" … for an insurers deceptive acts. 5 G.C.A. § 32111. The Guam legislature, therefore, did not intend to require a potential DTPA plaintiff to exhaust limited inferior administrative remedies under the Insurance Law, prior to filing their DTPA claims. *Mitchell v. Chicago Title Ins. Co.*, 2004 WL 2137815 at pp. 2-3, (Not Reported in N.W.2d) (Minn.Dist.Ct.2004), *Escalante v. Sentry, Ins.*, 49 Wash.App. 375, 387-390, 743 P.2d 832, 839-840 (Wash.1987); *Vail v. Texas Farm Bureau Mut. Ins. Co.*, 754 S.W.2d 129 (Tex.1988).

### 4. PLAINTIFFS HAVE A PRIVATE RIGHT OF ACTION TO MAKE THEIR CLAIMS AND NEED NOT EXHAUST ADMINISTRATIVE REMEDIES.

Plaintiffs, have a right to file suit based on violations of Guam's Insurance Law without prior administrative review. Such, a private right of action has been recognized when alleging violations of state insurance statutes, alleging fraud against an insurer for its failure to file a two percent (2%) rate increase. *Upperman v. Grange Indemn. Ins. Co.*, 135 Ohio Misc.2d 8, 14 ¶ 17, 842 N.E.2d 132, 137 ¶ 17 (2005). The *Upperman* court rejected similar arguments made by First American here. It held:

CYFRED, LTD. et al., Plaintiffs v. FIRST AMERICAN TITLE INSURANCE COMPANY et al., Defendants
OPPOSITION TO MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Civil Case No. 07-00024

Case 1:07-cv-00024   Document 28   Filed 12/03/2007   Page 8 of 20

> As a basis for inferring a private right of action, plaintiffs rely upon statutes explicitly requiring that insurance-premium rates be filed with the ODI. R.C. 3837.03(A) and (H). The court concludes that, given the factual allegations in this case, the three factors relevant under *Cort v. Ash* (422 U.S. 66, 45 L.Ed. 26, 95 S.Ct. 2080) are all satisfied and that a private remedy for damages ought to be implied in favor of plaintiffs. The key fact presented here is that the defendant insurers violated one of the key, and very straightforward, requirements of the insurance code. Failing to file rates with the ODI, the regulatory agency having oversight, cuts at the heart of the regulatory and marketing system in Ohio. (Parentheses added).

*Upperman*, Id at ¶ 8.

The *Upperman* court applied the following factors defined in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080 (1975): 1) Was the Plaintiff in the class of those the statute was specially intended to benefit? 2) Is there specific legislative intent to create such a benefit or to deny one? 3) Is such an implied private right of action consistent with the legislative scheme of the state law? Applying these factors to the facts here, plaintiffs have a private right of action to bring the allegations in the Complaint.

**a. Plaintiffs are the Intended Beneficiaries of the Insurance Law.** Plaintiffs purchased insurance policies and paid premiums to First American not approved by the Commissioner. Plaintiffs were the intended beneficiaries of the rate and form filing requirements of the Insurance Law. "Indeed, it is hard to imagine a group more directly affected than those having direct contractual privity with defendants and who paid money to defendants based on allegedly illegal premium rates." *Upperman* Id at ¶ 9.

**b. The Guam Legislature did not Intend to Deprive Plaintiffs of a Private Right of Action.** Sections 18308(a) (filing forms), Section 18501 (filing rates) and 18502 (rates must be fair) of the Insurance Law, were intended to protect Guam consumers from unscrupulous insurers who were likely, otherwise, to collude to set premiums and define policy terms to reduce risk of loss, taking advantage of Guam's small insurance market to

CYFRED, LTD. et al., Plaintiffs v. FIRST AMERICAN TITLE INSURANCE COMPANY et al., Defendants
OPPOSITION TO MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Civil Case No.07-00024

Case 1:07-cv-00024    Document 28    Filed 12/03/2007    Page 9 of 20

Page 9

cheat Guam's insurance consumers. These statutory provisions were intended to "protect policy holders against price gouging or other misconduct by insurers'. *Upperman* Id ¶10. These commands "are not easily misunderstood" and a private right of action promotes the clear legislative intent behind them. *Upperman* Id at ¶ 10. Additionally the DTPA allows direct action against an insurer for its deceptive acts. This further evidences the Legislature's intent to aid cheated insureds with additional remedies. 5 G.C.A. § 32103(g).

Moreover, Guam's Insurance Law does not preclude a private right of action. Guam's Insurance Law, like Ohio's, provides limited inadequate remedies to an aggrieved insured.

> The insurance industry has been heavily regulated in Ohio for decades. The regulation reflects experience and abiding concern that, left unregulated, unscrupulous insurers will take advantage of the public. This court concludes, therefore, that the General Assembly never contemplated that policyholders should be left without recourse if an insurer operates outside the regulatory structure. Yet this is exactly what is alleged to have occurred here. Defendants improperly charged premiums that had not been filed with, and at least implicitly approved by, the ODI. In such circumstances, policyholders have a private remedy to seek damages. Policyholders should not be exposed to harm when insurers do not follow statutory requirements at the core of the regulatory system.

*Upperman* Id at ¶ 12.

Guam's insurance regulatory scheme even more rigorously protects rights of Guam insurance consumers, then Ohio's, from unscrupulous insurance company premium practices. Guam's is not a "file and use" system as in Ohio. Once filed, Guam's regulatory scheme requires an affirmative determination, by the Commissioner, that the rates are not excessive, and the policy forms related to that charged premium are fair. This is intended to provide an extra layer of protection to Guam's insurance consumers who are more susceptible, in Guam's much smaller market, to insurance company collusion to set excessive insurance premiums, while issuing forms with more restrictive policy coverage than they use in their home jurisdictions.

CYFRED, LTD. et al., Plaintiffs v. FIRST AMERICAN TITLE INSURANCE COMPANY et al., Defendants
OPPOSITION TO MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Civil Case No. 07-00024
Page 10

Case 1:07-cv-00024   Document 28   Filed 12/03/2007   Page 10 of 20

**c. Recognizing A Private Right of Action is Consistent with Enforcing the Insurance Law.** First American uses and enforces an illegal arbitration provision in its insurance forms.[2] (Complaint ¶ 14). This is the kind of activity that the Guam Legislature intended to prevent. A private right of action will help to deter this kind of conduct to manipulate insurance forms to cleverly reduce the risks covered, while charging the same or a higher premium.

Additionally, a private right of action seeking recovery of illegally charged premiums will "... reinforce the need for accurate and timely rate filings." *Upperman* Id at ¶ 18. Accurate and timely rate filings are extremely important in Guam's small insurance market. When rates are filed, the Commissioner is required to conduct a fairness review of the rates under Section 18502. "Rates shall not be excessive or inadequate, as herein provided, nor shall they be unfairly discriminatory." 22 GCA§ 18502(a). The Commissioner considers an insurer's profitability in approving rate requests. 12 GAR §1117. Therefore, a title insurer with higher profitability may have a lower approved rate, then one with lower profitability. However, because the lowest rate for the same insured risk attracts the most insurance customers, any insurance company doing business in Guam must match and seek approval for

---

[2] First American argues that its illegal arbitration clause is allowed by the Federal Arbitration Act's ("FAA") preemption of Guam law. (First American Memo. p. 13, fn 2). This is an improper argument for a Rule 12 motion where the allegations in the Complaint are presumed to be true. *Karam*, Supra. Nevertheless, Cyfred contests the notion that the FAA preempts Guam law, defining when arbitration clauses may be included in an insurance contract. The FAA applies to arbitration clauses used in contracts substantially affecting interstate commerce. The title insurance at issue did not substantially affect interstate commerce. *Brown v. Dewitt, Inc.*, 808 So.2d 11, 14 (Ala.2001). Secondly, the McCarran-Ferguson Act, § 1 et seq., 15 U.S.C.A. § 1011 et seq. allows Guam's Commissioner the exclusive right to regulate the content of insurance policy forms consistent with Guam law, sold in Guam, to Guam insurance consumers for activities performed solely in Guam. *Stephens v. American Intern. Ins. Co.*, 66 F.3d 41, 43-44 (2ⁿᵈCir.1995). Moreover, the FAA does not preempt plaintiffs' right to present its RICO claims without a prior arbitration. *Romyn v. Shearson Lehman Bros.*, 648 F.Supp. 626 (D.C. Utah 1986), *Farino v. Advest*, Inc. 651 F.Supp 510 (E.D. N.Y. 1986).

CYFRED, LTD. et al., Plaintiffs v. FIRST AMERICAN TITLE INSURANCE COMPANY et al., Defendants
**OPPOSITION TO MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**
Civil Case No.07-00024
Page 11

Case 1:07-cv-00024 Document 28 Filed 12/03/2007 Page 11 of 20

rates equal to the lowest rate approved for the most profitable insurer. This process ensures the best insurance rates for Guam's insurance consumers.

Moreover, by filing rates, all potential insurance competitors are fully aware of what rates are approved and charged in Guam. This information is essential to entice new insurance competitors into the insurance marketplace. *Upperman* ¶ 18. Thus, the process requiring filing for rate approvals is at the core of the Guam Legislature's intention to protect Guam insurance consumers from premium gouging by historically unscrupulous insurance companies. A private right of action compliments, and does not detract from the goal of promoting fair insurance rates for Guam's insurance consumers.

Additionally, a private right of action is absolutely necessary where an insurer wholly ignores the prescriptions of sections 18308 and 18501. In those circumstances, any action taken by the Commissioner to enforce the Insurance Law "will often have limited scope and may affect only a small group – or perhaps only a single agent who treats a single policyholder unfairly. An insurer's failure to file its rates before selling policies of insurance is at a wholly different and far more serious level, having far broader impact. ... The unfair-or deceptive-practices rules do not address that magnitude of misconduct." *Upperman* Id at ¶ 15.

### C. PLAINTIFFS SUFFICIENTLY PLED FRAUD AND DECEIT

**1. Plaintiffs have Pled Fraud and Deceit with Particularity.** In its First Cause of Action for fraud, plaintiffs alleged, *inter alia*, "[b]y selling the unapproved insurance policies and charging unapproved rates, First American represented to each person to whom it sold an insurance policy, by the terms of the insurance policy itself, on the date, and time that the insurance policy was sold, and which misrepresentation was made through PATCO, TGOG or Security Title, whoever sold said policy, that the policy sold and the premium charged was in

CYFRED, LTD. et al., Plaintiffs v. FIRST AMERICAN TITLE INSURANCE COMPANY et al., Defendants
OPPOSITION TO MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Civil Case No.07-00024
Case 1:07-cv-00024    Document 28    Filed 12/03/2007    Page 12 of 20
Page 12

compliance with all the laws of Guam." (Complaint ¶ 51.) Thus, plaintiffs have described First American's fraud as to place, time, date, person making the misrepresentation and the nature of the misrepresentation.

Plaintiffs, reference to each of the unapproved insurance policies and rates is sufficient to incorporate them into the Complaint.

> First, we disagree and hold that it was proper to consider the SEC filings under the incorporation by reference doctrine. That doctrine permits a district court to consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir.1994).

*In re Silicon Graphics Inc. Securities Litigation*, 183 F.3d 970, 986 (9th Cir.1999)

This court may consider each policy of insurance and the premium paid to First American, which are repeatedly referenced in the Complaint, in ruling on this motion by applying the Ninth Circuit's 'incorporation by reference rule.' *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir.2002), *see also: In re Verisign, Inc., Derivative Litigation*, 2007 WL 2705221 at p. 8 Slip Copy (N.D.Cal.2007)( "[T]he Court may consider documents referenced extensively in the complaint and documents that form the basis of a plaintiff's claim.") The relevant insurance policies and premiums are referenced throughout the Complaint. First American does not contest that it issued insurance policies, and does not contest the authenticity of the policies and the premiums it charged and was paid.

The allegations in plaintiffs First Cause of Action are incorporated by reference into the Second Cause of Action for Deceit. (Complaint ¶ 64). Furthermore the particular injuries and the details as to time, place, person and manner of the damages caused by the deception is described in detail in the Complaint. (Complaint ¶ 65).

CYFRED, LTD. et al., Plaintiffs v. FIRST AMERICAN TITLE INSURANCE COMPANY et al., Defendants
OPPOSITION TO MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Civil Case No.07-00024

Case 1:07-cv-00024 Document 28 Filed 12/03/2007 Page 13 of 20

Page 13

**2. Plaintiffs have Alleged the Circumstances of First American's Fraud and Deceit.** In instances where fraudulent omissions are alleged, the particularity requirement of F.R.C.P. Rule 9(b) is met, when the pleadings provide an alternative means of precision.

> The requirements of particularity of Rule 9(b) may differ with the facts of each case. ... [P]laintiffs are not absolutely required to plead the specific date, place, or time of the fraudulent acts, provided they use some alternative means of precision and some measure of substantiation into their allegations of fraud. (Fn omitted).

Moore's Federal Practice 3D, § 9.03[1][b].

For each member of the proposed Class, plaintiffs alleged that the fraudulent omissions occurred on the date, time and place, on which each policy was issued by the person issuing it. The allegations are that First American, through its agent, should have informed each member of the class, when they were issued a policy, that the policy or premium violated the Insurance Law. First American is aware of the exact date and time each of those policies was issued. That is a sufficient means of precision to satisfy the particularity requirement of Rule 9(b) for pleading a fraudulent omission. *Blake v. Dierdorff*, 856 F.2d 1365 (9th cir.1988); *Deutch v. Flannery*, 823 F.2d 1361, 1365 (1987); *Walling v. Beverly Ent.*, 476 F.2d 393 (9th Cir.1973).

**3. The Required Particularity to Allege Fraud is Relaxed in This Case.** Moreover, the particularity requirement of Rule 9(b) is relaxed when the information required for the pleadings is within the defendant's exclusive control, as it is here for the proposed Class members. *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433 (9th Cir.1987); *U.S. v. Baxter Intern., Inc.*, 345 F.3d 866 (11th Cir.2003). First American has copies of each insurance policy it sold to the proposed Class and this information is within First American's exclusive control.

Rule 9(b) is also relaxed when a complex scheme, such as in RICO actions, are alleged. *In re Sumitomo Litig.*, 995 F.Supp. 451 (S.D.N.Y.1998); *Gubitosi v. Zegeye*, 946

CYFRED, LTD. et al., Plaintiffs v. FIRST AMERICAN TITLE INSURANCE COMPANY et al., Defendants
OPPOSITION TO MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case 1:07-cv-00024    Document 28    Filed 12/03/2007    Page 14 of 20
Civil Case No.07-00024                                                                    Page 14

F.Supp. 339 (E.D.Pa. 1996). As a practical matter, to require listing each communication and policy from First American for each proposed Class member would require hundreds, if not thousands, of pages in the Complaint, and an equal number of exhibits. As a further practical matter, when there are perhaps thousands of potential plaintiffs, allegations of fraud must necessarily be described with alternative means of reliability sufficient to put the defendant on notice of the fraud allegations.

Moreover, allegations of deceitful practices based, in part, on information and belief is allowed, when the facts alleged is within a corporate defendant's control. *Zatkin v. Primuth* 551 F.Supp. 39, 42 (D.C.Cal.1982).

**4. Plaintiffs Have Pled Fraud Damages With Particularity.** First American complains that Cyfred has not pled the premium amount that Cyfred or the proposed Class members have paid to First American. (First American Memo. p. 12). However, Cyfred has referenced the insurance policy it purchased from First American and has identified it with particularity by its policy number, date of issue and property covered and alleged a premium was paid. (Complaint ¶ 19). The potential Class members made similar allegations that they purchased a policy and paid First American a premium. (Complaint ¶ 53). Thus, First American is aware of the premium paid by plaintiffs under the Ninth Circuits 'doctrine of incorporation by reference.' *Van Buskirk,* supra. Alternatively, under the 'doctrine of incorporation by reference' all policies can be provided to the court for its review prior to ruling on this motion after discovery is conducted.

Furthermore, all insurance contracts issued in violation of the Insurance Law are unlawful contracts. "It shall be unlawful for an insurer to use a policy form in affecting insurance without first obtaining the Commissioner's approval thereof ....". 22 GCA § 18308.

CYFRED, LTD. et al., Plaintiffs v. FIRST AMERICAN TITLE INSURANCE COMPANY et al., Defendants
**OPPOSITION TO MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**
Civil Case No.07-00024
Case 1:07-cv-00024  Document 28  Filed 12/03/2007  Page 15 of 20
Page 15

The use of insurance forms without prior approval of the Commissioner is a misdemeanor offence. 22 GCA § 18311.

"All rate, rate plans, and methods of computing rates to be applied to any insurance transacted in the Territory of Guam shall be filed in the office of the Commissioner, and before any rates may be charged, advertised, publicized or otherwise represented, they shall have the approval of the Commissioner." 22 GCA § 18501(a). "It shall be unlawful for any insurer to use any rates in violation of the provisions of this section ...". 22 GCA § 18501(b). It shall be unlawful for any insurer to charge any rate for any insurance transacted in Guam other than the rate approved by the Commissioner ...". 22 GCA § 18501(c). Violation of Section 18501, since no specific penalty is provided, is a misdemeanor[3]. 22 GCA § 12109.

All contracts issued in violation of law are unlawful contracts. 20 GCA § 88101 1. Unlawful insurance contracts are void *ab initio. Loney v. Primerica Life Ins. Co.*, 231 Ga.App. 815, 817, 499 S.E.2d 385, 387 (Ga.App.1998), *American Mut. Life Ins. Co. v. Bertram*, 163 Ind. 51, 70 N.E. 258, 261 (Ind. 1904.) "An insurance contract that is void *ab initio* as against public policy is never in force, cannot be ratified or affirmed and is not subject to being enforced by the courts."(citations omitted). Id.

Plaintiffs alleged that they paid First American Insurance premiums for the illegal policies. (Complaint ¶ 19, 53, 60, 69, 70, 82, 89, 127, 130 and 132). First American has had full use of these premiums. Plaintiffs have been deprived of these premiums and of insurance coverage. First American knew its policies and premiums were unlawful, and unenforceable,

---

[3] The Guam Legislature repealed 22 GCA § 18504 which had imposed a fine for charging an unapproved premium. P.L. 13-187:219. This resulted in a stiffer penalty, of up to one year in prison, for charging consumers illegal insurance premiums. 22 GCA § 12109, 9 GCA § 80.34(a). It is reasonable to assume that the Legislature wished to send a strong signal to the insurance industry to stop the illegal practice of charging unapproved insurance premiums or face jail time instead of a fine.

CYFRED, LTD. et al., Plaintiffs v. FIRST AMERICAN TITLE INSURANCE COMPANY et al., Defendants
**OPPOSITION TO MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**
Civil Case No.07-00024
Case 1:07-cv-00024  Document 28  Filed 12/03/2007  Page 16 of 20
Page 16

when issuing them and when collecting the premiums for these insurance policies. *Upperman* ¶ 21.

> Instead, and quite contrary to the assumptions underlying defendant's argument, the complaint explicitly acknowledges that "the policy could be declared void if a claim was made on the policy terms...." The fraud claim is based on the alleged misrepresentation by defendant in knowingly issuing a void insurance policy with the purpose of deceiving plaintiff, on plaintiff's reasonable reliance on the appearance that the policy issued was valid and enforceable, and on the resulting harm to plaintiff, including the loss of use of the funds paid as premiums for the void policy.

Id at 817.

Plaintiffs have requested relief for all the damages they have suffered as a result of First American's unlawful activities. "Every person who suffers detriment from the unlawful act or omission of another, may recover from the person in fault a compensation therefore, in money, which is called damages." [4] 20 GCA§ 2101, *See also*: 18 GCA § 90102. These include, in part, a refund of the premiums paid to First American and interest thereon, the costs of replacing the void policies with legal policies, and damages for exposing plaintiffs to uncovered losses, and, all general, consequential damages to plaintiffs flowing from First American's illegal activities. Plaintiffs have also alleged particular fraudulent and deceitful conduct by First American entitling plaintiffs to exemplary damages. 20 GCA § 2120.

///

///

---

[4] First American minimizes the necessity of complying with the Insurance Law. First American derogatorily refers to the requirement of filing its rates with a "government functionary." (First American Memo p. 12). First American also condescendingly refers to the process of filing rates as seeking a "GovGuam good housekeeping seal of approval." id. This flagrant display of arrogance, in the face of felonious conduct, may have caused Guam insurance consumers much harm. Plaintiffs ask the court to take judicial notice of the fact that Stewart Title Guaranty Insurance Company admits colluding with *First American* in setting insurance rates. (*See*: Declaration of Manu Melwani ¶ 7, *Cyfred, Ltd. v. Stewart Guaranty et al.*, District Court of Guam Case 07-00024 filed Oct. 9, 2007.)

CYFRED, LTD. et al., Plaintiffs v. FIRST AMERICAN TITLE INSURANCE COMPANY et al., Defendants
OPPOSITION TO MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Civil Case No.07-00024
Page 17

Case 1:07-cv-00024    Document 28    Filed 12/03/2007    Page 17 of 20

# D. PLAINTIFFS' UNJUST ENRICHMENT CLAIM IS VALID.

**1. Under Guam Law Contract Claims Can Coexist With Unjust Enrichment Claims.** The Guam Supreme Court has applied the equitable principle of unjust enrichment, where an insurance contract governed the relationship between the parties. In *National Union V. GHURA,* 2003 Guam 19 ¶ 71, the Guam Supreme Court, applied principles of unjust enrichment to allow the insurer to recover attorney fees, incurred by the insurer, to provide the insured with a defense under a reservation of rights, when there was ultimately no coverage. The GHURA court applied unjust enrichment to reach its holding despite the existence of a contract of insurance between the parties.

In *Guam Bar Ethics Committee v. Maquera,* Guam Terr., 2001 ¶ 30, the Guam Supreme Court applied the concept of unjust enrichment to force disgorgement of profits, where benefits obtained by a defendant from a breach of a fiduciary duty owed to the plaintiff, exceeded damages suffered by the plaintiff. Furthermore, Guam statutory law codifies the concept of unjust enrichment and of disgorgement. "No one can take advantage of his own wrong." 20 GCA § 15109.

Here, First American knowingly charged and collected illegal insurance premiums. First American's cohorts have benefited from aiding First American to obtain these illegal premiums. These illegal premiums have been invested, generating a return for First American. That return has been compounded over several decades. These investments continue to compound as long as First American delays repayment, even throughout this litigation. These profits should be disgorged to plaintiffs. Plaintiffs may have no other legal remedy to obtain such a disgorgement except through a claim of unjust enrichment.

CYFRED, LTD. et al., Plaintiffs v. FIRST AMERICAN TITLE INSURANCE COMPANY et al., Defendants
OPPOSITION TO MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Civil Case No.07-00024
Page 18

Case 1:07-cv-00024　Document 28　Filed 12/03/2007　Page 18 of 20

Moreover, plaintiffs have no contractual relationship with some of the defendants. In those instances, the Named Defendants cannot claim that a contractual relationship, between preclude an unjust enrichment cause of action. *In re Don's Making Money, LLP*, 2007 WL 2784351 at p.8, Slip Copy (Bkrtcy.D.Ariz.2007).

**2. Unjust Enrichment Claims May be Pled as an Alternative Remedy.** The federal Rules of Civil Procedure allow pleadings in the alternative. Fed.R.Civ.P. Rule 8(e)(2). Plaintiffs' allegations of unjust enrichment are properly pled in the alternative. (Complaint ¶ 86). *In re Verisign, Inc., Derivative Litigation*, 2007 WL 2705221 at p. 40, Slip Copy, (N.D.Cal.2007), *George v. Morton,* 2007 WL 680789 at p. 7 Slip Copy, (D.Nev.2007), *Isofoton, S.A. v. Giremberk,* 2006 WL 1516026 Slip Copy, (D.Ariz.2006), *U.S. Bank Nat'l. Ass'n. v. Casa Grande Regional Medical Center,* 2006 WL 1698288 at p. 5, Slip Copy, (D.Ariz.2006), *In re Sutter Health Uninsured Pricing Cases,* 2005 WL 1842582 at p.2 Not Reported in Cal.Rptr.3d, (Cal.Superior2005).

### E. ALLEGATIONS OF FIRST AMERICAN'S BREACH OF ITS DUTY OF GOOD FAITH AND FAIR DEALING ARE PROPERLY PLED.

Plaintiffs properly pled First American's breach of its implied duty of good faith and fair dealing based on a breach of contract. Secondly, in an insurance context, a breach of the duty of good faith and fair dealing can be based on the insurers tortious conduct as a separate action, and not just on a breach of contract claim.

**1. Plaintiffs Properly Pled a Breach of Good Faith and Fair Dealing Resulting From a Breach of Contract.** All the cases cited by the Named Defendants to support their position, that the causes of action alleging a breach of the covenant of good faith and fair dealing were improperly pled, are based on findings that no breach of contract occurred. (First American Memo. p. 14). For a Rule 12 motion, allegations of a breach of contract must be

CYFRED, LTD. et al., Plaintiffs v. FIRST AMERICAN TITLE INSURANCE COMPANY et al., Defendants
OPPOSITION TO MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case 1:07-cv-00024   Document 28   Filed 12/03/2007   Page 19 of 20
Civil Case No.07-00024
Page 19

accepted as pled. *Karam*, supra. These breach of contract allegations, presumed to be true for Rule 12 purposes, are incorporated into the causes of action alleging a breach of the implied duty of good faith and fair dealing. (Complaint ¶¶ 154 & 162).

**2. In an Insurance Context a Breach of the Duty of Good Faith and Fair Dealing Can be based on the Insurer's Tortious Conduct.** An insurer's tortious conduct, including fraudulent conduct, can sustain an independent cause of action for a breach of the duty of good faith and fair dealing. This principle is recognized by the main case cited by First American for the opposite point. In *Lakota Local Sch. Dist. Bd. Of Educ. V. Brickner*, 108 Ohio App.3d 637, 671 N.E.2d 578, 584 (1996) the court recognized the difference between the implied duty of good faith and fair dealing in the context of ordinary contracts versus insurance contracts. The *Lakota* court noted that the court in *Brandenburger v. Hilti, Inc.*, (1989), 52 Ohio App.3d 21, 26, 556 N.E.2d 212, 217-218 (sic) (properly cited as 218-219) recognized that "('a [tort] cause of action for breach of good faith exists only in the context of an insurance contract')." Thus, plaintiffs properly pled breach of the covenant of good faith and fair dealing, as a separate tort cause of action, in the context of First American's fraudulent and deceitful conduct.

### III. CONCLUSION

For all the above reasons the Named Defendants Motion of Dismiss should be denied.

Dated this 3rd day of December 2007.

THE VAN DE VELD LAW OFFICES, P.C.

CURTIS C. VAN DE VELD
Attorney for Plaintiffs

CYFRED, LTD. et al., Plaintiffs v. FIRST AMERICAN TITLE INSURANCE COMPANY et al., Defendants
**OPPOSITION TO MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**
Case 1:07-cv-00024    Document 28    Filed 12/03/2007    Page 20 of 20
Civil Case No.07-00024
Page 20