Dooley Roberts & Fowler LLP
Suite 201, Orlean Pacific Plaza
865 South Marine Corps Drive
Tamuning, Guam 96913
Telephone (671) 646-1222
Facsimile  (671) 646-1223



**FILED**
DISTRICT COURT OF GUAM

DEC 10 2007

JEANNE G. QUINATA
Clerk of Court

Attorneys for Defendant
First American Title Insurance Company

## IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| CYFRED, LTD., for itself and on behalf of other similarly situated, | ) CIVIL CASE NO. 07-00024 |
| Plaintiffs, | ) |
| vs. | ) |
| FIRST AMERICAN TITLE INSURANCE COMPANY, PACIFIC AMERICAN TITLE INSURANCE COMPANY, MANU MELWANI and DOES One (1) through Two Hundred and Ninety-Eight (298), inclusive, | ) |
| Defendants. | ) |

**DEFENDANT FIRST AMERICAN TITLE INSURANCE COMPANY'S**

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

**ORIGINAL**

## I. INTRODUCTION

Defendant First American Title Insurance Company ("First American") responds to plaintiff Cyfred, Ltd.'s ("Cyfred") opposition to First American's motion to dismiss as follows. Cyfred failed to either exhaust its administrative remedies or plead facts that excuse such failure. Cyfred also failed to plead fraud-based claims with the requisite particularity. In addition, Cyfred has not sufficiently alleged claims for unjust enrichment or breach of the duty of good faith and fair dealing.

## II. FACTS

Normally a reply brief in support of a FRCP 12(b)(6) motion will not include a "fact" section since the movant must accept all well-pleaded facts in the complaint as true for the limited purposes of the motion. In this case, Cyfred has not submitted affidavits alleging "facts" outside the pleadings in order to convert the motion to a summary judgment. *See* FRCP 12(b). However, Cyfred apparently could not resist going outside the pleadings at least once to try to twist the facts.

Citing to the Declaration of Manu Melwani filed October 9, 2007, in <u>Cyfred, Ltd. v. Stewart Title Guaranty Co.</u>, D. Guam 07-00024, Cyfred alleges, "Stewart Title Guaranty Company admits colluding with First American in setting insurance rates." Cyfred Opposition, filed Dec. 3, 2007, at p. 17 n.4. What the Melwani declaration actually said was that when Stewart Title submitted rates to the Guam Insurance Commissioner, those rates were identical to the rates approved for First American several years earlier. Melwani Decl. at ¶7. It is not collusion for an insurer seeking government approval for rates to match those that have already been approved, an approach which obviously enhances the chances for approval. The Melwani Declaration does not specify the exact dates for the approval of the First American rates and the subsequent submission of the Stewart rates. However, the Melwani Declaration and the exhibits thereto place the approval of the First American rates at 1989 or earlier (Exhibit K to Melwani Decl., a 2005 letter referencing approval

more than 16 years earlier), and the submission of Stewart's rates at some time circa 1993, when Stewart was submitting documentation to enter the Guam market (Melwani Decl., ¶4). How could First American have colluded with Stewart when it submitted the rates in question a few years before Stewart even entered the Guam market? How was Stewart colluding when it matched its competitor's four-year (or more) old rates despite the rampant inflation of the intervening years?

This allegation is an example of Cyfred's difficulty with the concept of "fact". "Suspicion, mistrust, uncertainty, doubt, innuendo and skepticism . . . are not 'facts'". In re September 1968 Monroe County Supreme Court Grand Jury, 32 A.D. 2d 221, 224, 301 N.Y.S. 2d 380, 382 (1969). "Facts are actualities. They are what took place, not what might or might not have happened." Churchill v. Meade, 92 Ore. 626, 636, 182 P. 368, 371 (Ore. 1919). "A fact is . . . an actual happening in time or space; and actuality; . . . a reality as distinguished from supposition or opinion; . . . what took place, as distinguished from what might or might not have happened." United States v. Jones, 856 F. 2d 146, 150 (11th Cir. 1988), *reh'g denied en banc*, 866 F. 2d 1420 (11th Cir. 1989). Cyfred has difficulty distinguishing fact from its own speculation and conspiracy theories. Stewart's decision to match a competitor's existing outdated rates when it broke into the Guam market is not proof of collusion, notwithstanding Cyfred's conspiracy theory approach of twisting each new bit of information out of shape to fit its self-serving speculations.

## III. ARGUMENT

### A. Cyfred Failed to Exhaust Administrative Remedies.

Cyfred has neither exhausted existing administrative remedies nor pled facts to excuse its failure to do so. The reasons given for Cyfred's refusal to pursue such remedies are unconvincing.

#### 1. Administrative remedies are not futile even if damages are unavailable.

2

CH1 4014758v.1

Case 1:07-cv-00024   Document 29   Filed 12/10/2007   Page 3 of 11

Cyfred contends that administrative remedies are futile because the administrative authorities cannot award the damages that Cyfred seeks. This issue was addressed in <u>Wilkinson v. Norcal Mutual Insurance Co.</u>, 98 Cal. App. 3d 307, 159 Cal. Rptr. 416 (1979). The court held that, even though an absence of a damage remedy in the administrative procedure made ultimate resort to the courts inevitable, exhaustion was still required. *Id.* at 317, 159 Cal. Rptr. at 422. Through incorporation by reference of an earlier decision, the <u>Wilkinson</u> court noted that even if the matter ultimately ended up back in court for litigation over damages, application of the exhaustion doctrine would serve salutary purposes by promoting judicial efficiency, unearthing relevant evidence, providing the court a record to review, and allowing the court to avail itself of the administrative authority's expertise. *Id.* (citing <u>Westlake Community Hospital v. Superior Court</u>, 17 Cal. 3d 465, 476-77, 131 Cal. Rptr. 90, 551 P. 2d 410 (1976)).

### 2. This Court should not presume that Guam officials are incompetent.

Cyfred asserts that it need not even attempt to pursue administrative remedies because, in its opinion, Guam's regulatory officials are not competent to address Cyfred's extensive claims. Even if the Court were to consider these assertions, it is well-settled that a party's doubts as to the competence of an administrative official or tribunal are insufficient grounds to bypass administrative remedies without giving that official or tribunal a fair opportunity to prove otherwise. See <u>Jordan v. United States</u>, 522 F. 2d 1128 (8th Cir. 1975). This Court should not presume, as a matter of law, that Guam's institutions and the public servants who staff them are deficient.

The Guam Supreme Court has recognized "several reasons for the exhaustion of remedies doctrine." <u>Carlson v. Perez</u>, 2007 Guam 6, ¶ 70. These include lightening the burden of overworked courts and having specialized personnel provide a record which a court may review. *Id.* Cyfred turns established doctrine on its head by contending that the specialized personnel of

Guam's administrative agencies and boards should not be given the opportunity to provide a record the court may review because the specialized personnel are unqualified. Since Cyfred seeks to bring this case as a class action, it may be worth noting that many of the factors mentioned in 28 USC §1332(d) as grounds for this court to decline jurisdiction over a class action similarly weigh in favor of initial deference to local regulatory authorities. The named plaintiff is a Guam corporation. FACAC ¶1. If the class is certified, it will consist of persons who own land on Guam, and thus nearly all class members are likely to be Guam residents. Of three named defendants, Melwani is a Guam resident and PATCO is a Guam corporation. It appears that 11 of the 13 claims, i.e., all but the RICO-related claims, will be governed exclusively by Guam law. If this matter remains in federal court, then at least the input of Guam's regulatory officials should be sought.

### 3. DTPA claims are not exempt from exhaustion of administrative remedies.

Cyfred cites two published off-island cases without qualification for the proposition that the Guam legislature did not intend to require Deceptive Trade Practices-Consumer Protection Act ("DTPA") plaintiffs to exhaust administrative remedies – Escalante v. Sentry Ins. Co., 743 P. 2d 832 (Wash. App.1987), *overruled in part*, Ellwein v. Hartford Accident and Indem. Co., 15 P.3d 650, 647 (Wash. 2001), and Vail v. Texas Farm Bureau Mutual Ins. Co., 754 S.W. 2d 129 (Tex. 1988). Neither decision addressed exhaustion of remedies. Both decisions were based on the particular statutory schemes in the jurisdictions where they were decided. Obviously, neither case addressed the intent of the Guam Legislature. Cyfred also cites one unpublished off-island case for the same proposition, that being Mitchell v. Chicago Title Ins. Co., 2004 WL 2137815. The Mitchell decision also contained no discussion of the Guam Legislature's intent. The Mitchell court did deny a motion to dismiss for failure to exhaust administrative remedies, but did so at least in part because the defendant title insurer had litigated the matter in court for two years before belatedly

raising the issue of administrative review as a delaying tactic. *Id.* at *3. First American is of course raising the issue at the very outset of the current case. Also, the unpublished Mitchell case has had little persuasive weight. *See* Edge v. State Farm Mutual Auto. Ins. Co., 366 S.C. 511, 518-19, 623 S.E.2d 387, 391 (2005) (declining to follow Mitchell).

In Commonwealth ex rel. Chandler v. Anthem Ins. Companies, 8 S.W.3d 48, 55 (Ky. App. 1999), the court implied that, absent express statutory language to the contrary, administrative remedies must usually be exhausted before recourse can be had in court under a consumer protection act. While the Anthem Insurance court found such language in KRS 367.10 authorizing the particular relief sought, *id.*, 8 S.W. 3d at 55, there is no comparable provision in Guam insurance statutes that would expressly authorize Cyfred to make an end run around administrative remedies.

### 4. The *Upperman* decision does not moot administrative review.

Cyfred cites a single Ohio lower court decision for the proposition that, if an insurer has failed to file rates, the doctrine of exhaustion of administrative remedies is unavailable. Upperman v. Grange Indemnity Insurance Co., 135 Ohio Misc. 2d 8, 842 N.E.2d 132 (2005). The Upperman court did not address exhaustion of administrative remedies. The court merely held that there is an implied private right of action under a statute when the plaintiffs are members of the intended class of beneficiaries, and no other effective civil enforcement mechanism exists. *See id.*, 842 N.E.2d at 135-36. The Upperman court explicitly noted that under the McCarran-Ferguson Act, 15 U.S.C. 1011 *et seq.*, state law, not federal law, "is the repository for insurance regulation in this country." *Id.*, 842 N.E.2d at 134-35 (citing, *inter alia*, Cort v. Ash, 422 U.S. 66 (1975)). Thus, the Upperman court was not in disagreement with First American's position that federal courts should require litigants to exhaust their state administrative remedies on matters relating to insurance regulation. Finally, Cyfred has asked the Court to take judicial notice of the Affidavit of Manu Melwani filed in

the <u>Stewart Title</u> case. This places Mr. Melwani's assertion that First American had obtained approval for its rates on the record, thereby mooting Cyfred's <u>Upperman</u> argument.

### 5. Exhaustion of its administrative remedies would not deprive Cyfred of a private right of action.

Cyfred argues and cites authority for the proposition that it has a private right of action. Of course, requiring Cyfred to exhaust administrative remedies would not deprive Cyfred from seeking judicial review, judicial assistance in enforcing administrative remedies, or any other procedurally proper private right of action once administrative proceedings were concluded. First American has not contended otherwise. To the extent that Cyfred can demonstrate that any of its claims might somehow be improperly prejudiced by the pursuit of administrative remedies, a simple solution would be to stay this action rather than dismiss it while Cyfred pursues its administrative remedies.

As note above, Cyfred complains that administrative authorities may be unable to award damages. Where damages for past conduct are sought which cannot be awarded by the agency, and dismissal may give rise to serious procedural problems such as the application of the statute of limitations, "the proper course may be to stay the action instead of dismissing it." <u>J & J Enterprises v. Martignetti</u>, 369 Mass. 535, 341 N.E.2d 645, 648 (1976). *See also* <u>Nelson v. Blue Shield of Massachusetts, Inc.</u>, 377 Mass. 746, 387 N.E.2d 589, 594 (1979) (dicta) (if party seeks damages that are not available in administrative forum, matter should be stayed pending administrative exhaustion rather than dismissed).

A stay in lieu of dismissal pending exhaustion of administrative remedies would also address Cyfred's contention that its DTP/CPA and RICO claims are exempt from the requirement of exhaustion of remedies.[1] As noted in <u>J & J Enterprises</u>, where there are overlapping jurisdictions

---

[1] First American addressed the DTPA claim above. The authorities cited by Cyfred as to RICO involve the question of whether or not the McCarran Ferguson Act preempts RICO claims, which First American may address in a later motion, rather than exhaustion of administrative remedies. Indeed, in one of the precedents cited by Cyfred, the Court expressly

6

CH1 4014758v.1

and an administrative agency has jurisdiction of only part of the matter in controversy, a stay may be the proper course of action. *See* J & J, *supra*, 341 N.E.2d at 648.

### B.   Cyfred Has Not Adequately Pled its Allegations of Fraud.

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true for the limited purposes of the motion. However, a court should not accept conclusory allegations in the complaint as true. In re Capstead Mortgage Corp. Securities Litigation, 258 F. Supp. 2d 533, 546 (N.D. Tex. 2003). Conclusory allegations or legal conclusions masquerading as facts will not be sufficient to prevent dismissal pursuant to Rule 12(b)(6). *Id.* First American does not contend that a would-be class representative plaintiff must plead sufficient facts to establish every element of every claim of every class member. However, at a bare minimum, such a plaintiff should set forth sufficient facts to establish that each otherwise conclusory allegation of the complaint did in fact occur to at least one class member and is not solely a product of a plaintiff's overactive imagination.

Cyfred alleged that fraudulent statements were made, in addition to fraudulent omissions. *See* FACAC ¶¶ 54, 55. It has not set forth the particulars of any such affirmative misstatement, i.e., the identity of the speaker, the time, place and content of the misstatement, and the method by which the misstatement was made, and, most importantly, the identity of a class member to whom such an affirmative misstatement was made. Cyfred alleges that First American procured by deceit and fraud reimbursement of attorneys' fees and costs and partial or general releases of liability. FACAC at ¶67. Cyfred provides no particulars of a single instance in which this happened. Cyfred alleges that First American initiated and prosecuted actions for declaratory relief. FACAC at ¶68. Cyfred does not set forth the case number of a single such action. Cyfred asserts that First

---

noted that the plaintiff had exhausted administrative remedies before commencing litigation. Weiss v. First Unum Life Ins. Co., 482 F.3d 254, 256 (3d Cir. 2007).

7

CH1 4014758v.1

American illegally invoked an arbitration clause to deny valid claims for coverage. FACAC at ¶14. Again, Cyfred does not give a single example of an instance in which the allegedly illegal arbitration clause was invoked by First American. If anything can be inferred from these allegations and omissions, it would be that Cyfred's silence on such issues creates a strong implication that (a) First American did not make any affirmative statements to Cyfred concerning government approval of its rates and policies; (b) First American did not procure any attorneys' fees, costs, or releases of liability from Cyfred; (c) First American did not initiate or prosecute an action for declaratory relief against Cyfred; (d) First American has not invoked the arbitration clause against Cyfred; and (e) Cyfred has no knowledge of any actual occasion in which First American took any action listed in (a) through (d) against any other insured. If any of the five assertions in the previous paragraph were not true, Cyfred would have supported the conclusory allegations and opinions of the FACAC with specific factual averments. These speculative allegations are made in an attempt to convert a routine coverage dispute into a lucrative federal class action. Given the lack of particularity in so many of Cyfred's allegations, its claims for fraud should be dismissed. In the alternative, those conclusory allegations unsupported by an iota of fact should be stricken.

C. **Cyfred's Unjust Enrichment Claim Should Be Dismissed.**

Cyfred's unjust enrichment claim should be dismissed for the reasons set forth in First American's opening Memorandum. As noted therein, there is a split of authority as to whether or not a cause of action for "unjust enrichment" even exists. The "maxim of jurisprudence" cited by Cyfred, 20 GCA §15109, does not create a cause of action. The "maxims of jurisprudence" in Title 20 are not controlling law and do not create substantive law or new causes of action. *See* Daniels v. McPhail, 93 Cal. App. 2d 479, 482, 209 P. 2d 19, 20 (1949). Some of the authorities cited by Cyfred simply recognize "unjust enrichment" as a synonym for "quantum meruit" of "quasi-

8

CH1 4014758v.1

Case 1:07-cv-00024    Document 29    Filed 12/10/2007    Page 9 of 11

contract", i.e., a cause of action to allow a plaintiff who has provided goods or services to a defendant to recover the fair market value if no contract is found to exist. *See* George v. Morton, 2007 U.S. Dist. LEXIS 15980, *21 (D. Nev. 2007) (equating unjust enrichment and quantum meruit in employment context); National Union v. GHURA, 2003 Guam 19, ¶71 (parenthetical in citation equating unjust enrichment to quantum meruit and quasi contract). Cyfred is not seeking payment for goods or services that it or any other class member has provided to First American. The case of Guam Bar Ethics Committee v. Maquera, 2001 Guam 20, ¶¶ 25-28, concerns restitution in attorney disciplinary proceedings, not private causes of action.

Cyfred asserts it is "pleading in the alternative". In Quichocho v. Macy's West Inc., Guam Super. Ct. CV0209-04 at 10 (D & O, Apr. 17, 2006), Judge Maraman dismissed the proposed class's unjust enrichment claim because the facts that would sustain the unjust enrichment claim would also sustain an adequate remedy at law under the DTP/CPA. In the current case, if Cyfred could actually prove the facts upon which its "unjust enrichment" claim is based, it would have an adequate remedy at law not only under the DTP/CPA, but also under the numerous other causes of action it has asserted such as fraud and breach of contract. The "unjust enrichment" claim is not "pleading in the alternative"; it is mere surplusage.

### D. Cyfred's Twelfth Cause of Action Fails to State a Claim.

There is no separate cause of action for breach of the duty of good faith and fair dealing. New Image Laboratories, Inc. v. Stephan Co., 34 Fed. Appx. 338, 341 (9th Cir. 2002) (citing Burger King Corp. v. Weaver, 169 F.3d 1310, 1317 (11th Cir. 1999)); Lakota Local Sch. Dist. Bd. of Educ. v. Brickner, 108 Ohio App. 3d 637, 646, 671 N.E. 2d 578, 584 (Ohio Ct. App. 1996). Cyfred relies upon a brief reference in dicta in the Lakota decision to an exception under Ohio case law for claims

9

CH1 4014758v.1

Case 1:07-cv-00024    Document 29    Filed 12/10/2007    Page 10 of 11

concerning breach of the duty of good faith by an insurer. However, Ohio precedents which more fully discuss that particular cause of action show that it is inapplicable to the current case.

Ohio courts recognize a cause of action by an insured against his or her insurer for breach of the duty of good faith in the following circumstances:

> The common thread running though most of these cases is that an insured has a cause of action against its insurer on a claim of bad faith, where the insurer had abundant opportunity to settle a claim made against the insured within the policy limits of the insured's coverage, but failed to do so. In most of these cases, the insured was forced to pay out-of-pocket amounts when judgment was rendered against said insured over and above the limits of his coverage.

Marginian v. Allstate Ins. Co., 18 Ohio St. 3d 345, 348, 481 N.E. 2d 600, 603 (1985). This "bad faith" claim appears to apply to liability insurance, not title insurance. In any event, the FACAC contains no allegations of abundant opportunity to settle claims against Cyfred within policy limits or that Cyfred was forced to pay out-of-pocket amounts after a judgment in excess of policy limits. Thus Cyfred's Twelfth Cause of Action remains premised solely upon ordinary breach of contract, notwithstanding that the contract at issue is an insurance policy. Cyfred appears to have already acknowledged that there is no separate cause of action for breach of the duty of good faith when in the context of ordinary contracts. Opposition filed Dec. 3, 2007 at 20.

## IV. CONCLUSION

For the foregoing reasons and those stated in First American's opening memorandum, First American Title Insurance Company's motion to dismiss should be granted.

DOOLEY ROBERTS & FOWLER LLP

Date: 12/9/07

By: _____
DAVID W. DOOLEY, ESQ.
Attorneys for Defendant First American Title Insurance Company