
Dooley Roberts & Fowler LLP
Suite 201, Orlean Pacific Plaza
865 South Marine Corps Drive
Tamuning, Guam 96913
Telephone (671) 646-1222
Facsimile  (671) 646-1223

Attorneys for Defendant
First American Title Insurance Company

IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| CYFRED, LTD., for itself and on behalf of other similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>FIRST AMERICAN TITLE INSURANCE COMPANY, PACIFIC AMERICAN TITLE INSURANCE COMPANY, MANU MELWANI and DOES One (1) through Two Hundred and Ninety-Eight (298), inclusive,<br><br>Defendants. | CIVIL CASE NO. 07-00024<br><br>**DEFENDANT FIRST AMERICAN TITLE INSURANCE COMPANY'S SUPPLEMENTAL BRIEF ON EXHAUSTION OF REMEDIES ISSUE** |

## I.    INTRODUCTION

At a hearing in this action on January 7, 2008, the Court instructed the parties in both this action and in Cyfred, Ltd. v. Stewart Title Guaranty Co., D. Guam Civ. Case No. 07-23 (the "Stewart Action"), to file supplemental briefing with respect to Defendant First American Title Insurance Company's ("First American") pending motion to dismiss this action (and a similar motion in the Stewart Action) regarding the exhaustion of remedies requirement. Specifically, the Court raised the following issues: (1) what administrative remedies are available in an administrative proceeding?; (2) what are the procedures?; and (3) does the individual who is

ORIGINAL

currently serving as Acting Commissioner of Banking and Insurance ("Acting Commissioner") have the lawful authority to conduct an administrative proceeding?

Dismissing (or at least staying) this lawsuit in favor of an administrative proceeding would serve the interests of judicial economy and efficiency. The Guam insurance laws do not entitle Plaintiff Cyfred, Ltd. ("Cyfred") to damages or render the policies at issue in this case void or invalid. Nevertheless, the exhaustion of administrative remedies requirement still applies where a plaintiff's remedies in the administrative venue are not coextensive with remedies available in a lawsuit. Within the Office of the Commissioner of Banking and Insurance, both the Acting Commissioner and the Banking and Insurance Board ("Board") are empowered to determine whether the forms and rates at issue satisfy the requirements of the Guam insurance laws and to issue orders to that effect. Were the Acting Commissioner or the Board to find that the rates and forms at issue in this case satisfied the statutory requirements, the matter would be fully resolved and there would be no basis for this action or any subsequent action. If, on the other hand, the Acting Commissioner or the Board were to find that the forms and rates violated the statute, then an order could be issued to that effect. Additionally, the Board could refer the matter to the Attorney General, who could impose fines or bring misdemeanor charges. Thus, an administrative proceeding is the appropriate forum to resolve this issue, which inherently concerns local insurance law and policy. Moreover, under Guam law, the Acting Commissioner may lawfully preside over this matter. For these reasons, as more fully set forth below, Stewart's motion to dismiss should be granted.

## II.    CYFRED IS NOT ENTITLED TO DAMAGES

Cyfred is not entitled to any monetary damages whatsoever, either in this action or in an administrative proceeding. Guam's insurance laws provide for the imposition of a fine or

misdemeanor charge for the use of forms or rates that were not approved by the Commissioner of Banking and Insurance. See 22 GCA §§ 12109, 18308, 18311, 18501, 18504.[1] In prescribing such penalties, the Legislature implicitly rejected the imposition of more drastic remedies, such as invalidation of policies issued in violation of the statute or civil remedies by holders of such policies. Cyfred points to no statutory provision for the award of civil damages or other remedies to policyholders who were issued policies on forms or under rates that were not approved by the Commissioner of Banking and Insurance, and Stewart has found no such provision.

Courts refuse to invalidate policies despite violations of insurance form and rate approval statutes that are substantially similar to the provisions of Guam's insurance laws. See 4 E.M. Holmes, Holmes' Appleman on Insurance 2d § 23.1 (1998) ("[T]he insurer's failure to file the

---

[1] Section 18308 provides in relevant part:

It shall be unlawful for an insurer to use a policy form in affecting insurance without first obtaining the Commissioner's approval thereof as provided herein:

(a) The Commissioner shall study each form for the purpose of guarding against any fraud, misrepresentation, or other forms of unfairness to the writings of the insured; if he shall approve a form, he shall endorse his approval on the face of both duplicates and transmit one to the insured and keep one in his permanent files; if he shall disapprove a form, he shall issue an order of disapproval stating therein his reasons and transmit a copy of the same to the insurer.

22 GCA § 18308. Any person who violates section 18308 "shall be guilty of a misdemeanor, and shall, upon conviction, be subject to a fine of not more than one thousand dollars ($1,000.00) if the person convicted is not a natural person . . . ." 22 GCA § 18311. Similarly, § 18501 provides:

(a) All rates, rate schedules, rate plans, and methods of computing rates to be applied to any insurance transacted in the Territory of Guam shall be filed in the office of the Commissioner, and before any rates may be charged, advertised, publicized or otherwise represented, they shall have the approval of the Commissioner.

(b) It shall be unlawful for any insurer to use any rates in violation of the provisions of this section, or to alter, amend or otherwise change any rates without the approval of the Commissioner.

(c) It shall be unlawful for any insurer to charge any rate for any insurance transacted in Guam other than the rate approved by the Commissioner for such insurer for such risk and class of insurance.

22 GCA § 18501. Violations of § 18501 may result in "a fine of not more than Five Thousand Dollars ($5,000.00)." 22 GCA § 18504. Additionally, there is a default penalty provision for any violation of the insurance laws. See 22 GCA § 12109 ("Any person violating any of the provisions of the Title, or of any regulation issued hereunder, or any lawful order of the Commissioner, for which a penalty is not otherwise specifically provided, shall be guilty of a misdemeanor.").

policy form with the insurance commissioner will not void the policy or a particular provision[] but rather carries separate penalties with the result that the provision will only be void if its substantive provisions are inconsistent with the state's statutes and regulations."). As one court observed:

> The majority of jurisdictions which have addressed this issue have concluded that the failure to file the policy or endorsement does not render it invalid. In a number of cases, the courts have considered significant the existence of a savings statute or other statute providing penalties for the failure to file. In other cases the court found significant the lack of a specific statutory provision for voidance.

Cage v. Litchfield Mut. Ins. Co., 713 A.2d 281, 285 (Conn. Super. Ct. 1997) (collecting cases).

In Gary v. American Casualty Co. of Reading, Pa., the court held that the defendant's failure to obtain approval of a regulatory endorsement prior to issuing an insurance policy did not render the endorsement void, because the statute requiring approval by the insurance board did not state that unapproved endorsements were invalid. 753 F. Supp. 1547, 1551 (W.D. Okla. 1990), aff'd, 975 F. 2d 677 (10th Cir. 1992). The court reasoned that "if the Oklahoma legislature had intended that unfiled, unapproved endorsements be void, it would have said so." Id.; see also McCullough Transfer Co. v. Virginia Surety Co., 213 F.2d 440, 442-43 (6th Cir. 1954) (finding that legislature intended only to fine insurers for failing to file a policy endorsement, and noting that had legislature intended to void such contracts, "it could have easily said so in express words"); Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Ambassador Group, Inc., 157 A.D. 2d 293, 556 N.Y.S. 2d 549, 298 (1990) ("The failure of plaintiff to file [the] endorsement with the New York Superintendent of Insurance for approval . . . does not, by itself, void the policy clause, but rather carries its own penalties for nonfiling[;] such clause is void only if the substantive provisions of the clause are inconsistent with other statutes or regulations.").

Similarly, in Home Indemnity Co. v. Hoechst Celanese Corp., the court concluded that the failure to obtain approval of an environmental exclusion in an insurance policy did not render the policy void. 494 S.E.2d 768, 772 (N.C. Ct. App. 1998). The statute at issue provided that "[i]t is unlawful for any insurance company doing business in this State to issue . . . any policy . . . until the forms of the same have been submitted to and approved by the Commissioner." Id. The court held that the policy was not void, since the statute specifically provided for penalties for violations but did not provide for voiding of the policy. Id. at 773.

As the above authority demonstrates, the omission of any provisions invalidating policies that are issued in violation of the insurance laws demonstrates that the policies issued will not be rendered void or invalid even if the Acting Commissioner – or this Court – were to conclude that Stewart's forms and rates were not properly issued. Because the forms and rates at issue could not be void or invalid, neither Cyfred nor the putative class is entitled to any damages.

## III. ADMINISTRATIVE REVIEW WOULD RESOLVE THE CORE ISSUES IN THIS ACTION

Even assuming – despite the clear authority cited above – that Cyfred is entitled to damages, it was required to exhaust its administrative remedies before bringing this action. The Guam Supreme Court has held that "even where the administrative remedy may not provide the specific relief sought by a party or resolve all the issues, exhaustion is preferred, because agencies have the specialized personnel, experience and expertise to unearth relevant evidence and provide a record which a court may review." Carlson v. Perez, 2007 Guam 6, ¶ 70; see also Wilkinson v. Norcal Mut. Ins. Co., 98 Cal. App. 3d 307, 317 (1979) (plaintiff had to exhaust administrative remedies available even though he could not recover damages in administrative forum). Indeed, Guam courts routinely defer to agency interpretations of the statutes they administer, Carlson v. Guam Tel. Auth., 2002 Guam 15, ¶ 17, and judicial deference to

5

administrative expertise is particularly appropriate in the area of insurance. See New Jersey Coalition of Health Care Prof'ls, Inc. v. New Jersey Dep't of Banking and Ins., Div. of Ins., 323 N.J. Super. 207, 229, 732 A. 2d 1063, 1076 (1999) ("Particularly, in the field of insurance, the expertise and judgment of the Commissioner may be given great weight."); John Paterno, Inc. v. Curiale, 88 N.Y. 2d 328, 333, 645 N.Y.S. 2d 424, 427 (1996) (deferring to Superintendent's "special competence and expertise with respect to the insurance industry").

The gravamen of Cyfred's claims is that the Commissioner of Banking and Insurance did not approve certain insurance forms and rates. Once this action is dismissed, Cyfred will be required to bring those contentions before the administrative agency that is best situated to make those determinations – the Office of the Commissioner of Banking and Insurance. As discussed below, the procedures for an administrative proceeding – and the potential administrative remedies available – would resolve the key issues in this action.

By statute, the Office of the Commissioner of Banking and Insurance is charged with supervising all insurance activities on Guam. 11 GCA § 103101. The statute provides that "interested person[s]" such as Cyfred may petition the Banking and Insurance Board ("Board") for a declaratory order with respect to application of the insurance laws. 11 GCA § 103104(e)-(f). The Acting Commissioner has substantially similar authority. See 11 GCA §§ 103104(e), 103105. The Board or the Acting Commissioner may investigate insurance companies by subpoenaing witnesses, requiring the production of evidence, examining witnesses, and conducting hearings to determine whether a violation of the insurance laws has occurred. 11 GCA § 103104(e). The Board may affirm, reverse, or stay any order or ruling of the Acting Commissioner, and orders of the Board are appealable to the Superior Court of Guam. 11 GCA §§ 103104(a)(5), 103108. If the Board finds a

criminal violation of the insurance laws, it can refer such violation to the Attorney General. 11 GCA § 103104(a)(4)(iii).[2]

The Acting Commissioner and the Board therefore have plenary authority to resolve the core factual issues in this case – i.e., whether Stewart's forms and rates were approved – and to provide appropriate administrative remedies. By so doing, whichever way the matter is resolved, judicial economy and efficiency would be served, because the Board or the Acting Commissioner would examine the fundamental factual issues and make decisions that will leave very little to do in any subsequent litigation related thereto.

Indeed, courts routinely require plaintiffs to exhaust administrative remedies in circumstances substantially similar to the instant action. For example, the court in Melder v. Allstate Corp. held that plaintiffs who alleged discrimination in setting insurance rates had failed to exhaust their administrative remedies. 404 F.3d 328, 330 (5th Cir. 2005). The court noted that the Louisiana Administrative Code provided a detailed administrative process – similar to the process available under Guam law – whereby parties could seek relief for violations of Louisiana insurance statutes and regulations. Id. at 331. The practice and procedure rules provided that the insurance commissioner had the power to issue subpoenas to obtain witnesses, parties had the opportunity to present evidence and to examine witnesses, and the commissioner could issue a written decision and order, which the parties could appeal. Id. The court observed that requiring the plaintiffs to exhaust their administrative remedies would allow "the administrative agency statutorily authorized, and best equipped, to address Plaintiffs' claims to do so before a court exercises jurisdiction." Id. at 332. See also Morales v. Attorneys' Title Ins. Fund Inc., 983 F. Supp. 1418, 1429-30 (S.D. Fla. 1997) (implying that state law and RESPA

---

[2] As discussed below, use of a form or rate that has not been approved may result in a fine or misdemeanor charge. See 22 GCA §§ 12109, 18308, 18311, 18501, 18504.

claims against title insurers could have been dismissed for failure to exhaust administrative remedies).

As in Louisiana, the Board and the Acting Commissioner of Guam are empowered to gather evidence and to issue appealable orders regarding alleged violations of the insurance laws. 11 GCA §§ 103104, 103105, 103108. Requiring Cyfred to exhaust its administrative remedies would thus allow specialized personnel of the Office of the Commissioner of Banking and Insurance– i.e., the administrative agency statutorily authorized, and best equipped, to address Cyfred's claims – to unearth relevant evidence and provide a record which a court may review. See Melder, 404 F.3d at 332; Carlson, 2007 Guam 6, ¶ 70. Cyfred is not entitled to pursue this judicial action until it has exhausted these available administrative remedies.[3]

## IV. ADMINISTRATIVE REMEDIES WILL NOT BE FUTILE

In its opposition to Stewart's motion to dismiss, Cyfred alleges that it has no administrative remedies, because Cyfred "believes" the Acting Commissioner lacks authority to provide such relief.[4] As noted in Stewart's reply brief, these matters are outside the pleadings and should be excluded for purposes of deciding Stewart's motion to dismiss. Fed. R. Civ. P. 12(b). Even were the Court to entertain Cyfred's factual assertions, it is indisputable that Cyfred's claims are patently false.

The crux of Cyfred's argument is that John P. Camacho is serving illegally as Acting Commissioner. In fact, documents issued by the Department of Revenue and Taxation unequivocally show that the individual who is currently serving in that position is not Mr. Camacho

---

[3] Cyfred raised the doctrine of primary jurisdiction as a red herring; First American has not moved to dismiss based on primary jurisdiction. See, e.g., Syntek Semiconductor Co., Ltd. v. Microchip Technology Inc., 307 F.3d 775, 780-81 (9th Cir. 2002) (doctrine of primary jurisdiction not equivalent to exhaustion of administrative remedies requirement). Should the Court find the doctrine of primary jurisdiction applicable, however, First American respectfully requests that the effect or validity of the forms and rates at issue in this case be "referred" to the Commissioner, and that this action be stayed or dismissed pending determination of that issue by the Commissioner. See id. at 782.

[4] First American refers to the Stewart Action above because the status of the Acting Commissioner was addressed more directly in that action, where Cyfred filed affidavits not filed in this action.

but Artemio B. Ilagan. See "Exhibit A" to the Declaration of David W. Dooley, attached hereto as Exhibit A.[5] Additionally, that document demonstrates that Mr. Ilagan is also the Director of the Department of Revenue and Taxation ("Director"). As Cyfred acknowledges in its opposition brief, in the event the office of the Commissioner of Banking and Insurance is vacant, the statute provides that "the Director shall serve as Acting Commissioner." 11 GCA § 103102(h).[6] There is no time limit on the ability of the Director to serve as Acting Commissioner. By operation of law, then, Mr. Ilagan is the Acting Commissioner. Cyfred's contentions that Mr. Camacho serves in that position, and does so unlawfully, are plainly wrong and should be disregarded.

## V. CONCLUSION

For the foregoing reasons, Cyfred was required to exhaust its administrative remedies before the Office of the Commissioner of Banking and Insurance, and its failure to do so, inter alia, warrants dismissal of this action.

DOOLEY ROBERTS & FOWLER LLP

Date: January 21, 2008

By: Seth Forman

DAVID W. DOOLEY, ESQ.
Attorneys for Defendant First American Title
Insurance Company

---

[5] In the Stewart Action, Cyfred filed a letter dated June 26, 2007, signed by Governor Felix Camacho and addressed to John P. Camacho stating, in its entirety, "By the authority vested in me pursuant to the Organic Act, as amended, and the laws of Guam, I hereby appoint you to serve as the: Acting Commissioner of Banking & Insurance[.] This appointment is effective immediately until further notice." Exhibit 3 to Declaration of Curtis Van de veld, filed in the Stewart Action on Oct. 1, 2007. From this letter, Cyfred infers that (a) the position of Commissioner was vacant, (b) the letter purported to have Mr. Camacho replace the Director of Revenue and Taxation ("Director") as Acting Commissioner, and (c) Mr. Camacho does not meet the minimum qualifications for the Commissioner set forth in 11 GCA § 103102(c). Even assuming all three inferences were correct as of June 2007, which is not at all clear, that issue is now moot, since Mr. Ilagan is currently serving as Acting Commissioner.

[6] Although First American has found no precedent construing subsection (h), it is well-established that Guam statutes are to be construed according to the plain meaning rule. See, e.g., People v. Root, 2005 Guam 16, ¶ 9 (Tydingco-Gatewood, P.J.). The plain language of subsection (h) thus establishes that the Director serves as Acting Commissioner when the post of Commissioner is vacant.