Dooley Roberts & Fowler LLP
Suite 201, Orlean Pacific Plaza
865 South Marine Corps Drive
Tamuning, Guam 96913
Telephone (671) 646-1222
Facsimile   (671) 646-1223

Attorneys for Defendant
First American Title Insurance Company



FILED
DISTRICT COURT OF GUAM

JAN 2 4 2008

JEANNE G. QUINATA
Clerk of Court

## IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| CYFRED, LTD., for itself and on behalf of other similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> FIRST AMERICAN TITLE INSURANCE COMPANY, PACIFIC AMERICAN TITLE INSURANCE COMPANY, MANU MELWANI and DOES One (1) through Two Hundred and Ninety-Eight (298), inclusive, <br><br> Defendants. | CIVIL CASE NO. 07-00024 <br><br><br> **DEFENDANT FIRST AMERICAN TITLE INSURANCE COMPANY'S RESPONSE MEMORANDUM re: JURISDICTION OF THE DISTRICT COURT OF GUAM** |

### I. INTRODUCTION

At a hearing in this action on January 7, 2008, the Court instructed the parties to file supplemental briefing on the issue of jurisdiction, with plaintiff Cyfred, Ltd. ("Cyfred") to file the opening brief on the issue. Cyfred has done so. Defendant First American Title Insurance Company ("First American") responds to Cyfred's opening memorandum on the jurisdictional issue as follows. To summarize, the Court does not have diversity jurisdiction in this matter. The court should exercise its discretion to decline to hear Cyfred's RICO claim and Guam law claims because the primary issues in this case are issues of local law and local concern.

ORIGINAL

1

## II. FACTS

First American does not disagree with the first two paragraphs of Cyfred's statement of the facts.[1] As to the third and concluding paragraph of Cyfred's statement of facts, First American does not disagree that Cyfred made RICO allegations in the First Amended Class Action Complaint ("FACAC"). First American disagrees with Cyfred's characterization of these allegations as "central allegations in the Complaint". The "centrality" of these peripheral matters is a legal issue which will be discussed below.

Cyfred has asserted, and First American does not dispute, that the sole named plaintiff, Cyfred, is a citizen of Guam for diversity purposes. Cyfred has asserted, and First American does not dispute, that First American is a citizen of California for diversity purposes. Cyfred has identified First American's co-defendants, Pacific American Title Insurance Company ("PATCO") and Manu Melwani ("Melwani") as citizens of Guam for diversity purposes. FACAC at ¶¶ 9-10.

There has been no allegation as to the citizenship of class members other than Cyfred. As a practical matter, it is most likely impossible for the parties to provide precise numbers as to what percentage of class members are citizens of Guam in the near future. First American sold a few thousand title insurance policies on Guam during the time period in question, from 1994 to the filing of this action in 2007. The policies contain the address of the insureds. However, citizenship for purposes of diversity is determined at the time an action is commenced, not on the date that the events giving rise to the suit occurred. *E.g.*, Lew v. Moss, 797 F. 2d 747, 750 (9th Cir. 1986); 15-102 Moore's Federal Practice-Civil §102.32 (2007). During the 13-year time period at issue, some insureds may have relocated off-island. Others may have passed away. It would take an investigator some time to track down all of the insureds and, where necessary, their heirs, especially

---

[1] In regards to the second paragraph, First American would note that it is only admitting that Cyfred has made these assertions and allegations. First American is not conceding the truth of any such assertion or allegation.

when starting with only a name, an old address, and the information that the individual at one time had an interest in certain real property. Notwithstanding the difficulties involved in providing a precise number at this time, it is nonetheless intuitively obvious that the overwhelming majority of persons who obtain title insurance on Guam, and who thus have interests in real property on Guam, will be citizens of Guam for purposes of diversity. Sara C. Pangelinan, who has been an Escrow Officer at PATCO since 1992, states that the overwhelming majority of persons who purchased title insurance from PATCO, 96.72% in a random sample from the years at issue in this action, were Guam residents. Declaration of Sara C. Pangelinan, filed herewith.

## III. LEGAL ISSUES

This Court does not have diversity jurisdiction over this matter under 28 USC §1332(d) because the overwhelming majority of the plaintiffs are Guam residents, two of the three defendants are Guam residents, the class seeks substantial relief from Guam defendants, and the principal injuries alleged occurred on Guam. The Guam courts have concurrent jurisdiction over Cyfred's RICO claim. Given the overwhelming predominance of local issues, pursuant to both Tafflin v. Levitt, 493 U.S. 455, 110 S. Ct. 792 (1990) and 28 USC §1367(c), the Court should abstain from hearing the RICO claim and decline supplemental jurisdiction over the 12 purely local causes of action.

### A. This Court does not have diversity jurisdiction over this matter under 28 USC §1332(d).

Plaintiff Cyfred bears the burden of proving that diversity jurisdiction exists. *E.g.*, Thompson v. Gaskill, 315 U.S. 442, 446 (1942); Boggs v. Blue Diamond Coal Co., 432 F. Supp. 19, 21 (E.D. Tenn. 1977); National Spinning Co. v. Washington, 312 F. Supp. 958, 961 (E.D.N.C. 1970); Shreveport Long Leaf Lumber Co. v. Wilson, 38 F. Supp. 629, 631 (W.D. La. 1941) (burden on plaintiff to show diversity by preponderance of evidence even though issue raised by defendant

in motion to dismiss). For purposes of the pending motion to dismiss, First American does not dispute that there are more than 100 members of the so-called "deceptive acts" class.[2] While First American seriously doubts that the potential plaintiff class has incurred damages in excess of $5,000,000, this also will not be disputed for purposes of the pending motion only. However, this action still does not meet statutory requirements for diversity jurisdiction because of the presence of Guam plaintiffs and Guam defendants. Quoting 28 USC §1332(d)(2) out of context, Cyfred implies that there is diversity jurisdiction if any member of the plaintiff class is a citizen of a state different from any defendant. However, subsection (d) consists of much more than that one subsection. The Court must decline diversity jurisdiction under subsection (d)(4) of 28 USC §1332.

Subsection (d)(4) of 28 USC §1332 provides as follows:

> (4) A district court **shall decline to exercise jurisdiction** under paragraph (2)—
> (A) (i) over a class action in which—
> (I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;
> (II) at least 1 defendant is a defendant—
> (aa) from whom significant relief is sought by members of the plaintiff class;
> (bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and
> (cc) who is a citizen of the State in which the action was originally filed; and
> (III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and
> (ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons; or
> (B) two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed.

---

[2] There may be far fewer than 100 members of the "Denied Claims" sub-class, but the numerosity (or lack thereof) of that sub-class may be an issue outside the scope of the pleadings for purposes of the current motion.

4

(Emphasis added).

It appears that more than two-thirds of the members of the proposed plaintiff classes in aggregate[3] are citizens of Guam, meeting the requirements of 28 USC §1332(d)(4)(A)(i)(I).

While up to 297 "Doe" defendants remain to be identified, two of the three defendants named to date—i.e., "at least 1"--are citizens of Guam for diversity purposes. While the FACAC does not always sort out what actions are attributed to specific defendants, either individually or jointly, a large number of allegations appear directed at least in part towards the Guam defendants Melwani and PATCO. *See* FACAC ¶¶ 8-10, 20, 37, 45(e), 45(f), 45(g), 45(i), 51, 57, 77-79 (conspiracy involving all defendants); 86-89, 120-122 (conspiracy including "Does One (1) and Two (2)" who were previously identified as Melwani and PATCO), 125-147 (RICO claims). Thus the alleged conduct of the two Guam defendants forms a significant basis for the claims asserted by the proposed plaintiff class. Similarly, while the FACAC does not always sort out what prayers for judgment are asserted against which defendants, individually or jointly, it would appear that most claims are asserted against all defendants jointly. The third, fourth and fifth prayers for judgment expressly refer to "defendants" in the plural, thus likely encompassing all defendants and of necessity including at least one Guam defendant. Therefore, the members of the plaintiff class seek significant relief from the Guam defendants. The requirements of 28 USC §1332(d)(4)(A)(i)(II) have been met.

The principal injuries resulting from the alleged conduct would be incurred in Guam, as required by 28 USC §1332(d)(4)(A)(i)(III).

There has been no other class action filed asserting the same or similar factual allegations against any of the defendants on behalf the same or other persons in the three years preceding the

---

[3] Since the "deceptive acts" class includes all persons who purchased policies, the "denied claims" sub-class is of necessity a subset of the "deceptive acts" class. Thus the aggregate of the classes is the membership of the "deceptive acts" class.

filing of this action. 28 USC §1332(d)(4)(A)(ii). Thus this action meets all the requirements of 28 USC §1332(d)(4)(A). The Court must therefore decline to exercise 28 USC §1332(d)(2) class action diversity jurisdiction.

**B.     This Court should abstain from hearing the RICO claim and defer to the Guam Court's concurrent jurisdiction.**

Although RICO is a federal statute, this court is not required to hear every RICO claim that is tacked onto what would otherwise be an entirely local case. In Tafflin v. Levitt, 493 U.S. 455, 110 S. Ct. 792 (1990), the United States Supreme Court conclusively established that federal courts may abstain and defer to a state court's concurrent jurisdiction over civil RICO claims when the claims involve an industry subject to comprehensive state regulation. The Tafflin decision is fully applicable to the facts of this case.

The Tafflin litigation arose from the failure of Old Court Savings & Loan, Inc., a Maryland savings and loan association, and the attendant collapse of the Maryland Savings-Share Insurance Corporation. The District Court granted the respondents' motions to dismiss, holding that because state courts have concurrent jurisdiction over civil RICO claims, federal abstention was appropriate. The Court of Appeals, while affirming, held that a RICO action could be instituted in a state court and that Maryland's comprehensive scheme for the rehabilitation and liquidation of insolvent state-chartered savings and loan association provided a proper basis for the District Court to abstain. Tafflin, *supra*, 493 U.S. at 458, 110 S. Ct. at 794. In a dissent-free opinion, the United States Supreme Court affirmed, concluding, "[W]e hold that state courts have concurrent jurisdiction to consider civil claims arising under RICO. Nothing in the language, structure, legislative history, or underlying policies of RICO suggests that Congress intended otherwise." *Id.*, 493 U.S. at 467, 110 S. Ct. at 799. Indeed, as Justice White noted in his concurring opinion, "To the extent that there is any danger under RICO of nonuniform construction of criminal statutes, it is quite likely that the

6

damage will result from federal misunderstanding of the content of state law—a problem, to be sure, but not one to be solved by exclusive federal jurisdiction." *Id.*, 493 U.S. at 468, 110 S. Ct. at 800 (White, J., concurring).

The current case, like Tafflin, involves an industry that is comprehensively regulated by the local government. *See* 15 USC § 1011 (declaration of Congressional policy that continued regulation of the business of insurance by the States is in the public interest); 15 USC § 1012(a) (business of insurance shall be subject to state law relating to regulation and taxation); 15 USC § 1012(b) (no act of Congress shall be construed to invalidate, impair, or supersede any State law for the purpose of regulating the business of insurance); 22 GCA Chapters 12-29. As addressed in more detail below in the discussion of supplemental jurisdiction, twelve of Cyfred's thirteen causes of action are based solely on local law and not federal law. The alleged illegal acts that form the basis of the RICO claim are based upon violations of Guam law. *See* FACAC ¶125. The Guam Superior Court has jurisdiction to hear Cyfred's RICO claim.

The current case is similar to Bodenner v. Graves, 828 F. Supp. 516 (W.D. Mich. 1993). In Bodenner, the complaint included 28 state law causes of action and one RICO claim. After declining supplemental jurisdiction over the 28 state law claims, the court also dismissed the RICO claim. The court noted overwhelming predominance of state-law issues and the proposition that a case with an inordinate amount of state law claims should not be brought in federal court in the first place. *Id.* at 519. It would be appropriate for this Court to abstain from hearing Cyfred's RICO claim to avoid any risk of "the damage [that] will result from federal misunderstanding of the content of state law" of which Justice White warned. Tafflin, *supra*, 493 U.S. at 468, 110 S. Ct. at 800 (White, J., concurring).

    C.    **Supplemental jurisdiction should be declined because of the predominance and novelty of Guam law issues.**

One of the attorneys working on this brief recalls attending a CLE session in a Guam District Court Conference some years ago. While he was attending the conference, his secretary was typing (this was in the days before most attorneys were competent at word processing) a complaint for filing in federal court in which the plaintiff would be asserting both claims arising under federal law and claims which were to be alleged to fall under the Court's pendant jurisdiction. Fortunately, one of the topics at the Conference was recent developments in federal civil procedure. Upon learning that pendant jurisdiction had been statutorily replaced by "supplemental jurisdiction" in the then-recent year of 1990, the attorney raced to a pay phone (this was also in the days before cell phones) during the next break to tell his secretary to hold the complaint until the jurisdictional allegations could be corrected. Cyfred must have missed that District Court Conference. While Cyfred cites the correct supplemental jurisdiction statute, 28 USC §1367, it devotes much of its briefing on this issue to pendant jurisdiction under pre-1990 precedents. First American will limit its response to current law. This Court can and should decline supplemental jurisdiction pursuant to 28 USC §1367(c).

Subsection (a) of 28 USC §1367 provides in pertinent part, "Except as provided in subsections (b) and (c) . . . , in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Subsection (c) sets forth an exception applicable to this case, providing:

> (c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

8

(3) the district court has dismissed all claims over which it has original jurisdiction, or
(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

The Court should decline supplemental jurisdiction in this case pursuant to both (c)(1) and (c)(2).

### 1. Claims arising under Guam law predominate in this action.

Taking the more patently obvious issue first, the Court should decline supplemental jurisdiction pursuant to 28 USC §1367(c)(2) because Guam law claims clearly predominate in this action. The entire FACAC concerns alleged violations of Guam insurance laws. Congress has determined that the regulation of insurance is a matter for the states (including Guam), not the federal government. *See again* 15 USC § 1011; 15 USC § 1012(a); 15 USC § 1012(b). Thus it would be appropriate for a Guam court, rather than a federal court, to resolve issues of Guam insurance law.

There are 13 causes of action in the FACAC. **Twelve** of the thirteen causes of action are based solely on local law and not federal law. According to the caption for the First Cause of Action, Fraud, it is based upon 18 GCA §§ 85307, 85308 and 85309. According to the caption to the Second Cause of Action, Fraudulent Deceit, it is based upon 18 GCA §§90102, 90103 and 90104. The Third Cause of Action, Conspiracy to Defraud, involves an alleged conspiracy to violate Guam law. FACAC at ¶77. According to the caption to the Fourth Cause of Action, Involuntary Trust from Fraud, it is based upon 18 GCA §§ 65109 and 65110. The Fifth Cause of Action, Unjust Enrichment, would appear to arise, if at all, under the common law of Guam. According to the caption to the Sixth Cause of Action, Negligent Failure to Comply With the Insurance Law, it is based upon 18 GCA §90107. According to the caption to the Seventh Cause of Action, Negligent Misrepresentation, it is also based upon 18 GCA §90107. According to the caption to the Eighth Cause of Action, Deceptive Trade Practices-Consumer Protection Act, it is

9

based upon 5 GCA Chapter 32. According to the caption of the Ninth Cause of Action, Conspiracy to Commit Violations of Deceptive Trade Practices-Consumer Protection Act, it is also based on 5 GCA Chapter 32. The Eleventh Cause of Action, Breach of Contract, appears to be based on the common law of Guam and/or uncited Guam statutes concerning contracts. The Twelfth Cause of Action, Breach of Implied Covenant of Good Faith and Fair Dealing, is based on the common law of Guam and alleged noncompliance with Guam statutes (see FACAC ¶158). The Thirteenth Cause of Action, Breach of Implied Covenant of Good Faith and Fair Dealing, also appears to be based on Guam common law. Obviously Guam law predominates over federal law in these 12 causes of action.

The sole cause of action relating to federal law is the Tenth Cause of Action, the RICO claim. The alleged illegal acts that form the basis of this claim are based upon violations of Guam law. *See* FACAC ¶125. Plaintiff seeks to turn this into a federal case by relying on otherwise innocuous acts. Cyfred alleges association and ongoing structure between the defendants. *Id.* at ¶127. Of course, without admitting specific allegations in the FACAC, off-island insurance companies will associate with agents in what might be called a structured relationship. First American is required to do so by Guam law. 22 GCA §15402. Thus there is unlikely to be a factual dispute as to the existence of a relationship between First American and its agents, although there is a legal issue as to whether a corporation (such as First American) associating with its own agents (such as Melwani and PATCO) to carry out its regular affairs meets the "distinctness requirement" of a RICO "person" distinct from the RICO "enterprise". *See* Riverwoods Chappaqua Corp. v. Marine Midland Bank, 30 F. 3d 339, 343-344 (2d Cir. 1994). Cyfred further alleges that defendants used the U.S. mail and facsimiles in the course of their business. Again without admitting specific allegations in the FACAC, First American, like most businesses, uses the mail and facsimiles in its

10

business. While the existence of the agency relationship and the use of the mail and facsimiles may be elements of the RICO claim these are hardly the sort of issues which will predominate at trial. Even on the RICO claim, disputed issues of Guam law will predominate.

Again, this case strongly resembles Bodenner. In Bodenner, the court described the complaint as follows:

> This case arises out of a dispute over construction contracts and a construction partnership. Plaintiffs allege several causes of action in their complaint, 29 to be exact, including breach of contract, breach of fiduciary duty, fraud, conversion, misappropriation, embezzlement, negligence, unjust enrichment, misrepresentation, injury to property, concealment, environmental contamination, and one federal claim under the Federal Racketeer Influenced and Corrupt Organizations ("RICO") statute.

Bodenner, *supra*, 828 F. Supp. at 517. On these facts, the Bodenner court found that the state law claims substantially predominated over the lone federal RICO claim and dismissed the state claims. *Id.* at 518. A similar result should be reached on the similar mix of claims in this action.

**2.    The claims raise novel issues of Guam law.**

As noted above, 12 of the 13 causes of action are based solely on Guam law. In the remaining cause of action, the RICO claim, the most of the legal issues likely to be seriously disputed are issues of Guam law. Because the Guam Supreme Court has only been in existence for a little over a decade, issuing approximately two to three dozen decisions a year, most disputed issues under Guam law are novel in the sense that there is no controlling precedent. Issues of first impression are common on Guam. While it is not possible to foresee all of the legal issues that will arise in the course of this litigation, some threshold issues have already arisen.

Foremost among these, should Cyfred succeed in proving that First American was using unfiled and/or unapproved forms and rates, will be the issue of the legal effect of such omissions. As noted in First American's opening supplemental brief on exhaustion of remedies issues, most

11

jurisdictions have held that such omissions due not void a policy and do not lead to the remedies that Cyfred seeks. *See, e.g.*, Cage v. Litchfield Mut. Ins. Co., 713 A.2d 281, 285 (Conn. Super. Ct. 1997); 4 E.M. Holmes, Holmes' Appleman on Insurance 2d § 23.1 (1998). There is no Guam precedent on this issue. A Guam court or Guam administrative agency should determine whether the majority rule is also the best rule for Guam.

Another issue, hinted at in Cyfred's opposition to Stewart Title Insurance Company's motion to dismiss in Cyfred, Ltd. v. Stewart Title Guaranty Co., D. Guam Civ. Case No. 07-23, concerns the apparent loss of some of the Insurance Commission's records pertaining to review of policy forms and rates over years of relocations, typhoons and the like. First American withdrew from the Guam market in 2005 and some of the personnel responsible for Guam operations at relevant times have dispersed or passed away. While First American is continuing to search for its copies of such records, it may not find all of them. If the Department of Revenue and Taxation has lost its records of review and approval of policy forms and rates, should it simply be presumed that all insurance policies issued in the past 14 years were illegal, all premiums must be refunded and all claims denied during that time must be paid? Or, alternatively, should it be presumed that insurers who have been regularly conducting business and have been subject to oversight throughout that time had been complying with the law in the absence of evidence to the contrary? By way of analogy, suppose that due to a fire or an earthquake the Guam Supreme Court lost its records of attorney admissions to the Bar. Would one automatically presume that every attorney who practiced on Guam for the past 14 years had done so illegally, require a refund of all legal fees collected during that time and all salaries of all government attorneys, and presume that any attorney who lost a case would have to pay the amount of his client's unsuccessful claim (if the client was a plaintiff) or the judgment against his client (if the client was a defendant)? A Guam court might

12

rationally conclude that a presumption in favor of regularity is the better public policy in the current case, just as the Guam Supreme Court would likely do in the hypothetical situation involving lawyers and just as other courts have done in other situations involving missing records. *See, e.g.,* Wood v. Frickie, 120 La. 180, 181, 45 So. 96, 96 (1907). Again, this novel issue of Guam law should be resolved by Guam's courts.

Numerous other issues of Guam law will arise in the course of this litigation. Most likely some will be novel, some complex, and some both. The determination of the claims of the "denied claims" sub-class, if certified, may require a claim-by-claim determination of coverage issues under Guam law. This case involves issues of local importance that require interpretation of local law and that arise in a locally-regulated industry. Pursuant to 28 USC §1367(c)(1), this Court should decline jurisdiction.

## IV. CONCLUSION

The Court lacks diversity jurisdiction because most of the plaintiffs and two-thirds of the named defendants are citizens of Guam. Given the predominance of issues of local law, the Court should abstain from hearing the RICO claim and decline to exercise supplemental jurisdiction over the 12 other local causes of action. For the foregoing reasons, this action should be dismissed.

DOOLEY ROBERTS & FOWLER LLP

Date: January 24, 2008

By: /s/ Seth Forman

**DAVID W. DOOLEY**
**SETH FORMAN**
Attorneys for Defendant First American Title Insurance Company

13