Dooley Roberts & Fowler LLP
Suite 201, Orlean Pacific Plaza
865 South Marine Corps Drive
Tamuning, Guam 96913
Telephone (671) 646-1222
Facsimile  (671) 646-1223

Attorneys for Defendant
First American Title Insurance Company



FILED
DISTRICT COURT OF GUAM

FEB 0 5 2008

JEANNE G. QUINATA
Clerk of Court

IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| CYFRED, LTD., for itself and on behalf of other similarly situated,<br><br>　　　　　　Plaintiffs,<br><br>vs.<br><br>FIRST AMERICAN TITLE INSURANCE COMPANY, et al.,<br><br>　　　　　　Defendants. | CIVIL CASE NO. 07-00024<br><br>**DEFENDANT FIRST AMERICAN TITLE INSURANCE COMPANY'S REPLY MEMORANDUM ON EXHAUSTION OF REMEDIES ISSUE** |

Defendant First American Title Insurance Company replies to Plaintiff Cyfred, Ltd.'s ("Cyfred") Opposition brief on the exhaustion of remedies issue as follows.[1]

## I.　INTRODUCTION

Cyfred fails to address fundamental flaws in its case and instead circularly argues that, because it alleges various statutory and common law claims, it must be allowed to pursue certain remedies in this Court. Cyfred cannot escape the fact that its entire lawsuit depends on its allegation

---

[1] The Court instructed the parties in both this action and in Cyfred, Ltd. v. Stewart Title Guaranty Co., D. Guam Civ. Case No. 07-23 (the "Stewart Action"), to file supplemental briefing with respect to First American's pending motion to dismiss this action (and a similar motion in the Stewart Action) regarding the exhaustion of remedies requirement. First American filed its Supplemental Memorandum on January 22, 2008, as did Defendant Stewart Title Guaranty Co. in the Stewart Action. Cyfred filed an Opposition brief on the exhaustion of remedies issue on January 29, 2008 in the Stewart Action. Cyfred has not filed an opposition to First American's Supplemental Memorandum on that issue in this action. First American anticipates Cyfred will assert that it is nonetheless opposing First American's Supplemental Memorandum on the same grounds Cyfred raised in the Stewart Action. If Cyfred is given leave to oppose First American's position by verbally incorporating a brief filed in the Stewart Action by reference, then First American is entitled to reply to the positions taken by Cyfred in its Opposition filed in the Stewart Action.

that First American did not obtain approval of policy forms and rates from the Commissioner of Banking and Insurance ("Commissioner"). First American disputes that allegation, but the immediate issue is whether Cyfred should exhaust administrative remedies before burdening this Court with unnecessary litigation. If the Commissioner or the Banking and Insurance Board ("Board") determines that First American properly obtained approvals of its policy forms and rates, then Cyfred's entire lawsuit evaporates. Even if the Commissioner or Board determined otherwise, Cyfred still has no private right of action for damages under any statutory or common law theory pled in its Complaint. The Court therefore should dismiss or stay this lawsuit in favor of an administrative proceeding that will resolve the fundamental issue at the center of Cyfred's case.

## II. CYFRED CANNOT RECOVER DAMAGES UNDER ANY THEORY OF RECOVERY

As demonstrated in First American's supplemental brief, Cyfred is not entitled to monetary damages as a matter of law, because Guam's insurance laws do not provide for such a remedy. Cyfred claims for the first time in its supplemental opposition brief that it was allegedly charged illegal premiums for the title insurance policies it was issued (the "Cyfred Policies") thus purportedly rendering the Cyfred Policies void and entitling it to damages. This argument is specious for several reasons.

In the first instance, Cyfred does not even seek a declaration that the Cyfred Policies are void or seek to rescind the policies, see Prayer for Relief in First Amended Class Action Complaint, so that argument should not be considered by this Court.

Even assuming that the Cyfred Policies were issued using forms or rates that were not approved by the Commissioner, those policies <u>are not void</u> unless their "substantive provisions are inconsistent with the state's statutes and regulations." 4 E.M. Holmes, <u>Holmes' Appleman on Insurance 2d</u> § 23.1 (1998). Cyfred does not point to any substantive provisions of the policies that

2
Case 1:07-cv-00024   Document 53   Filed 02/05/2008   Page 2 of 10

it claims are inconsistent with Guam statutes or regulations other than perhaps an arbitration provision that is lawful under the Federal Arbitration Act..

As noted in First American's opening supplemental memorandum, well established case law holds that failure to file policies does not render them void. Cyfred attempts to distinguish these cases by arguing that they addressed "minor violations of the insurance laws," such as the failure to file endorsements. (Cyfred Mem. at 10.) Cyfred thus claims that issuing policies using rates or forms that were not approved is somehow more severe than other violations of insurance statutes, such as using unapproved endorsements. This argument ignores the plain language of the cases cited in First American's brief, in which courts uniformly held that the failure to file either a policy or an endorsement did not void the policy. The court in Cage v. Litchfield Mutual Insurance Co., 713 A.2d 281 (Conn. Super. Ct. 1997), observed that the "majority of jurisdictions which have addressed this issue have concluded that the failure to file the policy or endorsement does not render it invalid." Id. at 285 (emphasis added). Thus, courts routinely hold that failure to file insurance policies or endorsements – or portions thereof – do not render those policies void.[2]

Cyfred distorts First American's argument regarding available remedies under Guam law. First American has not contended that the statutory fines available under the insurance laws preclude other remedies. Rather, the existence of such fines, coupled with the absence of any

---

[2] Cyfred cites several cases in which courts found an insurance contract void as against public policy. (Cyfred Mem. at 10.) Those decisions are inapposite. For instance, the court in Richardson v. Bank of America, N.A., 643 S.E.2d 410 (N.C. Ct. App. 2007), held that damages might be available for two reasons: (1) the form at issue was never submitted to the Department of Insurance for approval; and (2) the form could not have been approved in any event because the type of insurance at issue was not authorized under North Carolina law. See id. at 425. These two factors, the Richardson court found, rendered the forms at issue distinguishable from those in Home Indemnity Co. v. Hoechst Cleanse Corp., 404 S.E. 2d 768 (N. C. Ct. App. 1998), discussed in First American's supplemental brief, in which the court held that policy provisions are not void merely because they were not approved. Similarly, Cyfred does not allege that forms or rate were not submitted, or that they contain provisions (other than perhaps the arbitration clause, which is lawful under the Federal Arbitration Act) that are not authorized under Guam law. Rather, like the plaintiffs in Home Indemnity, Cyfred contends that the forms and rates at issue are void merely because they were not approved. The decision in Dierkes v. Blue Cross and Blue Shield, 991 S.W.2d 662 (Mo. 1999), is also inapposite, since the court addressed the availability of damages stemming from alleged misrepresentations made to policyholders in an information booklet and brochure.

private right of action for violation of insurance laws governing approval of forms and rates, demonstrates that that the Legislature never intended to create private remedies for such violations. For these reasons, Cyfred is not entitled to damages under any common law theory or statute – including the Guam Deceptive Trade Practices Consumer Protection Act ("DTPA"). See Leach v. Northwestern Mutual Insurance Co., 2008 WL 227687 at *3, 2008 U.S. App. LEXIS 19990 at *8 (3rd Cir., Jan. 29, 2008) (dismissing claim under Pennsylvania's Unfair Trade Practices and Consumer Protection Law because alleged violation of Unfair Insurance Practices Act could only be enforced by insurance commissioner). Because the policies at issue are not void under any circumstance, and the insurance laws do not create a private right of action based on the use of unapproved rates or forms, Cyfred is not entitled to any damages.

### III. AN ADMINISTRATIVE PROCEEDING IS THE SUPERIOR FORUM FOR DETERMINING WHETHER RATES AND FORMS WERE APPROVED

Without an initial determination that First American's rates and forms were not approved, Cyfred can prove no claims. Cyfred does not deny that its entire Complaint hinges solely on whether the Commissioner approved the forms and rates used for the Cyfred Policies. Cyfred implies that because it is seeking damages, neither the Commissioner nor the Board can determine whether the Commissioner previously approved First American's forms and rates. But Cyfred misses the point entirely. Whether the administrative venue can afford Cyfred the specific remedies it seeks – monetary or otherwise – is irrelevant to determining whether this case should be dismissed in favor of administrative review. See Carlson v. Perez, 2007 Guam 6, ¶ 70.[3] Rather, the only relevant question is whether the administrative agency has "the specialized personnel,

---

[3] In its opposition brief, Cyfred cites a number of inapposite cases dealing with "primary jurisdiction," and urge that that doctrine, rather than exhaustion of administrative remedies, is the applicable legal standard. Regardless of the label used, it is clear from Carlson and similar authority that this Court can and should dismiss or stay this action and/or refer it to the Office of the Commissioner of Banking and Insurance. See Syntek Semiconductor Co., Ltd. v. Microchip Technology Inc., 307 F.3d 775, 782 (9th Cir. 2002).

experience and expertise to unearth relevant evidence and provide a record which a court may review." Id.; see also Commw. of Ky. v. Anthem Ins. Co., 8 S.W. 3d 48, 55 (Ky. App. 1999) ("Administrative remedies must usually be exhausted before recourse can be had in court.").

Because the Office of the Commissioner of Banking and Insurance has specialized personnel and expertise to make the core determination in this case, an administrative proceeding before that agency would be the superior forum for unearthing relevant evidence and determining whether the Commissioner approved rates and forms. As the agency charged with approving rates and forms, the Office of the Commissioner of Banking and Insurance has at its disposal "specialized personnel, experience and expertise" – as well relevant evidence – to facilitate the determination whether the forms and rates at issue were approved. Such resources and evidence are not available in a court of law absent an expensive and time-consuming discovery process regarding the merits of this lawsuit. The Office of the Commissioner undeniably is best-situated to gather evidence and determine whether the rates and forms at issue were approved. This case therefore should be dismissed in favor of an administrative determination before the Commissioner.

## IV. THE COMMISSIONER AND THE BOARD HAVE AUTHORITY AND RESOURCES TO DETERMINE WHETHER RATES AND FORMS WERE APPROVED

Cyfred asserts that neither the Commissioner nor the Board has sufficient authority to determine whether rates and forms were approved. That argument is entirely without merit. As demonstrated in First American's supplemental brief, the Commissioner and the Board are charged with supervising all insurance activities on Guam. 11 GCA § 103101. Either the Board or the Commissioner may conduct investigations to determine whether any insurance laws have been violated. See 11 GCA §103102(f), (g) (Commissioner's powers to make examinations, conduct inquiries, hold hearings, compel attendance of witnesses, compel production of books and records,

etc.); 11 GCA § 103104 (e), (f) (Commissioner's and Board's powers to subpoena witnesses and require production of documents; Board's power to issue binding declaratory orders); 11 GCA §103105 (Commissioner may issue findings, decisions and orders). In other words, the Commissioner and the Board are empowered to gather all relevant evidence and determine whether the forms and rates used for the Cyfred Policies were approved.

Indeed, the current Acting Commissioner, Artemio B. Ilagan, has recently made findings and issued orders in a dispute involving the approval of an insurance company's forms. The Acting Commissioner was asked to determine whether group health insurance policy forms violated the Health Insurance Portability and Accountability Act ("HIPAA") and regulations implemented thereto. See Exhibit A to Request to Take Judicial Notice filed herewith.[4] In a nine-page document dated January 16, 2008, the Acting Commissioner – pursuant to his authority under 22 GCA § 18308 "to approve or disapprove each insurance form" – found that the form did not satisfy the requirements of HIPAA. Id. at 3, 9. The Acting Commissioner issued several orders, including an order withdrawing approval of the previously issued policy form. Id. at 9.

Even if one accepts Cyfred's position, which First American does not, that the administrative authorities could not resolve all of the issues raised by its claims[5], there is much that the Commissioner and/or the Commission could do to promote judicial economy and the efficient resolution of this action. The Commissioner may issue findings, decisions and orders. 11 GCA §103105. Such orders may be enforced by the Superior Court of Guam. 11 GCA §103107.

---

[4] See also "Health insurance refunds nixed: Rev and Tax cites federal health discrimination provision", Pacific Daily News, Jan. 31, 2008; "TakeCare latest insurer ordered to nix refunds", KUAM News, Jan. 31, 2008; "StayWell's refund concern began in 2003", KUAM News, Jan. 30, 2008.Copies of the on-line versions of these media reports are attached to this Reply Memorandum as Exhibits A, B and C.

[5] Putting aside for the moment First American's position that the Commissioner could resolve all of Cyfred's claims by determining that those claims are without merit, First American would note that the Commissioner and the Board may have more authority than Cyfred acknowledges to award relief should it find that relief to be authorized and the claims to be meritorious. See Hamm v. Central States Health & Life Co., 299 S.C. 500, 505, 386 S.E. 2d 250, 253 (1989) (Commissioner's power to supervise and regulate rates necessarily implies authority to make refunds of monies collected under an unlawful rate).

Because the office of the Commissioner is created to protect the public in insurance matters, the Commissioner has broad authority to fulfill this mandate. Premera v. Kreidler, 133 Wn. App. 23, 42, 131 P. 3d 930, 940 (2005). Among the issues already raised by Cyfred in this lawsuit, or which it appears may be raised in the course of this dispute, are the following:

    1. If the Department of Revenue and Taxation has lost its records of review and approval of policy forms and rates, should it simply be presumed that all insurance policies issued in the past 14 years were illegal, all premiums must be refunded and that all claims denied during that time must be paid? Or, alternatively, should it be presumed that insurers who have been regularly conducting business and have been subject to oversight throughout that time had been complying with the law in the absence of evidence to the contrary?

    2. If an insurer did in fact fail to submit policy forms for approval, does that render the policies it issued void *ab initio*? Shouldn't local authorities charged with regulating the insurance industry decide whether failure to obtain approval of otherwise standard policies should be penalized pursuant to 22 GCA §12109, rather than subject insureds to the possible consequences of voiding their policies?[6]

    3. What is the effect of procedural irregularities in the approval process of forms and rates? Should the policies be deemed void *ab initio*, although most jurisdictions would not do this even if the forms and rates had not been submitted and approved at all? Or, alternatively, should the Guam Insurance Commissioner decide whether such procedural errors on his predecessor's part or on the part of an insurer should be waived in lieu of draconian punishment for an insurer?

    4. If the Guam Legislature amends the law after an insurance policy form is approved, so that a severable provision in a previously approved policy form might be illegal under Guam law, should all such approved policies be deemed "illegal" and void *ab initio*? Or should the severable provision simply be severed if and when it becomes an issue? This may become the issue involved with the allegedly illegal arbitration clause, although First American does not concede the allegations of illegality.

    5. If an insurer charges unapproved rates and also provides the coverage for which its insured has contracted, is the remedy a complete refund of the premium or a refund of the overcharge, if any? If the latter, who should make the initial determination as to the existence and amount of an overcharge, a federal court or local insurance regulators?

---

[6] For example, Fannie Mae requires title insurance. Fannie Mae 4316 Title Insurance Requirements, available at https://www.efanniemae.com/mf/loandocs/doc/3maxexpress/4316.doc.

6. What would have been a fair rate for First American to charge? Should this be calculated by the court or the appropriate administrative agency?

7. Once a policy form or set of rates has been approved, can an insurer continue to use them indefinitely? Or must such forms and rates be re-submitted to the Commissioner on an annual basis, which appears to be Cyfred's position. Again, should this question of local insurance regulatory law be determined by the local Commissioner or a federal court?

The Commissioner and the Board have broad powers to investigate allegations and issues such as those mentioned above, and to issue findings and orders. Referral to the Acting Commissioner in this case would assist the Court by promoting judicial efficiency, unearthing relevant evidence, providing the court a record to review, and allowing the court to avail itself of the administrative authority's expertise. See Westlake Community Hospital v. Superior Court, 17 Cal. 3d 465, 476-77, 131 Cal. Rptr. 90, 551 P. 2d 410 (1976).

Cyfred also asserts that it need not even attempt to pursue administrative remedies because, in its opinion, Guam's regulatory officials lack the resources to address Cyfred's claims. Even if the Court were to consider these assertions, it is well-settled that a party's doubts as to the competence of an administrative official or tribunal are insufficient grounds to bypass administrative remedies without giving that official or tribunal a fair opportunity to prove otherwise. See Jordan v. United States, 522 F. 2d 1128 (8th Cir. 1975). This Court should not presume, as a matter of law, that Guam's institutions and the public servants who staff them are deficient. Indeed, Mr. Ilagan's actions with respect to health insurers demonstrate that the Office of the Commissioner has the resources to address claims involving the past approval of forms and rates. Because the Commissioner and the Board can exercise – and have exercised – their statutory authority to review the approval of rates and forms and issued orders related thereto, this judicial action should be dismissed to permit exhaustion of such administrative review and remedies.

## V. FINDINGS AND RULINGS OF ACTING COMMISSIONER ILAGAN ARE VALID AND ENFORCEABLE

### A. Mr. Ilagan is Serving as Acting Commissioner.

In its supplemental memorandum and the Declaration of Seth Forman filed in support thereof, First American noted that the Director of Revenue and Taxation, Mr. Artemio B. Ilagan, was serving as Acting Commissioner, as evidenced by a notice he had issued of a Commission meeting. There has been very recent additional confirmation of Mr. Ilagan's service in this position. As reported in the media, Mr. Ilagan has been very active as Acting Commissioner recently, e.g., by ordering health insurance providers on Guam to discontinue issuing refunds. See Exhibits A-C to this Reply Memorandum. As noted above, Mr. Ilagan signed a letter dated January 16, 2008 to StayWell Insurance as Acting Commissioner. Exhibit A to Request to Take Judicial Notice. By issuing that letter, Mr. Ilagan not only "acted" as Commissioner, but he acted forcefully.

### B. Mr. Ilagan is Lawfully Serving as Acting Commissioner.

Contrary to Cyfred's allegations, Mr. Ilagan's service as Acting Commissioner violates neither the Organic Act of Guam nor 4 GCA §2103.9.

The Organic Act provides, in pertinent part, "The Governor [of Guam] shall, except as otherwise provided in this Act or the laws of Guam, appoint, by and with the advice and consent of the legislature, all heads of executive agencies and instrumentalities." 48 U.S.C. §1422c(a) (emphasis added). The Guam Legislature may therefore provide by statute for some method other than appointment with advice and consent to fill a vacancy at the head of an executive agency or instrumentality. In the case of the Commissioner, the Legislature did just that: If the position of the Commissioner of Banking and Insurance is vacant, "the Director shall serve as Acting Commissioner." 11 GCA § 103102(h). This statute places no time limitations on the Director's service as Acting Commissioner. Id.

Similarly, section 2103.9 of Title 4 of the Guam Code Annotated is inapplicable to the position of Acting Commissioner.[7] By its explicit terms, 4 GCA §2103.9(a) applies only to "appointment" to a "position which requires the advice and consent" of the Legislature. The Director of Revenue and Taxation is not appointed to the position of Acting Commissioner by the Governor or any appointing authority. As discussed above, the Director automatically assumes the position during a vacancy by the operation of a statute, 11 GCA § 103102(h). Thus, the Guam Legislature has "otherwise provided in the laws of Guam" that advice and consent is not required for the Director's service as Acting Commissioner. The Legislature had sound policy reasons for not imposing such requirements, since the individual serving as Director has already been subject to advice and consent for the Director position. 48 USC §1422c(a). Because 4 GCA §2103.9(a) is inapplicable to service by the Director as Acting Commissioner-- and imposes no time limit on such service—Mr. Ilagan is lawfully serving as the Acting Commissioner.[8]

## VI. CONCLUSION

Cyfred was required to exhaust its administrative remedies before the Commissioner of Banking and Insurance. Cyfred's failure to do so warrants dismissal of this action.

DOOLEY ROBERTS & FOWLER LLP

Date: February 5, 2008

By: _[signature]_
for DAVID W. DOOLEY, ESQ.
Attorneys for Defendant First American Title
Insurance Company

---

[7] Subsection (a) of this section provides in pertinent part as follows:

> (a) *I Maga'lahen Guahan* [The Governor] or appointing authority may, by separate appointment, appoint a person in an acting capacity to fill a salaried position which requires the advice and consent of *I Liheslaturan Guahan* [Guam Legislature]. In any twelve (12) month period, no person may serve in such an acting capacity for a total of more than ninety (90) days plus three (3) legislative days . . . .

[8] Cyfred also implies—again, outside its Complaint—that Mr. Ilagan somehow does not meet the minimum qualifications for serving as Acting Commissioner. Cyfred does not address which of the "minimum qualifications" Mr. Ilagan allegedly lacks, and the Court should ignore such conclusory allegations. In addition, 11 GCA §103102(h) does not impose such qualifications upon the Director's service as Acting Commissioner.