IN THE DISTRICT COURT OF GUAM

CYFRED, LTD., for itself and on behalf
of all others similarly situated,

          Plaintiffs,

v.

FIRST AMERICAN TITLE INSURANCE
COMPANY, PACIFIC AMERICAN TITLE
INSURANCE & ESCROW COMPANY,
MANU MELWANI and DOES 1-298,
Inclusive,

          Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CIVIL CASE NO. 07-00024

**FILED**

DISTRICT COURT OF GUAM

APR 0 7 2008 R.D.

**JEANNE G. QUINATA**
**Clerk of Court**

---

## MEMORANDUM IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION

---

David W. Dooley
DOOLEY ROBERTS & FOWLER LLP
Suite 201, Orlean Pacific Plaza
865 South Marine Corps Drive
Tamuning, Guam 96913
Telephone No. (671) 646-1222
Facsimile No. (671) 646-1223

Charles A. Newman (*pro hac vice*)
Douglas W. King (*pro hac vice*)
Darci F. Madden (*pro hac vice*)
BRYAN CAVE LLP
One Metropolitan Square
211 N. Broadway, Suite 3600
St. Louis, Missouri 63102
Telephone No. (314) 259-2000
Facsimile No. (314) 259-2020


Counsel for Defendant
First American Title Insurance Company



# TABLE OF CONTENTS

I.   FACTS ........................................................................................................................ 1

   A.   The Parties ........................................................................................................ 1

   B.   The Allegations of the Complaint ..................................................................... 3

II.  ARGUMENT .............................................................................................................. 3

   A.   Plaintiff Fails to Satisfy Rule 23(a). ................................................................ 5

      1.   Plaintiff Fails to Establish Numerosity. ..................................................... 5

      2.   There Is No Commonality. .......................................................................... 6

      3.   Plaintiff Is Not a Typical Class Representative. .......................................... 7

         a.   Cyfred Is Not a Member of the Class. .............................................. 7

         b.   Cyfred Lacks Standing. .................................................................... 8

         c.   Many of Cyfred's Claims Are Time-Barred. ................................... 9

         d.   Cyfred Is Not a "Consumer" Entitled to Sue Under the
              Consumer Protection Act. ............................................................... 11

         e.   Cyfred's Principal Officer Is A Convicted Felon. ......................... 11

         f.   Cyfred's Interests Conflict With Other Class Members. ............... 12

         g.   Cyfred's Counsel is Inexperienced in Class Actions. ................... 13

   B.   The Class Cannot be Certified Under Any Subpart of Rule 23(b). ................. 14

      1.   Certification Under Rule 23(b)(1)(A) Is Inappropriate. ............................ 14

      2.   This Action Cannot Be Certified Under Rule 23(b)(1)(B). ........................ 15

      3.   This Action Cannot Be Certified Under Rule 23(b)(3) Because
           Common Fact Questions Do Not Predominate. .......................................... 16

      4.   Plaintiff Fails to Establish Superiority. ...................................................... 18

III. CONCLUSION ......................................................................................................... 20

# TABLE OF AUTHORITIES

## FEDERAL CASES

In re Agent Orange Prod. Liability Litigation,
   100 F.R.D. 718 (E.D.N.Y. 1983) aff'd 818 F.2d 145 (2d Cir. 1987)............................15

Baby Neal v. Casey,
   43 F.3d 48 (3d Cir. 1994)...................................................................................................6

Bates v. United Parcel Service,
   204 F.R.D. 440 (N.D. Cal. 2001)........................................................................................4

Bates v. United Parcel Serv., Inc.,
   511 F.3d 974 (9th Cir. 2007) ..............................................................................................7

Blackie v. Barrack,
   524 F.2d 891 (9th Cir. 1975) ..............................................................................................3

Carracter v. Morgan,
   491 F.2d 458 (4th Cir. 1973) ............................................................................................14

Cf. Blake v. Arnett,
   663 F.2d 906 (9th Cir. 1981) ............................................................................................13

Compare Havens Realty Corp. v. Coleman,
   455 U.S. 363 (1982)............................................................................................................9

Daly v. Harris,
   209 F.R.D. 180 (D. Haw. 2002).........................................................................................17

Doll v. Chicago Title Insurance Co.,
   246 F.R.D. 683 (D. Kan. 2007).....................................................................................11, 18

E.q., E. Tex. Motor Freight System, Inc. v. Rodriguez,
   431 U.S. 395 (1977)............................................................................................................8

E.q., Hirschberg v. Commodity Futures Trading Commission,
   414 F.3d 679 (7th Cir. 2005) ............................................................................................12

Eisen v. Carlisle & Jacquelin,
   417 U.S. 156 (1974)..........................................................................................................16

Eliasen v. Green Bay & W. R.R. Co.,
   93 F.R.D. 408 (E.D. Wis. 1982), aff'd 705 F.2d 461 (7th Cir. 1983)...........................14

iii

Fernandez v. Brock,
    840 F.2d 622 (9th Cir. 1988) .......................................................................................9

Fogie v. Rent-A-Center, Inc.,
    867 F. Supp. 1398 (D. Minn. 1993)............................................................................15

Forman v. Data Transfer, Inc.,
    164 F.R.D. 400 (E.D. Pa. 1995).................................................................................6

Friends of the Earth, Inc. v. Laidlaw Env. Serv. (TOC), Inc.,
    528 U.S. 167 (2000)...................................................................................................8

General Telegraph Co. of the Southwest v. Falcon,
    457 U.S. 147 (1982)..................................................................................4, 6, 7, 16

Haley v. Medtronic, Inc.,
    169 F.R.D. 643 (C. D. Cal. 1996)..............................................................................18

Hanon v. Dataproducts Corp.,
    976 F.2d 497 (9th Cir. 1992) ....................................................................................11

Harik v. Cal. Teachers Association,
    326 F.3d 1042 (9th Cir. 2003) ...................................................................................5

Hines v. Widnall,
    334 F.3d 125 (11th Cir. 2003) ...................................................................................8

Hum v. Dericks,
    162 F.R.D. 628 (D. Haw. 1995).................................................................................15

LaMar v. H & B Novelty & Loan Co.,
    489 F.2d 461 (9th Cir.1973) .....................................................................................15

Living Designs, Inc. v. E.I. Dupont de Nemours & Co.,
    431 F.3d 353 (9th Cir. 2005) ....................................................................................10

Mantolete v. Bolger,
    767 F.2d 1416 (9th Cir. 1985) ...................................................................................4

McDonnell Douglas Corp v. United States District Ct.,
    523 F.2d 1083 (9th Cir. 1975) ..................................................................................15

Moore v. Radian Group, Inc.,
    233 F. Supp. 2d 819 (E. D. Tex. 2002), aff'd, 2003 U.S. App. LEXIS 12159
    (5th Cir. Sept. 10, 2002)............................................................................................9

In re N. District of Cal. Dalkon Shield IUD Products Liability Litigation,
693 F.2d 847 (9th Cir. 1982) ..................................................................................... 6

Newton v. S. Wood Piedmont Co.,
163 F.R.D. 625 (S.D. Ga. 1995) ................................................................................. 9

Nuclear Information & Resources Serv. v. Nuclear Regulatory Commission,
457 F.3d 941 (9th Cir. 2006) ..................................................................................... 8

O'Connor v. Boeing N. America, Inc.,
197 F.R.D. 404 (C.D. Cal. 2000).............................................................................. 17

Ortiz v. Fibreboard Corp.,
527 U.S. 815 (1999)................................................................................................... 16

Ostrof v. State Farm Mutual Automobile Insurance Co.,
200 F.R.D. 521 (D. Md. 2001)................................................................................... 19

People v. Gill,
61 F.3d 688 (9th Cir. 1995) ...................................................................................... 11

Pettco Enterprises, Inc. v. White,
162 F.R.D. 151 (M.D. Ala. 1995).............................................................................. 15

Piazza v. EBSCO Industrial, Inc.,
273 F.3d 1341 (11th Cir. 2001) ................................................................................ 13

Pruitt v. Allied Chemical Corp.,
85 F.R.D. 100 (E.D. Va. 1980) .................................................................................. 15

Roper v. Consurve, Inc.,
578 F.2d 1106 (5th Cir. 1978) .................................................................................. 14

Schwartz v. Upper Deck Co.,
183 F.R.D. 672 (S.D. Cal. 1999) ................................................................................ 4

Siles v. ILGWU National Retirement Fund,
783 F.2d 923 (9th Cir. 1986) ..................................................................................... 5

Sosna v. Iowa,
419 U.S. 393 (1975).................................................................................................... 7

Sprague v. General Motors Corp.,
133 F.3d 388 (6th Cir. 1998) ..................................................................................... 6

Stevens v. Harper,
213 F.R.D. 358 (E. D. Cal. 2002) ................................................................................4

Szabo v. Bridgeport Machines, Inc.,
249 F.3d 672 (7th Cir. 2001) .......................................................................................4

Walters v. Reno,
145 F.3d 1032 (9th Cir. 1998) ....................................................................................4

Weisman v. Darneille,
78 F.R.D. 669 (S.D.N.Y. 1978) ................................................................................12

Zimmerman v. Bell,
800 F.2d 386 (4th Cir. 1986) ...............................................................................14, 15

Zinser v. Accufix Research Institute, Inc.,
253 F.3d 1180 (9th Cir. 2001) .............................................................................4, 16

## STATE CASES

Bourland v. Salas,
1986 WL. 68918 (D. Guam App. Div. Oct. 24, 1986) .........................................10, 17

Carlson v. Perez,
2007 Guam 6 (Guam 2007) .......................................................................................19

Dalton v. FMA Enterprises, Inc.,
1996 WL. 379105 (M.D. Fla. July 1, 1996) ................................................................5

In re Proxima Corp. Sec. Litigation,
1994 WL. 374306 (S.D. Cal. May 3, 1994)...............................................................12

Ray v. Phelps Dodge Brass Co.,
1983 WL. 665 (N.D. Ala. July 25, 1983) ....................................................................6

Wyatt v. Union Mortgage Co.,
24 Cal. 3d 773 (1979) ...............................................................................................10

## DOCKETED CASES

Simpao v. Guam,
Case No. 1:04-cv-00049 (D. Guam) ..........................................................................13

## STATUTES

Fed. R. Civ. P. 23(b) ...............................................................................................14, 19

5 G.C.A. § 32121 ................................................................................................10, 11, 19

7 G.C.A. § 11305(4) ....................................................................................................10

22 G.C.A. §§ 12109, 18311, 18504 ..............................................................................9, 20

## MISCELLANEOUS

Kaplan, Continuing Work of the Civil Committee: 1966 Amendments of the
  Federal Rules of Civil Procedure (I), 81 Harv. L. Rev. 356, 390 (1967) ....................16

Wright & Miller, 7A Fed. Prac. & Proc. § 1779 (1986).....................................................19

For almost a decade, the courts of this territory have been burdened with disputes caused by Plaintiff, Cyfred, Ltd. ("Cyfred"). As the developer of the Gill-Baza subdivision in Yigo, Cyfred clearly failed to live up to its promises to dozens of purchasers to make their properties habitable by installing sewer, water, and other utility lines. It was recently been found liable to the homeowners it wronged for more than $700,000 in damages and fees. Now, Cyfred brings this action against First American Title Insurance Company ("First American") to avoid its own responsibility. Plaintiff argues that its purchase of a lender's policy of title insurance in connection with its sale of one of the 40 Gill-Baza lots somehow obligated First American to reimburse Cyfred for the damages caused by its misconduct. The only thing more clear than the lack of merit to Cyfred's individual claims is that this case is inappropriate for class certification.

## I. FACTS

### A. The Parties

Cyfred is the developer of the Gill-Baza subdivision in Yigo (*Sananap v. Cyfred, Ltd.*, No. CV 1448-02 (Guam Super. Ct.), 3/5/08 Findings of Fact and Conclusions of Law on Defendants' Motion for Judgment on Partial Findings as to Sananaps' Count II, attached as **Exhibit 1** at ¶¶ 1-17). Cyfred bought the property in August of 1998 (Id. at ¶ 1). First American did not issue a policy of title insurance to Cyfred (or any other party) arising out of the 1998 purchase and is not alleged to have been otherwise involved in the transaction.

Shortly after purchasing and subdividing the property, Cyfred began to market and sell lots at Gill-Baza (Id. at ¶12-17). The sale contracts executed by Cyfred promised purchasers that water, sewer, and other utility lines would be installed (*Sananap v. Cyfred, Ltd.*, Case No. CV 1448-02 (Guam Super. Ct.), 3/5/08 Findings of Fact and Conclusions of Law on Defendants' Motion for General Judgment on Partial Findings, attached as **Exhibit 2** at ¶23). In fact, in 1999, purchasers were advised that these utilities would be provided within 18 months (Ex. 1 ¶¶ 16,

1

22). Cyfred was ultimately ordered to pay Gill-Baza purchasers more than $700,000 (Ex. 2 ¶24).

Cyfred's suit against First American centers on the sale of a single Gill-Baza subdivision lot to Alex and Felisa Ruben on February 19, 2002 (FAC ¶ 19; Alfred Decl. Ex. A). Cyfred sold the Rubens the lot, and also acted as the lender on the transaction, retaining a mortgage interest in the property (FAC ¶ 19; Alfred Decl. Ex. B). The Rubens paid the premiums for two First American title insurance policies: an owner's policy, insuring their interest, and a lender's policy, insuring Cyfred's interest (Alfred Decl. Exs. A, F, G and H).

When Cyfred purchased the First American title insurance policy, it was already engaged in disputes with property owners at Gill-Baza over the failure to install the promised utility lines. On February 5, 2002, several weeks before the Ruben sale, attorneys for two other purchasers, Gerardo and Mariefe Abalos, sent a letter to Cyfred's owner, Francis Gill, demanding a refund of all amounts paid to Cyfred (plus attorneys' fees) (*Abalos v. Cyfred, Ltd.*, No. CVA04-010 (Guam, June 2, 2006), attached as **Exhibit 3**). They later sued Cyfred. In September of 2002, several months after the Rubens' transaction, two more purchasers, Kini and Iowana Sananap, filed a similar lawsuit similar against Cyfred. The Rubens and 36 other Gill-Baza property owners eventually joined the Sananap litigation on May 25, 2006 (Ex. 1 at ¶ 51).

On October 3, 2006, after the Guam Supreme Court issued an order affirming the Abaloses' right to rescind their Gill-Baza purchase over the utility issues, Cyfred purported to tender its defense of the Sananap Action to First American and requested indemnification for any losses that might be awarded therein (the "Claim") (First Amended Complaint ("FAC") ¶ 33). First American denied the Claim because: (1) the action did not allege a defect in the mortgage, and (2) the policy explicitly excludes from coverage any losses arising by reason of claims created by the insured. (Dooley Decl. Ex. A). First American never asserted that it was not bound

2

to cover the Claim because the policy was illegal or because the rate charged to Cyfred was allegedly not filed with the Insurance Commissioner.

### B. The Allegations of the Complaint

Cyfred's thirteen causes of action are based on two allegations that First American: (1) improperly denied Cyfred's claim for indemnification in the Sananap Action; and (2) failed to file its rates and policy forms with the Insurance Commissioner of Guam (the "Commissioner"). Cyfred purports to bring these claims on behalf of itself and two separate classes: (1) all persons or entities who were issued a title insurance policy since 1994 for which the policy forms and the premiums charged had not been approved by the Commissioner and (2) those who were denied coverage under a First American policy for which the title insurance policy and premium charged had not been approved by the Commissioner (Mtn. at 5).[1] The specific causes of action for both classes are: (1) fraud, (2) fraudulent deceit, (3) conspiracy to defraud, (4) involuntary trust from fraud, (5) unjust enrichment, (6) negligent failure to comply with the Insurance Law, (7) negligent misrepresentation, (8) Trade Practices-Consumer Protection Act, (9) conspiracy to commit violations of Trade Practices-Consumer Protection Act, (10) racketeering, (11) breach of contract, and (12 and 13) breach of implied covenant of good faith and fair dealing.

## II. ARGUMENT

As an initial matter, Plaintiff has mischaracterized the standard of review for a motion for class certification. While some old decisions merely accepted the allegations of a complaint as true when evaluating class certification (see Motion for Class Certification ("Mtn.") citing Blackie v. Barrack, 524 F.2d 891, 901 (9th Cir. 1975)), the Federal Rules now demand that a district court examine the *facts* and do not allow courts simply to defer to the allegations of the

---

[1] Plaintiff describes the second class as a "subclass," but it is a "subclass" only in that it is a subset of the other class. The claims of the two classes are distinct and, as described below, inherently conflicting.

3

complaint. See Stevens v. Harper, 213 F.R.D. 358, 377-78 (E. D. Cal. 2002) ("Because "actual, not presumed," compliance with Rule 23 remains the touchstone for class certification, a class may be certified only after the court has conducted a "rigorous analysis" to determine if class certification is appropriate in light of the particular facts underlying the plaintiff's claim"); Schwartz v. Upper Deck Co., 183 F.R.D. 672, 681 (S.D. Cal. 1999) ("In contrast to a Rule 12(b)(6) analysis, the Court will not rely on the cursory allegations of Plaintiffs."); Szabo v. Bridgeport Machines, Inc., 249 F.3d 672, 675 (7th Cir. 2001)("The proposition that a district judge must accept all of the complaint's allegations when deciding whether to certify a class cannot be found in Rule 23 and has nothing to recommend it.").

Courts must conduct a "rigorous analysis" before certifying a class, to ensure that the four requirements of Rule 23(a) are met and that the class fits within one of the three categories of Rule 23(b). Gen. Tel. Co. of the Southwest v. Falcon, 457 U.S. 147, 161 (1982); Walters v. Reno, 145 F.3d 1032, 1045 (9th Cir. 1998). The party seeking certification bears the burden of proof with respect to every requirement. Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1186 (9th Cir. 2001), as amended, 273 F.3d 1266 (9th Cir. 2001); Mantolete v. Bolger, 767 F.2d 1416, 1424 (9th Cir. 1985). To meet that burden, the party seeking certification "must provide facts to satisfy these requirements; simply repeating the language of the rules ... is insufficient." Bates v. United Parcel Service, 204 F.R.D. 440, 443 (N.D. Cal. 2001).

Plaintiff must meet each of the Rule 23(a) requirements of: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of the class representative. It must also satisfy the more demanding standard of Rule 23(b)(3), with proof that common questions of law and fact predominate over questions affecting only the individual members, and that class treatment be

superior to other available methods of adjudication.[2] Plaintiff – which does not cite a single piece of evidence in its motion – has failed to satisfy its burden. The motion should be denied.

### A. Plaintiff Fails to Satisfy Rule 23(a).

#### 1. Plaintiff Fails to Establish Numerosity.

Plaintiff submits no evidence on numerosity to justify class certification. This alone requires the Court to deny class certification. The only "evidence" offered by Cyfred on numerosity is that First American has "conceded that it issued thousands of title insurance policies in Guam between January 1994 and the present time." (Mtn. at 7). Plaintiff, however, has not adequately justified stretching membership in the class back 14 years despite the applicable statutes of limitations (see section A(3)(c) below). As a result, Plaintiff has no evidence as to the numerosity of any class that the Court could conceivably certify. Moreover, how many policies First American sold says nothing about how many claims were denied in Guam during the relevant time frame.

Plaintiff has even more obviously failed to meet its burden of showing that the "Denied Claims Subclass" is sufficiently numerous to justify certification. See Dalton v. FMA Enterprises, Inc., 1996 WL 379105 (M.D. Fla. July 1, 1996) (numerosity not met where plaintiff pleaded only the number of debt-collection letters mailed by defendant and not the number of letters of the type alleged in the complaint); Siles v. ILGWU Nat'l Ret. Fund, 783 F.2d 923, 930 (9th Cir. 1986) (plaintiff failed to show numerosity in ERISA case, where the evidence consisted of the number of employees who lost their jobs but the proposed class included only those who only worked a partial year of service in certain years). See Harik v. Cal. Teachers Ass'n, 326

---

[2] Plaintiff asserts that the class is also certifiable under Rule 23(b)(1)(A) and 23(b)(1)(B), but these types of classes are inappropriate for plaintiffs seeking monetary relief not paid out of a limited fund, as described in further detail in sections B(1) and B(2) infra.

F.3d 1042, 1051 (9th Cir. 2003) (class with less than 15 members cannot be certified).

## 2. **There Is No Commonality.**

The Denied Claims Subclass also cannot be certified because Cyfred has identified no common issues. "In order to satisfy Rule 23(a)(2), there must be at least one common question of law or fact among all the class members." Forman v. Data Transfer, Inc., 164 F.R.D. 400, 403 (E.D. Pa. 1995) (*citing* Baby Neal v. Casey, 43 F.3d 48, 56 (3d Cir. 1994)). Although commonality is often described as a low hurdle for a putative class representative to clear, a finding of commonality is not automatic upon a plaintiff's request.

"[C]ourts have been unwilling to find commonality where the resolution of 'common issues' depends on factual determinations that will be different for each class plaintiff." Forman, 164 F.R.D. at 4034 (internal citations omitted). "It is not every common question that will suffice, . . . What we are looking for is a common issue the resolution of which will advance the litigation." Sprague v. General Motors Corp., 133 F.3d 388, 397 (6th Cir. 1998). Problems of commonality merge into problems of management and thus into the predominance requirement of Rule 23(b)(3). Falcon, 457 U.S. at 157 n.13; In re N. Dist. of Cal. Dalkon Shield IUD Prods. Liab. Litig., 693 F.2d 847, 854 (9th Cir. 1982). The Court must "inquire into the proof necessary for the various elements" of the causes of action and "after examining the proof necessary we must inquire into the form that trial on these issues would take." Simer, 661 F.2d at 672. "If the individual and class claims might as well be tried separately, the maintenance of the action as a class action does not advance the 'efficiency and economy of the litigation which is the principal purpose of the procedure.'" Ray v. Phelps Dodge Brass Co., 1983 WL 665, at *2 (N.D. Ala. July 25, 1983) (quoting Falcon, 457 U.S. at 159).

Plaintiff has identified no common issues whatsoever. Conclusorily, Plaintiff's brief states only that Plaintiff and the class challenge the "same conduct," without explaining what

conduct that is (Mtn. at 8). In fact, an examination of Plaintiff's complaint shows that the conduct challenged by Cyfred is very different from that which might be challenged by other putative class members. Cyfred's primary grievance is that its claim for indemnification in a complicated, more than six-year-long case (arising out of Cyfred's own misconduct) was denied by First American. Whether First American was obligated to provide a defense or indemnification for Cyfred has nothing to do with the propriety of First American's denial of any other insured's claim. Clearly, any claim must be judged separately not on any common basis.

### 3. Plaintiff Is Not a Typical Class Representative.

Rule 23(a) also requires Plaintiff to demonstrate that it is a typical class representative – something it has not done and cannot do. Typicality requires that a class representative must be "part of the class and possess the same interest and suffer the same injury as the class members." Falcon, 457 U.S. at 156; see also Sosna v. Iowa, 419 U.S. 393, 403 (1975) ("A litigant must be a member of the class which he or she seeks to represent ..."). A class representative must also have Article III standing to pursue its claims (that is, it must have suffered an injury-in-fact traceable to the defendant's conduct). Bates v. United Parcel Serv., Inc., 511 F.3d 974, 985 (9th Cir. 2007). In addition, it must not have any conflicts of interest with the proposed class and must be represented by qualified counsel in order to obtain certification. See Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625 (1997); Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir. 1998).

Cyfred has failed to meet *any* of the criteria for adequacy as class representative.

### a. *Cyfred Is Not a Member of the Class.*

Cyfred is not even a member of the class, much less a typical class representative. The putative class is composed of policyholders who were issued policies sold under rates not approved by the Commissioner, but Cyfred was not issued such a policy. Cyfred was charged a

7

rate that was approved more than a decade before (Buck Decl. Ex. A; Alfred Decl. Ex. F). Although First American's ongoing investigation is hampered by the loss of many of the Commissioner's records in typhoon flooding and the death of the First American employee who was responsible for rate filing during the relevant time period, correspondence between the Commissioner and First American in 2003 and 2004 demonstrates that prior to early 2004, First American had been operating under the same approved rates for more than 15 years (Buck Decl. Ex. A). Because both classes (or the class and the subclass, as Plaintiff characterizes them) are defined as policyholders whose policies were subject to unapproved rates, Cyfred is a member of neither class and cannot represent them. E.g., E. Tex. Motor Freight Sys., Inc. v. Rodriguez, 431 U.S. 395, 403 (1977) ("As this Court has repeatedly held, a class representative must be part of the class ...."). Further, on July 27, 2005, the Insurance Commissioner approved new rates for First American (Young Decl. Ex. A). Therefore, Cyfred cannot be a member of a class of persons who purchased policies after July 27, 2005.

### *b.* *Cyfred Lacks Standing.*

Like any putative class representative, Cyfred must prove that it has standing to pursue its claims. See Hines v. Widnall, 334 F.3d 125, 1256 (11th Cir. 2003) ("Any analysis of class certification must begin with the issue of standing.") (quotation marks and citation omitted). To have standing under Article III "a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Nuclear Info. & Res. Serv. v. Nuclear Regulatory Comm'n, 457 F.3d 941, 949-50 (9th Cir. 2006) (quoting Friends of the Earth, Inc. v. Laidlaw Env. Serv. (TOC), Inc., 528 U.S. 167, 180-81 (2000)).

Cyfred has failed to identify any injury, in fact, that it suffered and that is traceable to any conduct of First American. Cyfred did not pay any premium for its policy, and the premium the Rubens paid for Cyfred's policy was the premium that was approved by the Department of Insurance in the late 1980s. Cyfred received exactly what it bargained for: a First American title policy with exclusions that were known to it at or before the time that it purchased the policy.

Even if First American failed to file its rates with the Commissioner (which First American disputes), Cyfred has not shown how this caused it any injury. As stated above, Cyfred did not pay the premium. Moreover, Cyfred does not allege that the premium paid by the Rubens was excessive for the benefit received. This is not a situation where Plaintiff is alleging the invasion of a right conferred on Plaintiff by Guam law, the invasion of which is sufficient to constitute injury-in-fact. Compare Havens Realty Corp. v. Coleman, 455 U.S. 363 (1982) (holding that federal fair housing laws create a right in members of the public to accurate information about the availability of housing, regardless of the inquirer's race) with Moore v. Radian Group, Inc., 233 F.Supp.2d 819, 825 (E. D. Tex. 2002), aff'd, 2003 U.S. App. LEXIS 12159 (5th Cir. Sept. 10, 2002) (holding that Real Estate Settlement Procedures Act does not confer upon private citizens rights to sue in the absence of injury). See also Fernandez v. Brock, 840 F.2d 622, 630 (9th Cir. 1988) (holding that violation of statutory duty does not necessarily satisfy the injury-in-fact requirement of Article III). In fact, Guam law allows only for the Commissioner to bring actions to enforce the territory's insurance law, and the insurance laws authorize fines to be imposed by the *Commissioner* for violations of the Insurance Code. 22 G.C.A. §§ 12109, 18311, 18504.

### c.    *Many of Cyfred's Claims Are Time-Barred.*

To the extent that Cyfred's claims are based on the premium charged for title insurance in February of 2002, they are time-barred, providing another basis for rejection of the motion for

certification. See Newton v. S. Wood Piedmont Co., 163 F.R.D. 625, 633 (S.D. Ga. 1995) (when plaintiff's claims were barred by the statute of limitation, "she can hardly be said to be an adequate representative for the class"). With the exception of the claims based on written contracts (which must be brought within four years), all of Cyfred's claims are subject to three-year statutes of limitation. See 7 G.C.A. § 11305(4) (3-years for fraud - Counts 1 through 4)[3]; 7 G.C.A. § 11305(7) (3 years for actions upon a contract not in writing – Count 5 for unjust enrichment); 7 G.C.A. § 11305(1) (three years for actions upon a liability created by law, other than a penalty or forfeiture - Counts 6 and 7 for negligence); 5 G.C.A. § 32121 (3 years for violations of the Deceptive Trade Practices-Consumer Protection Act - Counts 8 and 9); Living Designs, Inc. v. E.I. Dupont de Nemours & Co., 431 F.3d 353, 365 (9th Cir. 2005) (3 years under RICO - Count 10); 7 G.C.A. § 11303 (4 years for breach of a written contract – Counts 11-13).

Plaintiff argues that its claims are timely because of undescribed acts of "concealment" by First American, but these vague allegations are insufficient to show that the claims should be tolled. Plaintiff never even describes when it discovered the alleged wrongdoing (much less the circumstances of the discovery), and it certainly has not pleaded facts showing that it could not have discovered the wrongful acts earlier, had it used reasonable diligence. Bourland v. Salas, 1986 WL 68918, at *4 (D. Guam App. Div. Oct. 24, 1986) (statute of limitations runs from when plaintiff could have discovered wrongful acts with reasonable diligence). A plaintiff who brings a claim sounding in fraud that is facially barred by a statute of limitation must set forth in his pleading "the times and circumstances under which the facts constituting the fraud came to his knowledge, so that the court may determine from the allegations of the complaint whether the discovery was within that period." Id. at *3 (quotation marks and citation omitted). Plaintiff has

---

[3] Conspiracy claims are subject to the same limitations period as the underlying tort to which the conspiracy is directed. See Wyatt v. Union Mortgage Co., 24 Cal.3d 773, 786 (1979).

failed to plead sufficient facts to invoke the discovery rule. Indeed, the facts pleaded by Plaintiff demonstrate that it could and should have discovered the alleged wrongdoing during the limitations period, as Cyfred undisputedly knew the title premium it was charged in 2002, and there is no reason it could not have inquired of the Commissioner whether the rate applied was properly filed at that time.

Even if Cyfred has succeeded in creating a fact issue as to whether its claims are timely, its claims are not typical of those putative class members who do not face a limitations defense. Doll v. Chicago Title Ins. Co., 246 F.R.D. 683, 687 (D. Kan. 2007) ("If Chicago Title were to succeed on its limitations defense to plaintiffs' tort claims, other class members with no limitations problem would be bound to the adverse judgment against plaintiffs. Thus, these plaintiffs cannot adequately represent the interests of all class members."); Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992) (plaintiff subject to unique defenses is not an adequate class representative).

### d. *Cyfred Is Not a "Consumer" Entitled to Sue Under the Consumer Protection Act.*

The Trade Practices and Consumer Protection Act ("CPA") provides yet another requirement for standing that Cyfred has failed to address 5 G.C.A. § 32103 specifically excludes "business consumers" (that is, businesses with assets over $25 million) from the protections of the Act. Cyfred is a business and has proffered no evidence of its net worth to demonstrate whether it has standing to sue under the Consumer Protection Act.

### e. *Cyfred's Principal Officer Is A Convicted Felon.*

Cyfred also fails the test for adequacy because its principal officer and owner, Francis Gill, is a convicted felon. He was sentenced to three years in prison for a scheme to gain land that he did not own by submitting fraudulent maps encompassing government land for approval

at Land Management. See People v. Gill, 61 F.3d 688, 691 (9th Cir. 1995). "It is proper for this Court to consider [the putative class representative's] integrity in assessing his adequacy as a class representative in this action," including prior fraudulent acts. In re Proxima Corp. Sec. Litig., 1994 WL 374306, *17 (S.D. Cal. May 3, 1994) (holding that class representative who admittedly committed fraud and conspired to breach fiduciary duties in an unrelated action was not an adequate class representative because, as class representative, "he would be charged with upholding the same standards of conduct that he failed to meet"); Weisman v. Darneille, 78 F.R.D. 669, 671 (S.D.N.Y. 1978) (person convicted of violating § 10(b) was not certified as class representative in securities fraud action).

Although Gill was pardoned after serving part of his sentence (based on his plea that the felony conviction would prevent him from international travel essential to the continuing viability of his family's business), the pardon does not alter the fact that his underlying conviction demonstrates that he is unworthy of being placed in a position of responsibility for absent class members. E.g., Hirschberg v. Commodity Futures Trading Comm'n, 414 F.3d 679, 682 (7th Cir. 2005) ("A pardon in no way reverses the legal conclusion of the courts; it 'does not blot out guilt or expunge a judgment of conviction.'") (citation omitted).

### f. *Cyfred's Interests Conflict With Other Class Members.*

Cyfred is also inadequate to act as a class representative because its interests conflict with those of other class members. The conflict arises out of its argument that all of the policies issued during the relevant time period are illegal and therefore void, because the premiums and policies were allegedly not filed with the Commissioner (Mtn. 60; Plaintiff's 12/3/07 Opposition to Motion to Dismiss, p. 16; Plaintiff's 1/31/06 Reply re: Jurisdiction, p. 9). At the same time, Plaintiff seeks to represent policyholders seeking damages for claims for indemnification alleged to have been improperly denied under the title policies. These two claims are incompatible.

Either the policies are void or policyholders are entitled to protection under the terms of the policies – Cyfred and the putative class cannot have it both ways. Similarly, there are other potential class members that Cyfred will argue paid premiums that were not approved, who thus had illegal policies, who have made claims on their First American policies that First American has paid (Buck Decl. Ex. A (demonstrating that claims were paid out to numerous Guam policyholders in the last fourteen years)). Should they be forced to pay back the amounts they collected from First American? At the very least, it seems that Cyfred's eagerness to have all policies dating back to 1994 invalidated will imperil any recent claims by potential class members that might be in the process of evaluation.

This is not the only conflict between Cyfred and putative class members. Many potential class members (including the Rubens) have been engaged in acrimonious litigation against Cyfred in the Superior Court of Guam for years. How can these class members – who have obtained a more than $700,000 judgment against Cyfred for its prior misdeeds – put their trust in Cyfred to protect their interests here? Cf. Blake v. Arnett, 663 F.2d 906, 913 (9th Cir. 1981) (one plaintiff Indian tribe could not fairly and adequately protect the interests of another in an involuntary defendant class to establish hunting and fishing rights where they disagreed about their rights as reservation Indians and one tribe had previously complained that the other was damaging a fishery; the court asked, "What zeal are the representatives likely to show in defending the claims of persons whose claims the representatives wish to deny?").

### g.    *Cyfred's Counsel is Inexperienced in Class Actions.*

In order to certify a class, it must also be shown that the proposed class counsel is competent and capable. See Piazza v. EBSCO Indus., Inc., 273 F.3d 1341, 1355 n.11 (11th Cir. 2001) (qualifications of class counsel must be expressly considered in the adequacy requirement). Once again, Plaintiff's counsel has failed to make the required showing. It

Case 1:07-cv-00024    Document 74    Filed 04/07/2008    Page 20 of 27

appears that Plaintiff's counsel has only been involved with a single prior class action, and a review of the docket from that case shows that Mr. Van de Veld was not counsel for the class (but rather for an individual party), and his name only appears on a small number of pleadings. (Simpao v. Guam, Case No. 1:04-cv-00049 (D. Guam) docket sheet, attached as Ex. 4). Not long after he submitted his first pleading, a settlement was reached. Moreover, the defendant in Simpao v. Guam consented to certification. Mr. van de Veld has apparently never prosecuted a contested class action that was actively litigated to any significant extent.

## B.    The Class Cannot be Certified Under Any Subpart of Rule 23(b).

Plaintiff has asserted that this case can be certified under three separate subsections of Rule 23(b). This cannot be, as the various subsections of Rule 23(b) are aimed at entirely different situations, serve different purposes, and have different requirements. See Fed. R. Civ. P. 23(b) Advisory Committee Note; Carracter v. Morgan, 491 F.2d 458, 460 n.1 (4th Cir. 1973) (subsections of Rule 23(b) have different notice requirements and certification under all three would create "self-evident due process problems"). In addition, there is no single subsection of Rule 23(b) under which certification would be proper.

### 1.    Certification Under Rule 23(b)(1)(A) Is Inappropriate.

Rule 23(b)(1)(A) addresses the situation when risk of separate actions by or against individual members of the class might produce inconsistent obligations to the party opposing class certification. See Zimmerman v. Bell, 800 F.2d 386, 389 (4th Cir. 1986). As an initial matter, Rule 23(b)(1)(A) certification is inappropriate unless there is a substantial risk (not merely hypothetical or speculative) of separate actions being brought in the absence of a class action. See, e.g., Roper v. Consurve, Inc., 578 F.2d 1106, 1111 n.3 (5th Cir. 1978); Eliasen v. Green Bay & W. R.R. Co., 93 F.R.D. 408, 412 (E.D. Wis. 1982), aff'd 705 F.2d 461 (7th Cir. 1983). There is nothing in the record that remotely supports this threshold finding.

14

Second and as fundamental, it is not enough that separate litigation will result in inconsistent adjudications (*i.e.*, that defendants could prevail against a putative class member in one case and lose to another in a second case); rather, Rule 23(b)(1) requires that the inconsistent adjudications will impose incompatible standards of conduct on the party opposing the class, *i.e.*, the party will not be able to comply with one judgment without violating another. E.g., In re Agent Orange Prod. Liab. Litig., 100 F.R.D. 718, 724-25 (E.D.N.Y. 1983) aff'd 818 F.2d 145 (2d Cir. 1987). As a result, the Rule applies only to actions in which the defendant could be sued for different and incompatible *affirmative relief*, as opposed to actions, like this one, seeking *damages*. See Zimmerman, 800 F.2d at 389 (danger of imposing "incompatible standards of conduct" on party opposing class not normally posed by request for damages); McDonnell Douglas Corp v. United States Dist. Ct., 523 F.2d 1083, 1085-86 (9th Cir. 1975).

Finally, because the express purpose of Rule 23(b)(1)(A) is to protect the party opposing class certification, certification under 23(b)(1)(A) is inappropriate if the defendant opposes it – as First American does here. E.g., Zimmerman, 800 F.2d at 389; see also Fogie v. Rent-A-Center, Inc., 867 F.Supp. 1398, 1403 (D. Minn. 1993); Pettco Enters., Inc. v. White, 162 F.R.D. 151, 155 (M.D. Ala. 1995); Pruitt v. Allied Chem. Corp., 85 F.R.D. 100, 106-07 (E.D. Va. 1980).

### 2. This Action Cannot Be Certified Under Rule 23(b)(1)(B).

Neither is certification appropriate under Rule 23(b)(1)(B), which is reserved for "limited fund" cases where numerous plaintiffs claim "against a fund insufficient to satisfy all claims." Hum v. Dericks, 162 F.R.D. 628, 641 (D. Haw. 1995) (citing Advisory Committee Note to the 1966 revision and LaMar v. H & B Novelty & Loan Co., 489 F.2d 461, 467 (9th Cir.1973)). A plaintiff seeking certification under this subsection must demonstrate that the case involves a "'fund' with a definitely ascertained limit, all of which would be distributed to satisfy all those with liquidated claims based on a common theory of liability, by an equitable, pro rata

15

distribution." Zinser v. Accufix Research Institute, Inc., 253 F.3d 1180, 1196-97 (9th Cir. 2001) (citing Ortiz v. Fibreboard Corp., 527 U.S. 815, 842 (1999)).

Plaintiff appears to misunderstand the requirements of Rule 23(b)(1)(B), arguing that this action falls under this subsection because it is "likely to be dispositive" of the claims of all of First American's policyholders in Guam because of "the nature of the claims... and First American's illegal conduct..." (Mtn. p. 12). This does not describe a limited fund case, and it does not prove the prerequisites for Rule 23(b)(1)(B) certification.

### 3. This Action Cannot Be Certified Under Rule 23(b)(3) Because Common Fact Questions Do Not Predominate.

Rule 23(b)(3) requires a factual showing that (1) "common questions of law or fact predominate" over individual facts, and (2) a class action be "superior to other available methods for the fair and efficient adjudication of the controversy." Rule 23(b)(3) "invites a close look at the case before it is accepted as a class action." Amchem, 521 U.S. at 615 (quoting Kaplan, Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (I), 81 Harv. L. Rev. 356, 390 (1967)). Essential to any Rule 23(b)(3) determination is whether a class-wide trial would be feasible. Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177-78 (1974). This inquiry often requires examining the nature of the claim and the means of proof. See Falcon, 457 U.S. at 160 (citing Coopers & Lybrand v. Livesay, 437 U.S. 463, 469 (1978)) ("class determination generally involves considerations that are 'enmeshed in the factual and legal issues comprising the plaintiff's cause of action'"). "Predominance" and "superiority" are related to the commonality and typicality requirements but are more demanding. They ask the fundamental question whether it is fair to absent class members, defendants, and the court to consolidate hundreds or thousands of claims in a single trial. Amchem, 521 U.S. at 623-24.

The present case cannot be certified. Individual issues abound – particularly as to the

16

"Denied Claims Subclass." In order to prove that First American improperly denied its Claim, Cyfred will need to show that it gave timely notice of the alleged loss to First American and that the loss was covered by its title insurance policy and not subject to any exclusion. This will necessarily require an examination of: (1) Cyfred's particular policy and its exclusions, (2) Cyfred's actions in the underlying property sale, and (3) what Cyfred disclosed to First American about the already existing Gill-Baza utility disputes at the time of its title insurance purchase. Resolution of these individual issues will have no effect whatsoever on the outcome of any other putative class member's claim for damages arising out of a denied claim.

To the extent that any putative class member has a claim arising out of the alleged failure to file premiums and policy forms (though Defendants do not think such claims are viable), such claims will also be highly individualized. Most problematic for certification is the fact that Plaintiff seeks to represent a class going back to *1994.* As explained above, the claims in the First Amended Complaint are subject to three- and four-year limitation periods. Thus, each putative class member will be required to show he only discovered the facts giving rise to his claim in the last three or four years and that he could not have discovered them earlier with diligence. Bourland, 1986 WL 68918, at *3. These inquiries will be highly individualized, making certification inappropriate. See, e.g., O'Connor v. Boeing N. America, Inc., 197 F.R.D. 404, 410-11 (C.D. Cal. 2000) (citing numerous cases denying class certification on the ground that limitations defenses made class treatment inappropriate); Daly v. Harris, 209 F.R.D. 180, 197-98 (D. Haw. 2002) (refusing to certify class dating beyond the 2-year limitations period because "the availability of the statute of limitations defense as to certain class members undermines both the homogeneity of the proposed classes" and defeats predominance and superiority); Doll, 246 F.R.D. at 687 ("The Court... agrees with those courts that have denied

class certification in recent cases requiring application of the discovery rule to overcome a limitations defense.").

The fourteen-year span of the putative class injects other individualized issues beyond the limitation problems. As demonstrated above, First American negotiated with the Commissioner in 2003 and 2004 as to new filed rates, making resolution of pre-2004 claims like Cyfred's wholly separate from claims challenging the rates charged to policyholders in 2004 and beyond.

Resolution of the claims of members of both putative classes will also involve numerous other individual questions, including:

- Who paid the title insurance premium? Only the party that paid the premium will have standing to seek a refund of it, and parties to real estate transactions are free to allocate the premium charges any way they see fit. The buyer may pay for the title insurance policies, the seller may pay the charge, or the cost may be split between them. Lenders often pass on the cost of the premium to their borrowers -- as Cyfred did here. Conversely, in refinance transactions, some lenders absorb the cost of the title insurance premium, while others pass the cost on to the property owner.

- What representations were made to each class member (for purposes of the fraud claims)? Did each class member justifiably rely on the misrepresentation? Because of the inherently individualized nature of such claims, fraud actions often are deemed inappropriate for class treatment. <u>Haley v. Medtronic, Inc.</u>, 169 F.R.D. 643 (C. D. Cal. 1996) ("[I]t seems particularly unwise for the Court to certify a class action where fraud is one of the principal claims set forth by plaintiffs.")

- Is each putative class member excluded from the Consumer Protection Act as a "business consumer" (that is, an entity worth more than $25 million)? <u>See</u> 5 GCA § 32103. This will require an inquiry into the net worth of many potential class members such as lenders or other businesses.

- What damages has the putative class member suffered?

These and other individualized issues will overwhelm any common ones.

### 4. **Plaintiff Fails to Establish Superiority.**

Plaintiff's bid for certification also fails on superiority grounds. "That common questions predominate is not itself sufficient to justify a class action under subdivision (b)(3), for another

18

method of handling the litigious situation may be available which has greater practical advantages." Fed. R. Civ. P. 23(b)(3) Adv. Cmte. Note to 1966 Amendment. Thus, Rule 23(b)(3) requires a second significant showing that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Plaintiff must prove that class litigation is the "most efficient and effective means of settling the controversy." Wright & Miller, 7A Fed. Prac. & Proc. § 1779 (1986).

A class action clearly would provide no advantage over individual actions as to the Denied Claims Subclass. The Court would have to try each class member's claim separately anyway because the history of the property, the state of the title, the nature of the loss suffered by or the claims asserted against the insured, and the grounds for asserting or disputing coverage would be different for each class member.

Even as to the main class of purchasers of policies that were supposedly not filed or approved, a class action would not be superior to proceedings before the Commissioner. "[W]here a remedy is available from an administrative agency [that] has expertise in a relevant field, such as the insurance industry. . . allowing for pursuit of claims in the administrative forum is often deemed superior to aggregating all the claims into a class action suit." Ostrof v. State Farm Mut. Auto. Ins. Co., 200 F.R.D. 521, 532 (D. Md. 2001). In this case, the Department of Insurance and the Commissioner have both the power and the expertise to enforce rate-filing laws and regulations. E.g., 22 G.C.A. §§ 12109, 18311, 18504 (authorizing imposition of fines and misdemeanor penalties for violations of the insurance laws). As the Guam Supreme Court has made clear, an administrative proceeding is the superior method for addressing alleged violations of regulations within the purview of the administrative agency because of the agency's specialized personnel, experience, and expertise. See Carlson v. Perez, 2007 Guam 6 ¶ 67 n.25

19

(Guam 2007).

Cyfred seems to presume that its allegations that First American did not file its rates or policy forms automatically lends to the twin results that the class members get a refund of premiums (in this case, a premium Cyfred never paid) but get to keep the policies and coverage. That would be a neat trick, but it would be both inconsistent and inequitable. Cyfred never explains what other relief this Court could provide. The Commissioner is better suited to determine the appropriate steps to rectify the situation or to conclude that First American was in compliance all along, notwithstanding the loss of the Commissioner's records on the subject.

## III. CONCLUSION

Cyfred has not met its burden to demonstrate that class certification is proper. There is no evidence of numerosity, and the record demonstrates that Cyfred is an inadequate class representative. Moreover, individual issues will predominate over common ones if the putative class spanning two decades is certified. For these and all of the other reasons detailed above, Cyfred's motion for class certification must be denied.[4]

Dated this 7th day of April, 2008.

DOOLEY ROBERTS & FOWLER LLP

By: _____

**DAVID W. DOOLEY**
Attorneys for Defendant
First American Title Insurance Company

---

[4] If the Court is inclined to grant certification, First American respectfully requests that the Court defer a decision until First American has been allowed to complete its discovery into Plaintiff's claims. Plaintiff's responses to First American's written discovery are due on April 24 and the parties are in the process of trying to schedule a Rule 30(b)(6) deposition of Cyfred, as well as a deposition of Francis Gill.