# Exhibit 1

COPY

FILED
SUPERIOR COURT
OF GUAM

# IN THE SUPERIOR COURT OF GUAM

KINI B. SANANAP, IOWANA M.
SANANAP, and THE 40 LOT OWNERS
(OF THE 33 OTHER GILL-BAZA
SUBDIVISION LOTS),

          Plaintiffs,

vs.

CYFRED, LTD., A Guam Corporation,
ENRIQUE BAZA, JR. (deceased),
ELEANOR B. PEREZ, DONGBU
INSURANCE COMPANY and DOE
DEFENDANTS 1 - 10,

          Defendants.

CIVIL CASE NO. CV1448-02

**FINDINGS OF FACT AND
CONCLUSIONS OF LAW**
(Defendant's Motion for Judgment on
Partial Findings as to Plaintiffs
Sananaps' Count II)

## INTRODUCTION

This motion came before the Honorable Anita A. Sukola on February 5, 2008. Attorney Wong was present for Plaintiffs and attorneys Mantanona and Van De Veld were present for Defendant. Attorney Mantanona argued for Defendant on this particular motion because he was the author of it. In this motion, Defendant asks for a final judgment in regard to Plaintiffs Sananaps' Count II Deceptive Trade Practices and Consumer Protection Act ("DTPCPA") claims. Defendant first moved under Civil Procedure Rule 50 - the wrong rule for bench trials according to <u>Nieto v. Kapoor</u>, 268 F.3d 1208, 1217 (10th Cir. 2001) - in its January 28, 2008 memorandum and then Civil Procedure Rule 52 in its February 4, 2008 Reply. Plaintiffs did not object to the alteration of the civil procedure rule (Wong on February 5, 2008 at 4:19 p.m. and 4:34 p.m.) and seemed to agree with excusing the initial improper use of Civil Procedure Rule 50 at the February 5, 2008 hearing. Thus, the Court herein treats Defendant's motion as a Civil Procedure Rule 52 motion. The Court took the matter under advisement and now issues its decision.

## PARTIAL FINDINGS OF FACT

ORIGINAL

1  Senanaps vs. Cyfred; CV1448-02
   Findings of Fact and Conclusions of Law - Defendant's Motion for Judgment on Partial Findings as to Count II
2

3      Taking all evidence and testimony[1] into account, the Court finds the following by a

4  preponderance of the evidence:

5      1. That on August 21, 1998, Francis Gill (as an officer for Defendant), Enrique Baza, and

6  Eleanor Perez came to terms on the sale of Tract 63004 located in Yigo, Guam (which later came

7  to be known as the Gill-Baza Subdivision). (Geraldine Mendiola on January 9, 2008 at 2:17 p.m.);

8  (Exhibit 45, Exhibit C). Enrique Baza and Eleanor Perez were the owners and Defendant was the

9  buyer.

10     2. That the papers and warranty deed for Tract 63004 went into escrow around the same time.

11  (Exhibit 45, Exhibit C).

12     3. That during this time, someone applied to the Department of Land Management for a

13  change in zoning which would make Tract 63004 an Agricultural Subdivision. Enrique Baza was

14  seen once or twice coming in to the Department of Land Management in regard to the zoning change.

15  (Carlos Untalan on May 31, 2007 at 3:32 p.m.). Francis Gill was also known to work closely with

16  some of the officials. (Gill on October 10, 2007 at 3:07 p.m.).

17     4. That it is unclear who the Department of Land Management thought were the owners of

18  Tract 63004 and why. One Department of Land Management official working on the matter - Carlos

19  Untalan - knew that Francis Gill and Defendant had an interest in Tract 63004 (Carlos Untalan on

20  May 31, 2007 at 2:40 p.m.), but he also said he assumed Enrique Baza was the owner of interest.

21  (Carlos Untalan on May 31, 2007 at 3:33 p.m. and June 1, 2007 at 10:32 a.m.).

22     5. That the actual government official in charge of getting the owner's signatures for the

23  Agricultural Subdivision Survey Map ("Survey Map") conditions was Surveyor Dennis Pham

24

25      [1]

26      The Court finds it important to note that English was not the natural, primary language of many of the witnesses
   in this trial and therefore, there were many difficulties for everyone in communicating and understanding each other. The
27  Court recommended interpreters before the trial but neither party made such a request.

28                                           2

1 Sananap vs. Cyfred; CV1445-02
  Findings of Fact and Conclusions of Law - Defendant's Motion for Judgment on Partial Findings as to Count II

2

3  (Carlos Untalan on May 31, 2007 at 2:52 p.m.) who was never called to testify before this Court.

4       6. That the Department of Land Management officials probably did a title check in the initial

5  stages of the zoning change. (Carlos Untalan on June 1, 2007 at 10:35 a.m.). But there is no certainty

6  that such a title check was truly done and there is no certainty that the Department of Land

7  Management rightfully concluded that Enrique Baza and Eleanor Perez were the owners. (Carlos

8  Untalan on June 1, 2007 at 11:20 a.m. – he assumes Blas Atalig would have been the one to do the

9  check but he never asked Blas Atalig if such a check was done or what the check revealed.). Blas

10 Atalig was never called as a witness in this case.

11      7. That there was no secondary title check done by the Department of Land Management in

12 October of 1999 when the Survey Map was being finalized. (Carlos Untalan on June 1, 2007 at 11:09

13 a.m.). In fact, the Department of Land Management has no policy for such checks even though an

14 owner could conceivably sell the property after submitting to them for a zoning change. (Carlos

15 Untalan on June 1, 2007 at 11:09 a.m.).

16      8. That on March 15, 1999, Enrique Baza signed the Survey Map for him and for Eleanor

17 Perez (by power of attorney). (Exhibit 1).

18      9. That the Baza-Cyfred escrow was completed and Defendant's Warranty Deed was

19 recorded by October 6, 1999. (Geraldine Mendiola on January 9, 2008 at 2:17 p.m. and 3:24 p.m.).

20      10. That the Survey Map was signed by Chief Planner John T. Anderson on August 24, 1999

21 and by Chief Surveyor Nicanor B. Carino on October 27, 1999. (Exhibit 1).

22      11. That the Survey Map was recorded on November 1, 1999. (Exhibit 1).

23      12. That Kini Sananap learned about the lots being sold by Defendant at the Gill-Baza

24 Subdivision in a local newspaper article on November 6, 1999. (Kini Sananap on January 17, 2008

25 at 8:59 a.m.).

26      13. That Kini Sananap then called the number in the local newspaper article and ended up

27

28                                              3

1  Sananap vs. Cyfred; CV1448-02
   Findings of Fact and Conclusions of Law - Defendant's Motion for Judgment on Partial Findings as to Count II
2

3  talking to Jimmy Camacho of Sunshine Realty. (Kini Sananap on January 17, 2008 at 8:59 a.m.).

4       14. That Jimmy Camacho and Kini Sananap met more than once on dates that are now

5  unknown. (Kini Sananap on January 17, 2008 at 9:12 a.m.).

6       15. That Iowana Sananap never met with Jimmy Camacho. (Iowana Sananap Deposition on

7  October 29, 2003, II.N2 at 5).

8       16. That Jimmy Camacho, in those meetings with Kini Sananap, stated that water, power,

9  and sewer were not currently in place at the Gill-Baza Subdivision and that such utilities would be

10 provided within three to eighteen months. (Kini Sananap on January 17, 2008 at 9:10 a.m.); (Kini

11 Sananap Deposition on May 16, 2007, II.Q2 at 27, line 9).

12      17. That Jimmy Camacho, in those meetings with Kini Sananap, stated that Plaintiffs would

13 be able to build a house at the Gill-Baza Subdivision. (Kini Sananap on January 17, 2008 at 9:12

14 a.m.).

15      18. That Jimmy Camacho, in those meetings with Kini Sananap, showed the Survey Map

16 (Exhibit 1) but did not point out the agreement between the Department of Land Management and

17 Enrique Baza and Eleanor Perez. (Kini Sananap on January 17, 2008 at 9:21 a.m.).

18      19. That Jimmy Camacho, in those meetings with Kini Sananap, eventually directed Kini

19 Sananap to speak with Bobbie Jo Reyes.

20      20. That Kini Sananap went and saw Bobbie Jo Reyes at some point in this time period.

21      21. That, in at least one of their meetings, Bobbie Jo Reyes promised to Kini Sananap that

22 he could build a house on a lot at the Gill-Baza Subdivision. (Kini Sananap on January 17, 2008 at

23 9:31 a.m.).

24      22. That Bobbie Jo Reyes also stated to Kini Sananap that water, power, and sewer were not

25 on the property but that such utilities would be available within three to eighteen months. (Kini

26 Sananap on January 17, 2008 at 10:03 a.m.); (Kini Sananap Deposition on May 16, 2007, II.Q2 at

27

28                                          4

26, line 1).

23. That Bobbie Jo Reyes also showed the Survey Map (Exhibit 1) to Kini Sananap during these meetings but without pointing out the Department of Land Management agreement. (Kini Sananap on January 17, 2008 at 9:27 a.m.).

24. That at some point before purchasing Lot 24 at the Gill-Baza Subdivision, Kini Sananap physically went to the property and saw for himself that there was no sewer, water, or power. (Kini Sananap Deposition on May 16, 2007, IL.Q2 at 27, line 15).

25. That Plaintiffs Sananaps decided to purchase Lot 24 at the Gill-Baza Subdivision some time in late 1999. At this time, Plaintiffs Sananaps knew it would take three to eighteen months for the utilities to be installed. (Kini Sananap on January 22, 2008 at 9:23 a.m.)

26. That Kini Sananap signed the Land Purchase Agreement to purchase Lot 24 on November 8, 1999. (Exhibit A.1).

27. That Kini Sananap and Iowana Sananap signed the Promissory Note on December 30, 1999. (Exhibit A.2 to A.5).

28. That Kini Sananap and Iowana Sananap signed the Mortgage on December 30, 1999. (Exhibit A.11 to A.25).

29. That Kini Sananap and Iowana Sananap signed the Warranty Deed Rider attached to the Warranty on December 30, 1999. (Exhibit A.9).

30. That Geraldine Mendiola, as a representative of Defendant Cyfred, signed the Warranty Deed on January 3, 2000. (Exhibit A.6 to A.8).

31. That during this time period, November 8, 1999 to January 3, 2000, there is no evidence that Defendant pressured, coerced, or intimidated Plaintiffs Sananaps in any way.

32. That, in hindsight, Kini Sananap says now he would not have signed the papers for this purchase had he been warned about all the problems he would eventually encounter. (Kini Sananap

5

1  Sananap vs. Cyfred; CV1448-02
   Findings of Fact and Conclusions of Law - Defendant's Motion for Judgment on Partial Findings as to Count II

2

3  on January 17, 2008 at 9:35 a.m.).

4      33. That some time thereafter, Plaintiffs Sananaps started defaulting on their mortgage

5  payments to Defendant. Starting in July 17, 2000, Defendant began notifying Plaintiffs Sananaps of

6  all their defaults. (Exhibits A.30 to Exhibit A.73).

7      34. That power lines were installed and energized at the Gill-Baza Subdivision by April of

8  2000. (Melinda Camacho on October 18, 2007 at 10:42 a.m.). It appears Plaintiffs Sananaps actually

9  hooked into the power system and began enjoying power in their house in December of 2000.(Kini

10  Sananap on January 17, 2008 at 10:03 a.m.).

11      35. That Plaintiffs Sananaps began living on their Lot 24 at the Gill-Baza Subdivision in

12  June, 2000. (Iowana Sananap on January 15, 2008 at 3:31 p.m.).

13      36. That at the time they moved in, there was no running water. (Iowana Sananap on January

14  15, 2008 at 3:32 p.m.).

15      37. That there continued to be no running water all the way to mid-2002. (Iowana Sananap

16  on January 15, 2008 at 3:34 p.m.); (Iowana Sananap May 19, 2007 Deposition, ILR2 at page 119);

17  (Kini Sananap on January 22, 2008 at 9:25 a.m.).

18      38. That on September 28, 2001, Defendant and Plaintiffs Sananaps attempted to form a new

19  agreement wherein Plaintiffs Sananaps would have a chance to get current on their mortgage

20  payments and Defendant would have another twenty-four months to install the sewer and water line.

21  (Exhibit A.74).

22      39. That on November 1, 2001, Defendant and Plaintiffs Sananaps attempted to form a

23  second new agreement wherein Plaintiffs Sananaps would have a chance to get current on their

24  mortgage payments and Defendant would have another twenty-four months to install the sewer and

25  water line. (Exhibit A.79).

26      40. That as of mid-2002 (probably in April), Plaintiffs Sananaps started to get water to their

27

28                                           6

1  Sananap vs. Cyfred; CV1448-02
   Findings of Fact and Conclusions of Law - Defendant's Motion for Judgment on Partial Findings as to Count II

2  _____

3  house but only by way of a hose hooked up to the neighbor's line.  (Kini Sananap on January 22,

4  2008 at 9:25 a.m.); (Gill on October 16, 2007 at 1:41 p.m. - GWA installed the water lines by April

5  of 2002).

6         41. That as of April 26, 2002, there was a fire hydrant near Plaintiffs Sananaps' house. (Kini

7  Sananap on January 22, 2008 at 10:20 a.m.).

8         42. That on July 4, 2002, Typhoon Chata'an hit Guam. (Judicial Notice).

9         43. That Typhoon Chata'an destroyed Plaintiffs Sananaps' house. (Kini Sananap on January

10  17, 2008 at 10:22 a.m.).

11         44. That Plaintiffs Sananaps received a check from the U.S. agency FEMA and used the

12  money to repair the destruction to their house.(Kini Sananap on January 22, 2008 at 2:38 p.m.).

13         45. That Plaintiffs Sananaps were able to repair some but not all of their house. (Kini

14  Sananap on January 22, 2008 at 2:39 p.m.).

15         46. That on September 27, 2002, Plaintiffs filed their Complaint.

16         47. That on December 8, 2002, Typhoon Pongsona hit Guam. (Judicial Notice).

17         48. That Typhoon Pongsona destroyed only Plaintiffs Sananaps' power pedistal and part of

18  their roof. (Kini Sananap on January 17, 2008 at 10:11 a.m. and January 22, 2008 at 2:42 p.m.);

19  (Kini Sananap Deposition on May 19, 2007, ILS2 Exhibit 17 Drawing).

20         49. That to this day, Plaintiffs Sananaps get their power by an extension cord linked to

21  Martina Josephs' house. (Iowana Sananap May 19, 2007 Deposition, ILR.2 at 102, line 15).

22         50. That to this day, Plaintiffs Sananaps get their water from a pipe connected to neighbor

23  Alex Rubin's house. (Iowana Sananap on January 16, 2008 at 9:25 a.m.); (Kini Sananap on January

24  22, 2008 at 9:26 a.m.).

25         51. That on May 25, 2006, Plaintiffs filed their First Amended Complaint. Joined with

26  Plaintiffs Sananaps in the First Amended Complaint were all the Other Plaintiffs indicated in the

27

28                                              7

Court's May 5, 2006 Decision and Order granting joinder. (May 5, 2006 Decision and Order at 5, footnote 4).

52. That on May 7, 2007, Plaintiffs submitted to the Court their Trial Memorandum. On page three, they set out again what misrepresentations or omissions they believe were made by Defendant in violation of 5 G.C.A. Ch. 32. They are as follows: one; that Defendant lied in representing that it was selling "good title" (Plaintiffs' Trial Memorandum at 3, ¶1); two, that they "could build a proper house" on the property (Plaintiffs' Trial Memorandum at 3, ¶2); three, that there was a condition in the Survey Map that they were entitled to know about (Plaintiffs' Trial Memorandum at 3, ¶3); four; that Defendant had agreed to make power, water, and sewer available and was required to do so in one year (Plaintiffs' Trial Memorandum at 3, ¶4); five, that Defendant had the duty to install fire hydrants and a telephone system (Plaintiffs' Trial Memorandum at 3, ¶5); six, that Defendant was having difficulty in building the required infrastructure (Plaintiffs' Trial Memorandum at 3, ¶6); seven, that if Defendant failed to provide what was promised, Plaintiffs ran the chance of being evicted (Plaintiffs' Trial Memorandum at 3, ¶7); and eight, that they could enjoy their lot and home (Plaintiffs' Trial Memorandum at 3, ¶8).

53. That pages two through eleven of the First Amended Complaint contain the claims of Plaintiffs Sananaps and that pages eleven through twelve contain the claims of the Other Plaintiffs. Plaintiffs Sananaps' claims are divided into five counts. Counts IV and V (against Enrique Baza and Eleanor Perez respectively) were dismissed in the Court's Decision and Order on May 16, 2007 in regard to Defendant's Civil Procedure Rule 12(c) Motion to Dismiss. Thus, Plaintiffs Sananaps' Counts I, II, III are all that remain after May 26, 2007.

54. That Carlos Untalan of the Department of Land Management testified on May 31, 2007; June 1, 2007; and June 5, 2007.

55. That Francis Gill testified on October 10, 2007; October 11, 2007; October 16, 2007; and

8

Sananaps vs. CyFred; CV1448-02
Findings of Fact and Conclusions of Law – Defendant's Motion for Judgment on Partial Findings as to Count II

October 17, 2007.

56. That Geraldine Mendiola started testifying on December 12, 2007.

57. That Iowana Sananap testified on January 15, 2008 and January 16, 2008.

58. That Kimi Sananap testified on January 16, 2008; January 17, 2008; January 22, 2008; and January 23, 2008.

59. That on January 23, 2008, upon learning that witness Ed Ching would not be allowed to testify, Plaintiffs rested their case.

60. That on January 28, 2008, Defendant - through attorney Mantanona - filed this motion. The entire focus of this motion was Plaintiffs Sananaps' Count II.

61. That on February 1, 2008, Plaintiffs filed their Opposition.

62. That on February 4, 2008, Defendant filed its Reply.

63. That Count II begins on page seven of the First Amended Complaint and, in summary, it claims the following: one, that because of "false statements and promises about water and power", there has been a violation of the Deceptive Trade Practices and Consumer Protection Act under 5 G.C.A. Ch. 32 (First Amended Complaint at 7, ¶ 32); two, that because of "the failure to disclose in the Warranty Deed to the Sananaps the condition in the Agricultural Subdivision Survey Map of Tract 63004" (First Amended Complaint at 7 and 8, ¶ 32), there has been a violation of the Deceptive Trade Practices and Consumer Protection Act under 5 G.C.A. Ch. 32; and three, that because of Defendant's "failure to disclose in the Warranty Deed to the Sananaps the previous agreement by [Defendant] to make sewer available (First Amended Complaint at 8, ¶ 32), there has been a violation of the Deceptive Trade Practices and Consumer Protection Act under 5 G.C.A. Ch. 32. Thus, there are allegations of three misrepresentations or omissions in Count II.

64. That the damages requested in Count II by Plaintiffs Sananaps are the following: one, damages (First Amended Complaint at 8, ¶ 34); two, damages for substantial emotional distress

9

1  Sarasaps vs. Cyfred; CV1448-02
   Findings of Fact and Conclusions of Law - Defendant's Motion for Judgment on Partial Findings as to Count II

2  _____

3  (First Amended Complaint at 8, ¶ 34); three, damages for "recent typhoon property damages" (First

4  Amended Complaint at 8, ¶ 34); four, attorney's fees and costs (First Amended Complaint at 8, ¶

5  34); and five, treble, exemplary, and punitive damages if this whole event was "knowingly done"

6  (First Amended Complaint at 8, ¶ 34).

7                                      **CONCLUSIONS OF LAW**

8  **I. Claims at Issue in Count II**

9          The claims and damages listed in the First Amended Complaint (as summarized by the Court

10  in Findings 63 and 64), the claims and damages listed on page three of Plaintiffs' Trial Memorandum

11  (as summarized by the Court in Finding 52), the claims raised by Plaintiffs in the present motion

12  (Opposition at 11 and 12), and the claims and damages raised by Plaintiffs during the trial are all

13  different. Thus, the first issue for the Court is determining exactly what claims are part of Count II.[2]

14          As the Court explained on page eleven of its November 24, 2007 Decision and Order

15  regarding Plaintiffs' Motion for Reconsideration of Defendant's Motion to Strike Plaintiffs'

16  Supplemental Answers to Interrogatories and Motion in Limine, a court's judgments must comport

17  with the pleadings of the case. 7 G.C.A. § 21104 ("[B]ut in any other case the court may grant him

18  any relief consistent with the case made by the complaint and embraced within the issues."); see also

19  Wozniak v. Lucutz, 102 Cal.App.4th 1031, 126 Cal.Rptr.2d 310 (Cal.App. 2 Dist. 2002) ("It is the

20  general rule that, in a contested cause, in the absence of an amendment to the complaint to conform

21  to proof, a court may not award the plaintiff a sum in excess of the amount of damages he claims to

22  have sustained. It is not the prayer of a pleading which is controlling; it is the averment contained

23  in the pleading which determines the maximum sum which may be awarded the claimant.")

24  _____

25      [2]

26      And the Court would like to say that it is extremely unfortunate that this is even an issue. The Rules of Civil
    Procedure are designed so that it should never be confusing what is at dispute in a lawsuit. Lawsuits are confusing enough

27  by themselves. In this case, despite multiple warnings from the Court, Plaintiffs clearly were under the impression that
    they could throw everything in to their claims in spite of their pleadings. They were gravely mistaken.

28                                             10

(citations omitted); see also Davis v. Stewart, 53 Cal.App.2d 439, 447, 127 P.2d 1014 (Cal.App. 1 Dist. 1942) (Based on Code Civ. Proc. 580, the California District Court held, "The Court has the power, and it is its duty, when the plaintiff's complaint has been answered to grant the plaintiff any relief consistent with the case made by the complaint and embraced within the issue."); see also Wallace v. Otis, 47 Cal.App.2d 814, 815, 119 P.2d 195 (Cal.App. 3 Dist. 1941) (Plaintiff pled fraud in complaint but was given judgment for trespass damages. The District Court stated, "A judgment which exceeds the issues litigated is coram non judice and void."); see also Clark v. National Travelers Life Ins. Co., 518 F.2d 1167, 1169 (6th Cir. 1975) (Courts have no duty to "create a claim" which the party has not "spelled out in his pleading".); see also Reynolds v. Stockton, 140 U.S. 254, 270, 11 S.Ct. 773 (1891) ("[I]n order to give a judgement, rendered by even a court of general jurisdiction, the merit and finality of an adjudication between the parties, it must . . . be responsive to the issues tendered by the pleadings."); see also Daniels v. Thomas, 225 F.2d 795, 797 (10th Cir. 1955) (Parties are entitled to whatever relief is asked for in the complaint and counterclaim.); see also Northwest Marketing Corp. v. Fore-Ward Investments, Inc., 173 Or. App. 508, 22 P.3d 1230 (Or. App. 2001) ("It is generally error to award damages on an unpleaded theory."). This principle is right in harmony with Civil Procedure Rule 8(a)(2).

For these reasons, as to Count II, the Court will use the actual First Amended Complaint as a blueprint and it will make a ruling only on the claims and damages listed therein.[3] Should Plaintiffs

---

[3]

Plaintiffs did attempt to amend their Count II claims under Civil Procedure Rule 15(b), but the amendment request came one week after Defendant filed this motion, it came three days after this matter was heard, and it was ultimately denied.

In dealing with that amendment request, the Court was directed to its May 24, 2007 Decision and Order which sheds important light on the matter. On May 8, 2007, Defendant had moved the Court in regard to the DTPCPA claims stating that it wanted an official instruction from the Court to limit Plaintiffs to their pleaded DTPCPA claims. Evidently, Plaintiffs had been trying to venture outside what they claimed. On page 4 of its decision, the Court sided with Defendant. It wrote:

The Court has an absolute commitment to the Guam Rules of Civil Procedure and will enforce them in this case. Rule 8(a) requires a plaintiff to list all its claims in the complaint. The Court does not have

11

1   Sananaps vs. Cyfred; CV1445-02
    Findings of Fact and Conclusions of Law – Defendant's Motion for Judgment on Partial Findings as to Count II

2   _____

3   argue the right to leniency as far as their pleadings go, the Court would remind Plaintiffs that, in

4   addition to general Civil Procedure Rule 8 requirements, they were also restricted by DTPCPA

5   notice requirements which demand in a pre-suit letter "reasonable detail, of the consumer's specific

6   complaint and the amount of actual damages and expenses". 5 G.C.A. § 32110(a). Since Plaintiffs

7   Sananaps' First Amended Complaint more or less mirrors their DTPCPA notice letter on April 26,

8   2002 to Defendant (Defendant's Exhibit A.82), the Court feels justified in its decision.

9   **II. Count II Claims, the DTPCPA, and Civil Procedure Rule 52**

10          **A. DTPCPA Elements**

11          There are three elements Plaintiffs Sananaps must prove to be successful in their Count II

12   DTPCPA claims: one, they must prove that Defendant rendered some type of representation,

13   omission, or practice; two, they must prove that this representation, omission, or practice was likely

14   to mislead consumers acting reasonably under the same circumstances; and three, they must prove

15   that the representation, omission, or practice was material. Guam v. Marfega Trading Co., 1998

16   Guam 4, ¶ 11. The Court analyzes below all of Plaintiffs' Count II claims (as it summarized above

17   in Finding 63) under these three Marfega elements.

18          **1. False statements and promises about water and power**

19          In the Warranty Deed executed and signed by Defendant on January 3, 2000 (Exhibit A.6 to

20   A.10), there is an attachment called the Deed Rider and in that attachment it states, "Grantee under

21   the Warranty Deed . . . acknowledges that water and power (electricity) are immediately available

22

23   _____

    the full record of this case before it at this moment because many files are up with the Supreme Court

24   of Guam; but the Court will say this - Plaintiffs will not be awarded anything more than what they have
    pled in their Amended Complaint. If Plaintiffs Sananaps pled three charges in their DTPCPA claim,

25   they will be limited to those charges. In the meantime, the Court invites Defendant to raise objections
    of relevancy when appropriate and with a proper explanation, those objections will be granted.

26   (Decision and Order on May 24, 2007 at 4). This statement from the Court shows Plaintiffs were warned long ago about

27   their pleadings and that they were alerted that the Court would be faithful to the claims as written. It shows Plaintiffs have
    been egregiously dilatory in dealing with this issue.

28                                             12

1  Sananaps vs. Cyfred; CV1448-02
   Findings of Fact and Conclusions of Law – Defendant's Motion for Judgment on Partial Findings as to Count II

2  ――――――――――――――――――――――――――――――――――――――――――

3  on the Premises or within one hundred feet (100') from the Premises." (Exhibit A.9). It is Plaintiffs

4  Sananaps' claim in this case that water and power were not immediately available as promised in

5  the Warranty Deed Rider and therefore, that there has been a misrepresentation and a DTPCPA

6  violation.

7         Although Plaintiffs may be right that water and power were not immediately available

8  (Findings 34, 36, and 37), they fail to establish all the elements for a DTPCPA claim. More

9  specifically, there is a problem with the second Marfega element - the likelihood that the

10  representation in the Warranty Deed Rider would mislead reasonable consumers in the same

11  circumstances. In light of the statements which Jimmy Camacho and Bobbie Jo Reyes made to Kini

12  Sananap that power and water would not be available for three to eighteen months after the purchase

13  in November 1999 (Findings 16 and 22), in light of what Kini Sananap saw with his own eyes - that

14  there was no water and power at the Gill-Baza Subdivision - just before the purchase (Finding 24),

15  and in light of what Kini Sananap understood - that water and power would not be immediately

16  available - at the time of his purchase in 1999 (Finding 25), no reasonable consumer would have

17  been misled by the Warranty Deed Rider into thinking water and power would be immediately

18  available. Marfega, 1998 Guam 4, ¶ 16.

19         Should Plaintiffs come back with a motion for reconsideration and argue the contract doctrine

20  of the Parole Evidence Rule, the Court would reject such argument. If this were strictly a contracts

21  claim, the Court would have to look strictly to the Warranty Deed. But we are dealing with a

22  deceptive trade practice claim and in deceptive trade practice claims, all the circumstances in a

23  transaction - including all the oral statements made by the parties - are relevant in order to determine

24  what a reasonable consumer would have believed.

25         Should Plaintiffs try and argue that the misrepresentation in this claim was actually the false

26  oral statements as to water and power made by Jimmy Camacho and Bobbie Jo Reyes before the

27

28                                              13

1  Sanamaps vs. Cyfred; CV1448-02
   Findings of Fact and Conclusions of Law – Defendant's Motion for Judgment on Partial Findings as to Count II

2  _____

3  November 1999 transaction, the Court would respond with the following: one, these statements were

4  nowhere alleged or discussed in the First Amended Complaint (First Amended Complaint ¶ 21 and

5  ¶ 32); two, power was available in less than eighteen months as orally promised (Finding 34); three,

6  Jimmy Camacho never testified before this Court, he is not named in this suit as a party, and he was

7  never established by Plaintiffs  under Guam agency law or through testimony as an agent of

8  Defendant who was acting within the scope of his assigned duties; and four, Plaintiffs Sananaps

9  cannot convincingly argue that they were misled because they actually attempted to forego their right

10 to have water in eighteen months by agreeing to give Defendant more time for the return

11 consideration of having their mortgage defaults forgiven. (Exhibit A.74 and Exhibit A.79). As to this

12 last point, the Court acknowledges the invalidity of Exhibit A.74 and Exhibit A.79 and in no way

13 intends to give these documents any binding strength in this case, but they are relevant here in

14 helping determine what it was that Plaintiffs Sananaps were thinking in 2000, 2001, and 2002.

15 Exhibit A.74 and Exhibit A.79 suggest there is no way a consumer could reasonably expect water

16 within the eighteen months originally promised. See 18 G.C.A. § 82501 ("Novation is the

17 substitution of a new obligation for an existing one."); see also 18 G.C.A. § 82502; see also 18

18 G.C.A. § 82503.

19              2. Failure to disclose in the Warranty Deed the Survey Map promises

20      The Survey Map contains a paragraph toward the lower middle-right under the heading

21 "SATISFACTORY TO, APPROVED, AND CERTIFICATION OF LOT OWNER BY" (Exhibit

22 1). This paragraph was signed by Enrique Baza on March 15, 1999. He signed it for his approval and

23 for Eleanor Perez's approval by special power of attorney. Below, on the same Survey Map, three

24 different Department of Land Management officials signed as did Dennis Pham, John T. Anderson

25 (Guam Chief Planner), and Nicanor B. Carino (Guam Chief Surveyor) on the right. The mentioned

26 paragraph states the following:

27

28                                            14

Sanameps vs. Cyfred; CV1448-02
Findings of Fact and Conclusions of Law - Defendant's Motion for Judgment on Partial Findings as to Count II

---

> We, the undersigned, Owners of Tract 63004 (Formerly Lot 10102-16), acknowledge
> that we are responsible for placement and construction of the SEWER, WATER,
> FIRE HYDRANTS, POWER and TELEPHONE, as provided for by 21 GCA 61501,
> 62105 (a), 62108 (c), 62108.1, 62502 (a), 62502 (b), 62502 (c) and 62503 and that
> we indemnify the Government against any responsibility or claim to so construct,
> further that the issuance of a certificate of title based on any sale or transfer of land
> subdivided hereunder shall be contingent upon the completion of construction of the
> above infrastructures, and that this condition shall run with the land, and that any
> contract of sale, deed or other similar documents given to any purchaser or transferee
> shall give notice of this condition.

(Exhibit 1).

Plaintiffs Sanameps' second claim in Count II is that all "contract[s] of sale, deed[s] or other similar documents" should have given "notice" to Plaintiffs Sanameps that the title being transferred to them was "contingent upon the completion of construction" of the utilities (i.e., sewer, water, fire hydrants, power, and telephone). More specifically, they claim the Warranty Deed (Exhibit A.6) should have contained expressions of the fact that the Department of Land Management could take back its approval of the Agricultural Subdivision zoning at Tract 63004 and therefore, destroy their title.

Looking to Marfega, it appears Plaintiffs are going after a misleading omission here rather than a misleading representation. The main problem with Plaintiffs' argument is that there was no misleading omission because there was no obliged statement; the Survey Map was not a binding promise (see Decision and Order on March 19, 2007 in Motion for Reconsideration of Part II of Motion for Stay) so it cannot be said that Defendant was obligated to make a reference in the Warranty Deed to any condition in the Survey Map.

Plaintiffs' position on this subject ever since the Court's March 19, 2007 Decision and Order has been that as of March 15, 1999 when Enrique Baza signed the Survey Map, Enrique Baza and Eleanor Perez were still the owners of Tract 63004 (the Gill-Baza Subdivision land) because the

15

1   Sanonops vs. Cyfred; CV1448-02
    Findings of Fact and Conclusions of Law - Defendant's Motion for Judgment on Partial Findings as to Count II

2

3   deed was going through escrow. (Plaintiffs' January 29, 2008 Motion for Sanctions).[4] They have

4   argued that the Warranty Deed from Enrique Baza and Eleanor Perez to Defendant was not recorded

5   until October 6, 1999 (Declaration of Bertha Evangelista attached to Motion for Sanctions; Exhibit

6   V) and therefore, that the land was still under their ownership until October 6, 1999.

7          Plaintiffs may be right as far as what the law sets forth regarding escrow, a seller's

8   ownership, and the delivery of a deed (see 28 Am. Jur. 2d Escrow § 17 (2002)), but the Survey Map

9   was not finally approved and agreed to by the Department of Land Management until some time after

10  the Cyfred-Baza escrow was completed. According to Chief Planner of the Department of Land

11  Management Carlos Untalan, the Department of Land Management does not consider any survey

12  map to be final until the Chief Planner and the Chief Surveyor sign it and until it is recorded. (Carlos

13  Untalan on May 31, 2007 at 3:41 p.m.); see also 18 G.C.A. § 85318 (the method of communicating

14  an acceptance); see also 18 G.C.A. § 85319 (consent is fully communicated when the party accepting

15  the proposal puts acceptance in the course of transmission to the proposer); see also 18 G.C.A. §

16  85321; see also 18 G.C.A. § 85322; see also 21 G.C.A. § 62206; see also 21 G.C.A. § 62305; see

17  also 21 G.C.A. § 62402. The evidence reflects that the Survey Map was last signed by Guam's Chief

18  Surveyor Nicanor Carino on October 27, 1999 (Exhibit 1 on right towards bottom) and recorded on

19  November 1, 1999 (Exhibit 1 towards left; stamped). Thus, no matter how much we stretch the

20  evidence, Enrique Baza and Eleanor Perez were not the legal owners of Tract 63004 when the

21

22

23

24  _____

25      [4] The Court would like to point out that when it made its decision on March 19, 2007 there was no indication
    anywhere in the record of any escrow between Defendant and Enrique Baza. Seeing that the sale agreement took place

26  on August 21, 1998 and that the Survey Map was signed on March 15, 1999, the Court had no reason to believe that the
    Survey Map was not an invalid agreement made by invalid parties. It is only recently that Plaintiffs have brought forth

27  information as to the escrow.

28                                          16

Sananaps vs. Cyfred: CV1448-02
Findings of Fact and Conclusions of Law – Defendant's Motion for Judgment on Partial Findings as to Count II

Survey Map was finally agreed to.[5] They did not have the right to form a binding obligation as to Tract 63004 with the Department of Land Management. 18 G.C.A. § 85102 ("It is essential to the existence of a contract that there should be: 1. Parties capable of contracting . . . ."). Once the recording of the Cyfred-Baza deed occurred on October 6, 1999, the Department of Land Management should have approached Defendant (the true owners) or Enrique Baza should have advised authorities that its March 15, 1999 offer was no longer standing. Regardless of who is at fault, though, this Court sees no possible legal foundation on which it can enforce the Survey Map.

In summary, the Survey Map was not a binding agreement and Defendant was not legally bound by it to make any statement to Plaintiffs in regard to the Survey Map conditions. This means that there was no misleading omission and no DTPCPA violation in this claim.

    3. Failure to disclose in the Warranty Deed the promise to as to sewer

In the Land Purchase Agreement signed by Plaintiffs on November 8, 1999 (Exhibit A.1), there is a promise by Defendant to build an eight-inch sewer line and a six-inch water line. The Warranty Deed Rider mentions the water obligation but nothing about the sewer-line promise. (Exhibit A.9). Thus, Plaintiffs claim Defendant's failure to mention the promised sewer line in the Warranty Deed Rider is a misleading omission and a DTPCPA violation.

But as we saw in the Motion for Partial Summary Judgment in this case and as we saw in Abolos v. Cyfred, 2006 Guam 7, sewer-line promises do not necessarily have to be in the actual warranty deed in order for the buyer to be protected. Therefore, there has been no material

---

[5]   There are also some other problems with Plaintiffs' Survey-Map claim. First, Carlos Umalan, Chief Planner of the Department of Land Management, clearly said that the Special Note in the Survey Map (provided in the discussion above) was standard language used in all survey maps and that it did not really act as a precise listing of requirements for developers. (Umalan on June 1, 2007 at 10:46 a.m.). Second, to sue on the Survey Map, Plaintiffs would be going under the third-party-beneficiary concept but this concept was never stated as a claim in the First Amended Complaint or in the April 26, 2002 letter to Defendant (Defendant's Exhibit A.82). Third, it can be argued that the Survey Map was properly referenced in the Warranty Deed; in the separate, single-spaced paragraph at the bottom of Exhibit A.6, Defendant referred to the Survey Map.

17

Sanamaps vs. Cyfred; CV1448-02
Findings of Fact and Conclusions of Law - Defendant's Motion for Judgment on Partial Findings as to Count II

misleading omission. Enough statements were provided in the Land Purchase Agreement to protect Plaintiffs on the issue of the sewer line and the Court's June 12, 2006 granting of Partial Summary Judgment is proof of the immateriality of the omission. If the Court had denied Plaintiffs Sananaps a right to damages in its decision on June 12, 2006 because of the non-existence of any sewer-line promises in the Warranty Deed, perhaps Plaintiffs Sananaps would have a basis for a DTPCPA claim on this point. But that is not the case and this Court does not believe Plaintiffs Sananaps can meet all the Marfega elements.

### B. Civil Procedure Rule 52 Principles

As the Court's discussion above shows, the Court does not believe that Plaintiffs are able to support any of the DTPCPA claims which they have pled in Count II of the First Amended Complaint. The main issue for the Court, though, is determining whether the trial should continue or if there is reason to issue a judgment on partial findings.

Civil Procedure Rule 52(c) states that in a bench trial, "If a party has been fully heard on an issue and the court finds against the party on that issue" the Court may enter judgment as a matter of law. GUAM R. CIV. P. 52(c). A court's duty in a motion for judgment on partial findings is to weigh all the evidence presented in a plaintiff's case and then issue the judgment if the plaintiff failed to establish the elements of his or her case. Ortloff v. U.S., 335 F.3d 652, 660 (7th Cir. 2003) (courts weigh evidence and then decide whether plaintiff has proven case); see also Chavez v. Thompson Steel Co., Inc., 805 F.Supp. 1257, 1261 (D.Md. 1992) ("Instead it is to weigh the evidence, resolve any conflicts in it, and decide for itself where the preponderance lies.") (citing 9 C. Wright and A. Miller, Federal Practice and Procedure § 2372 (1971)). There is no requirement for courts to draw any inferences for the plaintiff or rule in a light most favorable to the plaintiff. Ritchie v. U.S., 451 F.3d 1019, 1023 (9th Cir. 2006) ("In deciding whether to enter judgment on partial findings under Rule 52(c), the district court is not required to draw any inferences in favor

18

1  Sananaps vs. Cyfred; CV1448-02
   Findings of Fact and Conclusions of Law - Defendant's Motion for Judgment on Partial Findings as to Count II
2

3  of the non-moving party; rather, the district court may make findings in accordance with its own

4  view of the evidence."); see also Winning Ways, Inc. v. Holloway Sportswear, Inc., 913 F.Supp.

5  1454, 1460 (D.Kan. 1996). After looking at all the evidence, a court should ask whether or not the

6  plaintiff has demonstrated a factual and legal right to relief by a preponderance of the evidence.

7  Winning Ways, Inc. v. Holloway Sportswear, Inc., 913 F.Supp. 1454, 1460 (D.Kan. 1996).

8        Here, as described above, all three DTPCPA claims in Plaintiffs Sananaps' Count II lack a

9  factual and legal basis. For these reasons and in accordance with the Civil Procedure Rule 52(c)

10 principles cited above, the Court will grant Defendant a judgment on the partial findings as to Count

11 II. To the Court, it was very important that Plaintiffs Sananaps failed to discuss Marfega or any other

12 DTPCPA cases such as the ones cited by Defendant (Defendant's Motion for Judgment at 3). In fact,

13 there is no sign that Plaintiffs Sananaps even know about the Marfega elements when putting up their

14 case before the Court. When Plaintiffs Sananaps were on the stand, the pattern of testimony elicited

15 did not follow in any way the pattern of the DTPCPA elements. The fact that Plaintiffs were totally

16 oblivious to the elements they needed to establish[6] reflected all along to the Court that they did not

17 have the factual or legal basis for relief under the DTPCPA.

18 **III. Damages**

19       In Count II of their First Amended Complaint, Plaintiffs Sananaps ask for damages,

20 emotional distress damages, "recent typhoon property damages", attorneys fees and costs, and

21 _____
   [6]
22 For example: Plaintiffs failed to mention any DTPCPA elements or cases in their Opposition to this motion;
   they failed to mention any elements or cases in the oral argument to the motion on February 5, 2008; they failed to
23 mention any elements or cases in Plaintiffs' May 7, 2007 Trial Memorandum; they failed to mention any elements or
   cases in Plaintiffs' First Amended Complaint (at 5, ¶¶ 32 and 33); they failed to mention any elements or cases in Wong's
24 May 22, 2007 and May 24, 2007 Opening Statements; they failed to mention any elements or cases in the Motion for
   Preliminary Injunction filed on March 14, 2006; they failed to mention any elements or cases in the Reply in Support
25 of Plaintiffs' Motion for Various Stays on November 3, 2006; they failed to mention any elements or cases in the Motion
   for TRO on September 29, 2006; and they failed to mention any elements or cases in the Motion for Preliminary
26 Injunction on October 25, 2006. The only time Plaintiffs ever discussed the elements and the case law for the DTPCPA
   was in their October 16, 2006 Motion for Temporary Restraining Order. Since then, Plaintiffs have given no sign that
27 they recognize these sources as the governing law for this matter.

28                                          19

1

Sanansps vs. Cyfred; CV1448-02
Findings of Fact and Conclusions of Law - Defendant's Motion for Judgment on Partial Findings as to Count II

2

"treble, exemplary or punitive damages". (Finding 64). Those requested damages were all based on

3

their DTPCPA claims. Since none of the DTPCPA claims merit any relief legally or factually, the

4

Court will not grant any damages to Plaintiffs which they requested in Count II. 5 G.C.A. § 32112

5

("In a suit filed pursuant to this chapter, a consumer . . . who prevails may obtain . . . ."); 20 G.C.A.

6

§ 2101 ("Every person who suffers detriment from the unlawful act or omission of another, may

7

recover from the person in fault a compensation therefor, in money, which is called damages.").

8

**ORDER**

9

In accordance with the above conclusions of law and after making partial findings by a

10

preponderance of the evidence, the Court REJECTS all of Plaintiffs Sanansps' Count II claims

11

finding that they lack a legal and factual basis for relief and the Court GRANTS Defendant's Civil

12

Procedure Rule 52 Motion for Judgment on Partial Findings.

13

SO ORDERED this ___5___ day of ___March___ 2008.

14

15

16

HONORABLE ANITA A. SUKOLA
JUDGE, SUPERIOR COURT OF GUAM

17

18

19

20

21

22

23

24

25

26



27

MAR 0 5 2008

28

20