# Exhibit 2

# COPY

FILED
SUPERIOR COURT
OF GUAM

'' '''' -5  PH 3: 35

## IN THE SUPERIOR COURT OF GUAM

1
2

3  KINI B. SANANAP, IOWANA M.           )     CIVIL CASE NO. CV1448-02  COURT
   SANANAP, and THE 40 LOT OWNERS       )
4  (OF THE 33 OTHER GILL-BAZA           )                BY ...  _____
   SUBDIVISION LOTS),                   )
5                                       )
                        Plaintiffs,     )     FINDINGS OF FACT AND
6                                       )     CONCLUSIONS OF LAW
        vs.                             )     (Defendant's Motion for General
7                                       )     Judgment on Partial Findings)
8  CYFRED, LTD., A Guam Corporation,    )
9  ENRIQUE BAZA, JR. (deceased),        )
   ELEANOR B. PEREZ, DONGBU             )
10 INSURANCE COMPANY and DOE            )
   DEFENDANTS 1 - 10,                   )
11                                      )
                        Defendants.     )
12 _____)

## INTRODUCTION

This motion came before the Honorable Anita A. Sukola on February 5, 2008. Attorney Wong was present for Plaintiffs and attorneys Mantanona and Van De Veld were present for Defendant. Attorney Van De Veld argued for Defendant on this particular motion because he was the author of it. In this motion, Defendant asks for a final judgment in regard to all of Plaintiffs' remaining claims. The Court took the matter under advisement after the hearing. Now, after contemplating all the oral and written arguments, the Court issues its decision.

## PARTIAL FINDINGS OF FACT

Taking all evidence and testimony into account[1], the Court finds the following by a preponderance of the evidence:

1. That on August 21, 1998, Francis Gill (as a high-ranking officer for Defendant), Enrique Baza, and Eleanor Perez came to terms on the sale of Tract 63004 (what later came to be known as

[1]  The Court finds it important to note two things. One, that English was not the natural, primary language of many of the witnesses in this trial and therefore, there were many difficulties for everyone in communicating and understanding each other (despite recommendations from the Court, the parties never asked for an interpreter). Two, there were eight months of dis-jointed, diffuse, repetitive, unorganized testimony so collecting all the information here for the purpose of making a final determination was not any easy task.

Sananaps vs. Cyfred; CV1448-02
Findings of Fact and Conclusions of Law - Defendant's Motion for Judgment on Partial Findings

the Gill-Baza Subdivision). (Geraldine Mendiola on January 9, 2008 at 2:17 p.m.); (Exhibit 45, Exhibit C). Enrique Baza and Eleanor Perez were the owners and Defendant was the buyer.

2. That the papers and warranty deed for Tract 63004 went into escrow around the same time. (Exhibit 45, Exhibit C).

3. That on March 15, 1999, Enrique Baza signed the Survey Map for him and for Eleanor Perez (by power of attorney). (Exhibit 1).

4. That the Baza-Cyfred escrow was completed and Defendant's Warranty Deed was recorded by October 6, 1999. (Geraldine Mendiola on January 9, 2008 at 2:17 p.m. and 3:24 p.m.).

5. That the Survey Map was signed by Department of Land Management Chief Planner John T. Anderson on August 24, 1999 and by Chief Surveyor Nicanor B. Carino on October 27, 1999. (Exhibit 1).

6. That the Survey Map was recorded on November 1, 1999. (Exhibit 1).

7. That Kini Sananap learned about the lots being sold by Defendant at the Gill-Baza Subdivision in a local newspaper article on November 6, 1999. (Kini Sananap on January 17, 2008 at 8:59 a.m.). The Other Plaintiffs presumably learned about the lots in a similar fashion some time thereafter. (Indonesio Fine on December 6, 2007 at 2:55 p.m.).

8. That Kini Sananap then called the number in the local newspaper article and ended up talking to Jimmy Camacho of Sunshine Realty. (Kini Sananap on January 17, 2008 at 8:59 a.m.). Most the Other Plaintiffs presumably did the same. (Fine on December 6, 2007 at 2:59 p.m. - did not talk to Jimmy Camacho.).

9. That Jimmy Camacho stated water, power, and sewer were not currently in place at the Gill-Baza Subdivision and he stated such utilities would be provided within three to eighteen months. (Kini Sananap on January 17, 2008 at 9:10 a.m.); (Kini Sananap Deposition on May 16, 2007, II.Q2 at 27, line 9). It was not established that Jimmy Camacho ever said anything else about

2

other utilities (i.e., telephone lines) to Kini Sananap. (Kini Sananap on January 17, 2008 at 9:10 a.m.).

10. That Jimmy Camacho eventually directed Kini Sananap to speak with Bobbie Jo Reyes.

11. That Kini Sananap went and saw Bobbie Jo Reyes. Most of the Other Plaintiffs did the same. (Finc on December 6, 2007 at 2:56 p.m.).

12. That Bobbie Jo Reyes stated to Kini Sananap that water, power, and sewer were not on the property but that such utilities would be available within three to eighteen months. (Kini Sananap on January 17, 2008 at 10:03 a.m.); (Kini Sananap Deposition on May 16, 2007, II.Q2 at 26, line 1). It was not established that Bobbie Jo Reyes ever said anything else about other utilities (i.e., telephone lines) to Kini Sananap. (Kini Sananap on January 17, 2008 at 10:03 a.m.).

13. That at some point before purchasing Lot 24 at the Gill-Baza Subdivision, Kini Sananap physically went to the property and saw for himself that there was no sewer, water, or power. (Kini Sananap Deposition on May 16, 2007, II.Q2 at 27, line 15).

14. That Plaintiffs Sananaps decided to purchase Lot 24 at the Gill-Baza Subdivision some time in late 1999. At this time, Plaintiffs Sananaps knew it would take three to eighteen months for the utilities to be installed. (Kini Sananap on January 22, 2008 at 9:23 a.m.)

15. That Kini Sananap signed the Land Purchase Agreement to purchase Lot 24 on November 8, 1999. (Exhibit A.1).

16. That GPA installed power lines at the Gill-Baza Subdivision and had them functioning with power by April of 2000. (Melinda Camacho - Manager of Engineering at GPA - on October 18, 2007 at 10:42 a.m.).

17. That as of mid-2002 (probably in April), there was water at the Gill-Baza Subdivision. (Kini Sananap on January 22, 2008 at 9:25 a.m.); (Francis Gill on October 16, 2007 at 1:41 p.m. - GWA installed the water lines by April of 2002).

3

Sananaps vs. Cyfred; CV1448-02
Findings of Fact and Conclusions of Law – Defendant's Motion for Judgment on Partial Findings

18. That there were six-inch lines under the outer roads and two-inch lines under the interior roads. (Carreras - engineer for Defendant who designed the Exhibit 2 plans - on October 23, 2007 at 2:06 p.m. and Exhibit 2).

19. That the two-inch lines in place are not adequate to meet all the functions a water line is supposed to serve - particularly the function of servicing fire hydrants. (Antrobus - Chief Engineer for GWA – on May 29, 2007 at 10:58 a.m. and Carreras on October 23, 2008 at 10:22 a.m.).

20. That there is a six-inch line in front of Plaintiffs Sananaps' house. (Kini Sananap on January 23, 2008 at 10:22 a.m.).

21. That as of April 26, 2002, there was a fire hydrant near Plaintiffs Sananaps' house. (Kini Sananap on January 22, 2008 at 10:20 a.m.).

22. That on May 25, 2006, Plaintiffs filed their First Amended Complaint. Joined with Plaintiffs Sananaps in the First Amended Complaint were all the Other Plaintiffs indicated in the Court's May 5, 2006 Decision and Order granting joinder. (May 5, 2006 Decision and Order at 5, footnote 4).

23. That on June 12, 2006, the Court decided Defendant had violated 21 G.C.A. § 60314 and that Plaintiffs Sananaps had the right for relief for the failure to put in a sewer line. (Findings of Facts and Conclusions of Law on June 12, 2006 at 12). The Court looked at the Land Purchase Agreement and clearly found that a sewer line was promised. In that same decision, though, the Court held that there were genuine issues of material fact in regard to the water lines; there clearly was a promise as to water lines but there was no evidence to support the claim that there was a breach. The Court found that there was water at the Gill-Baza Subdivision and that there was no evidence that such lines were inadequate.(Findings of Facts and Conclusions of Law on June 12, 2006 at 14).

24. That on June 20, 2006, the issue was re-visited in Plaintiffs' Second Motion for Partial

4

Summary Judgment. In its decision on August 1, 2006, the Court decided again that not enough was shown. The Court accepted the assertion that there were two-inch lines in parts of the Gill-Baza Subdivision (Findings of Fact and Conclusions of Law on August 1, 2006 at 29) but the Court wanted some proof that this was a substantial breach of the promise. The Court was left with some doubt as to the substantiality of the breach because it seemed that many of the residents at the Gill-Baza Subdivision were receiving water. As for the sewer line, a partial judgment in the amount of $580,000 was granted (along with $125,314.43 in attorneys fees) and Stanley Yanfag, Raymond Martin, Anis Sino, and Martin Sontag were added.

25. That pages two through eleven of the First Amended Complaint contain the claims of Plaintiffs Sananaps and that pages eleven through twelve contain the claims of the Other Plaintiffs. Plaintiffs Sananaps' claims are divided into five counts.

26. That Plaintiffs Sananaps' Counts IV and V (against Enrique Baza and Eleanor Perez respectively) were dismissed in the Court's Decision and Order on May 16, 2007 in regard to Defendant's Civil Procedure Rule 12(c) Motion to Dismiss.

27. That on January 23, 2008, upon learning that witness Ed Ching would not be allowed to testify, Plaintiffs rested their case.

28. That on January 29, 2008, Defendant – through attorney Van De Veld – filed this motion. The entire focus of this motion was every claim not addressed in Defendant's other Motion for Judgment on Partial Findings (Plaintiffs Sananaps' Count I and Count III and the Other Plaintiffs' claims).

29. That on February 1, 2008, Plaintiffs filed their Opposition.

30. That ever since May 17, 2007, a stay has been in place against all foreclosures conducted by Defendant. The stay was issued under Civil Procedure Rule 62(c) and came after instructions from the Supreme Court of Guam on April 16, 2007.

5

31. That several foreclosure sales of Gill-Baza Subdivision lots may have taken place.

## CONCLUSIONS OF LAW

### I. Failure to State a Claim

In ¶ 9 (under the "Affirmative Defenses" section) of its Answer to Complaint filed on November 4, 2002, Defendant stated, "The complaint fails to state a claim upon which relief may be granted." (Answer to Complaint at 3). In ¶ 4 of the Answer to Amended Complaint filed on June 12, 2006, Defendant incorporated all of its previous affirmative defenses such as the one in ¶ 9. On January 29, 2008 after Plaintiffs rested their case, Defendant filed the Motion for Judgment on Partial Findings and in its first argument re-visited the failure-to-state-a-claim defense in ¶ 9. Thus, the Court must decide if now is the appropriate time to deal with such a failure and if Plaintiffs did indeed fail to state a claim.

#### A. Timing of Defendant's Argument

In the Court's understanding, this failure-to-state-a-claim defense appears to be a Civil Procedure Rule 12(b)(6) attack. Under Civil Procedure Rule 12(d), all 12(b) matters are to be "heard and determined before trial" but under Civil Procedure Rule 12(h)(2), 12(b)(6)-failure-to-state-a-claim defenses can be made "at the trial on the merits". Therefore, the Court feels it can address this motion even mid-way through trial.

#### B. Failure to State a Claim

The Court is somewhat confused as to Defendant's argument. At times it appears Defendant is merely arguing that only a narrow judgment can be given since no judgment relief can be issued on any claim not delineated by Plaintiffs in the First Amended Complaint; and at other times it appears Defendant is arguing that even Plaintiffs' explicit claims lack sufficiency. The Court discusses both claims.

##### 1. No Judgment Relief for a Claim Not Stated

6

Defendant mentions in its motion that "any claim not adequately stated" "cannot serve as a basis for relief". (Defendant's Motion at 2). The Court absolutely agrees with Defendant and it hereby declares that it will not issue any judgment on any claim not expressly listed in the pleadings. (See, inter alia, November 24, 2007 Decision and Order and May 24, 2007 Decision and Order). However, the Court warns that its understanding of what was pled by Plaintiffs may be different than Defendant's understanding. For example, in the Court's reading, Count I clearly asks for a declaration that Defendant breached its promise "to provide water, power, sewer, fire hydrants, and/or telephone" (First Amended Complaint at 7, ¶ 30) whereas Defendant believes Count I asks for a declaration only for water and sewer lines (Defendant's Motion at 4).

## 2. Pleadings are Incomprehensible

Defendant also mentions in its motion that necessary information was left out of Plaintiffs' claims resulting in a complaint that did not "assist a reader and the responder to comprehend the exact nature of the claim being made". (Defendant's Motion at 2). Defendant cites to Bell Atlantic Corporation v. Twombly, 127 S.Ct. 1955, 1965 (2007) which appears to be a very important case regarding Civil Procedure Rules 8 and 12(b) and which appears to have risen above Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99 (1957) as the governing case on pleadings.

Bell Atlantic holds that, although pleadings do not have to contain every precise detail, they at least must have "enough facts to raise a reasonable expectation that discovery will reveal evidence" of whatever elements are at issue. Bell Atlantic Corporation v. Twombly, 127 S.Ct. 1955, 1965 (2007) ("[W]e hold that stating such a claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made. Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal agreement."). More specifically, pleadings must have the following: grounds for entitlement to relief; more than

7

Sananaps vs. Cyfred; CV1448-02
Findings of Fact and Conclusions of Law - Defendant's Motion for Judgment on Partial Findings

labels and conclusions; more than a formulaic recitation of the elements of a cause of action; enough to raise a right to relief above a speculative level (more than a suspicion); a showing of an entitlement to relief and not just blanket assertions (footnote 3); enough factual matter (taken as true) to suggest that an element of a claim existed; enough factual matter to raise a reasonable expectation that discovery will reveal evidence of the element; and enough "heft" to show the pleader is entitled to relief. Id. at 1965.

Below, the Court applies Bell Atlantic to every one of Plaintiffs' remaining claims in order to determine if they failed to satisfy Civil Procedure Rule 8(a).

### i. Count I

In Count I, Plaintiffs Sananaps ask for a declaration of Defendant's breach in providing water, power, sewer, fire hydrants, and/or telephone. (First Amended Complaint at 7, ¶30). As far as this particular motion and Count I go, the Court believes Plaintiffs have met Bell Atlantic. The existence of the duty to install such utilities was sufficiently established by factual allegations of agreements (¶¶ 10, 11, 17, 20) and factual allegations of breaches (¶¶ 23, 25). Regardless of how improbable some of these claims may be, the Court has no basis to dismiss them on their sufficiency. See Neitzke v. Williams, 490 U.S. 319, 327, 109 S.Ct. 1827 (1989); see also Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974).

### ii. Count II

Count II was part of Defendant's other motion (the one authored by attorney Mantanona and filed on January 28, 2008) and does not need to be discussed here.

### iii. Count III

In Count III, Plaintiffs Sananaps ask for injunctive relief under 5 G.C.A. § Ch. 32. The Court denied Count II DTPCPA claims in Defendant's other motion rendering Count III unattainable for Plaintiffs. Thus, there is nothing to be discussed as far as Civil Procedure Rule 8 goes.

8

1  Sananaps vs. Cyfred; CV1448-02
   Findings of Fact and Conclusions of Law - Defendant's Motion for Judgment on Partial Findings

2

3                              iv. Counts IV and V

4       Counts IV and V were already dismissed on May 16, 2007 in regard to Defendant's March

5  28, 2007 Rule 12(c) motion.

6                              v. Other Plaintiffs

7       In the Other Plaintiffs' Claims, they ask for the relief requested in Plaintiffs Sananaps'

8  Motion for Preliminary Injunction on March 14, 2006 (injunctive relief under 5 G.C.A. § 32119 for

9  misleading misrepresentations and omissions) and Plaintiffs Sananaps' Motion for Partial Summary

10 Judgment on April 5, 2006 (claim for cost of constructing sewer and proper waterlines under 21

11 G.C.A. § 60314). The Court has several problems with this part of the First Amended Complaint.

12 One, basing a pleading on a motion makes no sense procedurally, it runs all the involved parties in

13 circles, it is unnecessarily confusing, it reflects laziness, and it is a huge inconvenience to the Court.

14 Two, the Other Plaintiffs are never explicitly named; they are only referred to by way of an

15 attachment - Exhibit 1 (a copy of this Court's May 5, 2006 Decision and Order in which the Court

16 lists out all the Other Plaintiffs for Plaintiff) - to the First Amended Complaint. The record will

17 show that Plaintiffs' laziness has caused a mountain of problems throughout this lawsuit.[2]

18      Nevertheless, in spite of the Court's deep frustration, the Court still believes **Bell Atlantic**

19 and Civil Procedure Rule 8 requirements were met. The Other Plaintiffs alleged that they are lot

20 owners at the Gill-Baza Subdivision. (First Amended Complaint at 11, ¶ 2). Although this may be

21 a blanket assertion, it is reasonable to expect that discovery would later corroborate the statement.

22 Bell Atlantic Corporation, 127 S.Ct. 1955, 1965 (2007) ("Asking for plausible grounds to infer an

23 _____

24      [2]
         The Court cannot put into words how frustrated it has been with Plaintiffs on this point. Plaintiffs' failure to
25 give an accurate list of names to the Court caused multiple problems along the way. The record will show that in some
   motions, Plaintiffs' attorney tried to bring in other persons not listed in the First Amended Complaint saying they were
26 the true owners (see below footnote 6 on page 19); the record will show the names of the Other Plaintiffs constantly
   changed and took on new spellings; and the record will show that some of the Other Plaintiffs were already deceased
27 before being joined.

28                                          9

1   Sananaps vs. Cyfred; CV1448-02
    Findings of Fact and Conclusions of Law - Defendant's Motion for Judgment on Partial Findings

2   _____

3   agreement does not impose a probability requirement at the pleading stage; it simply calls for enough

4   facts to raise a reasonable expectation that discovery will reveal evidence of illegal agreement."). The

5   Other Plaintiffs also alleged that Defendant was obligated to install sewer and water lines and that

6   this obligation was breached. (First Amended Complaint at 11, ¶¶ 7 and 8). Again, there was enough

7   given and enough basis (in light of Plaintiffs Sananaps' claims in the same document) to reasonably

8   believe that discovery would later fill in any holes.

9        C. Summary

10       In summary, the Court finds no problems with Plaintiffs' First Amended Complaint. It

11  certainly was short and it certainly reflected carelessness and laziness, but enough was provided in

12  it to satisfy Civil Procedure Rule 8. Notwithstanding, this Court has watched Plaintiffs throughout

13  the trial touch on matters not claimed in the First Amended Complaint so the Court advises here that

14  it will not issue any judgments outside the boundaries of the First Amended Complaint.

15  II. Failure to State a Claim as to Jurisdiction

16       Defendant also challenges Plaintiffs' claims on jurisdiction but again, the Court is confused

17  in regard to Defendant's argument. At one point, Defendant seems to attack the lack of information

18  regarding personal jurisdiction (Defendant's Motion at 5) and at another point it seems to attack the

19  lack of information regarding subject matter jurisdiction (Defendant's Motion at 6). Either way, the

20  Court finds problems with Defendant's request.

21       A. Subject Matter Jurisdiction

22       If this motion is an attack on the subject matter jurisdiction, Defendant already admitted the

23  Court's jurisdiction in its Answer to Amended Complaint on June 12, 2006 when it stated,

24  "Defendants admit the court has jurisdiction to hear the subject matter of the complaint once all

25  persons necessary for just adjudication of the matter have been joined." (Answer to Amended

26  Complaint at 1, ¶ 1). Since a proper Civil Procedure Rule 19 motion was never made (Findings of

27

28                                        10

1  Sananaps vs. Cyfred; CV1446-02
   Findings of Fact and Conclusions of Law – Defendant's Motion for Judgment on Partial Findings

2

3  Fact and Conclusions of Law on August 1, 2006 at 15), it is reasonable for the Court to find that

4  Defendant already conceded jurisdiction.

5      **B. Personal Jurisdiction**

6      If this motion is an attack on personal jurisdiction (more specifically, an attack on the identity

7  of the Other Plaintiffs), the attack is too late. It should have been launched in a pre-trial motion.

8  Weaver v. Bowen, 657 F.2d 1356, 1359 (3d. Cir. 1981); GUAM R. CIV. P. 12(h)(1).

9  III. Count I for Plaintiffs Sananaps and Summary Judgment Relief for Other Plaintiffs

10      In Count I, Plaintiffs Sananaps ask for a declaration from the Court regarding Defendant's

11 violation of "21 G.C.A. § 60314 and other applicable laws" for its breach of the duty to provide

12 water, power, sewer, fire hydrants, and/or telephone. In the Other Plaintiffs' Claims, the Other

13 Plaintiffs ask for the relief requested in Plaintiffs Sananaps' Motion for Preliminary Injunction on

14 March 14, 2006 (injunctive relief under 5 G.C.A. § 32119 for misleading misrepresentations and

15 omissions) and in Plaintiffs Sananaps' Motion for Partial Summary Judgment on April 5, 2006

16 (claim for cost of constructing sewer and proper waterlines under 21 G.C.A. § 60314). The Court

17 discusses below all of these claims and whether a judgment on the partial findings is appropriate.

18      **A. Plaintiffs Sananaps' Claim for Water**

19      On June 12, 2006, in regard to the Motion for Partial Summary Judgment, the Court decided

20 Defendant had violated 21 G.C.A. § 60314 and that Plaintiffs Sananaps had the right for relief for

21 the failure to put in a sewer line. (Findings of Facts and Conclusions of Law on June 12, 2006 at 12).

22 The Court looked at the Land Purchase Agreement and clearly found that a sewer line was promised.

23 In that same decision, though, the Court held that there were genuine issues of material fact in

24 regard to the water lines; there clearly was a promise as to water lines but there was no evidence to

25 support the claim that there was a breach. The Court found that there was water at the Gill-Baza

26 Subdivision and that there was no evidence that such lines were inadequate.(Findings of Facts and

27

28                                    11

2

3   Conclusions of Law on June 12, 2006 at 14).

4           On June 20, 2006, the issue was re-visited in Plaintiffs' Second Motion for Partial Summary

5   Judgment. In its decision on August 1, 2006, the Court decided again that not enough was shown on

6   the breach element. The Court accepted the assertion that there were two-inch lines in parts of the

7   Gill-Baza Subdivision (Findings of Fact and Conclusions of Law on August 1, 2006 at 29) but the

8   Court wanted some proof that this was a substantial breach of the promise. The Court was left with

9   some doubt as to the substantiality of the breach because it seemed that many of the residents at the

10  Gill-Baza Subdivision were receiving water.

11          During the trial for this case, testimony changed this Court's general stance on the water-line

12  matter. Two credible witnesses clearly established that two-inch lines are not adequate to meet all

13  the functions a water line is supposed to serve - particularly the function of servicing fire hydrants.

14  (Expert Witness Antrobus - Chief Engineer of GWA - on May 29, 2007 at 10:58 a.m. and Carreras -

15  Defendant's engineer - on October 23, 2008 at 10:22 a.m.). Unfortunately, this testimony changed

16  nothing as far as Plaintiffs Sansnaps are concerned. Two-inch lines only exist in the interior roads

17  (Carreras on October 23, 2007 at 2:06 p.m. and Exhibit 2) while Plaintiffs Sansnaps live on an outer

18  road. (Exhibit 2 - Lot 24). In fact, Plaintiff Kini Sansnap himself testified that there was a six-inch

19  line in front of his house. (Kini Sansnap on January 23, 2008 at 10:22 a.m.). Therefore, Plaintiffs

20  Sansnaps have no viable claim regarding the inadequacy of the two-inch water lines and the Court

21  will grant Defendant's Motion for Judgment on the Partial Findings. Orloff v. U.S., 335 F.3d 652,

22  660 (7th Cir. 2003) (courts weigh evidence and then decide whether plaintiff has proven case); see

23  also Charey v. Thompson Steel Co., Inc., 805 F.Supp. 1257, 1261 (D.Md. 1992) ("Instead it is to

24  weigh the evidence, resolve any conflicts in it, and decide for itself where the preponderance lies.")

25  (citing 9 C. Wright and A. Miller, Federal Practice and Procedure § 2372 (1971)); see also Winning

26  Ways, Inc. v. Holloway Sportswear, Inc., 913 F.Supp. 1454, 1460 (D.Kan. 1996) (After looking at

27

28                                              12

Sananaps vs. Cyfred; CV1448-02
Findings of Fact and Conclusions of Law - Defendant's Motion for Judgment on Partial Findings

all the evidence, a court should ask whether or not the plaintiff has demonstrated a factual and legal right to relief by a preponderance of the evidence.).

## B. Plaintiffs Sananaps' Claim for Power

Unlike the sewer and water lines, the Court made no decision on June 12, 2006 in regard to the power lines because Plaintiffs Sananaps did not mention the power lines in their April 5, 2006 Motion for Partial Summary Judgment. Now it is an issue. But testimony clearly showed there was no breach of the Warranty Deed promise; GPA's manager of engineering Melinda Camacho testified that GPA installed lines and had them functioning with power by April of 2000 - approximately four months after the Warranty Deed was signed on December 30, 1999. (Exhibit A.9 and Camacho on October 18, 2007 at 10:42 a.m.). Since 21 G.C.A. § 60314(f) required the promised power lines to be installed within twelve months, the Court finds no violation and the Court will grant Defendant's Motion for Judgment on the Partial Findings. Id.

Should Plaintiffs argue that their claim is really for the $5,684.17 charged by GPA for the installation of the power lines (Opposition at 9), the Court would deny such an argument because compensation for the money was not listed in the pleadings as a claim. Indeed, a $5,000 charge was listed, but it was only listed as a fact (First Amended Complaint at 6, ¶ 24)[3] and not as an actual prayer for relief. (First Amended Complaint at 7, ¶ 30 and 10). Even if it were, though, the Court would not change its stance on the matter because there is no proof of the GPA bill anywhere in the evidence; because $5,000 is not the accurate, current amount owing GPA due to the fact that 30 additional land owners have since applied for power at the Gill-Baza Subdivision (Melinda Camacho on October 18, 2007 at 10:57 a.m.); because it appears the GPA bill will never materialize due to

---

[3]

Should there ever be any question as to the Court's frustration with the way Plaintiffs are litigating this case, the Court would point doubters to the following - Plaintiffs mention $5,000 in the facts of their First Amended Complaint and now they claim they pleaded $5,684.17. Disparity in important things like has not been uncommon and it confuses everyone.

13

1   Sansanaps vs. Cyfrod; CV1448-02
    Findings of Fact and Conclusions of Law - Defendant's Motion for Judgment on Partial Findings

2   —————————————————————————————————————————————

3   the statute of limitations, 7 G.C.A. § 11303, 7 G.C.A. § 11305, and 7 G.C.A. § 11314; and because

4   Plaintiffs Sansanaps never attempted to challenge the charge through the existing GPA appellate

5   procedures (Kini Sansnap on January 23, 2008 at 10:53 a.m.).

6          C. Plaintiffs Sansanaps' Claim for Sewer

7          The Court has already addressed this issue before (decisions on June 12, 2006 and August

8   1, 2006) and will not make any changes to its previous decision. Plaintiffs Sansanaps already have

9   a judgment for the sewer line. (Findings of Fact and Conclusions of Law on August 1, 2006).

10         Defendant moves the Court under Civil Procedure Rule 60(b)(6) to set aside the judgment

11  (and not grant a judgment to anyone) because Plaintiffs have all been foreclosed on and no longer

12  hold a legal interest in land at the Gill-Baza Subdivision. If Defendant is worried that the money

13  judgment will go into the hands of Plaintiffs and never materialize into a sewer line at the Gill-Baza

14  Subdivision, the Court shares the same concern and will be researching ways to ensure that such a

15  thing does not happen; this money must go toward a sewer line. But this concern does not warrant

16  setting aside the judgment. The Court does not believe that Defendant's request was made in a

17  reasonable time and the Court does not believe that 21 G.C.A. § 60314(f) remedies are only for

18  buyers who retain their interest in the land at subject. The Court believes 21 G.C.A. § 60314(f) is

19  designed for all land purchasers, even those who are denied a certain utility and then later lose their

20  ownership interest.

21         D. Plaintiffs Sansanaps' Claim for Fire Hydrants

22         The Court was also never asked in any summary judgment motion to make a decision on the

23  fire hydrants but the Court is asked to make one here. The Court holds that it will grant Defendant's

24  Motion for Judgment on the Partial Findings, Id., and deny Plaintiffs Sansanaps' claim because

25  evidence and testimony showed there are already adequate fire hydrants in place at the Gill-Baza

26  Subdivision and near Plaintiffs' Sansanaps' house. (Exhibit 2 and Carrera on October 23, 2007 at

27

28                                          14

1   Sananap vs. Cyfred; CV1448-02
    Findings of Fact and Conclusions of Law - Defendant's Motion for Judgment on Partial Findings
2
———————————————————————————————————————————————————————————————
3   1:50 to 1:56 p.m. and Kini Sananap on January 22, 2008 at 10:20 a.m.). Moreover, no test was ever

4   conducted and no showing was ever provided which could establish to the Court that Plaintiffs

5   Sananaps are without a functioning fire hydrant.

6          E. Plaintiffs Sananaps' Claim for Telephone

7          The Court was also never asked in any summary judgment motion to make a decision on the

8   telephone claim. The Court now holds that it will grant Defendant's Motion for Judgment on the

9   Partial Findings, Id., and deny Plaintiffs Sananaps' claim because Plaintiffs never established that

10  a promise of telephone was made to them. Neither the Warranty Deed Rider (Exhibit A.9), nor the

11  Land Purchase Agreement (Exhibit A.1), nor Plaintiff Iowana Sananaps' testimony, nor Plaintiff

12  Kini Sananaps' testimony exhibited any telephone promises.

13         It is true that Plaintiff Kini Sananap repeatedly testified about oral promises from Jimmy

14  Camacho and Bobbie Jo Reyes, but these promises were only for water, power, and sewer and never

15  for other utilities such as telephone. (Findings 9 and 12). If Plaintiffs Sananaps are trying to show

16  there was an obligation through the Survey Map, the Court's decision in the contemporaneous

17  Motion for Judgment on the Partial Findings (authored by attorney Mantanona) sets forth on pages

18  15 and 16 that the Survey Map was not a legal, binding agreement. If Plaintiffs Sananaps believe

19  telephone lines are a legal requisite in subdivisions under 21 G.C.A. § 62108.1 and 21 G.C.A. §

20  62108, the Court would have to still deny the claim because Plaintiff Sananaps never mentioned such

21  laws in their First Amended Complaint, in their Opposition to this motion,  in their Trial

22  Memorandum filed on May 7, 2007, or anywhere else in any of the motions argued in this case.

23  There has never been any indication to the Court in any way that such laws were a part of this case.

24         F. The Other Plaintiffs' Claim under Summary Judgment[4] for Water

25
———————————
26         4

27         The Court advises that the Other Plaintiffs have based their claims in the First Amended Complaint on both

28                                                   15

1  Sasanaps vs. Cyfred; CV1448-02
   Findings of Fact and Conclusions of Law - Defendant's Motion for Judgment on Partial Findings

2  ─────────────────────────────────────────────────────────────────────────

3        On August 1, 2006, in a decision regarding Plaintiffs' Second Motion for Partial Summary

4  Judgment filed on June 20, 2006, the Court touched on the subject of the water lines for all Plaintiffs

5  and decided that not enough was certain for a judgment. The Court accepted the assertion that six-

6  inch lines were promised to many and that there were two-inch lines in parts of the Gill-Baza

7  Subdivision (Findings of Fact and Conclusions of Law on August 1, 2006 at 29) but the Court

8  wanted some proof that there was a substantial breach of the promise.

9        Trial testimony has provided such proof. Testimony established that the two-inch lines under

10 the interior roads are inadequate because they cannot properly perform one of their intended

11 functions - servicing the fire hydrants. (Carreras on October 23, 2007 at 10:22 a.m. and Antrobus on

12 May 29, 2007 at 10:35 and 10:58 a.m.). It also established that the two-inch lines are below the

13 standard which GWA is trying to enforce throughout Guam. (Antrobus on may 29, 2007 at 11:15

14 a.m.). Thus, as for the Other Plaintiffs who were promised a six-inch water line in their purchasing

15 papers and who live on one of the interior roads, the Court holds there is a strong chance Defendant

16 breached a contractual duty. Although the two-inch lines may not violate an actual statute or a GWA

17 regulation, 12 G.C.A. §14117 (a water line must merely be functional) and

18 http://www.guamwaterworks.org/rules_regs.html and (Antrobus on May 30, 2007 at 2:24 p.m.);

19 ─────────────

20 the March 14, 2006 Preliminary Injunction motion and on the April 5, 2006 Motion for Summary Judgment. But since
   these two motions ask for contradictory orders from the Court (the injunction would force Defendant to build sewer and

21 water lines while the summary judgment would garner a money judgment to Plaintiffs so they can build the lines
   themselves), the Court realized long ago that it had to decide on one or the other. In his oral argument before the Court

22 on June 6, 2006, attorney Wong expressed a preference for summary judgment over an injunction. Thus, ever since, the
   injunction has been on reserve and we have focused on a money judgment. (August 1, 2006 Findings of Fact and

23 Conclusions of Law at 22).

   Now, in this motion, the Other Plaintiffs decide they want to go back to the injunction remedy. (Plaintiffs'

24 Memorandum at 18). Once again, Plaintiffs put the Court in an impossible situation. It is an impossible situation because
   six Plaintiffs already have a judgment of $580,000 (and $125,314.43 for attorney's fees) for the sewer line. Since there

25 is an official judgment containing monetary relief (one which has been around for almost two years and one which is
   already up on appeal), the Court will require Plaintiffs to do what it would require of any other party - file a Rule 60(b)

26 motion. Until then, the Court will proceed with the monetary form of relief requested by attorney Wong on June 6, 2006.

27

28                                                    16

although two-inch lines are theoretically enough to provide sufficient service to homes (Antrobus on May 29, 2007 at 3:33 p.m.); although nobody has ever done a pressure test of the water lines at the Gill-Baza Subdivision to determine if they actually are inadequate (Carreras on October 23, 2007 at 2:27 p.m. and Antrobus on May 29, 2007 at 3:39 p.m.); although fire engines have their own pressure system to make up for low pressure in the fire hydrants (Carreras on October 23, 2007 at 11:14 a.m.); and although the Gill-Baza Subdivision is more than half-vacant which lowers the need for a certain amount of pressure in the water line (Carreras on October 23, 2007 at 11:06 a.m.), the Court suspects that Defendant did not fully meet its contracted duties and believes that a judgment on the matter in favor of Defendant at this point would be unwarranted. Defendant has not demonstrated by a preponderance of the evidence at this point that it deserves relief from this claim. Winning Ways, Inc. v. Holloway Sportswear, Inc., 913 F.Supp. 1454 (D.Kan. 1996) (Courts should weigh the evidence and assesses the credibility of witnesses. The courts should determine if the moving party has demonstrated a factual, legal right to relief by a preponderance of the evidence.); GUAM R. CIV. P. 52(c) (If a party has been fully heard on an issue and if a court decides against the party on that issue, the court may enter a judgment as a matter of law.).

Nevertheless, the Court would like to emphasize that this is not a final determination of this claim; it is only a general indication given in the context of Defendant's motion. Obviously, there is some room for debate in the future. The Court advises that arguments can be made during Defendant's upcoming defense and in Defendant's Proposed Findings of Fact and Conclusions of Law. The issue will be whether this Court could grant a water-line judgment to the Other Plaintiffs in the interior roads for the two-inch lines on a contract theory (i.e., under 18 G.C.A. § 82101 an obligation must be fully performed) and a warranty theory (i.e., under 21 G.C.A. § 60314(b) any utility promise is warranted) as opposed to focusing strictly on 21 G.C.A. § 60314(f). As for the outer-road Plaintiffs, the Court denies their claim and a judgment in favor of Defendant is granted.

17

1   Sanamps vs. Cyfred; CV1448-02
    Findings of Fact and Conclusions of Law - Defendant's Motion for Judgment on Partial Findings

2   _____

3       **G. The Other Plaintiffs' Claim under Summary Judgment for Sewer**

4           On August 1, 2006, the Court explained its thinking as to the sewer line and water line

5   matter. It explained that it expected a showing of a promise for each of the Other Plaintiffs. (Findings

6   of Fact and Conclusions of Law on August 1, 2006 at 26). The Court found that because there was

7   a Land Purchase Agreement entered in the record for Stanley Yanfag, Raymond Martin, Anis Sino,

8   and Martin Sontag, one which contained an explicit promise for water, those particular Other

9   Plaintiffs had a right to the money judgment for sewer lines. (Findings of Fact and Conclusions of

10  Law on August 1, 2006 at 27). As for the others, the Court denied summary judgment and explained

11  that it needed more proof of a veritable promise.

12          It was not until Plaintiffs' November 15, 2006 Motion for Reconsideration that the Court

13  realized that the Other Plaintiffs were trying to establish the promise element in 21 G.C.A. § 60314

14  by way of the Survey Map agreement between Enrique Baza and the Department of Land

15  Management. On March 16, 2007, the Court accepted the theory of Plaintiffs' argument, but rejected

16  the validity of the Survey Map. The Court found that Enrique Baza was not the owner of the land

17  when he signed the Survey Map and therefore, had no legal authority to make any binding promises

18  with the Department of Land Management. Various things have happened subsequently regarding

19  the Survey Map and Plaintiffs have made a good effort to change the Court's mind, but the Court

20  would not. (See Decision on Defendant's other Motion for Judgment on Partial Findings). Just like

21  on March 16, 2007, the Court does not find the Survey Map to be a valid agreement.

22          Thus, if the Other Plaintiffs want part of the $580,000 in 21 G.C.A. § 60314(f) relief for the

23  lack of a sewer line at the Gill-Baza Subdivision, they must have shown some time during the trial

24  that they were promised a sewer line.[5] By the Court's analysis of the evidence, the following

25

26  _____

27      [5] And there should not be any surprise that this is what the Court is requiring after all the guidelines and
    instructions the Court has given in the past. (See Findings of Fact and Conclusions of Law on August 1, 2006 at 27).

28                                              18

1   Sammays vs. Cyfred; CV1448-02
    Findings of Fact and Conclusions of Law - Defendant's Motion for Judgment on Partial Findings

2

3   Plaintiffs have done so: Ranspar Alpert (Exhibit D.69), Margaret Fanoway (Exhibit I.73), Smither

4   Ezra (Exhibit H.79), Fine Indonesio (Exhibit J.48), Harper Kimiana (Exhibit K.47), Justina Hartman

5   (Exhibit L.39), Kosam Tongan (Exhibit N.1), John Ligmaw (Exhibit O.47), Marsala Martin (Exhibit

6   P.54), Christopher Nero (Exhibit S.50), Joshua Peter and Daisy Narruhn (Exhibit U.58), Relmis

7   Rangi (Exhibit V.63), Alex Ruben (Exhibit X.81), Sinfiano Soni (Exhibit Z.71), Jennifer Topacio

8   (Exhibit A2.1), and Santiago Wia (Exhibit D2.1). Therefore, their names will likely be added to the

9   previous sewer-line judgment at the end of the trial and the Court will deny Defendant's motion. But

10  the Court will grant Defendant's motion for any Plaintiff not named above (including Keropim

11  Sharep and Sammy Sharep[6] - Exhibit Y.60) because such persons failed to prove the necessary

12  elements for 21 G.C.A. § 60314 relief[7] (e.g., Mori on December 5, 2007 at 11:06 a.m. - was never

13

14      [6]

15      Keropim Sharep was never made a plaintiff in this case, his son Sammy was instead even though Sammy is not
    the owner of Block 4, Lot 11. (Sharep on December 6, 2007 at 2:04 p.m.). So although Keropim may have a legal right

16  to recourse under 21 G.C.A. § 60314(f) and Exhibit Y.60, he was never properly made a party in this case. This kind
    of problem is exactly what the Court was worried about when it warned Plaintiffs early in the case. (Findings of Fact and

17  Conclusions of Law on August 1, 2006 at footnote 1). In footnote 1, the Court wrote, "[I]f any of these names are spelled
    wrong, if any of these names are incorrect in any other way, or if there are any missing names that should be on the list,

18  Plaintiffs should inform the Court in an official manner." Plaintiffs did nothing and did not heed the Court's instructions
    until December 6, 2007 when Defendant pointed out the grave mistake. (Van De Veld on December 6, 2007 at 2:47

19  p.m.). It was also during the December 6, 2007 discussion that Defendant brought to light a misrepresentation made by
    attorney Wong earlier - that Sammy K. Sharep was a proper party because "Sammy" was an alias of Keropim. (Van De

20  Veld on December 6, 2007 at 2:45 p.m.). We know this is not true because Keropim's only other nickname is Ken.
    (Sharep on December 6, 2007 at 2:04 p.m.).

21      The Court denied attorney Wong's request for leave to amend the list of Plaintiffs and the Court struck from
    the record all of Keropim's testimony (because he had been testifying as a plaintiff when he was not a plaintiff and

22  because his personal knowledge went to irrelevant information). (Subris on December 6, 2007 at 2:47 p.m.). The Court
    refers to Keropim's testimony in this footnote only to officially explain on the record its reasoning. Further, for Keropim

23  Sharep's sake, the Court would like to add to its decision by stating that attorney Wong's mistake borders malpractice.

24      [7]

25      On a side note, the Court understands there may be some Plaintiffs who were joined in this case but who are
    not currently being represented and who have not participated in the trial. This could cause serious problems in the future.

26  In a worst-case scenario, such persons could be denied any relief in this decision and yet, be cut off from ever making
    a case against Defendant in the future. Out of concern for such Plaintiffs, the Court certainly hopes attorney Wong has

27  met all of his duties to such persons. GUAM R. PROF. C. 1.16. The Court hopes such Plaintiffs have been properly served
    papers and are properly aware that they are party to this case.

28                                        19

---

promised a sewer line - and Exhibit R.23).

Defendant argues that the sewer line judgment was complete and final on August 1, 2006 and that new Plaintiffs should not be added to it. However, the sewer line judgment was complete and final only in terms of the amount. As far as who the recipients would be, the summary judgment motions were for partial judgments and the Court explicitly left them open for more Plaintiffs by reserving its decision. (Findings of Fact and Conclusions of Law on August 1, 2006 at 29, 33, and 34).

**IV. Plaintiffs Sananaps' Count II**

Count II was addressed in Defendant's other Motion for Judgment on Partial Findings and will not be changed here.

**V. Plaintiffs Sananaps' Count III**

In Count III, Plaintiffs Sananaps ask for permanent and preliminary injunctive relief under 5 G.C.A. § 32119. (First Amended Compliant at 9, ¶ 39). They want protection from foreclosures of their lots (First Amended Complaint at 9, ¶ 38) and they argue that such protection is deserved because of violations of 5 G.C.A. Ch. 32 which they "have shown" in Count II (First Amended Complaint at 9, ¶ 40). The Court denies this requested relief and will grant Defendant's Motion for Judgment on the Partial Findings because Plaintiffs Sananaps fail to "show that a violation" of 5 G.C.A. Ch. 32 "has occurred". 5 G.C.A. § 32119; (see the Court's contemporaneous decision regarding Defendant's other Motion for Judgment on the Partial Findings).

**VI. Count IV and Count V**

Defendant argues that Counts IV and V were dismissed by the Court's Decision and Order on May 16, 2007 and that they are no longer part of this case. The Court agrees. A motion for reconsideration has never been filed and we are now more than one year past the decision so there is nothing to change.

20

Sanmuga vs. Cyfred; CV1448-02
Findings of Fact and Conclusions of Law - Defendant's Motion for Judgment on Partial Findings

## VII. Closing the Case

All that is left for litigation as far as Plaintiffs' case goes is the water-line matter for the interior-road Plaintiffs and the sewer-line matter for the certain Plaintiffs named above; everything else has been decided. Plaintiffs already presented their evidence for their case and now Defendant will have a chance to defend against the remaining claims. Once that is done, Defendant can present its Counterclaim (foreclosures and defaults) and then Plaintiffs can present their defenses to the Counterclaim (as pleaded in the Answer to Counterclaims filed on October 17, 2006).

Defendant makes it known that it wishes to forego its Counterclaim. Apparently, Defendant feels no need to litigate the foreclosure matters because it claims it already conducted private foreclosures. If granted what it wants, Defendant argues the case would be over as there would be no need to put up witnesses regarding the foreclosures and there would be no need for a defense from Plaintiffs.

The Court will not grant a dismissal of Defendant's Counterclaim and the Court will instruct Defendant to proceed in proving all mortgage defaults because it suspects there may have been a violation of one of the previous foreclosure stays. The Court does not know much about any of the May 17, 2007 foreclosures, but it does know that it issued a Civil Procedure Rule 62(c) stay pending the entire appeal that very same day.[3] Besides, the Court has already held before that it is content with Defendant conducting private foreclosure sales (except for when there is a stay) but that it is not content with dismissing the counterclaims altogether. (Decision and Order on December 4, 2006 and Decision and Order on May 16, 2007); see also Bolten v. General Motors Cor., 180 F.2d 379,

---

[3]
On April 16, 2007, Plaintiffs filed an appeal in regard to their Motion for Reconsideration of the Motion for Reconsideration of the decision to not grant a preliminary injunction. On the same day of Plaintiffs' filing, the Supreme Court of Guam issued an order which contained a 30-day stay on private foreclosures by Defendant and which contained a remand to this Court for a stay. On May 17, 2007 the Court complied and issued its own stay. The Court wrote, "Out of deference to the Supreme Court of Guam and their explicit intentions to stay the private foreclosures, this Court will issue a stay of the private foreclosures during the appeal under Rule 62(c)." (Decision and Order at 2).

21

380 (7th Cir. 1950) ("The rule has long prevailed in both law and equity that a plaintiff may dismiss his case without prejudice only by payment of the costs and when the defendant will not be subjected thereby to some plain legal prejudice beyond the incidental annoyance (as distinguished from prejudice) of a second litigation upon the same subject matter.") (citing Home Owner's Loan Corporation v. Huffman, 134 F.2d 314 (8th Cir. 1943)); see also 35B C.J.S. Federal Civil Procedure § 757; see also Elbaor v. Trinath Imaging, Inc., 279 F.3d 314, 317 (5th Cir. 2002) ("We have explained that, as a general rule, motions for voluntary dismissal should be freely granted unless the non-moving party will suffer some plain legal prejudice other than the mere prospect of a second lawsuit.").

**VIII. Summary**

Thus, this case will move forward. Defendant will be allowed to refute the water-line claims of the interior-road Plaintiffs (i.e., they did not purchase a lot from Defendant or they defaulted before having a right to the water line or proper installation was impossible because of GWA's authority), Defendant will be allowed to attack the cost of the water-line improvements ($140,000 – Exhibit 15; Chong on May 30, 2007 3:43 p.m.), Defendant will be allowed to challenge the sewer-line claims of the Other Plaintiffs named above in this decision, Defendant will be allowed to present its Counterclaim for the defaulted payments, and Defendant will be allowed to prove its case for offset. After Defendant rests, Plaintiffs will be allowed to present their Counterclaim defenses filed on October 17, 2006.

When Plaintiffs do present their defenses, the Court advises that it will enforce strict limitations. The Court has already held in previous motions that very few wrongs ever excuse a mortgagee's duty to pay. Until the Supreme Court comes out with a decision reversing the Court, the Court will remain committed to this holding. For these reasons, the Court does not foresee any reason why Plaintiffs will need much time to present their defense. Moreover, the Court WILL NOT allow testimony which re-hashes any of the DTPCPA testimony already on the record. Evidence

22

Samanapa vs. Cyfred; CV1448-02
Findings of Fact and Conclusions of Law - Defendant's Motion for Judgment on Partial Findings

Rule 401 and Evidence Rule 403 (waste of time, cumulative evidence) clearly show a party does not have total freedom in presenting evidence and the Court will abide by those rules.

In regard to motions for reconsideration, the Court will remind both parties that they were given every opportunity, in the oral hearing and with their written motions, to make arguments on this matter. Likewise, Plaintiffs were given eight months and substantial freedom (they called nineteen witnesses to the stand) to present their case to the Court. Therefore, if any party disagrees with this decision or any of the decisions issued simultaneously with this one, the Court advises that such party better be sure that there is a good justification for a motion for reconsideration before filing one. If any motions for reconsideration are filed which do not have good justification, the Court hereby warns that it will unilaterally impose very harsh sanctions.

### ORDER

In accordance with the above conclusions of law and after making partial findings by a preponderance of the evidence, the Court GRANTS Defendant's motion and issues a judgment for every claim in the First Amended Complaint except for the water-line matter (as to the interior-road Plaintiffs) and the sewer-line matter (as to the persons listed on pages 18 and 19). The Court also holds that the trial will proceed and Defendant will now be allowed to present a defense against the water-line matter and the sewer-line matter. A hearing on the further proceedings will be held on _March 11, 2008_ _10a.m._ at which the Court will set the remaining schedule for this trial.

SO ORDERED this _5_ day of _March_ 2008.

HONORABLE ANITA A. SUKOLA
JUDGE, SUPERIOR COURT OF GUAM

23