# Exhibit 3

# IN THE SUPREME COURT OF GUAM

## GERARDO L. ABALOS and MARIEFE M. ABALOS,
Plaintiffs-Appellees,

### vs.

## CYFRED LTD., ENRIQUE BAZA, JR., ELEANOR B. PEREZ, and DOE DEFENDANTS 1-10,
Defendants-Appellants.

Supreme Court Case No.: CVA04-010
Superior Court Case No.: CV0580-02

## OPINION

**Filed: June 2, 2006**

**Cite as: 2006 Guam 7**

Appeal from the Superior Court of Guam
Argued and submitted on February 14, 2005
Hagåtña, Guam

Appearing for the Plaintiffs-Appellees:
Wayson Wong, *Esq.*
Law Offices of Wayson Wong, P.C.
Ste. 203, 142 Seaton Blvd.
Hagåtña, GU 96910

Appearing for the Defendants-Appellants:
Ron Moroni, *Esq.*
Tarpley & Moroni LLP
Ste. 402 Bank of Hawaii Bldg.
124 W. Soledad Ave.
Hagåtña, GU 96910

BEFORE: FRANCES M. TYDINGCO-GATEWOOD, Presiding Justice;[1] ROBERT J. TORRES, JR., Associate Justice; MIGUEL DEMAPAN, Designated Justice.

**TORRES, J.:**

[1]     Defendants-Appellants Cyfred Ltd., Enrique Baza, Jr., and Eleanor B. Perez (collectively "Cyfred") appeal from a Superior Court Judgment on Count I of a Verified Complaint for rescission, damages and injunctive relief filed by Plaintiffs-Appellees Gerardo L. and Mariefe M. Abalos ("the Abaloses"). The Judgment provided there was no just reason to delay the entry of a final judgment pursuant to Rule 54(b) of the Guam Rules of Civil Procedure and directed that judgment be entered on a previous Decision and Order granting partial summary judgment in favor of the Abaloses. The trial court held in its Decision and Order that the Abaloses had an immediate right to rescind the Land Purchase Agreement between themselves and Cyfred, based on Cyfred's failure to make water, power and sewer available as required by the Land Purchase Agreement and Warranty Deed. The trial court also ruled that the defenses raised by Cyfred, including those defenses available under common law, were not applicable to a claim for rescission made in accordance with 21 GCA § 60314(f) (2005). Therefore, the Abaloses were entitled to recover from Cyfred the sum of $18,375.60, less $7,000.00, to be deposited with the trial court to pay off a lien in the amount of approximately $2,225.53 and to secure payment for the costs of restoration which the Abaloses were required to complete, estimated at $4,050.00. Any amount remaining would then be returned to the Abaloses. We find no error in the Superior Court's granting of partial summary judgment on the basis that the Abaloses were entitled to rescission of the contract pursuant to 21 GCA § 60314(f). We further find that the trial court did not abuse its discretion in certifying its Decision and Order in accordance with Rule 54(b). Accordingly, we affirm.

---

[1]  Associate Justice Frances M. Tydingco-Gatewood, as the senior member of the panel, was designated Presiding Justice. Miguel S. Demapan, Chief Justice of the CNMI, sits as Designated Justice.

## I.

[2]     In November 1999, the Abaloses agreed to purchase from Cyfred Lot Number 8 containing 929 square meters in the Gill-Baza Subdivision located in Yigo, Guam for $42,500.00. The Abaloses paid $950.00 as a down payment and Cyfred agreed to finance the balance of the purchase price over 10 years at 12% interest. According to allegations made in the Verified Complaint, the subdivision map for the Gill-Baza Subdivision filed at the Department of Land Management contains this note: Mr. Baza and Ms. Perez as owners would be "responsible for placement and construction of the SEWER, WATER, FIRE HYDRANTS, POWER and TELEPHONE" for the subdivision and "that the issuance of a certificate of title based on any sale or transfer" of the subdivided land was "contingent upon the completion of construction of the above infrastructures (sic). . . " Appellant's Excerpts of Record ("ER"), Tab 1 ¶ 10 (Verified Complaint). Moreover, "any contract of sale, deed or other similar documents given to any purchaser or transferee shall give notice of this condition." ER Tab 1 ¶ 10 (Verified Complaint). The Land Purchase Agreement between the Abaloses and Cyfred did provide that the "SELLER agrees to install an EIGHT INCH (8") sewer line and SIX INCH (6") water line on the public utility and access easement fronting the subject property. . ." ER Tab 1, Ex. A (Land Purchase Agreement). Cyfred conveyed the property to the Abaloses by Warranty Deed in December 1999, and at the same time a Promissory Note and Mortgage were executed in favor of Cyfred for the balance of the purchase price. ER Tab 1 (Verified Complaint ¶ 10.)[2]

[3]     The water, power and sewer lines were not connected to the property when the Warranty Deed was delivered and recorded. Nonetheless, the Abaloses took possession of the property, built a house and continued to make payments under the promissory note, though many payments were

---

[2]  The Warranty Deed states in pertinent part that the Grantee acknowledges "water and power (electricity) are immediately available on the premises or within one hundred (100) feet from the premises." Appellant's Excerpts of Record ("ER") Tab 1 Ex. B (Warranty Deed).

alleged to be late. The Abaloses arranged for power to be brought to the property in 2001, for which they were later billed $5,684.17 by the government of Guam.

[4]    In February 2002, the Abaloses' retained counsel, Wayson Wong, wrote to Cyfred's representative, Francis Gill, demanding rescission of the transaction based on "breaches of promise and warranties, pursuant to 21 GCA § 60314[3] and other laws." ER Tab 1, Ex. C (Letter of Feb. 5, 2002). The Abaloses also requested payment of $33,199.12, which represented the total amount of: (i) their $900.00 down payment; (ii) the $800.00 in escrow charges; (iii) the 26 monthly mortgage payments in the monthly amount of $596.12; (iv) the $15,000.00 in house construction costs; and (v) $1,000.00 in attorney fees and costs. In exchange for this payment, the Abaloses offered to quitclaim the property back to Cyfred. Receiving no reply, Mr. Wong wrote again seeking a response. Cyfred never responded to the letters.

[5]    Later that month, Cyfred issued a Notice of Default, Demand for Payment and Election to Sell advising the Abaloses that because of a breach of their obligations under the mortgage, a private sale of the lot would be conducted. The Abaloses' attorney wrote to Gill again in March 2002, this time requesting payment of $34,699.12 for damages, increased attorneys fees and costs upon receipt of which the Abaloses would quitclaim the property back to Cyfred. The Abaloses also alleged a violation of the Deceptive Trade Practices- Consumer Protection Act, codified in Chapter 32 of Title

---

3    Title 21 GCA § 60314 (2005) provides in pertinent part:

(f) If the transferor agrees to make water or power or sewer available to the property, such shall be stated in the document transferring an interest in the property, and such hookup shall be made available to the property by the transferor within one (1) year or such lesser time as may be agreed upon between transferor and transferee. Failure to make power or water or sewer available to the property within one (1) year or such lesser time as agreed upon will result in the transferee being allowed, at his option, to:

(1) rescind the transaction and recover all money paid, reasonable interest, and reasonable costs and attorney's fees; or

(2) recover from the transferor all amounts required to make the promised utilities available on the property, plus all related costs and reasonable attorney's fees.

Failure to put the promise to make a utility available in the document transferring an interest in the property shall not be a defense raised by the transferor.

5 of the Guam Code Annotated, and in an effort to comply with the prerequisite to filing a suit seeking damages under this chapter, the Abaloses gave thirty days written notice of their specific complaints and the amount of actual damages and expenses, including attorney fees.

[6]    More than thirty days later, the Abaloses filed the complaint. Count One of the Complaint was for rescission of the purchase transaction pursuant to 21 GCA § 60314 and recovery of damages, costs and attorneys fees.[4] Cyfred answered and counterclaimed, for the amounts owed on the promissory note, and for foreclosure of the mortgage.

[7]    The Abaloses then brought a motion for partial summary judgment on the issue of whether they were entitled to a rescission of the transaction pursuant to 21 GCA § 60314 and recovery of the monies paid for the lot together with reasonable costs and attorney fees.

[8]    After a hearing, the trial court granted the motion for partial summary judgment. The court held that the Abaloses were entitled to rescind under 21 GCA § 60314(f) and the common law defenses raised by Cyfred were "not applicable to claims arising under [section] 60314(f) because the purpose of the statute was to provide an immediate remedy to people in the same position as the [Abaloses]." ER Tab 8 (Decision and Order). The court ordered that the Abaloses could recover $18,375.60[5] less $7,000.00 to be deposited with the court to pay off a lien estimated at $2,225.53 and, to secure payment for the costs of restoration, estimated at $4,050.00. The Abaloses were responsible for completing the restoration and any remaining balance after all expenses were paid from the deposit would be returned to them. The Abaloses were also entitled to recover reasonable attorneys fees and costs.

---

[4] In Counts Two and Three, the Abaloses sought damages for false statements and deceptive practices in violation of the Deceptive Trade Practices-Consumer Protection Law, codified in Chapter 32 of 5 GCA, and sought to enjoin the foreclosure of their mortgage to Cyfred. Counts Four and Five of the Abaloses' complaint brought causes of action against the original owners of the un-subdivided land in Yigo, Enrique Baza Jr. and Eleanor B. Perez. Counts Two, Three, Four and Five have not been resolved and are not on appeal before this court.

[5] The amount initially claimed by the Abaloses as installment payments for the property was $17,199.12 but the payment history attached to the declaration of Bobbie Jo Reyes, office manager for Cyfred, filed in opposition to the motion for summary judgment showed the installment payments made were actually $16,675.60. The Abaloses agreed this latter amount was correct, which when added to the $900.00 down payment and the $800.00 in escrow charges, constituted the $18,735.60 ordered paid.

**[9]**     Shortly thereafter Cyfred filed a Motion for Clarification of Decision and Order indicating their intent to appeal the Decision and Order and requesting a determination that the Decision and Order granting partial summary judgment was not an enforceable judgment in the absence of a Rule 54(b) certification and entry of judgment pursuant to Rule 58. The Abaloses opposed the motion believing that, while the Decision and Order should be reduced to a judgment under Rule 58, there was no requirement that the partial summary judgment be certified pursuant to Rule 54(b) in order to be enforceable. The trial court did not initially rule on the motion for clarification but did issue a separate Partial Summary Judgment.

**[10]**     Approximately one year later, Cyfred filed a Motion to Dismiss Counts One, Four and Five of the Verified Complaint on the basis that 21 GCA § 60314 applied only to unregistered land, and the property purchased by the Abaloses was registered land. The trial judge did not rule on the Motion to Dismiss. Instead, referencing the previously filed Motion for Clarification of Decision and Order, he acknowledged that the trial court did not resolve all the claims pending in the action when it only granted partial summary judgment on Count One of the Abaloses' Verified Complaint. Accordingly, pursuant to Rule 54(b), the court found there was no just reason to delay the entry of a final judgment and directed final judgment be entered on Count One of the Abaloses complaint. Cyfred filed this appeal of the grant of the partial summary judgment and of the Rule 54(b) certification.

## II.

**[11]**     We have jurisdiction over this appeal from a final judgment pursuant to 48 U.S.C. § 1424-1(a)(2) (Westlaw through Pub. L. 109-2 ( 2005)), and 7 GCA §§ 3107(b) and 3108(b) (2005).

## III.

**[12]**     A trial court's decision granting summary judgment is renewed *de novo*. *Nat'l Union Fire Ins. Co. v. Guam Hous. & Urban Renewal Auth.*, 2003 Guam 19 ¶¶ 12-13; *Bank of Guam v. Flores*, 2004 Guam 25 ¶ 7.

[13] A trial court's Rule 54(b) certification as to one or more but fewer than all claims is to be upheld absent abuse of discretion. *Guam Hous. & Urban Renewal Auth v. Pacific Security Enter. Corp.*, 2004 Guam 22 ¶ 19 (citing *Davis v. Fendler*, 650 F.2d 1154 (9th Cir. 1981)). The "issuance of a Rule 54(b) order is a fairly routine act that is reversed only in the rarest instances." *Id.,* (quoting *James v. Price Stern Sloan, Inc.*, 283 F.3d 1064, 1068 n.6 (9th Cir. 2002)).

[14] "We review for an abuse of discretion the [trial] court's equitable orders. The [trial] court abuses its discretion when its equitable decision is based on an error of law or a clearly erroneous factual finding," *United States v. State of Wash.* 157 F.3d 630, 64 (9th Cir. 1998) (citing *Foster v. Skinner,* 70 F.3d 1084, 1087 (9th Cir.1995)).

[15] This court is also being asked to interpret whether the statutory right to rescind for failure of the transferor of real property to disclose if utilities are available, applies to registered land. The interpretation of a statute is reviewed *de novo. Blas v. Customs & Quarantine Agency*, 2000 Guam 12 ¶12; *Carlson v. Guam Tel. Auth.*, 2002 Guam 15 ¶ 16. Similarly, how a rescission can be effected is an interpretation of law and is therefore reviewed *de novo. Id.*

### IV.

[16] Cyfred argues on appeal that the trial court erred when it granted partial summary judgment on Count One of the Abaloses' Verified Complaint because there were genuine issues of material fact that precluded the grant of partial summary judgment, and 21 GCA § 60314 is applicable only to unregistered land. Cyfred also maintains that the trial court's entry of a final judgment pursuant to Rule 54(b) only as to Count One of the Verified Complaint was not proper as the requirements of Rule 54(b) were not met.

### A. Grant of Partial Summary Judgment

#### 1. Applicability of 21 GCA § 60314

[17] Cyfred initially maintains that the trial court erred in granting summary judgment because the requirement of 21 GCA § 60314 to inform of the availability of utilities is applicable only to unregistered land and the lot in question is registered land. We must first decide whether to even

consider this argument. The Abaloses assert that the applicability of the statute to the lot in question was improperly raised on appeal for the first time since Cyfred did not raise it during any part of the proceedings concerning the Abaloses' motion for partial summary judgment and none of the three recognized exceptions to the rule precluding appellate review of newly-raised issues apply in this case.[6]

[18]    The trial court's Decision and Order granting partial summary judgment in favor of the Abaloses did not address the applicability of section 60314 to registered land.[7] Nonetheless, Cyfred raised the issue before final judgment was entered, and in any event before the Rule 54(b) certification was granted. Therefore, while the trial judge never addressed the argument raised by Cyfred with respect to section 60314, Cyfred preserved the issue. The fact that Cyfred's argument was raised before judgment dissuades us from deeming it new on appeal. Even assuming the argument was raised for the first time on appeal, we still have the discretion to address the issue if it is purely one of law. *Dumaliang*, 2004 Guam 24 ¶ 12 n.1. Whether 21 GCA § 60314 applies to both registered and unregistered land meets this standard.

[19]    Although we have decided to consider Cyfred's argument that section 60314 does not apply to registered land, we do not find the argument persuasive. Title 21 GCA § 60311 (2005) found in Article 3 of Chapter 60 of the Guam Code Annotated, "Land Management," states that Article 3 will not be applied to "the registration and recording of real property which has been or which may be registered under the provisions of this Title otherwise known as the *Land Title Registration Act*." The preamble to section 60314, adopted by the Guam Legislature many years after the passage of

---

[6] An appellate court may recognize such exceptions as (1) when review is necessary to prevent a miscarriage of justice or to preserve the integrity of the judicial process; (2) when a change in law raises a new issue while an appeal is pending; or (3) when the issue is purely one of law. *Taniguchi-Ruth v. MDI Guam Corp.*, 2005 Guam 7 ¶ 80 (citing *Dumaliang v. Silan*, 2000 Guam 24 ¶ 12 n.1).

[7] On August 24, 2005, Plaintiffs-Appellees' counsel Wayson Wong filed a Notice to the Supreme Court of the Superior Court's Decision and Order Filed on August 23, 2005 Re: Matters Raised on Appeal. In it, counsel notifies this court of an order issued by the trial court on August 23, 2005. Counsel also provided a copy of the Decision and Order. The August 23, 2005 Decision and Order was not in the record at the time of this appeal and is therefore not addressed by this Opinion, unless incidentally.

section 60311, must however be read to require a transferor of both registered and unregistered land to inform a transferee of the availability of utilities, because the preamble specifically includes all property. Section 60314 states: "The Legislature finds that all buyers and transferees of real property should be aware of the availability of water and power on the land they buy or obtain at the time they purchase or obtain it." 21 GCA § 60314. The statute goes on to say that it will apply to all transfers of real property:

> (a) No document transferring an interest in real property, except for leases of less than one (1) year, shall be recorded until the transferee has signed and acknowledged a statement, which should be included in the document, indicating that the transferee is aware of the availability or non-availability of power and water on the transferred property.

21 GCA § 60314(a).

[20]    This law was added by section 14 of Guam Public Law 18-40 on July 9, 1986, long after the initial adoption of the Government Code § 13121 (adopted in 1952), which was the predecessor to section 60311 and we follow the guideline of statutory interpretation that the more specific governs over the more general. *Perez v. Gutierrez*, 2001 Guam 9 ¶ 19; 20 GCA § 15126 ("Particular expressions qualify those which are general."). Because the specific language of the statute that the availability of utilities must apply to all real property was enacted later in time, and is absolutely specific, Cyfred's argument must fail.[8] *See Guam v. Quinata*, 704 F.2d 1085, 1088(9th Cir. 1983) ("Where two statutes are in irreconcilable conflict, 'the later act to the extent of the conflict constitutes an implied repeal of the earlier act.'") (quoting *Posadas v. National City Bank*, 296 U.S. 497, 503 (1936)).

---

[8]  As an exhibit to their Memorandum in Opposition to Defendant Cyfred, Ltd.'s Motion to Dismiss, the Abaloses submitted a declaration from Joseph C. Santos, Chief Planner and Deputy Civil Registrar of Titles and Deputy Civil Recorder stating in part that the "Department of Land Management has always required that all real property on Guam, whether registered or unregistered, are subject to the required disclosures as set forth in 21 GCA § 60314." ER Tab 19 Ex. 2 (Decl. of Joseph C. Santos). The Abaloses contend that the construction of the statute given by Department of Land Management as the implementing agency should be given deference but while the record suggests it is the practice of the Department of Land Management to apply section 60314 to both registered and unregistered land, this practice does not rise to the level of rulemaking so no deference is appropriate. There is, however, at the same time no reason to disrupt it.

**[21]**    Cyfred's argument is further undermined by its own failure to comply with the provisions of Guam's land registration laws. The protection afforded by the land registration laws is limited: "To avail oneself of the protections of the Registration Law, a person must either be an initial registrant or a bona fide purchaser." *Pelowski v. Taitano*, 2000 Guam 34 ¶ 34. It is inconceivable that the Legislature intended to "protect" transferors of registered land from the requirement of informing transferees of the availability of utilities, but the transfer to the Abaloses has not yet been registered under the Land Registration Law. The record does not show that Cyfred even received a certificate of title for the property or that the transfer to the Abaloses was done in accordance with 21 GCA § 29149. Every transfer of registered land is deemed to be registered under the Land Registration Law "when the new certificate to the transferee shall have been marked as in the case of the first registration . . ." 21 GCA § 29133 (2005). This was not done here.

**[22]**    Finally, we take judicial notice of the fact that a significant portion of land on Guam is registered. *See* Guam. R. Evid. 201. In light of this, it makes no sense to interpret 21 GCA § 60314 as applying only to transferees of unregistered land. There is nothing in the legislative history to suggest that the law requiring notice to all buyers and transferees of real property of the availability of utilities was meant to apply only to unregistered land, thereby excluding a significant portion of other transferees from the benefits of such disclosures.

### 2.    Abaloses' option to rescind

**[23]**    Having determined that 21 GCA § 60314 applies to the property purchased by the Abaloses, we now evaluate whether the Abaloses are entitled to rescission of the transaction under this statute. The statute entitles buyers and transferees of real property to be aware of the availability or non-availability of water, power, or sewer when property is transferred. It also gives a transferee the option to rescind the transaction if the transferor agrees to make water, power or sewer available to the property and fails to do so within one year or such lesser time as agreed. 21 GCA § 60314(f).

**[24]**    Cyfred never disputed that it had agreed to provide utilities to the lot, and that such utilities were not provided within one year. In fact, during the hearing on the Motion for Summary

Judgment, counsel for Cyfred stated: "Cyfred concedes that the utilities were not put in there within a year despite their best efforts." ER Tab 5, at 2 (Opp'n to Mot. for Summ. J.); Tr. at 12 (Hr'g on Pl.'s Mot. for Partial Summ. J., Nov. 29, 2002). Therefore, the Abaloses had the option to either rescind the transaction and recover all monies paid, reasonable interest, and reasonable costs and attorney's fees; or recover from Cyfred all amounts required to make the promised utilities available on the property, plus all related costs and reasonable attorney's fees. The Abaloses opted to sue for rescission and the trial court granted summary judgment on this claim.

[25]     Cyfred argues that 20 GCA § 3242[9] and 18 GCA § 89204[10] are applicable to a claim for rescission brought pursuant to 21 GCA § 60314 and further that the Abaloses were not entitled to rescission because they were in default on the underlying contract, they did not act with due diligence in deciding to rescind, and they had not offered to restore Cyfred to the condition Cyfred would have been in but for the contract. Moreover, what the costs are to restore the property to status quo is a factual issue precluding summary judgment. The Abaloses assert that they are not bound by the provisions of 20 GCA § 3242 and 18 GCA § 89204 because these sections deal with an equitable rescission of a contract while 21 GCA § 60314 deals with a statutory rescission of a real estate transaction. The Abaloses submit the Legislature did not make the conditions set forth in these other rescission statutes applicable to actions for rescission brought under section 60314 and the omission of such conditions are "consistent with the [unique] remedial and penalty nature of that

---

[9] Title 20 GCA § 3242 (2005), entitled Rescinding Party to do Equity, states: "On adjudging the rescission of a contract, the court may require the party to whom such relief is granted to make any compensation to the other which justice may require."

[10] Title 18 GCA § 89204 (2005), entitled "How Rescission Effected," states:

Rescission, when not effected by consent, can be accomplished only by the use, on the part of the party rescinding, of reasonable diligence to comply with the following rules:

1. He must rescind promptly, upon discovering the facts which entitle him to rescind, if he is free from duress, menace, undue influence, or disability, and is aware of his right to rescind; and,

2. He must restore to the other party everything of value which he has received from him under the contract; or must offer to restore the same, upon condition that such party shall do likewise, unless the latter is unable or positively refuses to do so.

statute." ER Tab 7 at 2 (Pls.' Reply Mem. in Supp. of Pl.'s Mot. for Partial Summ. J.). Even if these sections did apply, the Abaloses contend the trial court was not required to order them to make any compensation under 20 GCA § 3242. Moreover, the Abaloses insist that they did rescind promptly and were prepared to restore and return the property to Cyfred in essentially the same condition it was sold. To support this offer, the Abaloses agreed that if 18 GCA § 89204 applied, the trial court could withhold $7,000.00 from the $18,735.60 paid for the lot which the Abaloses submitted would be enough to provide for restoration of the property and clearance of all judgments and tax liens.

[26]     The trial court did not specifically rule on the application of the other rescission statutes but held "common law defenses are not applicable to claims arising under 21 G.C.A. §60314(f) because the purpose of the statute was to provide an immediate remedy to people in the same position as the Plaintiffs." ER Tab 8 at 4 (Decision and Order). The court further stated "[t]o hold otherwise would mean that the buyer is left to the mercy of the seller and render the statutes meaningless," and that "the breach in this is incredibly critical to the fundamental use of the property as a residential lot." ER Tab 8 at 4 (Decision and Order). In considering the parties' respective arguments and the trial court's decision that common law defenses are not applicable, it will be beneficial to review the genesis of 20 GCA § 3242 and 18 GCA § 89204.

### 3.     Effecting a rescission

#### a.     rescission *in pais* and rescission by equitable decree

[27]     Title 20 GCA § 3242, formerly Guam Civil Code section 3408, is based on the now-repealed California Civil Code section 3408, while 18 GCA § 89204, formerly Guam Civil Code section 1691, is based on section 1691 of the former California Civil Code. Section 1691 rescission was known as "rescission *in pais*" and arises out of a unilateral rescission by one of the parties. *McCall v. Super. Ct.*, 36 P.2d 642, 643 (Cal. 1934). Section 89204 gives the court the equitable powers to equalize the positions of the parties to the rescission after one of the parties has already effected a rescission. On the other hand, section 3242 is known as "rescission by equitable decree" or

"rescission by judicial decree" whereby a party seeks the court to order a rescission, and make such other orders as the court may find appropriate. *See McCall,* 36 P.2d. 642; *Zeller v. Milligan,* 236 P. 349, 351 (Cal. Dist. Ct. App. 1925). The distinction between a rescission *in pais* and a rescission by equitable decree is that the former is an action seeking to enforce a rescission that took place outside the courtroom, while the latter is an action seeking a court decree of rescission. In a rescission *in pais*, the contract no longer exists, it having been terminated by the prior rescission; while in an equitable rescission, the contract continues to exist until set aside by the court's decree. There were substantive and procedural differences between the two distinct methods for obtaining rescissionary relief and the considerable confusion in the law governing rescissions stems in part from the litigants', and sometimes courts' failure, to recognize this distinction. Although we have explained the distinction between a rescission *in pais* and a rescission by equitable decree, we must still decide whether these previously existing rules governing rescission codified in 20 GCA § 3242 or 18 GCA § 89204 may still be applicable to the Abaloses' option to rescind found in 21 GCA § 60314, a subsequently-enacted statutory provision.

[28]    A California appellate court examined a similar issue when it analyzed a subsequently-enacted law allowing an insurance company to rescind contracts (section 650 of the California Insurance Code, incorporated into California's insurance code in 1935 after the enactment of both section 1691 (rescission *in pais*) and section 3408 (rescission by equitable decree)). The court in *Resure, Inc. v. Superior Court,* 49 Cal. Rptr. 2d 354 (Ct. App. 1996), addressed whether the specialized section on insurance rescission was subject to the California laws regarding rescission *in pais* or by equitable decree in order to determine the rights of the parties following the rescission. The court examined the history of rescission law in California and confirmed that:

> [T]here were significant distinctions between two types of "rescission" recognized by the courts and the Legislature at the time section 650 was enacted. Rescission accomplished by the unilateral act of one of the parties to the contract without the assistance of the court, referred to as "rescission in pais," was governed by sections 1689 through 1691 of the Civil Code. [citations omitted]

* * *

> The other type, accomplished by an action in equity for rescission, was referred to as "equitable" or "judicial" rescission and was governed by former sections 3406 through 3408 of the Civil Code. [citation omitted]

*Id.* at 359.

**[29]** The court in *Resure* recognized that the requirements of sections 3408 and 1691 remained applicable to later-created rights of rescission by statute, stating that "section 1691 of the Civil Code, enacted in 1872, and established by common law, already required notice and restoration or offer to restore benefits prior to rescinding any contract, whether by way of equitable rescission or rescission in pais. [Section 650] did nothing to alter or enhance these procedures." *Id.* at 360. We believe the court's analysis in *Resure* is sound, and there is no reason why the existing requirements under Guam's rescission statute should not apply. Therefore, the same requirements apply to the Abaloses' right to rescind under 21 GCA § 60314, that is, they must comply with the existing requirements of the type of rescission they seek to effectuate.

**[30]** In this case, the Abaloses are not seeking non-judicial (or *in pais*) rescission, as they did not seek to effectuate their rescission without the assistance of the trial court. An *in pais* rescission would have been accomplished by giving notice of the election to rescind and tendering the restoration of any value received by the party seeking to rescind. Cal.Civ. Code § 1691(2) (1933); *Bennett v. Super. Ct.*, 21 P.2d 946, 949 (1933) ("Plaintiffs by their act extinguished the contract, and there was no occasion to invoke the equity side of the court.").

**[31]** Instead, the Abaloses have brought suit in the trial court seeking a decree of rescission and thus, the rescission statute that applies is 20 GCA § 3242. Because the Abaloses are seeking equitable rescission, there is not the same necessity of tendering to restore status quo prior to restoration. With rescission by equitable decree, while there is a "general rule that notice and offer to restore benefits has to be given," these steps are not required by statute, and "the rule [is] subject to numerous exceptions," including where without any fault on plaintiff's part, plaintiff was not able to offer to restore. *Resure, Inc.*, 49 Cal. Rptr. 2d at 359; *see also Zeller*, 236 P. at 353 (stating the exceptions to the general rule requiring notice and offer to restore: "(1) Where the plaintiff is

entitled to retain that which he has received; (2) where the rights of the defendant can be fully protected by the decree, or where an accounting is necessary to determine the relative rights of the parties; (3) where, without any fault of the plaintiff, peculiar complications have arisen which make it impossible for plaintiff to offer fall (sic) restoration."). *Accord Stegeman v. Vandeventer*, 135 P.2d 186, 191 (Cal. Ct. App. 1943) ("Two of these exceptions [to the rule of notice and offer to restore] need be noted here. One of these is where, without fault of the plaintiff, circumstances have arisen that make it impossible to effect a full rescission, and the other is where the rights of the defendant can be fully protected by the decree of a court of equity.").[11]

[32]    There is no question that the Abaloses have complied with the requirements of a rescission under 20 GCA §3242. An offer to restore has not only been made (if by nothing else, by virtue of the filing of the complaint), but has also been ordered by the judge. There is no defect in the manner in which the Abaloses have exercised their right to rescind under 20 GCA § 3242.

### b.    Common Law Defenses

[33]    Cyfred further argues, however, that there were factual issues regarding the affirmative defenses raised in their answer which preclude the grant of summary judgment on Count One for rescission. More specifically, the Abaloses were not entitled to rescind because they did not act with due diligence in deciding to rescind and they were in default on the underlying contract. Moreover, the costs of restoration of the parties to status quo are a factual issue. Cyfred argues that because the trial judge did not rule on these defenses, summary judgment was inappropriate. We disagree.

### i.    due diligence

[34]    The judge ruled specifically that the Abaloses did not act with dilatoriness: "It matters not that Plaintiffs waited approximately two years after Cyfred should have installed the water, power and sewer lines especially since Plaintiffs made numerous requests to have the utilities installed and

---

[11] Moreover, there came to be recognition in these California precursor statutes that when "notice of rescission has not otherwise been given or an offer to restore the benefits received under the contract has not otherwise been made, the service of a pleading in an action or proceeding that seeks relief based on rescission shall be deemed to be such notice or offer or both." Cal. Civ. Code § 1691 (2006) (language added to the *in pais* statute in 1961).

probably received many assurances that Cyfred was in the process of getting it done." ER Tab 8 at 4 (Decision and Order). The trial court did not err here. Where there are negotiations with, and representations by, the other party which causes the rescinding party to delay giving a notice of rescission, the delay in giving notice is excused. *Williams v. Marshall*, 235 P.2d 372, 379 (Cal. 1951) (15-month delay by purchasers in serving notice of rescission held excusable where the parties continued to negotiate from the time the buyer discovered the falsity of the seller's representations until the time he gave the notice). A buyer who delays in exercising its right to rescission will not be precluded from exercising its right to rescind; where the seller makes repeated promises but never complies with them, the seller should not be permitted the benefit of their buyer's delay as a defense: "A delay in rescinding . . . should not be available as a defense to an action for rescission, for the defaulting party by his belated attempt to comply with the fraudulent representations has momentarily lulled his adversary into inactivity." *Hunt v. L.M. Field, Inc.* 262 P. 730, 731(Cal. 1928). Therefore, a delay in rescinding a contract on the ground of repeated failed promises is not available to Cyfred as a defense in this action for rescission.

### ii.    default as a defense

**[35]**    As to the assertion that the Abaloses' default affects their right to rescind under 21 GCA § 60314, it is true that generally, the right to rescind a contract rests only with the party who is without default. *Nelson v. Spence*, 6 Cal. Rptr. 312, 316 (Dist. Ct. App. 1960). However, courts have refused to follow this principle in cases, such as this one, where the default by the rescinding party is unrelated to the acts that give rise to the rescission. In this case, the Abaloses' default is purportedly failure to make timely payments. Cyfred has failed to install utilities on the property. If the Abaloses had made timely payments, it would not have affected Cyfred's ability to bring utilities to the property, as clearly the failure to bring utilities to the property was not directly dependent on the $596.12 that the Abaloses paid every month to Cyfred.

**[36]**    "[W]here the rescinding party's default is so related to the obligation as to which the other party has failed that it in some manner affects the performance thereof, or the duty of the other party

to perform, then the rule [that a defaulting party cannot rescind] is applicable. . . " *Eade v. Reich*, 7 P.2d 1043, 1046 (Cal. Dist. Ct. App. 1932). "Where, however, the delinquency of the rescinding party has no relation to the other's obligation in respect of which the right of rescission is asserted, it will not preclude rescission." *Integrated, Inc. v. Alec Fergusson Elec. Contractors*, 58 Cal. Rptr. 503, 510 (Ct. App. 1967). Said another way:

> Where the respective obligations upon which each party is in default are dependent and concurrent, the justice and necessity of the rule is obvious. So, also, in cases where the rescinding party's default is so related to the obligation in which the other party has failed that it in some manner affects the performance thereof, or the duty of the other party to perform, the rule is plainly applicable. But no case which has been cited applies this rule to a delinquency of the rescinding party which has no relation to the obligation of the other party, in respect of which the right of rescission is claimed, and which does not excuse, prevent, or interfere with his performance of that obligation, or affect or impair his duty to perform it.

*American-Hawaiian Eng'g & Constr. Co. v. Butler*, 133 P. 280, 288 (Cal. 1913). In this case, the Complaint was filed in April 2002. The Abaloses made eleven payments in 2000, but each payment was assessed a late fee of $50.00, resulting in each payment being applied less and less to their principal and interest. ER Tab 6 Ex. A (Decl. in Opp. to Motion for Summ. J.). By the time the Abaloses made their twelfth payment in 2001 of $596.12, they had incurred $600 in late fees for the year 2000, in addition to late interest charges.[12] The Abaloses made eleven more monthly payments in 2001, some on time, and some up to 29 days late. Every month, the Abaloses incurred the late fee of $50, and additional interest. Again in 2002, the Abaloses made monthly payments, up to the time of rescission.

[37] In this case, we cannot say that the Abaloses' performance in making these payments was directly related to Cyfred's ability to bring utilities to the property. Therefore, we decline to apply the rule that the Abaloses cannot rescind because of their alleged default which did not substantially affect Cyfred's ability to comply with the terms of the Land Purchase Agreement. Furthermore, one court has held that a buyer can still rescind despite making late installment payments, if the buyer

---

[12] The payment which was due on December 28, 2000 was made on January 2, 2001, so the Abaloses made every payment due for that year, plus late fees.

is induced by a land seller to continue to make payments even when the seller has not held up their end of the bargain. *Kent v. Clark*, 128 P.2d 868, 871 (Cal. 1942). In fact, the right of rescission is available to a buyer in default. In *Graham v. Los Angeles First Nat. Trust & Savings Bank*, 43 P.2d 543 (Cal. 1935), the vendor represented that improvements would be made to property. The court found that the vendor's representation as to the improvements to the property should have been stated as a belief rather than a fact. *Id.* at 545. The court held that the representations were fraudulent and allowed the buyer to rescind. "The fact that appellants were in default at the time of the giving of the notice of rescission . . . is . . . immaterial. . . . [T]he rule that a person in default cannot rescind has no application to an action based upon the ground that the contract was induced by fraudulent representations." *Id.* at 547 (citation omitted).

[38]     Moreover, Cyfred did not even raise the issue of default until after the Abaloses sought to rescind the contract. The documents presented by Cyfred do not clearly establish that there is a default in any event. The purported "default" does not bear up under scrutiny and is not a defense to this rescission.

### iii.     sufficiency of offer to restore

[39]     Cyfred also contends that the trial court erred in addressing only the amount Cyfred had to pay the Abaloses to effect rescission, but in not otherwise ordering restoration of the *status quo ante*. Cyfred believes that the Abaloses are not entitled to rescission because they are unwilling or unable to restore Cyfred to their former position. We find this argument unpersuasive because under the rescission at issue in this case, restoration of the *status quo ante* is not the objective.

[40]     While motions for summary judgment are reviewed *de novo*, a court's fashioning of equitable relief is reviewed for abuse of discretion. *United States v. Wash.* 157 F.3d 630, 642(9th Cir. 1998). "A [trial] court enjoys broad equitable powers, and its choice of equitable remedies is reviewed for an abuse of discretion." *Labor/Community Strategy Center v. Los Angeles County Metro. Transp. Auth.*, 263 F.3d 1041, 1048 (9th Cir. 2001) (citing *Stone v. City and County of San Francisco*, 968 F.2d 850, 861 (9th Cir.1992)); *Kasper v. Board of Election Comm'rs*, 814 F.2d 332,

339 (7th Cir. 1987); *see also Grosz-Salomon v. Paul Revere Life Ins. Co.*, 237 F.3d 1154, 1163(9th Cir. 2001) ("When a district court's remedy takes the form of an equitable order, we review that order for an abuse of discretion.") (footnote omitted).

[41]     The trial court therefore had broad authority to do equity in this case, and is given broad discretion in fashioning the conditions of the grant of rescission. We are guided by the principles found in California courts facing rescission decrees, that equity does not dictate return to the status quo. Numerous cases are in accord, none more eloquent than *Arthur v. Graham*, 222 P. 371 (Cal. Dist. Ct. App. 1923), which stated,

> [T]he authorities are somewhat numerous to the effect that, where defendant has been guilty of fraudulent acts or conduct which have induced the agreement between him and the plaintiff, courts of equity are not so much concerned with decreeing that defendant receive back the identical property with which he parted in the transaction as they are in declaring that his nefarious practices shall result in no damage to the plaintiff. Persons who attempt to secure profits by deceitful means may not confidently [expect]  to receive special consideration from courts of equity. In such a case, as a result of the rescission by the court, nothing is exacted from the plaintiff out of particular regard for the condition of the defendant. If his fraudulent acts have resulted in disastrous financial consequences to himself, it is no one's fault but his own, and he must sustain the necessary inconveniences thereby entailed (citations omitted).

*Id.* at 373. This case reflects the strong message that parties who "attempt to secure profits by deceitful means may not [necessarily be returned to status quo ante or] confidently [expect] to receive special consideration from courts of equity." *Id.*

[42]     Similarly in *Lobdell v. Miller*, 250 P.2d 357 (Cal. Dist. Ct. App. 1952), the court states, "[w]here it is possible to bring about substantial justice by adjusting the equities between the parties, the fact that the *status quo* cannot be exactly reproduced will not preclude the plaintiffs from equitable relief." *Id.* at 367.  Furthermore, "the powers of a court of equity are so broad as to adequately meet the exigencies of the case and render a decree which will justly determine the rights of the respective parties." *Id.* (citing *Arthur*, 222 P. 371).

[43]     The California case of *Utemark v. Samuel*, 257 P.2d 656 (Cal. Ct. App. 1953), echoes this principle.  In that case, the party sought to rescind a land purchase agreement under rescission by

equitable decree (California Civil Code section 3408, equivalent to Guam's section 3242)[13], as the Abaloses are doing in this case, because the seller of the land did not live up to his bargain. *Id.* at 658. While the purchaser sought rescission, the seller in response sought a return to status quo. The court noted that the point of rescission by equitable decree was not status quo; "it was the plaintiffs, not the defendants, who were entitled to be restored to their former position. This is the purpose of rescission." *Id.* at 659. The appellate court used this logic in its conclusion: "Equity is solicitous that the innocent party who rescinds be not made to suffer. It exercises no such solicitude for the wrongdoer who has brought about a situation in which one or the other must lose." *Id.* In this way, the court noted that sitting as an equity court, the court may "adjust the equities between the parties" but found that it was "error not to allow plaintiffs judgment for the amount found to have been expended by them, since it must be presumed that they acted in good faith." *Id.*

[44]   We follow this precedent that restoration of the status quo is not the benchmark by which we measure whether the trial court abused its discretion in granting the equitable remedy of rescission. The trial court in the Abaloses' case did not err when it ordered rescission without restoring the parties to absolute status quo. Under the equitable rescission action, the trial court was not as concerned with making Cyfred whole, as it was with declaring that the practice of selling lots with promised utilities and then not delivering the utilities to be "nefarious." *Arthur*, 222 P. at 373.

[45]   We believe the trial court did not abuse its discretion in fashioning the relief ordered. The Decision and Order of the trial court adequately addresses the removal of the structure, the abolition

---

[13] The California Legislature has since repealed the two different forms of rescission, the former rescission *in pais* found in section 1691 and rescission by equitable decree, found in section 3408. This change is discussed in the California case of *Runyan v. Paific Air Industries, Inc.*, 466 P.2d 682 (Cal. 1970), where the California Supreme Court acknowledged that the law formerly recognized two different forms of rescission, but that 1961legislation "abolished the action to obtain court rescission and left only an action to obtain relief based upon a party effected rescission." *Id.* at 689 (quoting *Paularena v. Super. Ct.*, 42 Cal. Rptr. 366, 370 (1965). This change, notes the *Runyan* court, reflects the recommendation of the California Law Revision Commission that while "all such actions will be to [e]nforce a rescission, the right of the parties . . . will be determined by the nature of the substantive relief requested and not by the form of the complaint." *Id.* at 688. The Law Revision Report also made clear that "the court may grant any other relief that is appropriate under the circumstances. . ." *Id.* While Guam has not consolidated its rescission laws, California principles guide this court in recognizing the flexibility a trial judge has in granting relief has under either of these technical forms of rescission.

of the lien, and the return of the property, and furthermore, there were no questions of fact on these issues which precluded the entry of partial summary judgment on the rescission claim. The trial court ordered the sale rescinded and the purchase money returned to the Abaloses – the court ordered $7,000.00 of the payments to be returned to the Abaloses to be deposited with the court to pay off the lien and secure the payment for the costs of restoration. The judge stated: "[Cyfred is] not entitled to what the reasonable value would be of restoring the property. [Cyfred] is entitled to the *restored* property." Tr. at 19 (Pl.'s Mot. for Partial Summ. J., Nov. 29, 2002) (emphasis added). There is a difference. The Abaloses always agreed to return the land in the condition in which it was found. The trial judge simply allowed the rescission under 21 GCA § 60314 to take place, but still held the Abaloses "responsible for completing restoration." ER Tab 21 at 1 (Judgment). Cyfred argues their estimate for removal of the structure is $20,000.00 and this alone creates a question of fact. We disagree. If the Abaloses' $7,000.00 is insufficient to restore the property to its original condition, then according to the trial judge's direction that "[Cyfred] is entitled to restored property" and "the Abaloses will be responsible for completing the restoration," and the Abaloses will have to do whatever is necessary to restore the land. Tr. at 19 (Pl.'s Mot. for Partial Summ. J., Nov. 29, 2002).

[46] If the $7,000.00 is sufficient to cover the restoration and to pay off the lien, Cyfred would not be able to take the windfall: "If [Mr. Abalos] has a valid contractor willing to restore the property for $2000, you're not going to get anymore than that no matter how many contractors you bring in . . . ." ER Tab 22 at 19-20 (Hr'g on Pls.' Mot. for Partial Summ. J., Nov. 29, 2002). "The remaining balance with the Court after all expenses have been paid will be returned to the [Abaloses]." ER Tab 21 at 1 (Judgment).

[47] We also do not find persuasive Cyfred's argument that the trial court erred because "[t]he judgment does not order the deed or the mortgage cancelled." Appellant's Brief at 36 (July 26, 2004). The Partial Summary Judgment orders partial payment to the Abaloses, consistent with the trial court's Decision and Order of December 19, 2002. We find it implicit in the trial court's ruling

that the Abaloses will not retain title to the land and the mortgage will be extinguished once restoration is complete. We also find it reasonable to expect that the Abaloses will retain possession of the property during restoration so that they could complete the tasks the trial court ordered. Anything other than this result is absurd. An argument leading to an absurd result will not be adopted. *See People v. Flores*, 2004 Guam 18 ¶ 18.

[48] Cyfred also complains that the Judgment "does not explain what will happen if the Abaloses do not restore the property, or if the money deposited in the court is insufficient to complete the job, and if the Abaloses squander the rest of the money." Appellants' Brief at 36 (July 26, 2002). However, the Judgment itself clearly states that the Abaloses "will be responsible for completing the restoration." ER Tab 21 at 1 (Judgment). A judgment is not invalid simply because it does not provide for what will happen if a party does not comply with it.

[49] Cyfred also argues that the trial court erred in failing to first make the factual determination of rental value of the premises, and then in not ordering that rental value to be paid to Cyfred. The Abaloses counter with the argument that they are entitled to interest on their payments to Cyfred, and this must have gone into the trial court's consideration when no rent was ordered because it was presumably offset against the interest due the Abaloses.

[50] We believe that the trial court correctly did not order the Abaloses to make any rental payments to Cyfred for the time the Abaloses were in possession of the property. No rental payments[14] are referenced in the trial court's Decision and Order, but the trial court also did not award the Abaloses the value of their improvements estimated at $15,000.00 in Mr. Wong's February 5, 2002 letter, and the court did not allow the Abaloses to recover any interest on the

---

[14] Our conclusion is buttressed by the fact that the rental value for land that does not conform to Guam subdivision law is not only difficult to ascertain, but morally questionable. The court in *Pugh v. Holmes*, 405 A.2d 897, 909 (Pa. 1979), noted the irony of requiring a fair market value of property that does not comply with housing B or in this case subdivision B law: "As one author phrased it 'it seems questionable whether in assessing damages in this situation cognizance should be taken of a 'fair' market value of noncomplying housing -- such a market could be regarded as an illegal 'black market' existing only by violation of law.'" *Id.* at 909 (quoting *Note*, 84 Harv. L. Rev. 729, 737 (1974)).

payments made to Cyfred.[15]  The court's decision appears equitable.  The powers of this judge sitting in equity are broad, and we will only disturb on a showing that there was an abuse of discretion.  We see none.

[51]    Therefore, the issue whether either 18 GCA § 89204 or 20 GCA § 3242 or any law defenses raised by Cyfred legally precluded the entry of a judgment of rescission is answered in the negative. Under *Lobdell, Arthur,* and *Utemark,* the court is not bound by law to restore status quo, but merely to restore equity.

[52]    The trial court in this case has ordered that the property needs to be "restored."  *See* Tr. at 19 (Pl.'s Mot. for Partial Summ. J., Nov. 29, 2002).  More importantly, the trial court held that the Abaloses were entitled to immediate relief.  The trial court did not abuse its discretion in fashioning the relief set forth its Decision and Order and there were no questions of material fact which precluded the entry of partial summary judgment on the rescission claim.

### 4.    Exclusiveness of rescission as a remedy

[53]    Finally, Cyfred argues that the claims for damages by the Abaloses are inconsistent with a claim for relief by rescission, and "[o]ne cannot rescind for breach of [c]ontract and at the same time recover damages for the breach."  Reply Brief, at 2 (Sept. 8, 2004).  Although the scope of relief available to enforce an out of court (*in pais*) rescission were invariably restricted to recovery of the consideration given by the rescinding party and not damages, a variety of cases involving actions in equity to obtain judicial rescission have sustained monetary awards including consequential damages given in conjunction with restitution.  This was recognized in *Runyan v. Pacific Air*

---

[15]  The Abaloses seek interest from the date of the installment payments, but we note that interest, if granted, would only be proper if calculated from the date of notice of the rescission. This is because interest should be calculated from a date of ascertainment. The law awards interest only from the time money is due, and nothing was due to the purchaser until notice of rescission was given. *Shirreffs v. Alta Canyada Corp.*, 48 P.2d 55, 62-63 (Cal. Dist. Ct. App. 1935); *see also Leaf v. Phil Rauch, Inc.*, 120 Cal. Rptr. 749, 752 (Cal. Ct. App. 1975) ("In an action based upon rescission of a contract, the plaintiffs right to repayment of moneys paid under the contract is fixed by the rescission, and interest on the moneys paid thus is recoverable from the date of rescission." (citations omitted)). The court in *Shirreffs* further stated: "The action here instituted by respondents was not based upon any provision of their contract of purchase," but on rescission, so the date of interest starts on the date of rescission. *Shirreffs*, 48 P.2d at 63.

*Industries*, 466 P.2d 682 (Cal. 1970), where the California Supreme Court noted that an important difference between rescission *in pais* (prior California Civil Code section 1691) and judicial rescission (prior California Civil Code section 3408) is that in the case of the latter, consequential damages were entertained and often awarded. The court in *Runyan* said, "under pre-1961 law in actions in equity to obtain a judicial rescission, monetary awards including those of consequential damages, given in conjunction with restitution, have been sustained in a variety of contexts." *Id.* at 690. The *Runyan* court goes on to provide a wide representation of cases interpreting § 3408 to allow for recovery of consequential damages at the same time as rescinding the contract.[16]

[54]    We have already pointed out that the Abaloses have brought an action for rescission by equitable decree. Under the facts and circumstances of this case, we believe that the trial court may, in addition to restitution, award money damages or such other relief justice may require. *See Bank of America Nat. Trust & Sav. Ass'n v. Greenback*, 219 P.2d 814, 827 (Cal. Dist. Ct. App. 1950). Additionally, the claims that remain against Cyfred, Counts Two and Three, involve remedies under the Guam Deceptive Trade Practice-Consumer Protection Act. *See generally* 5 GCA Chapter 32 (2005). Count Two is for false statements and damages for such under 5 GCA § 32201, and seeks

---

[16] The following are just some of the proliferation of cases cited in *Runyan v. Pacific Air Industries*, 466 P.2d 682, 690 (Cal. 1970), where the court considered damages along with a prayer for equitable rescission:

*See, e.g., Kent v. Clark*, 128 P.2d 868 (Cal. 1942), *Mosher v. Lack*, 181 P. 813 (Cal. 1919); *see also McDonald v. Mission View Homestead Ass'n*, 51 Cal. 210, 211 (1876); *Shermaster v. Cal.Home Bldg. Loan Co.*, 181 P. 409 (Cal. 1919). An award for the value of improvements was also available in some cases where the vendee rescinded because of a failure of consideration. (*See, e.g., Barrows v. Harter*, 130 P. 1050 (Cal. 1913), *Garvey v. Lashells*, 91 P. 498 (1907), *Fountain v. Semi-Tropic Land & Water Co.*, 34 P. 497 (Cal. 1893), *Worley v. Nethercott*, 27 P. 767 (Cal. 1891); *Gates v. Mac-Lean*, 11 P. 489 (Cal. 1886); *Haynes v. White*, 55 Cal. 38 (Cal. 1880). *See also Owen v. Pomona Land & Water Co.* 64 P. 253 (Cal 1901). Similarly, the rescinding vendee was entitled to monetary compensation for any payments by him to reduce the amount of a mortgage imposed upon the property by the vendor. *Arthur v. Graham*, 222 P. 371 (Cal App. 1923). Where the vendor rescinded, the vendee was liable for the rental value of the land while he had possession. *Austin v. Burns*, 35 P.2d 142 (Cal. 1934) When a contract for the sale of personal property was rescinded, a *Austin v. Burns*, rescinding vendor was also entitled to an award for the reasonable value of the use of the property by the vendee *Vice v. Thacker*, 180 P.2d 4 (1947); or for its cost of replacement where the specific property could not be returned. *Swan v. Talbot*, 94 P. 238 (Cal. 1907). *United Motor Etc. Co. v. Callander*, 157 P. 561 (Cal. 1916). Finally, a monetary award was proper where the court conditioned the decree of rescission upon a payment by the rescinding party to a third party whose rights were affected by the contract. *Stewart v. Crowley*, 3 P.2d 562 (Cal. 1931).    —

damages which are not limited to compensatory damages. Count Two specifically seeks recovery for false, misleading or deceptive trade practices; as the Abaloses had sought damages for emotional distress, attorney fees and costs, and treble exemplary or punitive damages for a knowing violation. ERTab ER1 (Verified Complaint). Count Three seeks injunctive relief under 5 GCA § 32119, "Injunctive Relief," to restrain or prevent violations of the Deceptive Trade Practices-Consumer Protection Act. *See* 5 GCA Chapter 32.

[55]     The Guam Legislature has decided that the remedies sought in the Guam Deceptive Trade Practices-Consumer Protection Act are not exclusive of the remedy of rescission. Section 32105 of this act, entitled "Remedies Not Exclusive," specifically states that "[t]he provisions of this chapter are not exclusive. The remedies specified in this chapter for violation of any section of this chapter or for conduct proscribed by any section of this chapter shall be in addition to any other procedures or remedies for any violation or wrongful conduct provided for in any law." 5 GCA § 32105 (a). Moreover, the provisions of the Guam Deceptive Trade Practices-Consumer Protection Act are to be liberally construed in favor of the consumer. Section 32108 (a), entitled "Construction and Application, states: "Liberal Construction. This chapter shall be liberally construed in favor of the consumer . . . ." 5 GCA § 32108(a) (2005). Further, section 32104 entitled, "Waivers: Public Policy" states that a "waiver by a consumer of the provisions of this chapter . . . is contrary to public policy and is unenforceable and void." 5 GCA § 32104 (2005).

[56]     Other states have interpreted their own Deceptive Trade Practices Acts as providing non-exclusive remedies. For instance, in *Nottingham v. General American Commc'n Corp.*, 811 F.2d 873, 879 (5th Cir. 1987), the court allowed a deceptive trade practices suit to go forward at the same time that the consumer was rescinding the contract. The court recognized that "Texas courts permit DTPA [Deceptive Trade Practices Act] plaintiffs to recover both damages and rescission of future obligations in order to compensate plaintiffs for the full damages caused by deceptive trade practices." *Id.* at 879 (citations omitted). Guam law confirms this, as 5 GCA § 32105(a) provides: "If any act or practice proscribed by this chapter is also the basis for a cause of action in common

law or a violation of another statute, the person may assert the common law or statutory cause of action under the procedures and with the remedies applicable thereto." 5 GCA § 32105(a) (2005).

[57]    The issues presented in Counts Two and Three are not inconsistent with a claim for rescission and the trial court did not err in granting summary judgment on Count One, even though the other claims were pending.

[58]    The trial court correctly ruled that as a matter of law, the Abaloses were entitled to immediately rescind under 21 GCA § 60314. The delay by the Abaloses in moving to rescind, the late payments on their mortgage to Cyfred, and the sufficiency of their offer to restore did not constitute sufficient legal defenses to the rescission. Similarly, the Abaloses' remaining claims for relief are not inconsistent with the trial court's grant of relief by rescission, but we still must review whether the trial court should have certified the entry of a final judgment as to the rescission when there were other claims for relief presented.

## B.    GRCP 54(b) Certification

[59]    Rule 54(b)[17] allows a trial court to direct the entry of a final judgment as to one or more but fewer than all of the claims or parties when there is an express determination that there is no just reason for delay, and upon an express direction for the entry of judgment. A trial court's Rule 54(b) certification as to one or more but fewer than all claims is to be upheld absent abuse of discretion. *Guam Hous. and Urban Renewal Auth.*, 2004 Guam 22 ¶ 19.

---

[17] Rule 54. Judgments: Costs.
      * * *

   (b) Judgment Upon Multiple Claims or Involving Multiple Parties. When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay, and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties, shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

Guam R. Civ. P. 54.                                                            –

**[60]**     In deciding if Rule 54(b) certification is proper, we analyze whether "[t]he trial court . . . properly considered the costs and risks of multiple proceedings and the policy with respect to judicial efficiency and further determined that they were outweighed by the need for an early and separate judgment as to [appellants'] cross-claims." *Id.* ¶ 21.

**[61]**     The Judgment entered by the trial court "finds no just reason to delay the entry of a final judgment and directs that judgment [shall] be entered in this matter as to count one of Plaintiff's complaint." ER Tab 21 at 1 (Judgment). Cyfred argues that this statement insufficiently fulfills the requirement of a determination that there is no just reason for delay. In support of this, Cyfred cites *Frank Briscoe Co., Inc. v. Morrison-Knudsen Co.*, 776 F.2d. 1414 (9th Cir. 1985), which requires the court to make specific findings setting forth the reasons for its order. The court in that case stated that "[a] similarity of legal or factual issues will weigh heavily against entry of judgment under the rule, and in such cases a Rule 54(b) order will be proper only where necessary to avoid a harsh and unjust result, documented by further and specific findings." *Id.* at 1416. Cyfred states that the remaining counts and counterclaims left to litigate in this case require proof of the same facts as those relevant to the rescission claim and creates a risk of inconsistent results. Under *Morrison-Knudsen*, Cyfred maintains the trial court's certification should not be upheld because the trial court did not make specific findings setting forth the reason for its offer.

**[62]**     In *Curtiss-Wright Corp. v. General Electric Co.*, 446 U.S. 1 (1980), the United States Supreme Court examined what is required for appellate review of a Rule 54(b) certification. The Court stated that in reviewing for abuse of discretion, appellate courts "scrutinize the district court's evaluation of such factors as [the] interrelationship of the claims so as to prevent piecemeal appeals in cases which should be reviewed only as single units." *Id.* at 10.    Ultimately, however, the appellate court must defer to the trial court's discretion, rather than to re-assess the factors that go into the decision: "[T]he proper role of the court of appeals is not to reweigh the equities or reassess the facts but to make sure that the conclusions derived from those weighings and assessments are juridically sound and supported by the record." *Id.* The trial court must initially determine whether

the judgment for which certification is sought is final and whether there is any reason for delay. The trial court in the case *sub judice* made this determination but the question is the degree to which the reasons for certification must be articulated in the Judgment.

[63]     While the *Morrison-Knudsen* case cited by Cyfred required specification of the reasons for Rule 54(b) certification, this case authority does not stand as the test under which this court should review the trial court's Rule 54(b) certification. The Ninth Circuit later modified its holding in *Morrison-Knudsen*, when it stated in *W.L. Gore & Assoc., Inc. v. Int'l Medical Prosthetics Research Assoc., Inc.*, 975 F.2d 858 (9th Cir. 1992), that the *Morrison-Knudsen* requirement to specify any findings and reasons for certifying the appeal was not necessary when "[t]he posture of the case and the factors justifying entry of judgment are apparent from the materials" in the record before the reviewing court. *Id.* at 865 (quotation omitted). The Ninth Circuit in that case expressly rejected the requirement of articulating the specific Rule 54(b) reasons in the record, relying on an earlier case of *Alcan Aluminium Corp. v. Carlsberg Financial Corp.*, 689 F.2d 815, 817 (9th Cir. 1982), in which the Ninth Circuit stated that "*Morrison-Knudsen* findings are not required where 'the posture of the case is readily obtainable from the briefs and record.'" *W.L. Gore & Assoc., Inc.*, 975 F.2d at 865 (quoting *Alcan*, 689 F.2d at 817).

[64]     The Ninth Circuit is not alone in its approach; while adhering to the requirement that the proper language must be used, other circuits also allow a more flexible approach in articulating the reasons for the holding.

[65]     "[W]e have held that less than technical compliance will suffice when neither party is prejudiced by the lack of formality." *Alexander v. Chicago Park Dist.*, 773 F.2d 850, 855 (7th Cir. 1985) (citations omitted). "[W]hile the judge did not make a finding of finality in the very words of the rule, he did so in substantial effect, staying the operation of his order for the very purpose of this appeal. His intent being so clear, it would be bootless to send it back for a better formulation of the appeal formula." *Republic of Italy v. De Angelis,* 206 F.2d 121, 132 (2nd Cir. 1953) (Clark, J., concurring). In *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794 (9th Cir. 1991), the Ninth Circuit upheld

a Rule 54(b) certification even though the remaining claims would require proof of the same facts involved in the resolved claims. *Id.* at 798.

**[66]** Thus, not every case strictly requires articulated grounds. Many cases take a flexible approach to the requirement of findings. Indeed, some cases require simply that the judge "state specifically that he or she has decided that there is no just reason for delay." *Berckeley Inv. Group, Ltd. v. Colkitt*, 259 F.3d 135, 142 n.7 (3rd Cir. 2001) (quotation omitted).

**[67]** The trial judge in this case has stated specifically in the Judgment that he has decided that there is no just reason for delay, and although the specific reasons for this finding have not been articulated in the Judgment itself, we choose to adopt the more flexible approach and allow the circumstances of the conclusion to come through the record. Therefore, while there was no express statement of the specific reasons to avoid further delay, this court concurs with the court in *Gore*, and other courts that have rejected a technical approach. We hold where a trial court has expressly found that there is no just reason for delay, the reasons for the Rule 54(b) certification may be obtainable from the briefs and the record.

**[68]** In this case, the trial judge granted Rule 54(b) certification on the partial summary judgment granting rescission, while all the other counts and counterclaims remained. Cyfred argues that it was error for the trial court to grant Rule 54(b) certification because the counts are inconsistent, stating specifically that "awarding both actual damages and restoration of consideration paid are inconsistent remedies." Appellants' Brief at 19 (July 26, 2004). Cyfred argues that rescission is mutually exclusive from the remedy of damages under the contract, a general proposition with which this court has no argument. However, as discussed *supra*, the remaining counts of the Abaloses against Cyfred are for remedies provided for in the Guam Deceptive Trade Practices-Consumer Protection Act, which by its very terms are not exclusive. *See generally* 5 GCA Chapter 32. The rescission count can clearly be enforced separately from the remaining counts and counterclaims, which is a factor this court has relied on in determining whether Rule 54(b) certification is appropriate. *DeVera v. Chen*, 2006 Guam 1 ¶ 21 (holding that whether the

judgments can be enforced separately is a factor to be considered); *see also Guam Hous. & Urban Renewal Auth.*, 2004 Guam 22 ¶ 22. In addition, this court takes into account that this is to be a bench trial, and there is no danger of inconsistent verdicts. Further, there were pressing equitable reasons to allow rescission while the other claims remain pending. Although partial summary judgment has already been granted on the rescission claim, the case was not moving forward quickly, and the Abaloses needed the money previously ordered to be paid by Cyfred to obtain alternative housing. This forced a series of filings with the trial court, among them a motion to clarify by Cyfred and resulted, albeit indirectly, in the trial court's grant of Rule 54(b) certification.[18]

[69] From this analysis, it is clear that there was no just reason for delay, and the trial judge's certification, which is entitled to a high degree of deference, is supported by the evidence. In the words of the Ninth Circuit, "[t]he posture of the case and the factors justifying entry of judgment are apparent from the materials before us." *W.L. Gore & Assoc., Inc.*, 975 F.2d at 865.

[70] The trial judge properly considered the costs to the Abaloses of multiple proceedings, the policies with respect to judicial efficiency and exercised the discretion given to him to grant Rule 54(b) certification. There is no compelling reason to disturb his decision. Moreover, if the trial court failed to properly support its reasons for the determination, the most that this court would do is dismiss the appeal with leave to seek another appeal should the reasons for the certification be properly laid out by the lower court. 10 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure *Civil* 3d § 2660 (2004). For these reasons, in all respects, it is appropriate to defer to the trial court's ruling on this issue.

## IV.

[71] We hold that the trial court did not err in its granting partial summary judgment on the Abaloses' claim to rescind the Land Purchase Agreement between themselves and Cyfred. The trial court also did not abuse its discretion when holding that there was no just reason for delay and

---

[18] Rule 54(b) does not prescribe any procedure for obtaining a certificate. Although the normal procedure is to request such certification by motion, a trial court may consider the matter *sua sponte*. *Arimizu v. Financial Sec. Ins. Co., Inc.*, 679 P.2d 627, 633 (Haw. Ct. App. 1984).

*Abalos v. Cyfred Ltd.*, Opinion

therefore in granting certification of its Decision and Order pursuant to Rule 54(b) of the Guam

Rules of Civil Procedure. Consequently, we **AFFIRM**.