## IN THE SUPERIOR COURT
## OF GUAM

KINI B. SANANAP, IOWANA M.
SANANAP, and THE 40 LOT OWNERS
(OF THE 33 OTHER GILL-BAZA
SUBDIVISION LOTS),

                  Plaintiffs,

vs.

CYFRED, LTD., A Guam Corporation,
ENRIQUE BAZA, JR. (deceased),
ELEANOR B. PEREZ, DONGBU
INSURANCE COMPANY and DOE
DEFENDANTS 1 - 10,

                  Defendants.

CIVIL CASE NO. CV1448-02

**FINDINGS OF FACT AND
CONCLUSIONS OF LAW - PART II**
(Motion for Stay, Preliminary Injunction,...)

### INTRODUCTION

This matter came before the Honorable Anita A. Sukola on November 3, 2006. In this matter, Plaintiffs moved the Court for a preliminary injunction, for a stay, and to set aside previous foreclosure sales. Attorney Wayson Wong was present for Plaintiffs while attorney Curtis C. Van de Veld was present for Defendant. Due to time constraints and the need to issue a decision on certain matters immediately, the Court divided the issues and decided on the motion in two parts; Part I was decided on November 4, 2006 and dealt with the Stay. Part II will be decided in this Findings of Fact and Conclusions of Law and deals with the Preliminary Injunction and Setting Aside previous foreclosures sales.

### FINDINGS OF FACT

Taking all memoranda, declarations, arguments, and evidence into consideration, the Court finds by a preponderance of the evidence that:

1. In 1999, Landowners Mr. Baza and Ms. Perez applied to the Guam Department of Land Management for permission to convert their property (Lot 10102-16 located in Yigo, Guam) into an agricultural subdivision. (Complaint at 2, ¶ 9).

2. On March 15, 1999, the Guam Department of Land Management granted permission for the conversion but only on the condition that Landowners Mr. Baza and Ms. Perez

1

"C"

acknowledged the obligation of providing infrastructure for sewer, water, fire hydrant, power, and telephone. Landowners Mr. Baza and Ms. Perez acknowledged their obligation by signing the condition statement on the Agricultural Subdivision Survey Map of Tract 63004.

3. Some time after that in 1999, Landowners Mr. Baza and Ms. Perez transferred the titles of Tract 63004 to Defendant. This property became known as the Gill-Baza Subdivision. There were no sewer or water lines in place when Defendant acquired the Gill-Baza Subdivision.

4. On November 8, 1999, Plaintiffs Sananaps signed a Land Purchase Agreement for Lot No. 24, Block No. 1, Tract No. 63004. In the Land Purchase Agreement, Defendant agreed "[T]o install a eight (8) [inch] sewer line and six (6) inch water line on the public utility and access easement fronting the subject property. . . ."

5. On December 30, 1999, Plaintiffs Sananaps signed a promissory note and a mortgage. The Mortgage was for a loan to pay for the Property. The lender in the Mortgage was Defendant.

6. On January 3, 2000, Defendant issued a warranty deed to Plaintiffs Sananaps.

7. In May 2000 and October 2000, Plaintiffs Sananaps failed to make mortgage payments. (Cyfred Financial Record Admitted as Exhibit A on May 24, 2006).

8. As of November 8, 2000 when 21 G.C.A. § 60314 required Defendant to install a sewer line, Plaintiffs Sananaps had been late on their mortgage payments nine times. (Cyfred Financial Record Admitted as Exhibit A on May 24, 2006).

9. The other Plaintiffs purchased lots at the Gill-Baza Subdivision. Some purchased their lots around the same time as Plaintiffs Sananaps and some purchased their lots later on.

10. In March 2002, Plaintiffs Sananaps stopped making mortgage payments altogether. (Cyfred Financial Record Admitted as Exhibit A on May 24, 2006).

11. On April 26, 2002, Attorney Wong wrote to Defendant indicating Plaintiffs Sananaps would not make any more payments because of breaches by Defendant.

12. After each Plaintiff purchased lots (since there are multiple Plaintiffs there is not an exact date), attorney Wong advised Plaintiffs to not pay the monthly mortgage payments to Defendant because of Defendant's failure to install a sewer line.

13. On January 17, 2005, Santiago T. Wai's and Dolores Wai's lot was sold in a

2

foreclosure sale. (Opposition at 8).

14. On January 23, 2006, Raymond Martin's lot was sold in a foreclosure sale.

15. On May 5, 2006, the Court permitted joinder in a Decision and Order.

16. On May 5, 2006, Eram Thank You, Lawrence Ruweday, Rosenta Ifraim, and Mikina Sowas all had their Contracts of Sale terminated. (Opposition at 7).

17. On May 23, 2006, Kinasiro Albert, Amy Lippwe, Paul Kargon, and Martina Reumau all had their Contracts of Sale terminated. (Opposition at 7).

18. In its Findings of Fact and Conclusions of Law on June 12, 2006 for the first Summary Judgment and in its Findings of Fact and Conclusions of Law on August 1, 2006 for the second Summary Judgment, the Court awarded a money judgment to certain Plaintiffs for Defendant's failure to install a sewer line.

19. On September 13, 2006, T'nel Mori had her Contract of Sale terminated. (Opposition at 7).

20. On October 18, 2006, 10 lots were sold in a foreclosure sale. (Exhibit 2 to Motion).

21. On October 25, 2006, Plaintiffs filed a Motion for Various Stays, Preliminary Injunction, and Set Aside.

22. In this Motion, Plaintiffs incorporated all pleadings and evidence from the second Motion for TRO. (Memorandum at 3).

23. On November 3, 2006, this motion was heard before the Court.

24. On November 4, 2006, the Court issued its Findings of Fact and Conclusions of Law Part I.

25. In Part I, the Court issued a stay against all outside foreclosures under Rule 62(h). There had been some argument that any kind of stay or restriction at this point would have been a violation of Rule 60(b) or Law-of-the-Case Doctrine (being contrary to the October 2, 2006 decision against a TRO) so the Court explained that there would be manifest injustice without a stay - a justification for a change in a court's past decisions. (Findings of Fact and Conclusions of Law at 6). The Court felt that since foreclosure claims were made in the Counterclaims of Defendant's Amended Answer (Amended Answer and Counterclaims at ¶ 8), those claims

3

should be heard only in front of this Court and in connection with the sewer line matter. The Court said,

> In regard to stays under Rule 62(h), the Court feels that the overall judgment is threatened by outside foreclosures. If Plaintiffs are foreclosed on and their lots are sold, they will lose their claim to the judgment all together. Perhaps the law will permit such foreclosure, but that does not mean the judgment should be totally wiped aside. The Court wants the foreclosures and the judgment to be attached together, possibly off-setting each other. The Court also wants to allow Plaintiffs to make their two claims - 1) that the Land Purchase Agreement, by the contract theory of incorporation by reference, included the Mortgage terms; and 2) that the separate transactions were all part of the same transaction under 18 G.C.A. § 87108.

26. In Part I at ¶ 15, the Court stated, "15. The Court considers the hearing for the Motion to Stay, the Motion for Preliminary Injunction, and the Motion to Set Aside complete and will not take any more memoranda. The Court will issue its Findings of Fact and Conclusions of Law Part II in due time." (Findings of Fact and Conclusions of Law Part I ¶ 15).

27. Having already issued a stay, the Court now must determine whether it will issue a preliminary injunction and whether it will set aside past outside foreclosures.

28. Plaintiffs claim a preliminary injunction under 5 G.C.A. § 32119 would be warranted because Defendant "misled and deceived" Plaintiffs into thinking they had good title and because Defendant "misled and deceived" Plaintiffs into thinking they were responsible for installing a sewer line. (Memorandum at 8). Plaintiffs argue that a preliminary injunction is needed to restrict damages which these violations have caused. The damages claimed are: Plaintiffs being made homeless by the evictions, Plaintiffs becoming financially devastated, and Plaintiffs sustaining emotional distress. (Memorandum at 8). Plaintiffs claim that Defendant's reference to the sewer line condition on the Agricultural Subdivision Survey Map ("ASSM") was too indirect. (Memorandum at 9).

29. Plaintiffs claim a preliminary injunction under Rule 65(a) would be warranted because there is irreparable harm and a likelihood of success on the merits. Plaintiffs cited to The Hongkong and Shanghai Banking Corporation, Ltd. v. Kallingal, 2005 Guam 13. They claim that there is a likelihood of success because case law shows that a buyer-mortgagor can stop paying his mortgage when the seller-mortgagee breaches first. They cite to Sjoberg v. Kravick, 759 P.2d

4

966 (Mont. 1988). (Memorandum at 12).

30. Plaintiffs claim past foreclosures should be set aside for violation of foreclosure procedures. (Memorandum at 12). They cite to BFP v. Resolution Trust Corp., 511 U.S. 531, 541 (1994) and Mitchell v. Sherrell, 11 Tenn. App. 210, 219 (1929). (Memorandum at 13 and 14). They say lots at the foreclosure sale were sold at $1,000.00 when bids were made for $35,000.00 and $50,000.00. Plaintiffs claim this was manifestly unfair. (Memorandum at 15).

31. Defendant counters that it did disclose its duty to install the sewer system. Defendant says there is no urgency or emergency here considering that Plaintiffs have waited so long to bring these restrictive motions to stop foreclosures. Defendant cites to Beiros v. Nicola, 857 F.Supp. 445 (1994).

32. Defendant, as for setting aside, says that attorney Wong made bids on all 10 lots on October 18, 2006 - 9 of which were conditional and one of which was unconditional. (Opposition at 6). Defendant argues that the conditional bids are not allowed by law. (Opposition at 6). Defendant claims that with all the lots already sold, the issue is moot and there is nothing that can be done. Defendant cites to Cotton v. First National Bank, 235 Ga. 511 (1975).

33. The Court finds as follows for each Plaintiff:

### i. Sinfiano S. Soni

Defendant claims it never sold property at the Gill-Baza Subdivision to Plaintiff Soni. (Opposition at 7). The Warranty Deed suggests Defendant is right. (Exhibit 1 to Plaintiff's List of Plaintiffs). Thus, the Court has no authority to order anything as to this Plaintiff's property.

### ii. Divina Vaiau

Defendant claims it never sold property at the Gill-Baza Subdivision to Plaintiff Vaiau. (Opposition at 7). The Warranty Deed suggests Defendant is right. (Exhibit 8 to Plaintiff's List of Plaintiffs). Thus, the Court has no authority to order anything as to this Plaintiff's property.

### iii. Fine Indonesio

Plaintiff Indonesio's lot was foreclosed on October 18, 2006. (Van de Veld Declaration at 2). Thus, the preliminary injunction issue is moot but the Court will make a decision on setting aside the foreclosure.

5

#### iv. Serena Tiron Tithmed

Plaintiff Tithmed signed a Contract of Sale in July, 2005. (Attachments to Wong's Declaration on June 20, 2006; Exhibit 9 to Plaintiff's List of Plaintiffs). It appears this Contract of Sale was terminated on October 13, 2006.

#### v. David Waathdad

Plaintiff Waathdad's lot was foreclosed on October 18, 2006. (Van de Veld Declaration at 1). Thus, the preliminary injunction issue is moot but the Court will make a decision on setting aside the foreclosure.

#### vi. Stanley Yanfag

Plaintiff Yanfag's lot was assigned to a party outside of this case and the Court has no authority to restrict a foreclosure sale. (Opposition at 6). The Court has no authority to order anything as to this Plaintiff's property.

#### vii. Raymond Martin

Defendant claims it foreclosed on Plaintiff Martin's lot on January 23, 2006. (Opposition at 8). Thus, the preliminary injunction issue is moot but the Court will make a decision on setting aside the foreclosure.

#### viii. Rainis Rangi

Plaintiff Rangi's lot was foreclosed on October 18, 2006. (Van de Veld Declaration at 2). Thus, the preliminary injunction issue is moot but the Court will make a decision on setting aside the foreclosure.

#### ix. Lynn Otiwii

The record (Attachments to Property Holders Declaration on June 5, 2006) shows Plaintiff Otiwii signed a Contract of Sale on September 18, 2004. The record indicates this Contract of Sale was terminated on May 23, 2006.

#### x. Gabriel Baffel and Angelina Gurungin

Defendant claims it never sold property at the Gill-Baza Subdivision to Plaintiffs Baffel and Gurungin. (Opposition at 7). The Warranty Deed from Flowco (Exhibit 6 to Plaintiffs' List of Plaintiffs on October 16, 2006) suggests Defendant is right. Thus, the Court has no authority

6

Case 1:07-cv-00024    Document 93-2    Filed 04/29/2008    Page 6 of 50

to order anything as to this Plaintiff's property.

### xi. Tnel Mori

Defendant claims Plaintiff Mori's Contract of Sale was terminated on September 13, 2006. (Opposition at 7).

### xii. Alex Ruben

Plaintiff Ruben's lot was foreclosed on October 18, 2006. (Van de Veld Declaration at 2). Thus, the preliminary injunction issue is moot but the Court will make a decision on setting aside the foreclosure.

### xiii. Rose Ifram

Defendant claims Plaintiff Ifram's Contract of Sale was terminated on May 5, 2006. (Opposition at 7).

### xiv. Anis Sino

Plaintiff Sino's lot was foreclosed on October 18, 2006. (Van de Veld Declaration at 2). Thus, the preliminary injunction issue is moot but the Court will make a decision on setting aside the foreclosure.

### xv. Margaret Yagatina and Junior Yowl

Plaintiffs received their interest by Warranty Deed from Defendant in January, 2004. (Exhibit 21 to Plaintiff's List of Plaintiffs). They are protected by the stay.

### xvi. Harper Kimiena

Plaintiff Harper's lot was assigned to a party outside of this case and the Court has no authority to restrict a foreclosure sale. (Opposition at 6).

### xvii. Smither Ezra

Plaintiff Ezra's lot was foreclosed on October 18, 2006. (Van de Veld Declaration at 2). Thus, the preliminary injunction issue is moot but the Court will make a decision on setting aside the foreclosure.

### xviii. John Lignaw

Plaintiff Lignaw's lot was foreclosed on October 18, 2006. (Van de Veld Declaration at 2). Thus, the preliminary injunction issue is moot but the Court will make a decision on setting

7

aside the foreclosure.

### xix. Joshua Peter and Daisy Narruhn

Plaintiffs Peter's and Narruhn's lot was foreclosed on October 18, 2006. (Van de Veld Declaration at 2). Thus, the preliminary injunction issue is moot but the Court will make a decision on setting aside the foreclosure.

### xx. Marsala D. Martin

Plaintiff Martin received her interest by Warranty Deed from Defendant in November, 2000. (Exhibit 18 to Plaintiff's List of Plaintiffs). It appears there may have been a foreclosure sale already.

### xxi. Christopher Nero

Plaintiff Nero received his interest by Warranty Deed from Defendant in February, 2003. (Attachments to Wong's Declaration on June 20, 2006). He is protected by the stay.

### xxii. Alejo J. Untalan and Redsa Menas

The Court was unable to locate information in regard to these Plaintiffs.

### xxiii. Albert Kinasira

Defendant claims Plaintiff Kinasira's Contract of Sale was terminated on May 23, 2006. (Opposition at 7).

### xxiv. Santiago T. Wai and Dolores O. Wai

Defendant claims it terminated Plaintiffs Wai's Contract of Sale. (Opposition at 8).

### xxv. Martin Sontag

Defendant claims it never sold Lot 9, block 3 at the Gill-Baza Subdivision to Plaintiff Sontag. (Opposition at 7). The Warranty Deed on record suggests otherwise. (Exhibit 27 to Plaintiff's List of Plaintiffs).

As for Lot 8, block 3, Plaintiff Sontag's lot was foreclosed on October 18, 2006. (Foreclosure Attachment to Motion for Preliminary Injunction). Thus, the preliminary injunction issue is moot but the Court will make a decision on setting aside the foreclosure.

### xxvi. Renspar B. Alpert and Lasda R. Alpert

Plaintiffs Alpert's lot was assigned to a party outside of this case and the Court has no

8

authority to restrict a foreclosure sale. (Opposition at 6).

### xxvii. Justina Hartman

Plaintiff Hartman's lot was assigned to a party outside of this case and the Court has no authority to restrict a foreclosure sale. (Opposition at 6).

### xxviii. Sammy K. Sharep

Plaintiff Sharep received his interest by Warranty Deed from Defendant in October, 2002. (Attachments to Property Holders Declaration on June 5, 2006). He is protected by the stay.

### xxix. Daria Kosam Tongan

Plaintiff Tongan received his interest by Contract of Sale from Defendant on January 30, 2005. (Attachments to Wong's Declaration on June 20, 2006). This Contract of Sale was terminated May 23, 2006.

### xxx. Jennifer Topacio

Plaintiff Topacio's lot was foreclosed on October 18, 2006. (Van de Veld Declaration at 2). Thus, the preliminary injunction issue is moot but the Court will make a decision on setting aside the foreclosure.

### xxxi. Paul Kargon and Martina Rueman

Defendant claims Plaintiff Kargon's and Plaintiff Rueman's Contract of Sale was terminated on May 23, 2006. (Opposition at 7).

### xxxii. Margaret L. Fanoway

Plaintiff Fanoway received her interest by Warranty Deed from Defendant in 2003. (Exhibit 32 to Plaintiff's List of Plaintiffs). She is protected by the stay.

### xxx. Kini and Iowana Sananap

Plaintiffs Sananaps are protected by the stay.

## CONCLUSIONS OF LAW

### I. Preliminary Injunction

The Court has already issued a stay against outside foreclosures. The scope of that stay is very limited; it does not restrict Defendant from conducting unlawful detainer actions, it does not restrict Defendant from conducting foreclosures before this Court, and it does not restrict

9

Defendant from terminating Contracts of Sale. In that same motion, Plaintiffs also sought a preliminary injunction. The preliminary injunction sought is founded on two sources - the Deceptive Trade Practices and Consumer Protection Act ("DTPCPA") and Civil Procedure Rule 65(a). Below is a discussion of the DTPCPA preliminary injunction request and the Rule 65(a) preliminary injunction request.

### A. Injunction Under the DTPCPA

5 G.C.A. § 32119 governs restraining orders and injunctions in the DTPCPA. 5 G.C.A. § 32119 states:

> The court may issue any person . . . temporary restraining orders, and temporary or permanent injunctions *to restrain and prevent violations of this chapter* and such injunctive relief shall be issued without bond. The complaining party need not show that there is no remedy available at law and need not show irreparable damage if injunctive relief is not granted, *but need only show that a violation of this chapter has occurred or is likely to occur.*

5 G.C.A. § 32119 (emphasis added). For a preliminary injunction, according to 5 G.C.A. § 32119, Plaintiffs are required to show that the DTPCPA has been violated or is likely to be violated. The purpose appears to be to restrain and prevent violations of the DTPCPA.

Plaintiffs claim that Defendant violated 5 G.C.A. § 32201 of the DTPCPA. 5 G.C.A. § 32201(a) states:

> *False, misleading, or deceptive acts or practices,* including but not limited to those listed in this chapter, are hereby declared unlawful and *are subject to action by . . . any person as permitted pursuant to this chapter or other provisions of Guam law.* A violation consisting of any act prohibited by this title is in itself actionable, and may be the basis for damages, rescission, or equitable relief.

5 G.C.A. § 32201(a) (emphasis added). Anything that would mislead a consumer to his detriment or that would induce him to buy services to his detriment is defined as a false, misleading, or deceptive practice. 5 G.C.A. § 32201(b) ("The term false, misleading, or deceptive acts or practices includes . . . (29) Doing any other act which is prohibited by the laws of Guam to mislead a consumer to his detriment or to induce another person to buy or sell goods or services to such person's detriment."). Thus, if Plaintiffs were misled to their detriment or if they were induced to buy lots at the Gill-Baza Subdivision to their detriment, there has been a violation of 5

10

G.C.A. § 32201 and a preliminary injunction could be issued under 5 G.C.A. § 32119 (as long as that injunction would prevent or restrain that violation).

Plaintiffs say they have been misled to their detriment for two reasons: 1) because Defendant "misled and deceived" Plaintiffs into thinking they had good title and 2) because Defendant "misled and deceived" Plaintiffs into thinking Plaintiffs were responsible for installing a sewer line. (Memorandum at 8).

### 1. Good Title

Plaintiffs believe they are currently without "good title" because of a condition placed on the Gill-Baza Subdivision by the Guam Department of Land Management in 1999. In the Agricultural Subdivision Survey Map ("ASSM") it says:

> We, the undersigned Owners of Tract 63004... acknowledge that we are responsible for placement and construction of the sewer, water..., further that *the issuance of a certificate of title based on any sale or transfer of land subdivided hereunder shall be contingent upon the completion of construction* of the above infrastructures, and that this condition shall run with the land, and that any contract of sale, deed, or other similar documents given any purchaser or transferee shall give notice of this condition.

(Exhibit ) (emphasis added). Since a sewer line has not been installed, Plaintiffs seem to think that a certificate of title could not have been issued to Plaintiffs.

However, in the Court's view, Plaintiffs have failed to offer anything more than speculation as to the status of their title. The record does not show that anybody has challenged Plaintiffs' rights of ownership and it does not appear at this moment that Plaintiffs, even in a worst-case scenario, will lose claim to their properties. Thus, there has been no detriment. Moreover, an injunction would not serve its intended purpose; an injunction would not "restrain and prevent" the conveyance of bad title. If Plaintiffs' title is truly void, an injunction would do nothing at this point.

For these reasons, as to Plaintiffs' title, the Court does not find that there has been a 5 G.C.A. § 32201 violation which would warrant a preliminary injunction under the DTPCPA.

### 2. Responsibility for Installing the Sewer Line

Plaintiffs also claim that Defendant failed to notify most Plaintiffs of Defendant's duty to

11

install a sewer line.

The Court is not aware of any statute that requires a land developer to provide a sewer line or give notice of such requirement. See generally 21 G.C.A. 60314. There are statutes that require a disclosure of the availability of water and power (21 G.C.A. § 60314(a); 21 G.C.A. § 60314(c); 21 G.C.A. § 60314(e)) and there are statutes that require a sewer line in one year if one is promised (21 G.C.A. § 60314(f)), but the Court did not find any provisions requiring Defendant to lay down a sewer line or promise to lay one down. Plaintiffs instead argue that it was the ASSM and not 21 G.C.A. § 60314 that obligated Defendant to provide a sewer line and make a disclosure. The ASSM says:

> *We*, the undersigned Owners of Tract 63004... *acknowledge that we are responsible for placement and construction of the sewer*, water..., further that the issuance of a certificate of title based on any sale or transfer of land subdivided hereunder shall be contingent upon the completion of construction of the above infrastructures, *and that this condition shall run with the land, and that any contract of sale, deed, or other similar documents given any purchaser or transferee shall give notice of this condition*.

(Exhibit ) (emphasis added).

The Court finds that the ASSM clearly shows that the Guam Department of Land Management ordered Defendant to construct a sewer line and give notice of this order. But there are problems with Plaintiffs' argument and claim. The ASSM is not a law[1] and 5 G.C.A. § 32201(b)(29) requires a violation of a Guam law. 5 G.C.A. § 32201(b)(29) ("The term false, misleading, or deceptive acts or practices includes . . . (29) Doing *any other act which is prohibited by the laws of Guam. . . .*") (emphasis added). Some of the other provisions in 5 G.C.A. § 32201(b) do not require a violation of the law, but Plaintiffs never cited to those other provisions.[2]

---

[1] The reason why the Court has not referred to the ASSM in this case as of yet is that the Court is not sure how to treat the ASSM. Is it a contract? Why? If it is, how do any of the obligations in the ASSM transfer to Plaintiffs? Under what legal theories do Plaintiffs have a right to seek recourse for any violation of the ASSM?

[2] Plaintiffs never delineated an exact provision in its Motion for Preliminary Injunction, but did incorporate all arguments in that motion made in the second Motion for TRO. (Memorandum at 3). The second Motion for TRO focused on 5 G.C.A. § 32201(b)(29). (Motion at 4).

12

Also, the Court does not feel that a preliminary injunction would "restrain and prevent" the claimed DTPCPA violation here - that Defendant failed to advise Plaintiffs that it had a duty to provide a sewer line - and the Court does not feel there was a real detriment. From what the Court can see, it appears most Plaintiffs knew, in spite of the lack of notice, about Defendant's duty anyways.

For these reasons, as to Defendant's duty to inform Plaintiffs about the sewer line, the Court does not find that there has been a 5 G.C.A. § 32201 violation which would warrant a preliminary injunction under the DTPCPA.

### B. Injunction Under Rule 65(a)

For a preliminary injunction under Rule 65(a), the movant must show an irreparable injury and a likelihood of success on the merits. Hongkong Shanghai Bank Corp v. Kallingal, 2005 Guam 13, ¶ 18. In the first Motion for TRO, the Court had several doubts as to Plaintiffs' likelihood of success on the merits so the Court denied the TRO request. The Court explicitly laid out every one of its concerns. (Decision and Order on October 5, 2006). One of those concerns - that the Mortgages, Promissory Notes, and Land Purchase Agreements were separate contracts and not a single transaction in which the duty to pay and the duty to install a sewer line were tied together - drew a significant amount of attention after the decision. In the current motion, Plaintiffs reveal an improved argument on that particular issue.[3] The Court acknowledges the validity of that argument and will change its position on that matter. However, the Court still will not issue a preliminary injunction; as the Court will explain below, there is still not a likelihood of success.

### 1. Improved Argument Under 18 G.C.A. § 87108

Plaintiffs' new argument is based on 18 G.C.A. § 87108. 18 G.C.A. § 87108 says, "Several Contracts Together. Several contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together." Plaintiffs

---

[3] They are entitled to make a new argument because there have not been any decisions made on preliminary injunctions. The Court has only issued a decision as to TROs under Rule 65(b). This motion involves Rule 65(a).

13

argue that this statute renders the Land Purchase Agreements, Mortgages, and Promissory Notes all as one contract. (Second TRO Memorandum at 15). Judging by the case law regarding 18 G.C.A. § 87108, the Court agrees with Plaintiffs' interpretation.

18 G.C.A. § 87108 is based on Cal. Civ. Code § 1642 which makes California case law helpful on this matter. People of Guam v. Cundiff, 2006 Guam 12, ¶ 34 ("This Court may look to the substantial precedent developed within that state to assist in interpreting parallel Guam provisions.") (citing People v. Superior Court (Laxamana), 2001 Guam 26, ¶ 8); see also E.C. Development v. General Conference Corp. Of Seventh Day Adventist, 2005 Guam 9, ¶ 15. Case law on Cal. Civ. Code § 1642 indicates that a land purchase agreement, mortgage, and promissory note are indeed all part of one transaction. Musto v. Grosjean, 208 Cal. 453, 458, 281 P. 1022 (Cal. 1929) ("The trial court therefore correctly concluded that the contract and the note and mortgage sued on were parts of the same transaction."); see also West's Ann. Cal. Civ. Code § 1642; see also Huckell v. Matranga, 99 Cal.App.3d 471, 160 Cal.Rptr. 177, 183 (Cal.App. 1979); see also Nevin v. Salk, 45 Cal.App.3d 331, 119 Cal.Rptr. 370, 374 (1975) ("Thus, a note, mortgage and agreement of sale constitute one contract where they are part of the same transaction."); see also McCroskey v. Ladd, 31 P. 558 (Cal. 1892).

In light of this rule, the Court now looks[4] at the transaction like this: in consideration for the title to land which was to come with a sewer line and a water line, Plaintiffs agreed to execute a mortgage and promissory note.

### 2. Breaches

But this new stance still does not solve the underlying issue in this case: what should be done in regard to the mortgage payments seeing as how the sewer line was never installed.

Plaintiffs argue that the failure to install the sewer line was a material breach justifying a

---

[4] The Court advises both parties that it did not use any information presented in the Motion for Reconsideration to make this decision. This analysis was based on the November 3, 2006 hearing and memoranda connected to that hearing. The Court also conducted some of its own research. In fact, this analysis was written and decided before January 12, 2007.

Now having made this decision, the Court will next apply reconsideration arguments to determine whether this new view is correct or incorrect. Nonetheless, as the analysis below shows, the Court does not consider this matter to be the underlying issue in this case.

14

suspension of their duty to pay the monthly mortgage. They cite to cases and contract theories which admittedly demonstrate that there are times when one party to a contract may suspend performance upon the breach of another party. Sjoberg v. Kravick, 759 P.2d 966, 969 (Mont. 1988) ("If a contracting party materially breaches the contract, the injured party is entitled to suspend his performance, and the determination of whether a material breach exists is a question of fact."); see also RESTATEMENT (SECOND) OF CONTRACTS §§ 225 and 237.

After looking at all of Guam's fundamental contract principles, though, the Court disagrees with Plaintiffs' overall argument. 18 G.C.A. § 80407 instructs:

> If a party to an obligation gives notice to another, *before the latter is in default,* that he will not perform the same upon his part and does not retract such notice before the time at which performance upon his part is due, such other party is entitled to enforce the obligation without previously performing or offering to perform any conditions upon his part in favor of the former party.

18 G.C.A. § 80407 (emphasis added). This statute offers significant help. It indicates that on April 26, 2002 when Plaintiffs attorney Wayson Wong wrote a letter to Defendant declaring that Plaintiffs Sananaps would not make any more mortgage payments[5], if Defendant was not really in default (for failure to provide a sewer line), from then on Defendant was not obligated (under the contract) to install a sewer line and could pursue a foreclosure. The question for the Court, then, is to determine who breached first.

That determination depends on deciding whether the duties here were conditions concurrent or whether the duty to pay was a condition precedent. Willener v. Sweeting, 107 Wash.2d 388, 394, 730 P.2d 45 (Wash. 1986). In Willener, the Supreme Court of Washington said:

> We have held a purchaser may not rescind a contract without a tender of the purchase price *if the duties are concurrent. A vendor selling land my not put the buyer in default until the vendor has offered to perform;* the payment of the purchase price and the delivery of the deed are concurrent acts. *However, where performance of one party is a condition precedent to a right of action on performance of another, a party is not required by law to do a useless act and tender performance where the other party cannot or will not perform that party's*

---

[5] As well as any other dates on which a letter was written on behalf of the other Plaintiffs. The Court only had on record the letter written on behalf of Plaintiffs Sananaps.

15

*part of the agreement.*

Willener, 107 Wash.2d 388, 394, 730 P.2d 45 (Wash. 1986) (citations omitted and emphasis added). In other words, if Plaintiffs' duty to pay was a condition precedent to the installation of the sewer line, Plaintiffs' failure to pay would render the duty to install a "useless act" just as explained above in Willener. See also 18 G.C.A. § 80406 ("Before any party to an obligation can require another party to perform any act under it, he must fulfill all conditions precedent thereto imposed upon himself, and must be able and offer to fulfill all conditions concurrent so imposed upon him on the like fulfillment by the other party. . . . "). In such case, Defendant would not have been in default on April 26, 2002 for not providing a sewer line and could enforce the mortgage. On the other hand, if the duty to pay was a condition concurrent, Plaintiffs' failure to pay was based on the simultaneous failure to install a sewer line and Defendant could not "put the buyer [Plaintiffs] in default until the vendor [Defendant] has offered to perform".

18 G.C.A. § 80403 explains that, "A *condition precedent* is one which is to be performed before some right dependent thereon accrues, or some act dependent thereon is performed." (emphasis added). A condition precedent may be an event that is supposed to happen or an actual act that must be performed before a duty arises. Platt Pacific, Inc. v. Andelson, 6 Cal.4th 307, 862 P.2d 158, 162 (Cal. 1993) ("Thus, a condition precedent is either an act of a party that must be performed or an uncertain event that must happen before the contractual right accrues or the contractual duty arises."). Under 18 G.C.A. § 80404, "*Conditions con-current* are those which are mutually dependent, and are to be performed at the same time." (emphasis added).

The Court finds that the Land Purchase Agreement, on its face, is rather vague and does not explicitly indicate whether the duty to pay and the duty to install a sewer line are precedent to the other. The general rule is that when a contract fails to delineate whether a duty is concurrent or precedent, the duty is presumed to be concurrent. McCroskey v. Ladd, 96 Cal. 455, 459, 31 P. 558 (Cal. 1892) ("If the agreement is silent upon this point, the obligations will be regarded as mutual and dependent, so that neither party can have a right of action against the other without a previous performance. . . ."); see also Lucy v. Davis, 163 Cal. 611, 126 P. 490 (Cal. 1912).

16

One, because Plaintiff Kini Sananap' testimony shows that Plaintiffs Sananaps knew and

Nevertheless, the Court does not believe that this general rule should apply here for two reasons.

One, because Plaintiff Kini Sananaps' testimony shows that Plaintiffs Sananaps knew and understood in 1999 when they signed the Land Purchase Agreement that a sewer line was not going to be installed immediately. (Kini Sananap on May 18, 2006 at 12:36 and 12:39 and 12:53); see generally Torres v. Torres, 2005 Guam 22, ¶ 36 ("It is the duty of the court to give effect to the intention of the parties where it is not wholly at variance with the correct legal interpretation of the terms of the contract, and a practical construction placed by the parties upon the instrument is the best evidence of their intention."); see also Edwards v. Pacific Financial Corp., 2000 Guam 27, ¶ 10 ("To garner the contract's meaning, extrinsic evidence such as letters, reports of conversations, and the parties' actions may be used."). Therefore, the agreement between Plaintiffs and Defendant seemed to allow Defendant some time (eighteen months) before it had to install the sewer line.

Two, because 21 G.C.A. § 60314(f) provided additional terms which solve the ambiguities. See generally 18 G.C.A. § 80102(2) (statutes can create additional obligations among contract parties just as readily as the contract's actual terms). 21 G.C.A. § 60314(f) acts as an additional term here and rendered the Land Purchase Agreement clear by giving land developer Defendant one year to provide a sewer line.

For these two reasons, the Court finds that Plaintiffs Sananaps had a duty to maintain timely payments until November 8, 2000 (one year after signing the Land Purchase Agreement) before their right to a sewer line accrued; thus, their duty was a condition precedent to the sewer line. The record and all evidence shows Plaintiffs fell far short of fulfilling this condition precedent. (Cyfred Financial Record Admitted as Exhibit A on May 24, 2006; Attorney Wong on May 18, 2006 at 11:41:01 a.m.; Kini Sananap on May 18, 2006 at 12:54; Gill on May 24, 2006 at 2:19 p.m.). In the first eleven months of the mortgage payments (January 2000 to November 2000), Plaintiffs Sananaps failed to make payments in two months and were late in the other nine. (Cyfred Financial Record Admitted as Exhibit A on May 24, 2006). As of November 8, 2000 when the sewer line right would have accrued, records show Plaintiffs owed $1,162.53 in rent and late fees; they only paid $396.53 that month. Plaintiffs were $766.00 short

17

of what was owed to become current. As of December 2000 (just a month later), records show Plaintiffs owed $1,212.53 in rent and late fees; they only paid $501.16. From that point on, Plaintiffs were usually behind (except for in December 2001, January 2002, and February 2002) until they stopped paying altogether in March 2002.[6]

With Plaintiffs' failure to fulfill a condition precedent, Willener and 18 G.C.A. § 80406 would seem to require a finding that Defendant did not have to provide a sewer line at the time. In any other case that would have been the Court's conclusion but the Court held otherwise in the Summary Judgment Motions because the Guam legislature had made the provision of a promised sewer line in a subdivision an absolute and unconditional duty under 21 G.C.A. § 60314(f). However, on the issue of whether Defendant can enforce Plaintiffs' duty to pay (through the mortgage), the answer appears to be yes. Just as in 18 G.C.A. § 80407, Plaintiffs had no basis to give the April 26, 2002 notice to not pay because they were in default not Defendant; having done so, 18 G.C.A. § 80407 allows Defendant "to enforce the obligation" of monthly payments. For that reason, there is not a likelihood of Plaintiffs' success on this issue and the Court will not grant a preliminary injunction.

### C. Summary

In summary, the Court will continue to enforce the Stay ordered in Part I but will not grant a preliminary injunction against future foreclosures. If Plaintiffs choose to argue that the other Plaintiffs are different than Plaintiffs Sananaps in that they were current on payments up to the one-year cut-off for a sewer line, then they will need to provide the Court with evidence and payment records.[7] Until then, the Court will assume all Plaintiffs defaulted early with a similar

---

[6] The Court reminds both parties that it previously found the Memorandum of November 1, 2001 (Exhibit B), in which Defendant agreed to not pursue a foreclosure and in which Plaintiff agreed to keep current on payments, void under 18 G.C.A. § 85102 and 18 G.C.A. § 88101 for being unlawful. Under 21 G.C.A. § 60314(h), a developer could not waive his duty to provide a sewer line once promised. This means that November 8, 2000 was the date on which a sewer line right would have accrued rather than November 1, 2003 (twenty-four months from the date of the Memorandum). In either scenario, though, Plaintiffs' duty to pay was a condition precedent and they failed to perform.

[7] In addition to the lack of evidence on payment history, here are the issues that would have to be resolved before the Court ever granted a preliminary injunction: 1) for the Plaintiffs without a Land Purchase Agreement and

letter from attorney Wong of their intent to not pay.

## II. Past Foreclosures and the Motion to Set Aside

On January 17, 2005, Defendant claims it foreclosed on Plaintiffs Wai's lot. (Opposition at 8). On January 23, 2006, Defendant claims it foreclosed on Plaintiff Martin's lot. (Opposition at 8). On October 18, 2006, a foreclosure sale was held for ten Plaintiffs. Plaintiffs did not secure payment or a bid for any of the lots. (Van de Veld Declaration at 3). The issue here is whether the Court should set aside these foreclosure sales.

As Defendant has argued, a mortgagee has the right to foreclose on a mortgagor by non-judicial power of sale if such a sale is delineated in the mortgage document. 18 G.C.A. § 36113; Paulino v. Biscoe, 2000 Guam 13; and Y Aleman Corp. v. Chase Manhattan Bank, 414 F.Supp. 93 (D.Guam 1975). However, the mortgagee must comply with all laws governing the sale of real estate under execution. 7 G.C.A. § 24104; 18 G.C.A. § 36112; Paulino v. Biscoe, 2000 Guam 13, ¶ 21 ("The sale of the mortgaged property must be conducted in the manner and under the regulations that govern the sales of real estate under execution ."); but see Edwards v. Pacific Financial Corp., 2000 Guam 27, ¶ 19 ("Generally, the only requirements of notice of sale essential to the validity of a sale . . . are those expressly and specifically prescribed by the terms of the instrument . . . . Because Guam law contains no procedural requirements for a sale by a power of sale. . . .").

Here, the mortgage documents issued by Defendant to Plaintiffs expressly require compliance with the laws governing the sale of real estate under execution. (Sananap Mortgage at ¶ 8(g)(ii)) ("Power of Sale. . . Any such sale shall be public and shall be made after such notice and in the manner of sales of real property under execution. . . ."). Thus, there is no question that with ¶ 8(g)(ii), 7 G.C.A. § 24104, 18 G.C.A. § 36112, and Paulino, Defendant had to comply with the laws governing the sale of real estate under execution.

---

just a Warranty Deed, the Court would like to know why Defendant was obligated to provide a sewer line. If Plaintiffs believe the ASSM obligated Defendant, Plaintiffs will need to show under what legal theories. If Plaintiffs believe 21 G.C.A. Chapter 60 obligated Defendant, Plaintiffs will need to show the Court under what section. 2) for the Plaintiffs with a Contract of Sale, the Court has the same questions.

The sale of real estate under execution law is found in 7 G.C.A. Chapter 23 Article 1. 7 G.C.A. § 23113 requires the posting of a 20-day notice in three public places where the sale is to be conducted. 7 G.C.A. § 23115 requires that the mortgagee sell the property to the highest bidder and that the sale be conducted after 9 a.m. 7 G.C.A. § 23115 says, "All sales of property under execution must be held in a city, town, or village in the district where said property or some part thereof is situated, and must be made at auction, to the highest bidder, between the hours of 9 in the morning and 5 in the afternoon. . . ."

The Court is concerned about Defendant's compliance with 7 G.C.A. § 23113 and 7 G.C.A. § 23115. First, there is no record of a 20-day notice being posted in three places in Yigo (where the lots were to be sold according to Exhibit A to Wong's Declaration on November 3, 2006) as required in 7 G.C.A. § 23113. Second, it appears Defendant did not sell to the highest bidder as required in 7 G.C.A. § 23115. (Van de Veld Declaration at 2, ¶ 7). Third, foreclosure sales were scheduled and held at 8 a.m. contrary to the 9 a.m. requirement in 7 G.C.A. § 23115. (Exhibit A to Wong's Declaration on November 3, 2006).

Defendant argues that it followed all statutory requirements. (Bobbie Joe Reyes Declaration at 2). However, Defendant cited the Court to the wrong statute - 7 G.C.A. § 3112 - and did not give the Court any specific details of its compliance. (Bobbie Joe Reyes Declaration at 2). Defendant also argues that it was not required to accept Plaintiffs' bids because they were conditional. It cites to Wright v. Harris, 221 F. 736 (1915). Defendant explains that Plaintiffs' bids were conditional because the bids were made subject to the Court's decision on setting aside foreclosures. (Van de Veld Declaration at 2, ¶ 6).

In regard to this argument, the Court questions the efficacy of Wright. The Court also notes that there is nothing in 7 G.C.A § Chapter 23 (or even 18 G.C.A.) mentioned about whether a bid must be unconditional or conditional. Instead, the Court would assume Plaintiffs' bid should be scrutinized under general contract principles; the real question is was attorney Wong's bid a real, binding offer? The Court believes it was a real, binding offer. See generally Mobil Oil Guam Inc., v. Tendido, 2004 Guam 7, ¶ 35 ("An offer is a manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that

20

bargain is invited and will conclude it.") (citing RESTATEMENT (SECOND) of CONTRACTS § 24 (1979)); see also Architectural Metal Sys., Inc. v. Consol. Sys., Inc., 58 F.3d 1227, 1229 (7th Cir. 1995) ("The test for an offer is whether it induces a reasonable belief in the recipient that he can, by accepting, bind the sender."). Although Defendant characterized attorney Wong's bid as questionable, uncertain, and conditional, the Court finds that attorney Wong was merely stating a reality (if the Court set aside foreclosures, the foreclosure-sale purchase would not stand). If he had not stated that fact, it still would have been a reality, but not in a way that would render this bid a non-offer. From the facts given, the Court believes attorney Wong's expressed bid at the sale was clearly a manifestation of willingness to enter a bargain. Thus, Defendant was required to accept Plaintiffs' bids under 7 G.C.A. § 23115.

For these reasons the Court orders the foreclosure sales on October 18, 2006 to be set aside under 7 G.C.A. § 24104. If there are any compliance issues with Plaintiffs Wai's foreclosure on January 17, 2005; with Plaintiff Martin's on January 23, 2006; or with any other foreclosures, Plaintiffs will have to file a separate motion. No information was given to the Court in regard to these foreclosures. Furthermore, the Court reminds parties that this analysis does not apply to the various terminations of Plaintiffs' Contracts of Sale because Plaintiffs' motion never addressed Contracts of Sale.

**ORDER**

In accordance with the above conclusions of law and after making findings upon a preponderance of the evidence, the Court will continue to enforce its stay on outside foreclosures according to Part I, it will not grant a preliminary injunction against foreclosures, and it will set aside the October 18, 2006 foreclosure sales.

SO ORDERED this ___15___ day of ___Jan.___, 2007.

HONORABLE ANITA A. SUKOLA
JUDGE, SUPERIOR COURT OF GUAM

21

# IN THE SUPERIOR COURT OF GUAM

KINI B. SANANAP, IOWANA M          )
SANANAP, and THE 40 LOT OWNERS     )          CIVIL CASE NO. CV1448-02
(OF THE 33 OTHER GILL-BAZA         )
SUBDIVISION LOTS),                 )
                                   )
                    Plaintiffs,    )          **DECISION AND ORDER**
                                   )          (Defendant's Motion to Strike Prior
          vs.                      )          Conviction Evidence and Plaintiffs'
                                   )          Request to Admit Francis Gill's
                                   )          Deposition)
CYFRED, LTD., A Guam Corporation,  )
ENRIQUE BAZA, JR. (deceased),      )
ELEANOR B. PEREZ, DONGBU           )
INSURANCE COMPANY and DOE          )
DEFENDANTS 1 - 10,                 )
                                   )
                    Defendants.    )

## INTRODUCTION

The prior conviction matter came before the Honorable Anita A. Sukola on the 16th day of October, 2007. Attorney Wong was present for Plaintiffs and attorneys Van De Veld and Mantanona were present for Defendant. The issue was whether evidence of Francis Gill's prior conviction (which was revealed during his testimony on October 10, 2007) was properly admitted under Guam Evidence Rules. The Court granted Defendant's request to strike the information on October 16, 2007 and now issues its supporting written decision.

The deposition matter came before the Honorable Anita A. Sukola on the 11th day of October, 2007. It was an oral motion. Attorney Wong was present for Plaintiffs and attorneys Van De Veld and Mantanona were present for Defendant. The issue was whether a deposition which was taken of Francis Gill on March 31, 2006 and which was never signed or approved should be admitted into evidence. The Court refused Plaintiffs' request to have the deposition admitted on October 11, 2007 and now issues its supporting written decision.

## DISCUSSION

**I. Defendant's Motion to Strike Prior Conviction Evidence of Francis Gill**



On October 10, 2007, Francis Gill (an officer of Defendant Cyfred) took the stand as a witness. While on the stand, he was asked by Plaintiffs' attorney Wong whether he had ever been convicted of a crime involving real estate. (Wong on October 10, 2007 at 9:06 a.m.). Defendant's attorney Van De Veld objected to the question. The Court, preferring to have important issues such as these filed as written arguments and knowing that it would have the chance to go back later and strike the evidence, instructed Francis Gill to answer. The very same day, Defendant filed this Motion to Strike the Admission of Prior Conviction Evidence Under Evidence Rule 609.

Evidence Rule 609 indicates that evidence of a witness' criminal convictions is not admissible if the convictions are over ten years old unless two things occur: one, the proponent gives sufficient advance written notice of his intent to use such evidence; and two, the Court finds that the probative value of the convictions would outweigh their prejudicial effect. GUAM R. EVID. 609(b). Defendant's argument is that Plaintiffs failed to meet the advance-notice requirement. Plaintiffs' reply argument is that they did not have to give notice because they believed there was no proof on the record that Francis Gill's conviction was over ten years old.

The Court finds that Plaintiffs' argument is incorrect. Francis Gill stated while on the stand on October 10, 2007 that his conviction was in 1990. (Gill on October 10, 2007 at 9:06 a.m.). To the Court, this is sufficient proof. Therefore, under Evidence Rule 609(b), Plaintiffs were supposed to provide notice and in failing to do so, the Court will not allow the testimony regarding Francis Gill's criminal past to remain on the record.

Plaintiffs did refer to a phrase in Evidence Rule 609(b) which indicates that this rule applies to the latest of a person's convictions and a person's release from prison. But this

variation in Evidence Rule 609(b) does not alter the Court's decision. Since Francis Gill revealed that he had resumed his real estate business in 1996 and 1997 (which obviously was 10 years ago), the Court is certain that even his release date was more than ten years ago. Thus, Evidence Rule 609(b) still applicable.

In further support of this decision, the Court also questions the probative value of the conviction evidence - the second requirement of Evidence Rule 609(b). Francis Gill was convicted of stealing land from the Government of Guam (Gill on October 10, 2007 at 9:06 a.m.) while we are dealing with sales, foreclosures, consumer trade practice violations, sewer lines, and water lines. The Court can see a slight connection but the prejudicial effect seems to outweigh what slight probative value there may be.

For all of these reasons, the Court strikes all evidence dealing with Francis Gill's prior conviction.

## II. Plaintiffs' Motion to Admit Francis Gill's Deposition

On March 31, 2006, a deposition of Francis Gill was conducted by Officer Pramila Sullivan. According to information before the Court, after the deposition, the transcribed papers sat and remained with Officer Pramila Sullivan. Pramila Sullivan's declaration indicates she did not attempt to hand the deposition papers over to Francis Gill for approval until May, 2007 - one year and two months after the actual deposition. The Court finds that this was a total failure to comply with Civil Procedure Rule 30(e).

Civil Procedure Rule 30(e) required that Officer Pramila Sullivan promptly submit the transcribed deposition to Francis Gill. GUAM R. CIV. P. 30(e) (1990) ("When the testimony is fully transcribed the deposition shall be submitted to the witness for examination and shall be

Page 3 of 5

read to or by the witness unless such examination and reading are waived by the witness and by the parties."). Although there is no explicit requirement for an immediate submission in Civil Procedure Rule 30(e), there was definitely an implied one as all rules of civil procedure have an inherent requirement of speediness and expeditiousness. GUAM R. CIV. P. 1; see also Dientstag v. Bronsen, 49 F.R.D. 327, 329 (S.D.N.Y. 1970) (The fair and expeditious preparation of cases is the purpose and goal of these rules.). Because of the failure to satisfy Civil Procedure Rule 30(e), the Court rejects the deposition.

There were other factors in the Court's decision, too. First, the handing over of the deposition in May, 2007 seems additionally untimely for the fact that trial began in May, 2007: depositions are a type of pre-trial discovery and should have been handed over much sooner. Second, the Court already made a decision on this matter so for this motion to be proper, it had to be presented as a motion for reconsideration. Instead, Plaintiffs' motion was an unannounced, surprise, oral motion. Third, this deposition is discovery and the Discovery Completion Due Date was April 16, 2007.

Nevertheless, because the Court holds a presumption that every deposition - when initially taken - is intended by all sides involved to be entered as evidence and because the real culprit here was Officer Pramila Sullivan and not Plaintiffs, the Court will give Plaintiffs one more opportunity to argue this matter in a second motion for reconsideration. Should Plaintiffs decide to take advantage of this second opportunity, the Court advises that it will enforce CVR 7.1. In other words, the Court will not give any heed to a motion that is unfounded, unsupported, irrational, or off-target in regard to the relevant issues.

## CONCLUSION

Page 4 of 5

Based upon a preponderance of the evidence and in accordance with its prior oral decisions, the Court strikes all evidence regarding Francis Gill's prior conviction and will not admit Francis Gill's unsigned March 31, 2006 deposition at this time.

**SO ORDERED** this ___2 4___ day of ___O c t.___, 2007.

HONORABLE ANITA A. SUKOLA
Judge, Superior Court of Guam

Page 5 of 5

# IN THE SUPERIOR COURT OF GUAM

KINI B. SANANAP, IOWANA M.
SANANAP, and THE 40 LOT OWNERS
(OF THE 33 OTHER GILL-BAZA
SUBDIVISION LOTS),

                    Plaintiffs,

vs.

CYFRED, LTD., A Guam Corporation,
ENRIQUE BAZA, JR. (deceased),
ELEANOR B. PEREZ, DONGBU
INSURANCE COMPANY and DOE
DEFENDANTS 1 - 10,

                    Defendants.

CIVIL CASE NO. CV1448-02

**FINDINGS OF FACT AND
CONCLUSIONS OF LAW**
(Defendant's Motion for Judgment on
Partial Findings as to Plaintiffs
Sananaps' Count II)

## INTRODUCTION

This motion came before the Honorable Anita A. Sukola on February 5, 2008. Attorney Wong was present for Plaintiffs and attorneys Mantanona and Van De Veld were present for Defendant. Attorney Mantanona argued for Defendant on this particular motion because he was the author of it. In this motion, Defendant asks for a final judgment in regard to Plaintiffs Sananaps' Count II Deceptive Trade Practices and Consumer Protection Act ("DTPCPA") claims. Defendant first moved under Civil Procedure Rule 50 - the wrong rule for bench trials according to Nieto v. Kapoor, 268 F.3d 1208, 1217 (10th Cir. 2001) - in its January 28, 2008 memorandum and then Civil Procedure Rule 52 in its February 4, 2008 Reply. Plaintiffs did not object to the alteration of the civil procedure rule (Wong on February 5, 2008 at 4:19 p.m. and 4:34 p.m.) and seemed to agree with excusing the initial improper use of Civil Procedure Rule 50 at the February 5, 2008 hearing. Thus, the Court herein treats Defendant's motion as a Civil Procedure Rule 52 motion. The Court took the matter under advisement and now issues its decision.

## PARTIAL FINDINGS OF FACT

# ORIGINAL
## "E"

Taking all evidence and testimony[1] into account, the Court finds the following by a preponderance of the evidence:

1. That on August 21, 1998, Francis Gill (as an officer for Defendant), Enrique Baza, and Eleanor Perez came to terms on the sale of Tract 63004 located in Yigo, Guam (which later came to be known as the Gill-Baza Subdivision). (Geraldine Mendiola on January 9, 2008 at 2:17 p.m.); (Exhibit 45, Exhibit C). Enrique Baza and Eleanor Perez were the owners and Defendant was the buyer.

2. That the papers and warranty deed for Tract 63004 went into escrow around the same time. (Exhibit 45, Exhibit C).

3. That during this time, someone applied to the Department of Land Management for a change in zoning which would make Tract 63004 an Agricultural Subdivision. Enrique Baza was seen once or twice coming in to the Department of Land Management in regard to the zoning change. (Carlos Untalan on May 31, 2007 at 3:32 p.m.). Francis Gill was also known to work closely with some of the officials. (Gill on October 10, 2007 at 3:07 p.m.).

4. That it is unclear who the Department of Land Management thought were the owners of Tract 63004 and why. One Department of Land Management official working on the matter - Carlos Untalan - knew that Francis Gill and Defendant had an interest in Tract 63004 (Carlos Untalan on May 31, 2007 at 2:40 p.m.), but he also said he assumed Enrique Baza was the owner of interest. (Carlos Untalan on May 31, 2007 at 3:33 p.m. and June 1, 2007 at 10:32 a.m.).

5. That the actual government official in charge of getting the owner's signatures for the Agricultural Subdivision Survey Map ("Survey Map") conditions was Surveyor Dennis Pham

---

[1] The Court finds it important to note that English was not the natural, primary language of many of the witnesses in this trial and therefore, there were many difficulties for everyone in communicating and understanding each other. The Court recommended interpreters before the trial but neither party made such a request.

(Carlos Untalan on May 31, 2007 at 2:52 p.m.) who was never called to testify before this Court.

6. That the Department of Land Management officials probably did a title check in the initial stages of the zoning change. (Carlos Untalan on June 1, 2007 at 10:35 a.m.). But there is no certainty that such a title check was truly done and there is no certainty that the Department of Land Management rightfully concluded that Enrique Baza and Eleanor Perez were the owners. (Carlos Untalan on June 1, 2007 at 11:20 a.m. - he assumes Blas Atalig would have been the one to do the check but he never asked Blas Atalig if such a check was done or what the check revealed.). Blas Atalig was never called as a witness in this case.

7. That there was no secondary title check done by the Department of Land Management in October of 1999 when the Survey Map was being finalized. (Carlos Untalan on June 1, 2007 at 11:09 a.m.). In fact, the Department of Land Management has no policy for such checks even though an owner could conceivably sell the property after submitting to them for a zoning change. (Carlos Untalan on June 1, 2007 at 11:09 a.m.).

8. That on March 15, 1999, Enrique Baza signed the Survey Map for him and for Eleanor Perez (by power of attorney). (Exhibit 1).

9. That the Baza-Cyfred escrow was completed and Defendant's Warranty Deed was recorded by October 6, 1999. (Geraldine Mendiola on January 9, 2008 at 2:17 p.m. and 3:24 p.m.).

10. That the Survey Map was signed by Chief Planner John T. Anderson on August 24, 1999 and by Chief Surveyor Nicanor B. Carino on October 27, 1999. (Exhibit 1).

11. That the Survey Map was recorded on November 1, 1999. (Exhibit 1).

12. That Kini Sananap learned about the lots being sold by Defendant at the Gill-Baza Subdivision in a local newspaper article on November 6, 1999. (Kini Sananap on January 17, 2008 at 8:59 a.m.).

13. That Kini Sananap then called the number in the local newspaper article and ended up

3

talking to Jimmy Camacho of Sunshine Realty. (Kini Sananap on January 17, 2008 at 8:59 a.m.).

14. That Jimmy Camacho and Kini Sananap met more than once on dates that are now unknown. (Kini Sananap on January 17, 2008 at 9:12 a.m.).

15. That Iowana Sananap never met with Jimmy Camacho. (Iowana Sananap Deposition on October 29, 2003, II.N2 at 5).

16. That Jimmy Camacho, in those meetings with Kini Sananap, stated that water, power, and sewer were not currently in place at the Gill-Baza Subdivision and that such utilities would be provided within three to eighteen months. (Kini Sananap on January 17, 2008 at 9:10 a.m.); (Kini Sananap Deposition on May 16, 2007, II.Q2 at 27, line 9).

17. That Jimmy Camacho, in those meetings with Kini Sananap, stated that Plaintiffs would be able to build a house at the Gill-Baza Subdivision. (Kini Sananap on January 17, 2008 at 9:12 a.m.).

18. That Jimmy Camacho, in those meetings with Kini Sananap, showed the Survey Map (Exhibit 1) but did not point out the agreement between the Department of Land Management and Enrique Baza and Eleanor Perez. (Kini Sananap on January 17, 2008 at 9:21 a.m.).

19. That Jimmy Camacho, in those meetings with Kini Sananap, eventually directed Kini Sananap to speak with Bobbie Jo Reyes.

20. That Kini Sananap went and saw Bobbie Jo Reyes at some point in this time period.

21. That, in at least one of their meetings, Bobbie Jo Reyes promised to Kini Sananap that he could build a house on a lot at the Gill-Baza Subdivision. (Kini Sananap on January 17, 2008 at 9:31 a.m.).

22. That Bobbie Jo Reyes also stated to Kini Sananap that water, power, and sewer were not on the property but that such utilities would be available within three to eighteen months. (Kini Sananap on January 17, 2008 at 10:03 a.m.); (Kini Sananap Deposition on May 16, 2007, II.Q2 at

4

26, line 1).

23. That Bobbie Jo Reyes also showed the Survey Map (Exhibit 1) to Kini Sananap during these meetings but without pointing out the Department of Land Management agreement. (Kini Sananap on January 17, 2008 at 9:27 a.m.).

24. That at some point before purchasing Lot 24 at the Gill-Baza Subdivision, Kini Sananap physically went to the property and saw for himself that there was no sewer, water, or power. (Kini Sananap Deposition on May 16, 2007, II.Q2 at 27, line 15).

25. That Plaintiffs Sananaps decided to purchase Lot 24 at the Gill-Baza Subdivision some time in late 1999. At this time, Plaintiffs Sananaps knew it would take three to eighteen months for the utilities to be installed. (Kini Sananap on January 22, 2008 at 9:23 a.m.)

26. That Kini Sananap signed the Land Purchase Agreement to purchase Lot 24 on November 8, 1999. (Exhibit A.1).

27. That Kini Sananap and Iowana Sananap signed the Promissory Note on December 30, 1999. (Exhibit A.2 to A.5).

28. That Kini Sananap and Iowana Sananap signed the Mortgage on December 30, 1999. (Exhibit A.11 to A.25).

29. That Kini Sananap and Iowana Sananap signed the Warranty Deed Rider attached to the Warranty on December 30, 1999. (Exhibit A.9).

30. That Geraldine Mendiola, as a representative of Defendant Cyfred, signed the Warranty Deed on January 3, 2000. (Exhibit A.6 to A.8).

31. That during this time period, November 8, 1999 to January 3, 2000, there is no evidence that Defendant pressured, coerced, or intimidated Plaintiffs Sananaps in any way.

32. That, in hindsight, Kini Sananap says now he would not have signed the papers for this purchase had he been warned about all the problems he would eventually encounter. (Kini Sananap

5

3   on January 17, 2008 at 9:35 a.m.).

4        33. That some time thereafter, Plaintiffs Sananaps started defaulting on their mortgage

5   payments to Defendant. Starting in July 17, 2000, Defendant began notifying Plaintiffs Sananaps of

6   all their defaults. (Exhibits A.30 to Exhibit A.73).

7        34. That power lines were installed and energized at the Gill-Baza Subdivision by April of

8   2000. (Melinda Camacho on October 18, 2007 at 10:42 a.m.). It appears Plaintiffs Sananaps actually

9   hooked into the power system and began enjoying power in their house in December of 2000.(Kini

10   Sananap on January 17, 2008 at 10:03 a.m.).

11        35. That Plaintiffs Sananaps began living on their Lot 24 at the Gill-Baza Subdivision in

12   June, 2000. (Iowana Sananap on January 15, 2008 at 3:31 p.m.).

13        36. That at the time they moved in, there was no running water. (Iowana Sananap on January

14   15, 2008 at 3:32 p.m.).

15        37. That there continued to be no running water all the way to mid-2002. (Iowana Sananap

16   on January 15, 2008 at 3:34 p.m.); (Iowana Sananap May 19, 2007 Deposition, II.R2 at page 119);

17   (Kini Sananap on January 22, 2008 at 9:25 a.m.).

18        38. That on September 28, 2001, Defendant and Plaintiffs Sananaps attempted to form a new

19   agreement wherein Plaintiffs Sananaps would have a chance to get current on their mortgage

20   payments and Defendant would have another twenty-four months to install the sewer and water line.

21   (Exhibit A.74).

22        39. That on November 1, 2001, Defendant and Plaintiffs Sananaps attempted to form a

23   second new agreement wherein Plaintiffs Sananaps would have a chance to get current on their

24   mortgage payments and Defendant would have another twenty-four months to install the sewer and

25   water line. (Exhibit A.79).

25        40. That as of mid-2002 (probably in April), Plaintiffs Sananaps started to get water to their

27

23                         6

house but only by way of a hose hooked up to the neighbor's line. (Kini Sananap on January 22, 2008 at 9:25 a.m.); (Gill on October 16, 2007 at 1:41 p.m. - GWA installed the water lines by April of 2002).

41. That as of April 26, 2002, there was a fire hydrant near Plaintiffs Sananaps' house. (Kini Sananap on January 22, 2008 at 10:20 a.m.).

42. That on July 4, 2002, Typhoon Chata'an hit Guam. (Judicial Notice).

43. That Typhoon Chata'an destroyed Plaintiffs Sananaps' house. (Kini Sananap on January 17, 2008 at 10:22 a.m.).

44. That Plaintiffs Sananaps received a check from the U.S. agency FEMA and used the money to repair the destruction to their house.(Kini Sananap on January 22, 2008 at 2:38 p.m.).

45. That Plaintiffs Sananaps were able to repair some but not all of their house. (Kini Sananap on January 22, 2008 at 2:39 p.m.).

46. That on September 27, 2002, Plaintiffs filed their Complaint.

47. That on December 8, 2002, Typhoon Pongsona hit Guam. (Judicial Notice).

48. That Typhoon Pongsona destroyed only Plaintiffs Sananaps' power pedistal and part of their roof. (Kini Sananap on January 17, 2008 at 10:11 a.m. and January 22, 2008 at 2:42 p.m.); (Kini Sananap Deposition on May 19, 2007, II.S2 Exhibit 17 Drawing).

49. That to this day, Plaintiffs Sananaps get their power by an extension cord linked to Martina Josephs' house. (Iowana Sananap May 19, 2007 Deposition, II.R.2 at 102, line 15).

50. That to this day, Plaintiffs Sananaps get their water from a pipe connected to neighbor Alex Rubin's house. (Iowana Sananap on January 16, 2008 at 9:25 a.m.); (Kini Sananap on January 22, 2008 at 9:26 a.m.).

51. That on May 25, 2006, Plaintiffs filed their First Amended Complaint. Joined with Plaintiffs Sananaps in the First Amended Complaint were all the Other Plaintiffs indicated in the

7

Court's May 5, 2006 Decision and Order granting joinder. (May 5, 2006 Decision and Order at 5, footnote 4).

52. That on May 7, 2007, Plaintiffs submitted to the Court their Trial Memorandum. On page three, they set out again what misrepresentations or omissions they believe were made by Defendant in violation of 5 G.C.A. Ch. 32. They are as follows: one; that Defendant lied in representing that it was selling "good title" (Plaintiffs' Trial Memorandum at 3, ¶1); two, that they "could build a proper house" on the property (Plaintiffs' Trial Memorandum at 3, ¶2); three, that there was a condition in the Survey Map that they were entitled to know about (Plaintiffs' Trial Memorandum at 3, ¶3); four; that Defendant had agreed to make power, water, and sewer available and was required to do so in one year (Plaintiffs' Trial Memorandum at 3, ¶4); five, that Defendant had the duty to install fire hydrants and a telephone system (Plaintiffs' Trial Memorandum at 3, ¶5); six, that Defendant was having difficulty in building the required infrastructure (Plaintiffs' Trial Memorandum at 3, ¶6); seven, that if Defendant failed to provide what was promised, Plaintiffs ran the chance of being evicted (Plaintiffs' Trial Memorandum at 3, ¶7); and eight, that they could enjoy their lot and home (Plaintiffs' Trial Memorandum at 3, ¶8).

53. That pages two through eleven of the First Amended Complaint contain the claims of Plaintiffs Sananaps and that pages eleven through twelve contain the claims of the Other Plaintiffs. Plaintiffs Sananaps' claims are divided into five counts. Counts IV and V (against Enrique Baza and Eleanor Perez respectively) were dismissed in the Court's Decision and Order on May 16, 2007 in regard to Defendant's Civil Procedure Rule 12(c) Motion to Dismiss. Thus, Plaintiffs Sananaps' Counts I, II, III are all that remain after May 26, 2007.

54. That Carlos Untalan of the Department of Land Management testified on May 31, 2007; June 1, 2007; and June 5, 2007.

55. That Francis Gill testified on October 10, 2007; October 11, 2007; October 16, 2007; and

8

October 17, 2007.

56. That Geraldine Mendiola started testifying on December 12, 2007.

57. That Iowana Sananap testified on January 15, 2008 and January 16, 2008.

58. That Kini Sananap testified on January 16, 2008; January 17, 2008; January 22, 2008; and January 23, 2008.

59. That on January 23, 2008, upon learning that witness Ed Ching would not be allowed to testify, Plaintiffs rested their case.

60. That on January 28, 2008, Defendant - through attorney Mantanona - filed this motion. The entire focus of this motion was Plaintiffs Sananaps' Count II.

61. That on February 1, 2008, Plaintiffs filed their Opposition.

62. That on February 4, 2008, Defendant filed its Reply.

63. That Count II begins on page seven of the First Amended Complaint and, in summary, it claims the following: one, that because of "false statements and promises about water and power", there has been a violation of the Deceptive Trade Practices and Consumer Protection Act under 5 G.C.A. Ch. 32 (First Amended Complaint at 7, ¶ 32); two, that because of "the failure to disclose in the Warranty Deed to the Sananaps the condition in the Agricultural Subdivision Survey Map of Tract 63004" (First Amended Complaint at 7 and 8, ¶ 32), there has been a violation of the Deceptive Trade Practices and Consumer Protection Act under 5 G.C.A. Ch. 32; and three, that because of Defendant's "failure to disclose in the Warranty Deed to the Sananaps the previous agreement by [Defendant] to make sewer available (First Amended Complaint at 8, ¶ 32), there has been a violation of the Deceptive Trade Practices and Consumer Protection Act under 5 G.C.A. Ch. 32. Thus, there are allegations of three misrepresentations or omissions in Count II.

64. That the damages requested in Count II by Plaintiffs Sananaps are the following: one, damages (First Amended Complaint at 8, ¶ 34); two, damages for substantial emotional distress

9

(First Amended Complaint at 8, ¶ 34); three, damages for "recent typhoon property damages" (First Amended Complaint at 8, ¶ 34); four, attorney's fees and costs (First Amended Complaint at 8, ¶ 34); and five, treble, exemplary, and punitive damages if this whole event was "knowingly done" (First Amended Complaint at 8, ¶ 34).

## CONCLUSIONS OF LAW

### I. Claims at Issue in Count II

The claims and damages listed in the First Amended Complaint (as summarized by the Court in Findings 63 and 64), the claims and damages listed on page three of Plaintiffs' Trial Memorandum (as summarized by the Court in Finding 52), the claims raised by Plaintiffs in the present motion (Opposition at 11 and 12), and the claims and damages raised by Plaintiffs during the trial are all different. Thus, the first issue for the Court is determining exactly what claims are part of Count II.[2]

As the Court explained on page eleven of its November 24, 2007 Decision and Order regarding Plaintiffs' Motion for Reconsideration of Defendant's Motion to Strike Plaintiffs' Supplemental Answers to Interrogatories and Motion in Limine, a court's judgments must comport with the pleadings of the case. 7 G.C.A. § 21104 ("[B]ut in any other case the court may grant him any relief consistent with the case made by the complaint and embraced within the issues."); see also Wozniak v. Lucutz, 102 Cal.App.4th 1031, 126 Cal.Rptr.2d 310 (Cal.App. 2 Dist. 2002) ("It is the general rule that, in a contested cause, in the absence of an amendment to the complaint to conform to proof, a court may not award the plaintiff a sum in excess of the amount of damages he claims to have sustained. It is not the prayer of a pleading which is controlling; it is the averment contained in the pleading which determines the maximum sum which may be awarded the claimant.")

---

[2]

And the Court would like to say that it is extremely unfortunate that this is even an issue. The Rules of Civil Procedure are designed so that it should never be confusing what is at dispute in a lawsuit. Lawsuits are confusing enough by themselves. In this case, despite multiple warnings from the Court, Plaintiffs clearly were under the impression that they could throw everything in to their claims in spite of their pleadings. They were gravely mistaken.

10

(citations omitted); see also Davis v. Stewart, 53 Cal.App.2d 439, 447, 127 P.2d 1014 (Cal.App. 1 Dist. 1942) (Based on Code Civ. Proc. 580, the California District Court held, "The Court has the power, and it is its duty, when the plaintiff's complaint has been answered to grant the plaintiff any relief consistent with the case made by the complaint and embraced within the issue."); see also Wallace v. Otis, 47 Cal.App.2d 814, 815, 119 P.2d 195 (Cal.App. 3 Dist. 1941) (Plaintiff pled fraud in complaint but was given judgment for trespass damages. The District Court stated, "A judgment which exceeds the issues litigated is coram non judice and void."); see also Clark v. National Travelers Life Ins. Co., 518 F.2d 1167, 1169 (6th Cir. 1975) (Courts have no duty to "create a claim" which the party has not "spelled out in his pleading".); see also Reynolds v. Stockton, 140 U.S. 254, 270, 11 S.Ct. 773 (1891) ("[I]n order to give a judgement, rendered by even a court of general jurisdiction, the merit and finality of an adjudication between the parties, it must . . . be responsive to the issues tendered by the pleadings."); see also Daniels v. Thomas, 225 F.2d 795, 797 (10th Cir. 1955) (Parties are entitled to whatever relief is asked for in the complaint and counterclaim.); see also Northwest Marketing Corp. v. Fore-Ward Investments, Inc., 173 Or. App. 508, 22 P.3d 1230 (Or. App. 2001) ("It is generally error to award damages on an unpleaded theory."). This principle is right in harmony with Civil Procedure Rule 8(a)(2).

   For these reasons, as to Count II, the Court will use the actual First Amended Complaint as a blueprint and it will make a ruling only on the claims and damages listed therein.[3] Should Plaintiffs

---

[3]
   Plaintiffs did attempt to amend their Count II claims under Civil Procedure Rule 15(b), but the amendment request came one week after Defendant filed this motion, it came three days after this matter was heard, and it was ultimately denied.
   In dealing with that amendment request, the Court was directed to its May 24, 2007 Decision and Order which sheds important light on the matter. On May 8, 2007, Defendant had moved the Court in regard to the DTPCPA claims stating that it wanted an official instruction from the Court to limit Plaintiffs to their pleaded DTPCPA claims. Evidently, Plaintiffs had been trying to venture outside what they claimed. On page 4 of its decision, the Court sided with Defendant. It wrote:
      The Court has an absolute commitment to the Guam Rules of Civil Procedure and will enforce them in this case. Rule 8(a) requires a plaintiff to list all its claims in the complaint. The Court does not have

11

argue the right to leniency as far as their pleadings go, the Court would remind Plaintiffs that, in addition to general Civil Procedure Rule 8 requirements, they were also restricted by DTPCPA notice requirements which demand in a pre-suit letter "reasonable detail, of the consumer's specific complaint and the amount of actual damages and expenses". 5 G.C.A. § 32110(a). Since Plaintiffs Sananaps' First Amended Complaint more or less mirrors their DTPCPA notice letter on April 26, 2002 to Defendant (Defendant's Exhibit A.82), the Court feels justified in its decision.

## II. Count II Claims, the DTPCPA, and Civil Procedure Rule 52

### A. DTPCPA Elements

There are three elements Plaintiffs Sananaps must prove to be successful in their Count II DTPCPA claims: one, they must prove that Defendant rendered some type of representation, omission, or practice; two, they must prove that this representation, omission, or practice was likely to mislead consumers acting reasonably under the same circumstances; and three, they must prove that the representation, omission, or practice was material. Guam v. Marfega Trading Co., 1998 Guam 4, ¶ 11. The Court analyzes below all of Plaintiffs' Count II claims (as it summarized above in Finding 63) under these three Marfega elements.

#### 1. False statements and promises about water and power

In the Warranty Deed executed and signed by Defendant on January 3, 2000 (Exhibit A.6 to A.10), there is an attachment called the Deed Rider and in that attachment it states, "Grantee under the Warranty Deed . . . acknowledges that water and power (electricity) are immediately available

---

the full record of this case before it at this moment because many files are up with the Supreme Court of Guam; but the Court will say this - Plaintiffs will not be awarded anything more than what they have pled in their Amended Complaint. If Plaintiffs Sananaps pled three charges in their DTPCPA claim, they will be limited to those charges. In the meantime, the Court invites Defendant to raise objections of relevancy when appropriate and with a proper explanation, those objections will be granted. (Decision and Order on May 24, 2007 at 4). This statement from the Court shows Plaintiffs were warned long ago about their pleadings and that they were alerted that the Court would be faithful to the claims as written. It shows Plaintiffs have been egregiously dilatory in dealing with this issue.

12

on the Premises or within one hundred feet (100') from the Premises." (Exhibit A.9). It is Plaintiffs

Sananaps' claim in this case that water and power were not immediately available as promised in

the Warranty Deed Rider and therefore, that there has been a misrepresentation and a DTPCPA

violation.

Although Plaintiffs may be right that water and power were not immediately available

(Findings 34, 36, and 37), they fail to establish all the elements for a DTPCPA claim. More

specifically, there is a problem with the second Marfega element - the likelihood that the

representation in the Warranty Deed Rider would mislead reasonable consumers in the same

circumstances. In light of the statements which Jimmy Camacho and Bobbie Jo Reyes made to Kini

Sananap that power and water would not be available for three to eighteen months after the purchase

in November 1999 (Findings 16 and 22), in light of what Kini Sananap saw with his own eyes - that

there was no water and power at the Gill-Baza Subdivision - just before the purchase (Finding 24),

and in light of what Kini Sananap understood - that water and power would not be immediately

available - at the time of his purchase in 1999 (Finding 25), no reasonable consumer would have

been misled by the Warranty Deed Rider into thinking water and power would be immediately

available. Marfega, 1998 Guam 4, ¶ 16.

Should Plaintiffs come back with a motion for reconsideration and argue the contract doctrine

of the Parole Evidence Rule, the Court would reject such argument. If this were strictly a contracts

claim, the Court would have to look strictly to the Warranty Deed. But we are dealing with a

deceptive trade practice claim and in deceptive trade practice claims, all the circumstances in a

transaction - including all the oral statements made by the parties - are relevant in order to determine

what a reasonable consumer would have believed.

Should Plaintiffs try and argue that the misrepresentation in this claim was actually the false

oral statements as to water and power made by Jimmy Camacho and Bobbie Jo Reyes before the

13

November 1999 transaction, the Court would respond with the following: one, these statements were nowhere alleged or discussed in the First Amended Complaint (First Amended Complaint ¶ 21 and ¶ 32); two, power was available in less than eighteen months as orally promised (Finding 34); three, Jimmy Camacho never testified before this Court, he is not named in this suit as a party, and he was never established by Plaintiffs under Guam agency law or through testimony as an agent of Defendant who was acting within the scope of his assigned duties; and four, Plaintiffs Sananaps cannot convincingly argue that they were misled because they actually attempted to forego their right to have water in eighteen months by agreeing to give Defendant more time for the return consideration of having their mortgage defaults forgiven. (Exhibit A.74 and Exhibit A.79). As to this last point, the Court acknowledges the invalidity of Exhibit A.74 and Exhibit A.79 and in no way intends to give these documents any binding strength in this case, but they are relevant here in helping determine what it was that Plaintiffs Sananaps were thinking in 2000, 2001, and 2002. Exhibit A.74 and Exhibit A.79 suggest there is no way a consumer could reasonably expect water within the eighteen months originally promised. See 18 G.C.A. § 82501 ("Novation is the substitution of a new obligation for an existing one."); see also 18 G.C.A. § 82502; see also 18 G.C.A. § 82503.

### 2. Failure to disclose in the Warranty Deed the Survey Map promises

The Survey Map contains a paragraph toward the lower middle-right under the heading "SATISFACTORY TO, APPROVED, AND CERTIFICATION OF LOT OWNER BY" (Exhibit 1). This paragraph was signed by Enrique Baza on March 15, 1999. He signed it for his approval and for Eleanor Perez's approval by special power of attorney. Below, on the same Survey Map, three different Department of Land Management officials signed as did Dennis Pham, John T. Anderson (Guam Chief Planner), and Nicanor B. Carino (Guam Chief Surveyor) on the right. The mentioned paragraph states the following:

14

> We, the undersigned, Owners of Tract 63004 (Formerly Lot 10102-16), acknowledge that we are responsible for placement and construction of the SEWER, WATER, FIRE HYDRANTS, POWER and TELEPHONE, as provided for by 21 GCA 61501, 62105 (a), 62108 (c), 62108.1, 62502 (a), 62502 (b), 62502 (c) and 62503 and that we indemnify the Government against any responsibility or claim to so construct, further that the issuance of a certificate of title based on any sale or transfer of land subdivided hereunder shall be contingent upon the completion of construction of the above infrastructures, and that this condition shall run with the land, and that any contract of sale, deed or other similar documents given to any purchaser or transferee shall give notice of this condition.

(Exhibit 1).

Plaintiffs Sananaps' second claim in Count II is that all "contract[s] of sale, deed[s] or other similar documents" should have given "notice" to Plaintiffs Sananaps that the title being transferred to them was "contingent upon the completion of construction" of the utilities (i.e., sewer, water, fire hydrants, power, and telephone). More specifically, they claim the Warranty Deed (Exhibit A.6) should have contained expressions of the fact that the Department of Land Management could take back its approval of the Agricultural Subdivision zoning at Tract 63004 and therefore, destroy their title.

Looking to Marfega, it appears Plaintiffs are going after a misleading omission here rather than a misleading representation. The main problem with Plaintiffs' argument is that there was no misleading omission because there was no obliged statement; the Survey Map was not a binding promise (see Decision and Order on March 19, 2007 in Motion for Reconsideration of Part II of Motion for Stay) so it cannot be said that Defendant was obligated to make a reference in the Warranty Deed to any condition in the Survey Map.

Plaintiffs' position on this subject ever since the Court's March 19, 2007 Decision and Order has been that as of March 15, 1999 when Enrique Baza signed the Survey Map, Enrique Baza and Eleanor Perez were still the owners of Tract 63004 (the Gill-Baza Subdivision land) because the

15

deed was going through escrow. (Plaintiffs' January 29, 2008 Motion for Sanctions).[4] They have

argued that the Warranty Deed from Enrique Baza and Eleanor Perez to Defendant was not recorded

until October 6, 1999 (Declaration of Bertha Evangelista attached to Motion for Sanctions; Exhibit

V) and therefore, that the land was still under their ownership until October 6, 1999.

Plaintiffs may be right as far as what the law sets forth regarding escrow, a seller's

ownership, and the delivery of a deed (see 28 Am. Jur. 2d Escrow § 17 (2002)), but the Survey Map

was not finally approved and agreed to by the Department of Land Management until some time after

the Cyfred-Baza escrow was completed. According to Chief Planner of the Department of Land

Management Carlos Untalan, the Department of Land Management does not consider any survey

map to be final until the Chief Planner and the Chief Surveyor sign it and until it is recorded. (Carlos

Untalan on May 31, 2007 at 3:41 p.m.); see also 18 G.C.A. § 85318 (the method of communicating

an acceptance); see also 18 G.C.A. § 85319 (consent is fully communicated when the party accepting

the proposal puts acceptance in the course of transmission to the proposer); see also 18 G.C.A. §

85321; see also 18 G.C.A. § 85322; see also 21 G.C.A. § 62206; see also 21 G.C.A. § 62305; see

also 21 G.C.A. § 62402. The evidence reflects that the Survey Map was last signed by Guam's Chief

Surveyor Nicanor Carino on October 27, 1999 (Exhibit 1 on right towards bottom) and recorded on

November 1, 1999 (Exhibit 1 towards left; stamped). Thus, no matter how much we stretch the

evidence, Enrique Baza and Eleanor Perez were not the legal owners of Tract 63004 when the

---

[4]

The Court would like to point out that when it made its decision on March 19, 2007 there was no indication anywhere in the record of any escrow between Defendant and Enrique Baza. Seeing that the sale agreement took place on August 21, 1998 and that the Survey Map was signed on March 15, 1999, the Court had no reason to believe that the Survey Map was not an invalid agreement made by invalid parties. It is only recently that Plaintiffs have brought forth information as to the escrow.

16

Survey Map was finally agreed to.[5] They did not have the right to form a binding obligation as to Tract 63004 with the Department of Land Management. 18 G.C.A. § 85102 ("It is essential to the existence of a contract that there should be: 1. Parties capable of contracting . . . ."). Once the recording of the Cyfred-Baza deed occurred on October 6, 1999, the Department of Land Management should have approached Defendant (the true owners) or Enrique Baza should have advised authorities that its March 15, 1999 offer was no longer standing. Regardless of who is at fault, though, this Court sees no possible legal foundation on which it can enforce the Survey Map.

In summary, the Survey Map was not a binding agreement and Defendant was not legally bound by it to make any statement to Plaintiffs in regard to the Survey Map conditions. This means that there was no misleading omission and no DTPCPA violation in this claim.

### 3. Failure to disclose in the Warranty Deed the promise to as to sewer

In the Land Purchase Agreement signed by Plaintiffs on November 8, 1999 (Exhibit A.1), there is a promise by Defendant to build an eight-inch sewer line and a six-inch water line. The Warranty Deed Rider mentions the water obligation but nothing about the sewer-line promise. (Exhibit A.9). Thus, Plaintiffs claim Defendant's failure to mention the promised sewer line in the Warranty Deed Rider is a misleading omission and a DTPCPA violation.

But as we saw in the Motion for Partial Summary Judgment in this case and as we saw in Abolos v. Cyfred, 2006 Guam 7, sewer-line promises do not necessarily have to be in the actual warranty deed in order for the buyer to be protected. Therefore, there has been no material

---

[5]

    There are also some other problems with Plaintiffs' Survey-Map claim. First, Carlos Untalan, Chief Planner of the Department of Land Management, clearly said that the Special Note in the Survey Map (provided in the discussion above) was standard language used in all survey maps and that it did not really act as a precise listing of requirements for developers. (Untalan on June 1, 2007 at 10:46 a.m.). Second, to sue on the Survey Map, Plaintiffs would be going under the third-party-beneficiary concept but this concept was never stated as a claim in the First Amended Complaint or in the April 26, 2002 letter to Defendant (Defendant's Exhibit A.82). Third, it can be argued that the Survey Map was properly referenced in the Warranty Deed; in the separate, single-spaced paragraph at the bottom of Exhibit A.6, Defendant referred to the Survey Map.

17

misleading omission. Enough statements were provided in the Land Purchase Agreement to protect Plaintiffs on the issue of the sewer line and the Court's June 12, 2006 granting of Partial Summary Judgment is proof of the immateriality of the omission. If the Court had denied Plaintiffs Sananaps a right to damages in its decision on June 12, 2006 because of the non-existence of any sewer-line promises in the Warranty Deed, perhaps Plaintiffs Sananaps would have a basis for a DTPCPA claim on this point. But that is not the case and this Court does not believe Plaintiffs Sananaps can meet all the <u>Marfega</u> elements.

## B. Civil Procedure Rule 52 Principles

As the Court's discussion above shows, the Court does not believe that Plaintiffs are able to support any of the DTPCPA claims which they have pled in Count II of the First Amended Complaint. The main issue for the Court, though, is determining whether the trial should continue or if there is reason to issue a judgment on partial findings.

Civil Procedure Rule 52(c) states that in a bench trial, "if a party has been fully heard on an issue and the court finds against the party on that issue" the Court may enter judgment as a matter of law. GUAM R. CIV. P. 52(c). A court's duty in a motion for judgment on partial findings is to weigh all the evidence presented in a plaintiff's case and then issue the judgment if the plaintiff failed to establish the elements of his or her case. <u>Ortloff v. U.S.</u>, 335 F.3d 652, 660 (7th Cir. 2003) (courts weigh evidence and then decide whether plaintiff has proven case); <u>see also Cherrey v. Thompson Steel Co., Inc.</u>, 805 F.Supp. 1257, 1261 (D.Md. 1992) ("Instead it is to weigh the evidence, resolve any conflicts in it, and decide for itself where the preponderance lies.") (citing 9 C. Wright and A. Miller, <u>Federal Practice and Procedure</u> § 2372 (1971)). There is no requirement for courts to draw any inferences for the plaintiff or rule in a light most favorable to the plaintiff. <u>Ritchie v. U.S.</u>, 451 F.3d 1019, 1023 (9th Cir. 2006) ("In deciding whether to enter judgment on partial findings under Rule 52(c), the district court is not required to draw any inferences in favor

18

of the non-moving party; rather, the district court may make findings in accordance with its own view of the evidence."); see also Winning Ways, Inc. v. Holloway Sportswear, Inc., 913 F.Supp. 1454, 1460 (D.Kan. 1996). After looking at all the evidence, a court should ask whether or not the plaintiff has demonstrated a factual and legal right to relief by a preponderance of the evidence. Winning Ways, Inc. v. Holloway Sportswear, Inc., 913 F.Supp. 1454, 1460 (D.Kan. 1996).

Here, as described above, all three DTPCPA claims in Plaintiffs Sananaps' Count II lack a factual and legal basis. For these reasons and in accordance with the Civil Procedure Rule 52(c) principles cited above, the Court will grant Defendant a judgment on the partial findings as to Count II. To the Court, it was very important that Plaintiffs Sananaps failed to discuss Marfega or any other DTPCPA cases such as the ones cited by Defendant (Defendant's Motion for Judgment at 3). In fact, there is no sign that Plaintiffs Sananaps even knew about the Marfega elements when putting up their case before the Court. When Plaintiffs Sananaps were on the stand, the pattern of testimony elicited did not follow in any way the pattern of the DTPCPA elements. The fact that Plaintiffs were totally oblivious to the elements they needed to establish[6] reflected all along to the Court that they did not have the factual or legal basis for relief under the DTPCPA.

**III. Damages**

In Count II of their First Amended Complaint, Plaintiffs Sananaps ask for damages, emotional distress damages, "recent typhoon property damages", attorneys fees and costs, and

---

[6] For example: Plaintiffs failed to mention any DTPCPA elements or cases in their Opposition to this motion; they failed to mention any elements or cases in the oral argument to the motion on February 5, 2008; they failed to mention any elements or cases in Plaintiffs' May 7, 2007 Trial Memorandum; they failed to mention any elements or cases in Plaintiffs' First Amended Complaint (at 8, ¶¶ 32 and 33); they failed to mention any elements or cases in Wong's May 22, 2007 and May 24, 2007 Opening Statements; they failed to mention any elements or cases in the Motion for Preliminary Injunction filed on March 14, 2006; they failed to mention any elements or cases in the Reply in Support of Plaintiffs' Motion for Various Stays on November 3, 2006; they failed to mention any elements or cases in the Motion for TRO on September 29, 2006; and they failed to mention any elements or cases in the Motion for Preliminary Injunction on October 25, 2006. The only time Plaintiffs ever discussed the elements and the case law for the DTPCPA was in their October 16, 2006 Motion for Temporary Restraining Order. Since then, Plaintiffs have given no sign that they recognize these sources as the governing law for this matter.

19

1
2   "treble, exemplary or punitive damages". (Finding 64). These requested damages were all based on
3   their DTPCPA claims. Since none of the DTPCPA claims merit any relief legally or factually, the
4   Court will not grant any damages to Plaintiffs which they requested in Count II. 5 G.C.A. § 32112
5   ("In a suit filed pursuant to this chapter, a consumer . . . who prevails may obtain . . . ."); 20 G.C.A.
6   § 2101 ("Every person who suffers detriment from the unlawful act or omission of another, may
7   recover from the person in fault a compensation therefor, in money, which is called damages.").
8
                                    **ORDER**
9
10      In accordance with the above conclusions of law and after making partial findings by a
11  preponderance of the evidence, the Court REJECTS all of Plaintiffs Sananaps' Count II claims
12  finding that they lack a legal and factual basis for relief and the Court GRANTS Defendant's Civil
13  Procedure Rule 52 Motion for Judgment on Partial Findings.
14      SO ORDERED this _5_ day of _March_ 2008.
15
16                                  _____
17                                  HONORABLE ANITA A. SUKOLA
18                                  JUDGE, SUPERIOR COURT OF GUAM
19
20
21
22
23
24
25
I do hereby certify that the foregoing is
a full true and correct copy of the
original on file in the office of the clerk
of the Superior Court of Guam.
Dated at Hagatna Guam.
26
27          MAR 0 5 2008
28                                          20

Wayson W. S. Wong, Esq.
Law Offices of Wayson Wong
142 Seaton Blvd., Suite 101
Hagatna, Guam 96910
Phone: 475-7448

Alicia A. Limtiaco, Esq.
Donna M. Cruz, Esq.
Limtiaco, Cruz & Sison, PLLC
777 Route 4, Suite 11B
Sinajana, Guam 96910

Attorneys for Plaintiffs

SUPERIOR COURT
OF GUAM

2006 OCT 17 PM 12: 26

CLERK OF COURT

By _____

## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| KINI B. SANANAP, IOWANA M. SANANAP and THE 40 LOT OWNERS (OF 33 LOTS) LISTED IN EXHIBIT "1" TO THE FIRST AMENDED COMPLAINT,<br><br>Plaintiffs,<br><br>vs.<br><br>CYFRED, LTD., A Guam Corporation; ENRIQUE BAZA, JR.; ELEANOR B. PEREZ; DONGBU INSURANCE COMPANY and DOE DEFENDANTS 1-10,<br><br>Defendants. | Civil Case No. CV1448-02<br><br>ANSWER TO COUNTERCLAIM; CERTIFICATE OF SERVICE |

## ANSWER TO COUNTERCLAIM

Plaintiffs, by and through their counsel, Wayson W. S. Wong, Esq., of the Law Offices of Wayson Wong, A Professional Corporation, and Alicia A. Limtiaco, Esq., and Donna M. Cruz, Esq., of Limtiaco, Cruz and Sison, PLLP, answer the Counterclaim filed by defendant Cyfred, Ltd. ("Cyfred") on June 12, 2006, as follows.



"F"

## FIRST DEFENSE

1.    The Counterclaim fails to contain any claim upon which relief can be granted against plaintiffs or any one or more of them.

## SECOND DEFENSE

2.    Plaintiffs deny the allegations in paragraphs 8 and 9 of the Counterclaim (the Counterclaim allegations begin with paragraph 7 and end with paragraph 10).

3.    For their answer to paragraph 7 of the Counterclaim, plaintiffs admit that they entered into contracts for the purchase of real property from Cyfred to make payments on a monthly installment basis and that at least since April 1, 2006, they have failed to pay the installments at the advice of their counsel and because of Cyfred's material breach of its obligation under those contracts to install the sewer lines at the Gill-Baza Subdivision; but they are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in that paragraph.

4.    For their answer to paragraph 10 of the Counterclaim, plaintiffs note that it applies only to plaintiffs Kini and Iowana Sananap (the "Sananaps") and alleges the same allegations against them in the Counterclaim filed on November 4, 2002; the Sananaps respond to it by incorporating by reference their answers to that previous Counterclaim as set forth in their Answer to Counterclaim filed on May 13, 2003.

## THIRD DEFENSE

5.    As indicated, Cyfred has materially breached its contracts with the plaintiffs and/or violated 21 G.C.A. § 60314 by failing to install the sewer lines as had been agreed to by it; and such material breach has suspended or excused the plaintiffs' obligations to pay any monthly installment payment since that breach. Furthermore, the plaintiffs are entitled to damages against Cyfred for that breach, and their damages are an offset to whatever amount they may owe Cyfred under those contracts.

## FOURTH DEFENSE

6.    Cyfred misled and/or deceived plaintiffs with respect to the type of title (Cyfred indicated that they had good title, when they did not) they were receiving from it for the lots they had purchased from Cyfred at the Gill-Baza Subdivision and

2

further misled and/or deceived them as to the fact that it was required to construct all of the water, power, sewer, telephone and fire hydrant infrastructure for the Subdivision. The plaintiffs reasonably relied on such misrepresentations and/or deception to their detriment and have sustained damages because of that. They are entitled to such damages, including but not limited to treble (as provided for in 5 G.C.A. Chapter 32, the Deceptive Trade Practices Act), punitive and/or exemplary damages against Cyfred, and such damages are an offset to whatever amount they may owe Cyfred under those contracts.

## FIFTH DEFENSE

7.    To the extent that the claims in the Complaint filed for this case provide for an affirmative defense and/or offset, they are reasserted here.

## SIXTH DEFENSE

8.    To the extent Cyfred tries to enforce the claims it has asserted in the Counterclaim before this case has been fully adjudicated, plaintiffs or any one or more of them are entitled to the temporary restraining order and/or injunction protections set forth in 5 G.C.A. § 32119 and/or Rule 65(b) of the Rules of Civil Procedure of the Superior Court of Guam.

Wherefore, plaintiffs pray that the Counterclaim be dismissed with prejudice, that they be provided with the temporary restraining order and/or injunctive relief as needed, and that they obtain judgment against Cyfred for their damages, including compensatory, special, general, treble, exemplary and/or punitive damages, together with interest, their reasonable attorney's fees and costs and any additional relief that this Court deems appropriate.

Dated: Hagatna, Guam, October 17, 2006.

Wayson W. S. Wong
Alicia A. Limtiaco
Donna M. Cruz
Attorneys for Plaintiffs

3

# IN THE SUPERIOR COURT OF GUAM

KINI B. SANANAP, IOWANA M.
SANANAP and THE 40 LOT OWNERS
(OF 33 LOTS) LISTED IN EXHIBIT "1"
TO THE FIRST AMENDED
COMPLAINT,

          Plaintiffs,

    vs.

CYFRED, LTD., A Guam
Corporation, ENRIQUE BAZA, JR.,
ELEANOR B. PEREZ; DONGBU
INSURANCE COMPANY and DOE
DEFENDANTS 1 – 10,

          Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CIVIL CASE NO.  CV1448-02

CERTIFICATE OF SERVICE

## CERTIFICATE OF SERVICE

    I hereby certify that on the date indicated below a copy of the foregoing

document was duly served by personal delivery upon the following at his last known

address.

    Curtis C. Van de veld, Esq.
    Van de veld, Shimizu, Canto & Fisher
    Ste. 101, De La Corte, Bldg.
    167 E. Marine Corps Dr.
    Hagatna, Guam  96910

    Attorney for Defendants Cyfred, Ltd.,
    Enrique Baza, Jr. and Eleanor B. Perez

    Dated:  Hagatna, Guam, October 17, 2006.

                        Wayson W. S. Wong
                        Alicia A. Limtiaco
                        Donna M. Cruz
                        Attorney for Plaintiffs