| Open Year | Office Case | Office Name | Original No. | Total Amt Pay | Current Resc | | Closed Date |
|---|---|---|---|---|---|---|---|
| 1994 | 70001 | F.A.T. & ESC - GUAM | 940326 | 273.00 ACCEPTANCE | | | 05/06/02 |
| 1994 | 70001 | F.A.T. & ESC - GUAM | 940406 | 467.00 ACCEPTANCE | | | 01/31/96 |
| 1994 | 70001 | F.A.T. & ESC - GUAM | 940468 | 182.00 DENIAL | ✓ | | 06/30/94 |
| 1994 | 70001 | F.A.T. & ESC - GUAM | 940489 | 1,752.00 ACCEPTANCE | | | 01/31/96 |
| 1994 | 70001 | F.A.T. & ESC - GUAM | 940600 | 1,116.00 ACCEPTANCE | | | 01/31/96 |
| 1994 | 70001 | F.A.T. & ESC - GUAM | 940622 | 219.00 DENIAL | ✓ | | 01/31/96 |
| 1994 | 70001 | F.A.T. & ESC - GUAM | 941018 | 287.00 INVESTIGATION | Accept | | 01/31/96 |
| 1994 | 70001 | F.A.T. & ESC - GUAM | 941048 | 364.00 INVESTIGATION | Accept | | 01/31/96 |
| 1994 | 70001 | F.A.T. & ESC - GUAM | 941187 | 313.00 INVESTIGATION | Accept. | | 01/31/96 |
| 1994 | 70001 | F.A.T. & ESC - GUAM | 941431 | 12,788.00 ACCEPTANCE | | | 02/28/97 |
| 1994 | 70001 | F.A.T. & ESC - GUAM | 941586 | 228.00 INVESTIGATION | Accept. | | 01/31/96 |
| 1994 | 70001 | F.A.T. & ESC - GUAM | 941586 | 218.00 INVESTIGATION | Accept. | | 01/31/96 |
| 1994 | 70001 | F.A.T. & ESC - GUAM | 941741 | 278.00 INVESTIGATION | Accept | | 02/28/96 |
| 1994 | 70001 | F.A.T. & ESC - GUAM | 941742 | 372.00 INVESTIGATION | " | | 12/31/94 |
| 1994 | 70001 | F.A.T. & ESC - GUAM | 941786 | 705.00 ACCEPTANCE | | | 06/10/02 |
| 1994 | 70001 | F.A.T. & ESC - GUAM | 941787 | 346.00 INVESTIGATION | Denial | | 01/31/96 |
| 1994 | 70001 | F.A.T. & ESC - GUAM | 941849 | 880.00 INVESTIGATION | ACCEPT | | 01/31/96 |
| 1994 | 70001 | F.A.T. & ESC - GUAM | 942034 | 331.00 ACCEPTANCE | | | 10/31/96 |
| 1994 | 70001 | F.A.T. & ESC - GUAM | 942635 | 180.00 INVESTIGATION | ACCEPT | | 01/31/96 |
| 1994 | 70001 | F.A.T. & ESC - GUAM | 942036 | 2,068.00 ACCEPTANCE | | | 10/31/96 |
| 1994 | 70001 | F.A.T. & ESC - GUAM | 942837 | 180.00 DENIAL | Denial | | 07/31/94 |
| 1994 | 70003 | ISLAND PACIFIC TITLE & ESCROW | 940687 | 580.00 INVESTIGATION | Accept. | | 10/31/94 |
| 1994 | 70003 | ISLAND PACIFIC TITLE & ESCROW | 940480 | 3,571.00 ACCEPTANCE | | | 01/31/96 |
| 1994 | 70003 | ISLAND PACIFIC TITLE & ESCROW | 940710 | 741.00 ACCEPTANCE | | | 01/31/96 |
| 1994 | 70003 | ISLAND PACIFIC TITLE & ESCROW | 940960 | 331.00 ACCEPTANCE | | | 01/31/96 |
| 1994 | 70006 | PACIFIC AMERICAN TITLE INS. | 940102 | - ACCEPTANCE | ✓ | | 04/30/94 |
| 1994 | 70006 | PACIFIC AMERICAN TITLE INS. | 940808 | - DENIAL | ✓ | | 06/30/94 |
| 1994 | 70005 | F.A.T. & ESCROW - SAIPAN | 941186 | 219,919.00 ACCEPTANCE | | | 05/18/00 |
| 1994 | 70006 | F.A.T. & ESCROW - SAIPAN | 943884 | 2,570.00 DENIAL | | | 07/31/96 |
| 1994 | 70002 | TITLE INS. & ESC - GUAM | 943884 | 1,518.00 ACCEPTANCE | Accept | | 01/31/96 |
| 1995 | 70006 | PACIFIC AMERICAN TITLE INS. | 901160918 | - DENIAL | | | 03/31/95 |
| 1995 | 70006 | PACIFIC AMERICAN TITLE INS. | 901180940 | - INVESTIGATION | Denial | | 01/31/96 |
| 1995 | 70006 | PACIFIC AMERICAN TITLE INS. | 901150584 | 786.00 INVESTIGATION | Denial | | 01/31/96 |
| 1995 | 70006 | PACIFIC AMERICAN TITLE INS. | 901150508 | 4,500.00 INVESTIGATION | | | 12/31/96 |
| 1995 | 70006 | PACIFIC AMERICAN TITLE INS. | 901160386 | 181,080.00 ACCEPTANCE | | | 10/31/96 |
| 1995 | 70001 | F.A.T. & ESC - GUAM | 901160015 | 2,284.97 INVESTIGATION | Accept. | | 01/31/96 |
| 1995 | 70001 | F.A.T. & ESC - GUAM | 901150088 | 877.00 INVESTIGATION | " | | 06/30/97 |
| 1995 | 70001 | F.A.T. & ESC - GUAM | 901150140 | 384.00 INVESTIGATION | " | | 01/31/96 |
| 1995 | 70001 | F.A.T. & ESC - GUAM | 901150140 | 486.00 INVESTIGATION | " | | 01/31/96 |
| 1995 | 70001 | F.A.T. & ESC - GUAM | 901150141 | 143.00 INVESTIGATION | " | | 04/30/96 |
| 1995 | 70001 | F.A.T. & ESC - GUAM | 901150271 | 891.00 INVESTIGATION | " | | 01/31/96 |
| 1995 | 70001 | F.A.T. & ESC - GUAM | 901150290 | 288.00 INVESTIGATION | " | | 06/30/97 |
| 1995 | 70001 | F.A.T. & ESC - GUAM | 901150581 | 331.00 INVESTIGATION | " | | 01/31/96 |
| 1995 | 70001 | F.A.T. & ESC - GUAM | 901150614 | 509.00 INVESTIGATION | Accept | | 01/31/96 |
| 1996 | 70001 | F.A.T. & ESC - GUAM | 961150432 | 11,888.00 ACCEPTANCE | | | 01/31/98 |
| 1996 | 70001 | F.A.T. & ESC - GUAM | 961150089 | 2,080.00 INVESTIGATION | Accept | | 11/30/96 |
| 1996 | 70001 | F.A.T. & ESC - GUAM | 961150100 | 308.00 ACCEPTANCE | | | 01/31/96 |
| 1996 | 70001 | F.A.T. & ESC - GUAM | 961150101 | 118.00 ACCEPTANCE | | | 05/08/02 |
| 1996 | 70001 | F.A.T. & ESC - GUAM | 961150102 | 29,332.48 DENIAL | Accept. | | 07/12/04 |
| 1996 | 70001 | F.A.T. & ESC - GUAM | 961150103 | - INVESTIGATION | " | | 06/30/97 |
| 1996 | 70001 | F.A.T. & ESC - GUAM | 961150104 | 417.00 ACCEPTANCE | | | 11/30/96 |
| 1996 | 70001 | F.A.T. & ESC - GUAM | 961150121 | 5,638.00 ACCEPTANCE | | | 05/16/00 |
| 1996 | 70001 | F.A.T. & ESC - GUAM | 961150127 | 280.00 INVESTIGATION | Accept | | 08/31/96 |
| 1996 | 70001 | F.A.T. & ESC - GUAM | 961150177 | 1,633.00 ACCEPTANCE | | | 06/30/97 |
| 1996 | 70001 | F.A.T. & ESC - GUAM | 961150187 | 1,344.00 INVESTIGATION | Accept | | 06/30/97 |
| 1996 | 70001 | F.A.T. & ESC - GUAM | 961150240 | 1,018.00 ACCEPTANCE | | | 10/31/96 |
| 1996 | 70001 | F.A.T. & ESC - GUAM | 961150266 | 655.00 ACCEPTANCE | | | 06/30/97 |
| 1996 | 70001 | F.A.T. & ESC - GUAM | 961150278 | 6,822.00 INVESTIGATION | Denial | | 03/31/97 |
| 1996 | 70006 | PACIFIC AMERICAN TITLE INS. | 961150855 | 19,080.00 INVESTIGATION | Accept | | 01/31/98 |
| 1996 | 70006 | PACIFIC AMERICAN TITLE INS. | 961150286 | - DENIAL | | | 10/31/96 |
| 1996 | 70006 | PACIFIC AMERICAN TITLE INS. | 961150292 | 18,143.00 INVESTIGATION | Accept | | 03/31/96 |
| 1996 | 70003 | ISLAND PACIFIC TITLE & ESCROW | 961150241 | 486.00 ACCEPTANCE | | | 01/31/96 |
| 1997 | 70003 | ISLAND PACIFIC TITLE & ESCROW | 971150006 | 91.00 INVESTIGATION | Accept | | 01/31/96 |
| 1997 | 70003 | ISLAND PACIFIC TITLE & ESCROW | 971150004 | - ACCEPTANCE | | | 10/31/96 |
| 1997 | 70006 | PACIFIC AMERICAN TITLE INS. | 971150079 | - INVESTIGATION | ✓ | | 01/31/98 |
| 1997 | 70006 | PACIFIC AMERICAN TITLE INS. | 971160114 | 90.00 DENIAL | ✓ | | 04/30/99 |
| 1997 | 70006 | PACIFIC AMERICAN TITLE INS. | 971160114 | - INVESTIGATION | | | 01/31/98 |
| 1997 | 70006 | PACIFIC AMERICAN TITLE INS. | 971150108 | - INVESTIGATION | | | 10/31/96 |
| 1997 | 70006 | F.A.T. & ESC - SAIPAN | 971160066 | 42,864.00 INVESTIGATION | Accept | | 05/31/98 |
| 1997 | 70001 | F.A.T. & ESC - GUAM | 971160025 | 3,896.00 INVESTIGATION | Accept | | 01/31/98 |
| 1997 | 70001 | F.A.T. & ESC - GUAM | 971150054 | 777.00 ACCEPTANCE | | | 10/31/98 |
| 1997 | 70001 | F.A.T. & ESC - GUAM | 971150060 | 708.00 ACCEPTANCE WITH RESERVATION | | | 10/31/98 |
| 1997 | 70001 | F.A.T. & ESC - GUAM | 971160061 | 2,282.00 INVESTIGATION | Accept | | 01/31/98 |
| 1997 | 70001 | F.A.T. & ESC - GUAM | 971160163 | 664.00 INVESTIGATION | " | | 01/31/98 |
| 1997 | 70001 | F.A.T. & ESC - GUAM | 971150164 | 146.00 DENIAL | | | 10/31/98 |
| 1997 | 70001 | F.A.T. & ESC - GUAM | 971150180 | 182.00 ACCEPTANCE | | | 10/31/98 |
| 1998 | 70001 | F.A.T. & ESC - GUAM | 981150009 | 1,340.00 ACCEPTANCE | | | 10/31/98 |
| 1998 | 70001 | F.A.T. & ESC - GUAM | 981150010 | 29,381.38 ACCEPTANCE | | | 07/31/02 |
| 1998 | 70001 | F.A.T. & ESC - GUAM | 981150013 | 757.00 ACCEPTANCE | | | 10/31/98 |
| 1998 | 70001 | F.A.T. & ESC - GUAM | 981150052 | 1,080.00 ACCEPTANCE | | | 10/31/98 |
| 1998 | 70001 | F.A.T. & ESC - GUAM | 981150074 | 2,088.18 ACCEPTANCE | | | 06/18/00 |
| 1998 | 70001 | F.A.T. & ESC - GUAM | 981150137 | 345.00 ACCEPTANCE | | | 10/31/98 |
| 1998 | 70001 | F.A.T. & ESC - GUAM | 981150145 | 111,242.02 ACCEPTANCE WITH RESERVATION | | | 02/21/02 |
| 1998 | 70006 | PACIFIC AMERICAN TITLE INS. | 981150206 | 163,412.44 INVESTIGATION | Accepted | | 07/17/02 |
| 1998 | 70006 | PACIFIC AMERICAN TITLE INS. | 981160199 | 2,782.18 DENIAL | Accept | | 11/20/00 |
| 1999 | 70001 | F.A.T. & ESC - GUAM | 991150074 | 638.00 INVESTIGATION | " | | 06/18/00 |
| 1999 | 70001 | F.A.T. & ESC - GUAM | 991150275 | 171.00 INVESTIGATION | " | | 03/18/00 |
| 1999 | 70001 | F.A.T. & ESC - GUAM | 991150271 | 347.00 INVESTIGATION | " | | 05/18/00 |
| 1999 | 70001 | F.A.T. & ESC - GUAM | 991150128 | 291.32 INVESTIGATION | " | | 03/18/00 |
| 1999 | 70001 | F.A.T. & ESC - GUAM | 991150184 | 4,822.38 INVESTIGATION | " | | 11/20/00 |
| 1999 | 70001 | F.A.T. & ESC - GUAM | 991150166 | 712.43 ACCEPTANCE | | | 05/18/00 |
| 2000 | 70005 | F.A.T. & ESCROW - SAIPAN | 001150130 | 48,006.95 ACCEPTANCE | | | 04/30/01 |
| 2000 | 70001 | F.A.T. & ESC - GUAM | 001150681 | 178.38 INVESTIGATION | ACCEPT | | 03/01/00 |
| 2000 | 70001 | F.A.T. & ESC - GUAM | 001150213 | 7,600.77 ACCEPTANCE | | | 10/10/01 |
| 2000 | 70006 | PACIFIC AMERICAN TITLE INS. | 001160068 | 2,861.85 ACCEPTANCE | | | 01/03/03 |
| 2000 | 70003 | ISLAND PACIFIC TITLE & ESCROW | 001150068 | 526.98 ACCEPTANCE | | | 08/17/00 |
| 2000 | 70001 | F.A.T. & ESC - GUAM | 001150215 | 11,628.98 INVESTIGATION | ACCEPT | | 02/21/02 |

"O"

First American - 229

| Year | No. | Company | ID | Amount / Status | Note | Date |
|---|---|---|---|---|---|---|
| 2001 | 70001 | F.A.T. & ESC - GUAM | 011160044 | 19,970.90 INVESTIGATION | ACCEPT | 02/21/02 |
| 2001 | 70001 | F.A.T. & ESC - GUAM | 011160046 | 711.65 ACCEPTANCE | | 07/31/01 |
| 2001 | 70001 | F.A.T. & ESC - GUAM | 011160096 | 285.48 ACCEPTANCE | | 07/21/02 |
| 2001 | 70001 | F.A.T. & ESC - GUAM | 011160099 | 329.61 ACCEPTANCE | | 02/29/08 |
| 2001 | 70001 | F.A.T. & ESC - GUAM | 011160112 | 1,170.34 ACCEPTANCE | | 10/31/01 |
| 2001 | 70001 | F.A.T. & ESC - GUAM | 011160182 | 862.99 INVESTIGATION | DENIED | 07/31/06 |
| 2001 | 70001 | F.A.T. & ESC - GUAM | 011160194 | 1,294.00 ACCEPTANCE | | 06/31/02 |
| 2001 | 70001 | F.A.T. & ESC - GUAM | 011150217 | 562.50 ACCEPTANCE | | 06/31/02 |
| 2001 | 70006 | PACIFIC AMERICAN TITLE INS. | 011160046 | 10,041.99 INVESTIGATION | DENIED | 02/18/04 |
| 2001 | 70006 | F.A.T. & ESCROW - SAIPAN | 011160161 | 1,049.74 ACCEPTANCE | | 02/21/02 |
| 2001 | 70006 | SECURITY TITLE INC. GUAM | 011160162 | 24,168.87 INVESTIGATION | Accept | 10/31/07 |
| 2002 | 70010 | PACIFIC AMERICAN TITLE INS. | 021160172 | 25,562.22 INVESTIGATION | Accept | 02/18/04 |
| 2002 | 70006 | PACIFIC AMERICAN TITLE INS | 021160144 | 3,420.91 INVESTIGATION | Accept. | 04/30/06 |
| 2002 | 70001 | F.A.T. & ESC - GUAM | 021160148 | 915.76 ACCEPTANCE | | 12/31/02 |
| 2002 | 70001 | F.A.T. & ESC - GUAM | 021160171 | 2,193.60 ACCEPTANCE | | 02/18/04 |
| 2002 | 70001 | F.A.T. & ESC - GUAM | 021160221 | 1,485.60 ACCEPTANCE | | 02/18/04 |
| 2002 | 70001 | F.A.T. & ESC - GUAM | 021160229 | 467.04 ACCEPTANCE | | 12/31/02 |
| 2003 | 70001 | F.A.T. & ESC - GUAM | 031160043 | 209.66 DENIAL | | 02/18/04 |
| 2003 | 70001 | F.A.T. & ESC - GUAM | 031160167 | 1,472.90 ACCEPTANCE | ✓ | 02/18/04 |
| 2003 | 70001 | F.A.T. & ESC - GUAM | 031160160 | 944.06 ACCEPTANCE | | 09/30/03 |
| 2003 | 70001 | F.A.T. & ESC - GUAM | 031160268 | 280.16 ACCEPTANCE | | 02/18/04 |
| 2003 | 70001 | F.A.T. & ESC - GUAM | 031160269 | 108.75 INVESTIGATION | Accept | 04/30/04 |
| 2003 | 70001 | F.A.T. & ESC - GUAM | 031160269 | 218.89 INVESTIGATION | Denied | 02/18/04 |
| 2003 | 70001 | F.A.T. & ESC - GUAM | 031160269 | 484.32 ACCEPTANCE | | 02/18/04 |
| 2003 | 70001 | F.A.T. & ESC - GUAM | 031150270 | 649.37 ACCEPTANCE | | 02/18/04 |
| 2003 | 70001 | F.A.T. & ESC - GUAM | 031160406 | 4,483.39 INVESTIGATION | Accept. | 06/23/06 |
| 2003 | 70001 | F.A.T. & ESC - GUAM | 031150412 | 601.30 ACCEPTANCE | | 11/30/06 |
| 2003 | 70006 | PACIFIC AMERICAN TITLE INS. | 031160426 | 273.99 INVESTIGATION | Denied | 01/31/06 |
| 2003 | 70006 | PACIFIC AMERICAN TITLE INS. | 031160916 | 406.44 DENIAL | | 02/18/04 |
| 2003 | 70011 | SECURITY TITLE INC./SAIPAN | 031150149 | 119,900.32 ACCEPTANCE | | |
| 2004 | 70003 | ISLAND PACIFIC TITLE & ESCROW | 041160117 | 1,511.44 ACCEPTANCE | | 01/31/06 |
| 2004 | 70003 | ISLAND PACIFIC TITLE & ESCROW | 041160323 | 476.70 ACCEPTANCE | | 11/30/04 |
| 2004 | 70006 | PACIFIC AMERICAN TITLE INS | 041160165 | 9,630.07 ACCEPTANCE | | 02/26/06 |
| 2004 | 70006 | PACIFIC AMERICAN TITLE INS. | 041160275 | 49,517.71 ACCEPTANCE | | 12/31/06 |
| 2004 | 70010 | SECURITY TITLE INC. GUAM | 041160709 | 72,166.99 INVESTIGATION | Accept. | 06/31/05 |
| 2004 | 70001 | F.A.T. & ESC - GUAM | 041160080 | 278.72 ACCEPTANCE | | 02/28/06 |
| 2004 | 70001 | F.A.T. & ESC - GUAM | 041160049 | 949.19 INVESTIGATION | Denied | 01/31/05 |
| 2004 | 70002 | TITLE INS & ESC -GUAM | 041160077 | 891.82 INVESTIGATION | Accept. | 02/26/06 |
| 2005 | 70001 | F.A.T. & ESC - GUAM | 041160236 | 809.71 ACCEPTANCE | | 01/31/05 |
| 2005 | 70001 | F.A.T. & ESC - GUAM | 051160222 | 1,301.81 ACCEPTANCE | | 06/23/06 |
| 2005 | 70001 | F.A.T. & ESC - GUAM | 051160363 | 3,809.96 DENIAL | Denial | 06/30/07 |
| 2006 | 70001 | F.A.T. & ESC - GUAM | 051160338 | 675.50 ACCEPTANCE | | |
| 2005 | 70010 | SECURITY TITLE INC./GUAM | 051160444 | 71,696.96 ACCEPTANCE | | |
| 2005 | 70010 | SECURITY TITLE INC./GUAM | 051160494 | 18,067.89 INVESTIGATION | Accept. | 12/31/06 |
| 2005 | 70010 | SECURITY TITLE INC./GUAM | 051160828 | 3,164.99 INVESTIGATION | " | 11/30/06 |
| 2006 | 70010 | SECURITY TITLE INC./GUAM | 051160066 | - DENIAL | | 07/31/07 |
| 2006 | 70001 | F.A.T. & ESC - GUAM | 061160066 | 67,880.00 INVESTIGATION | Accept. | |
| 2006 | 70001 | F.A.T. & ESC - GUAM | 061160168 | 8,796.30 INVESTIGATION | Accept. | 06/31/06 |
| 2006 | 70006 | PACIFIC AMERICAN TITLE INS. | 061160290 | 33,675.90 ACCEPTANCE | | |
| 2006 | 70006 | PACIFIC AMERICAN TITLE INS. | 061160966 | - INVESTIGATION | Accept. (cuffed) | |
| 2006 | 70006 | PACIFIC AMERICAN TITLE INS. | 061161198 | 40,276.17 INVESTIGATION | | 10/27/06 |
| 2007 | 70001 | F.A.T. & ESC - GUAM | 071160440 | 3,796.00 ACCEPTANCE | | |
| 2007 | 70001 | F.A.T. & ESC - GUAM | 071160746 | 739.90 INVESTIGATION | Accept. | 02/27/06 |
| 2007 | 70001 | F.A.T. & ESC - GUAM | 071151912 | 483.13 INVESTIGATION | " | 02/28/06 |
| 2007 | 70010 | SECURITY TITLE INC./GUAM | 071181961 | 14,701.90 INVESTIGATION | " | 03/29/06 |
| | | | | 1,616,796.29 | | |

153
70 Accept.
53

First American - 230

# (Year 2005)

# FORTY-SEVENTH (47th)

# ANNUAL REPORT

# Of The

# INSURANCE COMMISSIONER

"E"

Case 1:07-cv-00024   Document 94-4   Filed 04/29/2008   Page 3 of 28

# FORTY-SEVENTH
# ANNUAL REPORT
## Of the Insurance Commissioner

The Forty-seventh (47th) Annual Report of the Banking and Insurance Commissioner is hereby submitted pursuant to the provisions of Title 11 Guam Code Annotated §103114.

On August 27, 2004, Andreas J. Jordanou was appointed the Commissioner of Banking and Insurance. The current members of the Board whose term of office are six (6) years and 3 years are as follows:

| No | Name of Board Member | No of Years | Term of Office |
|----|----------------------|-------------|----------------|
| 1 | William D. Leon Guerrero | 6 | 03/04/05 – 03/04/2011 |
| 2 | Larry K. Butterfield | 6 | 03/04/05 – 03/04/2011 |
| 3 | Mark O. Fish | 6 | 03/04/05 – 03/04/2011 |
| 4 | Raymond A. Schnabel | 6 | 03/04/05 – 03/04/2011 |
| 5 | Antonita S. Camacho | 3 | 03/04/05 – 03/04/2008 |
| 6 | Naoyuki "Nike" Inoue | 3 | 03/04/05 – 03/04/2008 |
| 7 | Oliver W. Shilling | 3 | 03/04/05 – 03/04/2008 |
| 8 | Leonora MP Candaso | 3 | 03/04/05 – 03/04/2008 |
| 9 | Darlene H. Invencion | 3 | 03/04/05 – 03/04/2008 |

The statistical information presented in this report has been compiled from the 2005 Annual Statements filed with this office. The report also contains a directory of licensed insurance companies arranged by class and selected industry characteristic, covering Calendar Year 2005.

The Regulatory Division of the Department of Revenue and Taxation, under the supervision of the Commissioner, regulated two hundred thirteen (213) insurers transacting insurance business in Guam. Among the two hundred thirteen (213) insurers are: one hundred eighty one (181) foreign companies, twenty three (23) alien companies and nine (9) domestic companies.

Of the two hundred thirteen (213) companies, seventy seven (77) are engaged in providing coverage for property and casualty lines, one hundred seven (107) in life, four (4) in title guaranty, one (1) in captive insurance, seventeen (17) in fidelity and surety and seven (7) in reinsurance.

There was one (1) insurance company admitted in 2005:

| Name of Insurance Company | Admission Date |
|---|---|
| Aviva General Insurance, PTE, Ltd. | July 14, 2005 |

There were two (2) insurance companies that completed the requirements for withdrawal and were released in 2005:

| Name of Insurance Company | Withdrawal Date |
|---|---|
| First Reliance Life Insurance Company | August 25, 2005 |
| Midland Life Insurance Company | August 15, 2005 |

There was one (1) insurance company that changed name in 2005:

| Former Company Name | New Company Name | Date of Change |
|---|---|---|
| Fortis Benefit Life Ins Co | Union Security Insurance Co | Oct 10, 2005 |

In the Calendar Year 2005, the insurers generated premium written volume of $363 million, an increase of $20 million or 6% in premium from $343 million written in previous year. The assets of these companies stayed at $1.4 trillion as the previous year All insurers admitted to Guam maintain deposits with this Department at $9.9 million for the protection of policies sold in Guam.

There are seven (7) approved reinsurance companies in the year 2005 with $136 billion in assets, 22 billion in capital and $25 billion in surplus.

Some insurance checks that have been issued to policyholders or beneficiaries are dormant and remain unclaimed due to a change in the address of each payee. It is recommended that an insurance statute be enacted to allow the escheat of insurance payments, which remain unclaimed for a period of four (4) years to be forfeited to Government of Guam.

The Department still needs to complete the process of liquidation of the affairs of National Pacific Insurance (NPI). This company was placed in receivership in 1995. The liquidation of NPI has not been completed as of date because of legal issues which include whether or not only policyholders and third parties that have suffered injuries arising from policies issued by NPI are the only class of claimants entitled to share in the remaining assets of the company.

It is recommended that the insurance fees must be adjusted to cover the cost of licensing and supervision.

To enable our Department to provide a safety net for the solvency of insurers and to complete the rehabilitation or liquidation of insolvent insurers in a shorter time period, it is recommended that the Insurance Law of Guam must be updated as a matter of necessity.

It has been brought to the attention of the Banking and Insurance Board that the penalties for noncompliance with the approved rates and Guam Tariff pursuant to 22 GCA §18503 have been repealed by PL 13-187. Some admitted and most unlicensed companies do not follow the Guam Tariff and approved rates. My office cannot impose any penalty because my authority to impose penalty was taken away. I strongly recommend that the penalties that were repealed under PL 13-187 be reenacted.

Guam is a member of the organization of the National Association of Insurance Commissioners (NAIC) an association of insurance regulators for the fifty (50) states and territories of the United States. The NAIC has adopted model laws relating to the solvency and receivership of insurance companies. Most of the fifty states have adopted these model laws.

Some of the model laws that we recommend to be adopted are as follows:

| Model Law and Regulations | Purpose |
|---|---|
| Standard Valuation Law | Provides actuarial standards for setting reserves for life & health policies. |
| Credit for Reinsurance Law | Protects the insured and ceding insurers |
| Risk Based Capital for Insurers | Reports the adequacy of capital of an insurer |
| Insurance Holding Company Act | Requires reporting of parent, subsidiary and affiliates |
| Administrative Supervision Act | Requires insurer to comply with Commissioner's written notice and states that certain records and proceedings are confidential |
| Insurers Rehabilitation & Liquidation Act | States standards for rehabilitation or liquidation of insolvent insurers |
| Unfair Claims Settlement Practices Act | Set standards for investigation and settlement of claims |
| Disclosure of Material Transaction | Requires insurers to disclose acquisitions and dispositions of assets and changes in ceded reinsurance agreements |

We firmly believe that the above listed model laws and regulations are the bare minimum that must be adopted in order to protect the consumers in Guam.

ANDREAS J. JORDANOU
Banking & Insurance Commissioner

Form No. 1056.92
(10/17/92)
ALTA Loan Policy
Form 1



# POLICY OF TITLE INSURANCE



ISSUED BY

## *First American Title Insurance Company*

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B AND THE CONDITIONS AND STIPULATIONS, FIRST AMERICAN TITLE INSURANCE COMPANY, a California corporation, herein called the Company, insures, as of Date of Policy shown in Schedule A, against loss or damage, not exceeding the Amount of Insurance stated in Schedule A, sustained or incurred by the insured by reason of:

1. Title to the estate or interest described in Schedule A being vested other than as stated therein;
2. Any defect in or lien or encumbrance on the title;
3. Unmarketability of the title;
4. Lack of a right of access to and from the land;
5. The invalidity or unenforceability of the lien of the insured mortgage upon the title;
6. The priority of any lien or encumbrance over the lien of the insured mortgage;
7. Lack of priority of the lien of the insured mortgage over any statutory lien for services, labor or material:
   (a) arising from an improvement or work related to the land which is contracted for or commenced prior to Date of Policy; or
   (b) arising from an improvement or work related to the land which is contracted for or commenced subsequent to Date of Policy and which is financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at Date of Policy the insured has advanced or is obligated to advance;
8. Any assessments for street improvements under construction or completed at Date of Policy which now have gained or hereafter may gain priority over the insured mortgage; or
9. The invalidity or unenforceability of any assignment of the insured mortgage, provided the assignment is shown in Schedule A, or the failure of the assignment shown in Schedule A to vest title to the insured mortgage in the named insured assignee free and clear of all liens.

The Company will also pay the costs, attorneys' fees and expenses incurred in defense of the title or the lien of the insured mortgage, as insured, but only to the extent provided in the Conditions and Stipulations.

*First American Title Insurance Company*

BY *Parker S. Kennedy*  PRESIDENT

ATTEST *Mark L. Arnesen*  SECRETARY

CW 2289589

"F"

# EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1. (a) Any law, ordinance or governmental regulation (including but not limited to building and zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating to (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

   (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

2. Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.

3. Defects, liens, encumbrances, adverse claims or other matters:
   (a) created, suffered, assumed or agreed to by the insured claimant;
   (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;
   (c) resulting in no loss or damage to the insured claimant;
   (d) attaching or created subsequent to Date of Policy (except to the extent that this policy insures the priority of the lien of the insured mortgage over any statutory lien for services, labor or material or the extent

insurance is afforded herein as to assessments for street improvements under construction or completed at Date of Policy); or
   (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage

4. Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with applicable doing business laws of the state in which the land is situated.

5. Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.

6. Any statutory lien for services, labor or materials (or the claim of priority of any statutory lien for services, labor or materials over the lien of the insured mortgage) arising from an improvement or work related to the land which is contracted for and commenced subsequent to Date of Policy and is not financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at Date of Policy the insured has advanced or is obligated to advance.

7. Any claim, which arises out of the transaction creating the interest of the mortgagee insured by this policy, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that is based on:
   (i) the transaction creating the interest of the insured mortgagee being deemed a fraudulent conveyance or fraudulent transfer; or
   (ii) the subordination of the interest of the insured mortgagee as a result of the application of the doctrine of equitable subordination; or
   (iii) the transaction creating the interest of the insured mortgagee being deemed a preferential transfer except where the preferential transfer results from the failure:
      (a) to timely record the instrument of transfer; or
      (b) of such recordation to impart notice to a purchaser for value or a judgment or lien creditor.

# CONDITIONS AND STIPULATIONS

**1. DEFINITIONS OF TERMS.**

The following terms when used in this policy mean:

(a) "insured": the insured named in Schedule A. The term "insured" also includes

   (i) the owner of the indebtedness secured by the insured mortgage and each successor in ownership of the indebtedness except a successor who is an obligor under the provisions of Section 12(c) of these Conditions and Stipulations (reserving, however, all rights and defenses as to any successor that the Company would have had against any predecessor insured, unless the successor acquired the indebtedness as a purchaser for value without knowledge of the asserted defect, lien, encumbrance, adverse claim or other matter insured against by this policy as affecting title to the estate or interest in the land);

   (ii) any governmental agency or governmental instrumentality which is an insurer or guarantor under an insurance contract or guaranty insuring or guaranteeing the indebtedness secured by the insured mortgage, or any part thereof, whether named as an insured herein or not;

   (iii) the parties designated in Section 2(a) of these Conditions and Stipulations.

(b) "insured claimant": an insured claiming loss or damage.

(c) "knowledge" or "known": actual knowledge, not constructive knowledge or notice which may be imputed to an insured by reason of the public records as defined in this policy or any other records which impart constructive notice of matters affecting the land.

(d) "land": the land described or referred to in Schedule A, and improvements affixed thereto which by law constitute real property. The term "land" does not include any property beyond the lines of the area described or referred to in Schedule A, nor any right, title, interest, estate or easement in abutting streets, roads, avenues, alleys, lanes, ways or waterways, but nothing herein shall modify or limit the extent to which a right of access to and from the land is insured by this policy.

(e) "mortgage": mortgage, deed of trust, trust deed, or other security instrument.

(f) "public records": records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without knowledge. With respect to Section 1(a)(iv) of the Exclusions From Coverage, "public records" shall also include environmental protection liens filed in the records of the clerk of the United States district court for the district in which the land is located.

(g) "unmarketability of the title": an alleged or apparent matter affecting the title to the land, not excluded or excepted from coverage, which would entitle a purchaser of the estate or interest described in Schedule A or the insured mortgage to be released from the obligation to purchase by virtue of a contractual condition requiring the delivery of marketable title.

or desirable to establish the title to the estate or interest or the lien of the insured mortgage, as insured. If the Company is prejudiced by the failure of the insured to furnish the required cooperation, the Company's obligations to the insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such cooperation.

**5. PROOF OF LOSS OR DAMAGE.**

In addition to and after the notices required under Section 3 of these Conditions and Stipulations have been provided the Company, a proof of loss or damage signed and sworn to by the insured claimant shall be furnished to the Company within 90 days after the insured claimant shall ascertain the facts giving rise to the loss or damage. The proof of loss or damage shall describe the defect in, or lien or encumbrance on the title, or other matter insured against by this policy which constitutes the basis of loss or damage and shall state, to the extent possible, the basis of calculating the amount of the loss or damage. If the Company is prejudiced by the failure of the insured claimant to provide the required proof of loss or damage, the Company's obligations to the insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such proof of loss or damage.

In addition, the insured claimant may reasonably be required to submit to examination under oath by any authorized representative of the Company and shall produce for examination, inspection and copying, at such reasonable times and places as may be designated by any authorized representative of the Company, all records, books, ledgers, checks, correspondence and memoranda, whether bearing a date before or after Date of Policy, which reasonably pertain to the loss or damage. Further, if requested by any authorized representative of the Company, the insured claimant shall grant its permission, in writing, for any authorized representative of the Company to examine, inspect and copy all records, books, ledgers, checks, correspondence and memoranda in the custody or control of a third party, which reasonably pertain to the loss or damage. All information designated as confidential by the insured claimant provided to the Company pursuant to this Section shall not be disclosed to others unless, in the reasonable judgment of the Company, it is necessary in the administration of the claim. Failure of the insured claimant to submit for examination under oath, produce other reasonably requested information or grant permission to secure reasonably necessary information from third parties as required in this paragraph, unless prohibited by law or governmental regulation, shall terminate any liability of the Company under this policy as to that claim.

**6. OPTIONS TO PAY OR OTHERWISE SETTLE CLAIMS; TERMINATION OF LIABILITY.**

In case of a claim under this policy the Company shall have the

**9. REDUCTION OF INSURANCE; REDUCTION OR TERMINATION OF LIABILITY.**

(a) All payments under this policy, except payments made for costs, attorneys' fees and expenses, shall reduce the amount of the insurance pro tanto. However, any payments made prior to the acquisition of title to the estate or interest as provided in Section 2(a) of these Conditions and Stipulations shall not reduce pro tanto the amount of the insurance afforded under this policy except to the extent that the payments reduce the amount of the indebtedness secured by the insured mortgage.

(b) Payment in part by any person of the principal of the indebtedness, or any other obligation secured by the insured mortgage, or any voluntary partial satisfaction or release of the insured mortgage, to the extent of the payment, satisfaction or release, shall reduce the amount of insurance pro tanto. The amount of insurance may thereafter be increased by accruing interest and advances made to protect the lien of the insured mortgage and secured thereby, with interest thereon provided in no event shall the amount of insurance be greater than the amount of insurance stated in Schedule A.

(c) Payment in full by any person or the voluntary satisfaction or release of the insured mortgage shall terminate all liability of the Company except as provided in Section 2(a) of these Conditions and Stipulations.

**10. LIABILITY NONCUMULATIVE.**

If the insured acquires title to the estate or interest in satisfaction of the indebtedness secured by the insured mortgage, or any part thereof, it is expressly understood that the amount of insurance under this policy shall be reduced by any amount the Company may pay under any policy insuring a mortgage to which exception is taken in Schedule B or to which the insured has agreed, assumed, or taken subject, or which is hereafter executed by an insured and which is a charge or lien on the estate or interest described or referred to in Schedule A, and the amount so paid shall be deemed a payment under this policy.

**11. PAYMENT OF LOSS.**

(a) No payment shall be made without producing this policy for endorsement of the payment unless the policy has been lost or destroyed, in which case proof of loss or destruction shall be furnished to the satisfaction of the Company.

(b) When liability and the extent of loss or damage has been definitely fixed in accordance with these Conditions and Stipulations, the loss or damage shall be payable within 30 days thereafter.

**12. SUBROGATION UPON PAYMENT OR SETTLEMENT.**

(a) The Company's Right of Subrogation.

Whenever the Company shall have settled and paid a claim under this

(a) **Alter Acquisition of Title.** The coverage of this policy shall continue in force as of Date of Policy in favor of (i) an insured who acquires all or any part of the estate or interest in the land by foreclosure, trustee's sale, conveyance in lieu of foreclosure, or other legal manner which discharges the lien of the insured mortgage; (ii) a transferee of the estate or interest so acquired from an insured corporation, provided the transferee is the parent or wholly-owned subsidiary of the insured corporation, and their corporate successors by operation of law and not by purchase, subject to any rights or defenses the Company may have against any predecessor insureds; and (iii) any governmental agency or governmental instrumentality which acquires all or any part of the estate or interest pursuant to a contract of insurance or guaranty insuring or guaranteeing the indebtedness secured by the insured mortgage.

(b) **After Conveyance of Title.** The coverage of this policy shall continue in force as of Date of Policy in favor of an insured only so long as the insured retains an estate or interest in the land, or holds an indebtedness secured by a purchase money mortgage given by a purchaser from the insured, or only so long as the insured shall have liability by reason of covenants of warranty made by the insured in any transfer or conveyance of the estate or interest. This policy shall not continue in force in favor of any purchaser from the insured of either (i) an estate or interest in the land, or (ii) an indebtedness secured by a purchase money mortgage given to the insured.

(c) **Amount of Insurance.** The amount of insurance after the acquisition or after the conveyance shall in neither event exceed the least of:

(i) The amount of insurance stated in Schedule A;

(ii) the amount of the principal of the indebtedness secured by the insured mortgage as of Date of Policy, interest thereon, expenses of foreclosure, amounts advanced pursuant to the insured mortgage to assure compliance with laws or to protect the lien of the insured mortgage prior to the time of acquisition of the estate or interest in the land and secured thereby and reasonable amounts expended to prevent deterioration of improvements, but reduced by the amount of all payments made; or

(iii) the amount paid by any governmental agency or governmental instrumentality, if the agency or instrumentality is the insured claimant, in the acquisition of the estate or interest in satisfaction of its insurance contract or guaranty.

## 3. NOTICE OF CLAIM TO BE GIVEN BY INSURED CLAIMANT.

The insured shall notify the Company promptly in writing (i) in case of any litigation as set forth in Section 4(a) below, (ii) in case knowledge shall come to an insured hereunder of any claim of title or interest which is adverse to the title to the estate or interest or the lien of the insured mortgage, as insured, and which might cause loss or damage for which the Company may be liable by virtue of this policy, or (iii) if title to the estate or interest or the lien of the insured mortgage, as insured, is rejected as unmarketable. If prompt notice shall not be given to the Company, then as to the insured all liability of the Company shall terminate with regard to the matter or matters for which prompt notice is required; provided, however, that failure to notify the Company shall in no case prejudice the rights of any insured under this policy unless the Company shall be prejudiced by the failure and then only to the extent of the prejudice.

## 4. DEFENSE AND PROSECUTION OF ACTIONS; DUTY OF INSURED CLAIMANT TO COOPERATE.

(a) Upon written request by the insured and subject to the options contained in Section 6 of these Conditions and Stipulations, the Company, at its own cost and without unreasonable delay, shall provide for the defense of an insured in litigation in which any third party asserts a claim adverse to the title or interest as insured, but only as to those stated causes of action alleging a defect, lien or encumbrance or other matter insured against by this policy. The Company shall have the right to select counsel of its choice (subject to the right of the insured to object for reasonable cause) to represent the insured as to those stated causes of action and shall not be liable for and will not pay the fees of any other counsel. The Company will not pay any fees, costs or expenses incurred by the insured in the defense of those causes of action which allege matters not insured against by this policy.

(b) The Company shall have the right, at its own cost, to institute and prosecute any action or proceeding or to do any other act which in its opinion may be necessary or desirable to establish the title to the estate or interest or the lien of the insured mortgage, as insured, or to prevent or reduce loss or damage to the insured. The Company may take any appropriate action under the terms of this policy, whether or not it shall be liable hereunder and shall not thereby concede liability or waive any provision of this policy. If the Company shall exercise its rights under this paragraph, it shall do so diligently.

(c) Whenever the Company shall have brought an action or interposed a defense as required or permitted by the provisions of this policy, the Company may pursue any litigation to final determination by a court of competent jurisdiction and expressly reserves the right, in its sole discretion, to appeal from any adverse judgment or order.

(d) In all cases where this policy permits or requires the Company to prosecute or provide for the defense of any action or proceeding, the insured shall secure to the Company the right to so prosecute or provide defense in the action or proceeding, and all appeals therein, and permit the Company to use, at its option, the name of the insured for this purpose. Whenever requested by the Company, the insured, at the Company's expense, shall give the Company all reasonable aid (i) in any action or proceeding, securing evidence, obtaining witnesses, prosecuting or defending the action or proceeding, or effecting settlement, and (ii) in any other lawful act which in the opinion of the Company may be necessary or desirable to establish the title to the estate or interest or the lien of the insured mortgage, as insured. If the Company is prejudiced by the failure of the insured to furnish the required cooperation, the Company's obligations to the insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such cooperation.

## 5. PROOF OF LOSS OR DAMAGE.

In addition to and after the notices required under Section 3 of these Conditions and Stipulations have been provided the Company, a proof of loss or damage signed and sworn to by the insured claimant shall be furnished to the Company within 90 days after the insured claimant shall ascertain the facts giving rise to the loss or damage. The proof of loss or damage shall describe the defect in, or lien or encumbrance on the title, or other matter insured against by this policy which constitutes the basis of loss or damage and shall state, to the extent possible, the basis of calculating the amount of the loss or damage. If the Company is prejudiced by the failure of the insured claimant to provide the required proof of loss or damage, the Company's obligations to the insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such proof of loss or damage.

In addition, the insured claimant may reasonably be required to submit to examination under oath by any authorized representative of the Company and shall produce for examination, inspection and copying, at such reasonable times and places as may be designated by any authorized representative of the Company, all records, books, ledgers, checks, correspondence and memoranda, whether bearing a date before or after Date of Policy, which reasonably pertain to the loss or damage. Further, if requested by any authorized representative of the Company, the insured claimant shall grant its permission, in writing, for any authorized representative of the Company to examine, inspect and copy all records, books, ledgers, checks, correspondence and memoranda in the custody or control of a third party, which reasonably pertain to the loss or damage. All information designated as confidential by the insured claimant provided to the Company pursuant to this Section shall not be disclosed to others unless, in the reasonable judgment of the Company, it is necessary in the administration of the claim. Failure of the insured claimant to submit for examination under oath, produce other reasonably requested information or grant permission to secure reasonably necessary information from third parties as required in this paragraph, unless prohibited by law or governmental regulation, shall terminate any liability of the Company under this policy as to that claim.

## 6. OPTIONS TO PAY OR OTHERWISE SETTLE CLAIMS; TERMINATION OF LIABILITY.

In case of a claim under this policy, the Company shall have the following additional options:

(a) **To Pay or Tender Payment of the Amount of Insurance or to Purchase the Indebtedness.**

(i) to pay or tender payment of the amount of insurance under this policy together with any costs, attorneys' fees and expenses incurred by the insured claimant, which were authorized by the Company, up to the time of payment or tender of payment and which the Company is obligated to pay, or

(ii) to purchase the indebtedness, secured by the insured mortgage for the amount owing thereon together with any costs, attorneys' fees and expenses incurred by the insured claimant which were authorized by the Company up to the time of purchase and which the Company is obligated to pay.

If the Company offers to purchase the indebtedness as herein provided, the owner of the indebtedness shall transfer, assign, and convey the indebtedness and the insured mortgage, together with any collateral security, to the Company upon payment therefor.

Upon the exercise by the Company of either of the options provided for in paragraphs a(i) or (ii), all liability and obligations to the insured under this policy, other than to make the payment required in those paragraphs, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, and the policy shall be surrendered to the Company for cancellation.

(b) **To Pay or Otherwise Settle With Parties Other than the Insured or With the Insured Claimant.**

(i) to pay or otherwise settle with other parties for or in the name of an insured claimant any claim insured against under this policy, together with any costs, attorneys' fees and expenses incurred by the insured claimant which were authorized by the Company up to the time of payment and which the Company is obligated to pay, or

(ii) to pay or otherwise settle with the insured claimant the loss or damage provided for under this policy, together with any costs, attorneys' fees and expenses incurred by the insured claimant which were authorized by the Company up to the time of payment and which the Company is obligated to pay.

Upon the exercise by the Company of either of the options provided for in paragraphs b(i) or (ii), the Company's obligations to the insured under this policy for the claimed loss or damage, other than the payments required to be made, shall terminate, including any liability or obligation to defend, prosecute or continue any litigation.

## 7. DETERMINATION AND EXTENT OF LIABILITY.

This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the insured claimant who has suffered loss or damage by reason of matters insured against by this policy and only to the extent herein described.

(a) The liability of the Company under this policy shall not exceed the least of:

(i) the amount of insurance stated in Schedule A, or, if applicable, the amount of insurance as defined in Section 2(c) of these Conditions and Stipulations;

(ii) the amount of unpaid principal indebtedness secured by the insured mortgage as limited or provided under Section 8 of these Conditions and Stipulations or as reduced under Section 9 of these Conditions and Stipulations, at the time the loss or damage insured against by this policy occurs, together with interest thereon; or

(iii) the difference between the value of the insured estate or interest as insured and the value of the insured estate or interest subject to the defect, lien or encumbrance insured against by this policy.

(b) In the event the insured has acquired the estate or interest in the manner described in Section 2(a) of these Conditions and Stipulations or has conveyed the title, then the liability of the Company shall continue as set forth in Section 7(a) of these Conditions and Stipulations.

(c) The Company will pay only those costs, attorneys' fees and expenses incurred in accordance with Section 4 of these Conditions and Stipulations.

## 8. LIMITATION OF LIABILITY.

(a) If the Company establishes the title, or removes the alleged defect, lien or encumbrance, or cures the lack of a right of access to or from the land, or cures the claim of unmarketability of title, or otherwise establishes the lien of the insured mortgage, all as insured, in a reasonably diligent manner by any method, including litigation and the completion of any appeals therefrom, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused thereby.

(b) In the event of any litigation, including litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals therefrom, adverse to the title or to the lien of the insured mortgage, as insured.

(c) The Company shall not be liable for loss or damage to any insured for liability voluntarily assumed by the insured in settling any claim or suit without the prior written consent of the Company.

(d) The Company shall not be liable for:

(i) any indebtedness created subsequent to Date of Policy except for advances made to protect the lien of the insured mortgage and secured thereby and reasonable amounts expended to prevent deterioration of improvements; or

(ii) construction loan advances made subsequent to Date of Policy, except construction loan advances made subsequent to Date of Policy for the purpose of financing in whole or in part the construction of an improvement to the land which at Date of Policy were secured by the insured mortgage and which the insured was and continued to be obligated to advance at and after Date of Policy

The Company shall be subrogated to and be entitled to all rights and remedies which the insured claimant would have had against any person or property in respect to the claim had this policy not been issued. If requested by the Company, the insured claimant shall transfer to the Company all rights and remedies against any person or property necessary in order to perfect this right of subrogation. The insured claimant shall permit the Company to sue, compromise or settle in the name of the insured claimant and to use the name of the insured claimant in any transaction or litigation involving these rights or remedies.

If a payment on account of a claim does not fully cover the loss of the insured claimant, the Company shall be subrogated to all rights and remedies of the insured claimant after the insured claimant shall have recovered its principal, interest, and costs of collection.

(b) **The Insured's Rights and Limitations.**

Notwithstanding the foregoing, the owner of the indebtedness secured by the insured mortgage, provided the priority of the lien of the insured mortgage or its enforceability is not affected, may release or substitute the personal liability of any debtor or guarantor, or extend or otherwise modify the terms of payment, or release a portion of the estate or interest from the lien of the insured mortgage, or release any collateral security for the indebtedness.

When the permitted acts of the insured claimant occur and the insured has knowledge of any claim of title or interest adverse to the title to the estate or interest or the priority or enforceability of the lien of the insured mortgage, as insured, the Company shall be required to pay only that part of any losses insured against by this policy which shall exceed the amount, if any, lost to the Company by reason of the impairment by the insured claimant of the Company's right of subrogation.

(c) **The Company's Rights Against Non-insured Obligors.**

The Company's right of subrogation against non-insured obligors shall exist and shall include, without limitation, the rights of the insured to indemnities, guaranties, other policies of insurance or bonds, notwithstanding any terms or conditions contained in those instruments which provide for subrogation rights by reason of this policy.

The Company's right of subrogation shall not be avoided by acquisition of the insured mortgage by an obligor (except an obligor described in Section 1(a)(ii) of these Conditions and Stipulations) who acquires the insured mortgage as a result of an indemnity, guarantee, other policy of insurance, or bond and the obligor will not be an insured under this policy, notwithstanding Section 1(a)(ii) of these Conditions and Stipulations.

## 13. ARBITRATION.

Unless prohibited by applicable law, either the Company or the insured may demand arbitration pursuant to the Title Insurance Arbitration Rules of the American Arbitration Association. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the insured arising out of or relating to this policy, any service of the Company in connection with its issuance or the breach of a policy provision or other obligation. All arbitrable matters when the Amount of Insurance is $1,000,000 or less shall be arbitrated at the option of either the Company or the insured. All arbitrable matters when the Amount of Insurance is in excess of $1,000,000 shall be arbitrated only when agreed to by both the Company and the insured. Arbitration pursuant to this policy and under the Rules in effect on the date the demand for arbitration is made or, at the option of the insured, the Rules in effect at Date of Policy shall be binding upon the parties. The award may include attorneys' fees only if the laws of the state in which the land is located permit a court to award attorneys' fees to a prevailing party. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court having jurisdiction thereof.

The laws of the situs of the land shall apply to an arbitration under the Title Insurance Arbitration Rules.

A copy of the Rules may be obtained from the Company upon request.

## 14. LIABILITY LIMITED TO THIS POLICY; POLICY ENTIRE CONTRACT.

(a) This policy together with all endorsements, if any, attached hereto by the Company is the entire policy and contract between the insured and the Company. In interpreting any provision of this policy, this policy shall be construed as a whole.

(b) Any claim of loss or damage, whether or not based on negligence, and which arises out of the status of the lien of the insured mortgage or of the title to the estate or interest covered hereby or by any action asserting such claim, shall be restricted to this policy.

(c) No amendment of or endorsement to this policy can be made except by a writing endorsed hereon or attached hereto signed by either the President, a Vice President, the Secretary, an Assistant Secretary, or validating officer or authorized signatory of the Company.

## 15. SEVERABILITY.

In the event any provision of this policy is held invalid or unenforceable under applicable law, the policy shall be deemed not to include that provision and all other provisions shall remain in full force and effect.

## 16. NOTICES, WHERE SENT.

All notices required to be given the Company and any statement in writing required to be furnished the Company shall include the number of this policy and shall be addressed to the Company at 114 East Fifth Street, Santa Ana, California 92701, or to the office which issued this policy.

# SCHEDULE A

**File No.** PAT-01-10-17678

**Policy No.** CW 2289589

**Amount of Insurance** $58,500.00

**Premium** $100.00

**Date of Policy** Monday, October 29, 2001

a.m.

p.m. 2:59

1. **Name of Insured:**

   CYFRED, LTD.

2. **The estate or interest in the land which is encumbered by the insured mortgage is:**

   FEE SIMPLE

3. **Title to the estate or interest in the land vested in:**

   LEONARDO O. SAGUN and JOAN S. SAGUN, husband and wife.

4. **The insured mortgage and assignments thereof, if any, are described as follows:**

   Mortgage to secure the repayment of the amount of $58,500.00, (Fifty eight thousand five hundred and no/100), executed by Leonardo O. Sagun and Joan S. Sagun, husband and wife, Mortgagors, to Cyfred, Ltd., Mortgagee, dated October 25, 2001 and recorded on October 29, 2001 under Instrument No. 646387 in the Department of Land Management, Government of Guam.

5. **The land referred to in this policy is described as follows:**

   LOT NO. 8, BLOCK NO. 3, TRACT NO. 6301, (ESTATE NO. 812, under Basic Lot 10102), YIGO, GUAM, SUBURBAN, as said lot is marked and designated on Map Drawing No. RRV96-056F.G (LM#130Fy97), and recorded on August 19, 1997 in the Department of Land Management, Government of Guam, under Instrument No. 568844.

# SCHEDULE B

File No. **P A T - 0 1 - 1 0 - 1 7 6 7 8**     Policy No. **CW  2289589**

## EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

### PART I

STANDARD EXCEPTIONS

1. RIGHTS or claims of parties in possession not shown by the public records.

2. EASEMENTS, or claims of easements, not shown by the public records.

3. ENCROACHMENTS, overlaps, boundary line disputes, or other matters which would be disclosed by an accurate survey an inspection of the premises.

4. ANY LIEN, or right to a lien, for services, labor or material hereto or hereafter furnished, imposed by law and not shown as existing liens by the public records.

5. TAXES or special assessments which are not shown as existing liens by the public records.

6. THE LIABILITY of the Company by reason of any attack, or claim against, or invalidity of the title herein insured, arising out of, relating to, or as a consequence of any alleged, attempted, or actual violation of any of the provisions of Section 1204 Title 21 of the Guam Code Annotated ("Alien Ownership"), or any of the provisions of 48 U.S.C.A. Sections 1501-1506 ("Alien Ownership of Land"), together with the duty of the Company to defend the insured by reason of such an attack or claim, are specifically excepted from the coverage of this policy. (For your examination, copies of said sections are herewith attached)

SPECIAL EXCEPTIONS:

7. Real Estate Taxes for the year 2001 are due and payable on February 20, 2002.


end****cs

# Policy of Title Insurance

### ISSUED BY



**The Talon Group**

TITLE AND SETTLEMENT SERVICES

*A Division of First American Title Insurance Company*

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B AND THE CONDITIONS AND STIPULATIONS, FIRST AMERICAN TITLE INSURANCE COMPANY, a California corporation, herein called the Company, insures, as of Date of Policy shown in Schedule A, against loss or damage, not exceeding the Amount of Insurance stated in Schedule A, sustained or incurred by the insured by reason of:

1. Title to the estate or interest described in Schedule A being vested other than as stated therein;

2. Any defect in or lien or encumbrance on the title;

3. Unmarketability of the title;

4. Lack of a right of access to and from the land;

5. The invalidity or unenforceability of the lien of the insured mortgage upon the title;

6. The priority of any lien or encumbrance over the lien of the insured mortgage;

7. Lack of priority of the lien of the insured mortgage over any statutory lien for services, labor or material:

    (a) arising from an improvement or work related to the land which is contracted for or commenced prior to Date of Policy; or

    (b) arising from an improvement or work related to the land which is contracted for or commenced subsequent to Date of Policy and which is financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at Date of Policy the insured has advanced or is obligated to advance;

8. Any assessments for street improvements under construction or completed at Date of Policy which now have gained or hereafter may gain priority over the insured mortgage; or

9. The invalidity or unenforceability of any assignment of the insured mortgage, provided the assignment is shown in Schedule A, or the failure of the assignment shown in Schedule A to vest title to the insured mortgage in the named insured assignee free and clear of all liens.

The Company will also pay the costs, attorneys' fees and expenses incurred in defense of the title or the lien of the insured mortgage, as insured, but only to the extent provided in the Conditions and Stipulations.

*First American Title Insurance Company*

By: *Gary L. Kermott*
President

By: *Mark R. Arnesen*
Secretary

"G"

140182

©1992 First American Title Insurance Company
All Rights Reserved

# EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1. (a) Any law, ordinance or governmental regulation (including but not limited to building and zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating to (i) the occupancy, use, or enjoyment of the land, (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part, or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

   (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

2. Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.

3. Defects, liens, encumbrances, adverse claims or other matters:

   (a) created, suffered, assumed or agreed to by the insured claimant;

   (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;

   (c) resulting in no loss or damage to the insured claimant;

   (d) attaching or created subsequent to Date of Policy (except to the extent that this policy insures the priority of the lien of the insured mortgage over any statutory lien for services, labor or material); or

   (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage.

4. Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with applicable doing business laws of the state in which the land is situated.

5. Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.

6. Any statutory lien for services, labor or materials (or the claim of priority of any statutory lien for services, labor or materials) over the lien of the insured mortgage) arising from an improvement or work related to the land which is contracted for and commenced subsequent to Date of Policy and is not financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at Date of Policy the insured has advanced or is obligated to advance.

7. Any claim, which arises out of the transaction creating the interest of the mortgagee insured by this policy, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that is based on:

   (a) the transaction creating the interest of the insured mortgagee being deemed a fraudulent conveyance or fraudulent transfer; or

   (b) the subordination of the interest of the insured mortgagee as a result of the application of the doctrine of equitable subordination; or

   (c) the transaction creating the interest of the insured mortgagee being deemed a preferential transfer except where the preferential transfer results from the failure:

   (i) to timely record the instrument of transfer; or

   (ii) of such recordation to impart notice to a purchaser for value or a judgment or lien creditor.

# CONDITIONS AND STIPULATIONS

## 1. DEFINITION OF TERMS.

The following terms when used in this policy mean:

(a) **"Insured"**: the insured named in Schedule A. The term "insured" also includes

   (i) the owner of the indebtedness secured by the insured mortgage and each successor in ownership of the indebtedness except a successor who is an obligor under the

provisions of Section 12(c) of these Conditions and Stipulations (reserving, however, all rights and defenses as to any successor that the Company would have had against any predecessor insured, unless the successor acquired the indebtedness as a purchaser for value without knowledge of the asserted defect, lien, encumbrance, adverse claim or other matter insured against by this policy as affecting title to the estate or interest in the land);

   (ii) any governmental agency or governmental instrumentality which is an insurer or guarantor under an insurance contract or guaranty insuring or guaranteeing the indebtedness secured by the insured mortgage, or any part thereof, whether named as an insured herein or not;

   (iii) the parties designated in Section 2(a) of these Conditions and Stipulations.

(b) **"Insured claimant"**: an insured claiming loss or damage.

(c) **"Knowledge" or "known"**: actual knowledge, not constructive knowledge or notice which may be imputed to an insured by reason of the public records as defined in this policy or any other records which impart constructive notice of matters affecting the land.

(d) **"Land"**: the land described or referred to in Schedule [A](C), and improvements affixed thereto which by law constitute real property. The term "land" does not include any property beyond the lines of the area described or referred to in Schedule [A](C), nor any right, title, interest, estate or easement in abutting streets, roads, avenues, alleys, lanes, ways or waterways, but nothing herein shall modify or limit the extent to which a right of access to and from the land is insured by this policy.

(e) **"Mortgage"**: mortgage, deed of trust, trust deed, or other security instrument.

(f) **"Public records"**: records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without knowledge. With respect to Section 1(a)(iv) of the Exclusions From Coverage, "public records" shall also include environmental protection liens filed in the records of the clerk of the United States district court for the district in which the land is located.

(g) **"Unmarketability of the title"**: an alleged or apparent matter affecting the title to the land, not excluded or excepted from coverage, which would entitle a purchaser of the estate or interest described in Schedule A or the insured mortgage to be released from the obligation to purchase by virtue of a contractual condition requiring the delivery of marketable title.

## 2. CONTINUATION OF INSURANCE.

(a) After Acquisition of Title. The coverage of this policy shall continue in force as of Date of Policy in favor of (i) an insured who acquires all or any part of the estate or interest in the land by foreclosure, trustee's sale, conveyance in lieu of foreclosure, or other legal manner which discharges the lien of the insured mortgage; (ii) a transferee of the estate or interest so acquired from an insured corporation, provided the transferee is the parent or wholly-owned subsidiary of the insured corporation, and their corporate successors by operation of law and not by purchase, subject to any rights or defenses the Company may have against any predecessor insureds; and (iii) any governmental agency or governmental instrumentality which acquires all or any part of the estate or interest pursuant to a contract of insurance or guaranty insuring or guaranteeing the indebtedness secured by the insured mortgage.

(b) After Conveyance of Title. The coverage of this policy shall continue in force as of Date of Policy in favor of an insured only so long as the insured retains an estate or interest in the land, or holds an indebtedness secured by a purchase money mortgage given by a purchaser from the insured, or only so long as the insured shall have liability by reason of covenants of warranty made by the insured in any transfer or conveyance of the estate or interest. This policy shall not continue in force in favor of any purchaser from the insured of either (i) an estate or interest in the land, or (ii) an indebtedness secured by a purchase money mortgage given to the insured.

(c) Amount of Insurance. The amount of insurance after the acquisition or after the conveyance shall in neither event exceed the least of:

   (i) the Amount of Insurance stated in Schedule A;

   (ii) the amount of the principal of the indebtedness secured by the insured mortgage as of Date of Policy, interest thereon, expenses of foreclosure, amounts advanced pursuant to the insured mortgage to assure compliance with laws or to protect the lien of the insured mortgage prior to the time of acquisition of the estate or interest in the land and secured thereby and reasonable amounts expended to prevent deterioration of improvements, but reduced by the amount of all payments made; or

   (iii) the amount paid by any governmental agency or governmental instrumentality, if the agency or instrumentality is the insured claimant, in the acquisition of the estate or interest in satisfaction of its insurance contract or guaranty.

©1992 First American Title Insurance Company
All Rights Reserved

Case 1:07-cv-00024    Document 94-4    Filed 04/29/2008    Page 13 of 28

## 3. NOTICE OF CLAIM TO BE GIVEN BY INSURED CLAIMANT.

The insured shall notify the Company promptly in writing (i) in case of any litigation as set forth in Section 4(a) below, (ii) in case knowledge shall come to an insured hereunder of any claim of title or interest which is adverse to the title to the estate or interest or the lien of the insured mortgage, as insured, and which might cause loss or damage for which the Company may be liable by virtue of this policy, or (iii) if title to the estate or interest or the lien of the insured mortgage, as insured, is rejected as unmarketable. If prompt notice shall not be given to the Company, then as to the insured all liability of the Company shall terminate with regard to the matter or matters for which prompt notice is required; provided, however, that failure to notify the Company shall in no case prejudice the rights of any insured under this policy unless the Company shall be prejudiced by the failure and then only to the extent of the prejudice.

## 4. DEFENSE AND PROSECUTION OF ACTIONS; DUTY OF INSURED CLAIMANT TO COOPERATE.

(a) Upon written request by the insured and subject to the options contained in Section 6 of these Conditions and Stipulations, the Company, at its own cost and without unreasonable delay, shall provide for the defense of an insured in litigation in which any third party asserts a claim adverse to the title or interest as insured, but only as to those stated causes of action alleging a defect, lien or encumbrance or other matter insured against by this policy. The Company shall have the right to select counsel of its choice (subject to the right of the insured to object for reasonable cause) to represent the insured as to those stated causes of action and shall not be liable for and will not pay the fees of any other counsel. The Company will not pay any fees, costs or expenses incurred by the insured in the defense of those causes of action which allege matters not insured against by this policy.

(b) The Company shall have the right, at its own cost, to institute and prosecute any action or proceeding or to do any other act which in its opinion may be necessary or desirable to establish the title to the estate or interest or the lien of the insured mortgage, as insured, or to prevent or reduce loss or damage to the insured. The Company may take any appropriate action under the terms of this policy, whether or not it shall be liable hereunder, and shall not thereby concede liability or waive any provision of this policy. If the Company shall exercise its rights under this paragraph, it shall do so diligently.

(c) Whenever the Company shall have brought an action or interposed a defense as required or permitted by the provisions of this policy, the Company may pursue any litigation to final determination by a court of competent jurisdiction and expressly reserves the right, in its sole discretion, to appeal from any adverse judgment or order.

(d) In all cases where this policy permits or requires the Company to prosecute or provide for the defense of any action or proceeding, the insured shall secure to the Company the right to so prosecute or provide defense in the action or proceeding, and all appeals therein, and permit the Company to use, at its option, the name of the insured for this purpose. Whenever requested by the Company, the insured, at the Company's expense, shall give the Company all reasonable aid (i) in any action or proceeding, securing evidence, obtaining witnesses, prosecuting or defending the action or proceeding, or effecting settlement, and (ii) in any other lawful act which in the opinion of the Company may be necessary or desirable to establish the title to the estate or interest or the lien of the insured mortgage, as insured. If the Company is prejudiced by the failure of the insured to furnish the required cooperation, the Company's obligations to the insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such cooperation.

## 5. PROOF OF LOSS OR DAMAGE.

In addition to and after the notices required under Section 3 of these Conditions and Stipulations have been provided the Company, a proof of loss or damage signed and sworn to by the insured claimant shall be furnished to the Company within 90 days after the insured claimant shall ascertain the facts giving rise to the loss or damage. The proof of loss or damage shall describe the defect in, or lien or encumbrance on the title, or other matter insured against by this policy which constitutes the basis of loss or damage and shall state, to the extent possible, the basis of calculating the amount of the loss or damage. If the Company is prejudiced by the failure of the insured claimant to provide the required proof of loss or damage, the Company's obligations to the insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such proof of loss or damage.

In addition, the insured claimant may reasonably be required to submit to examination under oath by any authorized representative of the Company and shall produce for examination, inspection and copying, at such reasonable times and places as may be designated by any authorized representative of the Company, all records, books, ledgers, checks, correspondence and memoranda, whether bearing a date before or after Date of Policy, which reasonably pertain to the loss or damage. Further, if requested by any authorized representative of the Company, the insured claimant shall grant its permission, in writing, for any authorized representative of the Company to examine, inspect and copy all records, books, ledgers, checks, correspondence and memoranda in the custody or control of a third party, which reasonably pertain to the loss or damage. All information designated as confidential by the insured claimant provided to the Company pursuant to this Section shall not be disclosed to others unless, in the reasonable judgment of the Company, it is necessary in the administration of the claim. Failure of the insured claimant to submit for examination under oath, produce other reasonably requested information or grant permission to secure reasonably necessary information from third parties as required in this paragraph, unless prohibited by law or governmental regulation, shall terminate any liability of the Company under this policy as to that claim.

## 6. OPTIONS TO PAY OR OTHERWISE SETTLE CLAIMS; TERMINATION OF LIABILITY.

In case of a claim under this policy, the Company shall have the following additional options:

(a) To Pay or Tender Payment of the Amount of Insurance or to Purchase the Indebtedness.

    (i)  to pay or tender payment of the amount of insurance under this policy together with any costs, attorneys' fees and expenses incurred by the insured claimant, which were authorized by the Company, up to the time of payment or tender of payment and which the Company is obligated to pay; or

    (ii)  to purchase the indebtedness secured by the insured mortgage for the amount owing thereon together with any costs, attorneys' fees and expenses incurred by the insured claimant which were authorized by the Company up to the time of purchase and which the Company is obligated to pay.

If the Company offers to purchase the indebtedness as herein provided, the owner of the indebtedness shall transfer, assign, and convey the indebtedness and the insured mortgage, together with any collateral security, to the Company upon payment therefor.

Upon the exercise by the Company of either of the options provided for in paragraphs a(i) or (ii), all liability and obligations to the insured under this policy, other than to make the payment required in those paragraphs, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, and the policy shall be surrendered to the Company for cancellation.

(b) To Pay or Otherwise Settle With Parties Other than the Insured or With the Insured Claimant.

    (i)  to pay or otherwise settle with other parties for or in the name of an insured claimant any claim insured against under this policy, together with any costs, attorneys' fees and expenses incurred by the insured claimant which were authorized by the Company up to the time of payment and which the Company is obligated to pay; or

    (ii)  to pay or otherwise settle with the insured claimant the loss or damage provided for under this policy, together with any costs, attorneys' fees and expenses incurred by the insured claimant which were authorized by the Company up to the time of payment and which the Company is obligated to pay.

Upon the exercise by the Company of either of the options provided for in paragraphs b(i) or (ii), the Company's obligations to the insured under this policy for the claimed loss or damage, other than the payments required to be made, shall terminate, including any liability or obligation to defend, prosecute or continue any litigation.

## 7. DETERMINATION AND EXTENT OF LIABILITY.

This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the insured claimant who has suffered loss or damage by reason of matters insured against by this policy and only to the extent herein described.

(a) The liability of the Company under this policy shall not exceed the least of:

    (i)  the Amount of Insurance stated in Schedule A, or, if applicable, the amount of insurance as defined in Section 2 (c) of these Conditions and Stipulations;

    (ii)  the amount of the unpaid principal indebtedness secured by the insured mortgage as limited or provided under Section 8 of these Conditions and Stipulations or as reduced under Section 9 of these Conditions and Stipulations, at the time the loss or damage insured against by this policy occurs, together with interest thereon; or

    (iii)  the difference between the value of the insured estate or interest as insured and the value of the insured estate or interest subject to the defect, lien or encumbrance insured against by this policy.

(b) In the event the insured has acquired the estate or interest in the manner described in Section 2(a) of these Conditions and Stipulations or has conveyed the title, then the liability of the Company shall continue as set forth in Section 7(a) of these Conditions and Stipulations.

(c) The Company will pay only those costs, attorneys' fees and expenses incurred in accordance with Section 4 of these Conditions and Stipulations.

©1992 First American Title Insurance Company
All Rights Reserved

Case 1:07-cv-00024    Document 94-4    Filed 04/29/2008    Page 14 of 28

# 8. LIMITATION OF LIABILITY.

(a) If the Company establishes the title, or removes the alleged defect, lien or encumbrance, or cures the lack of a right of access to or from the land, or cures the claim of unmarketability of title, or otherwise establishes the lien of the insured mortgage, all as insured, in a reasonably diligent manner by any method, including litigation and the completion of any appeals therefrom, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused thereby.

(b) In the event of any litigation, including litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals therefrom, adverse to the title or to the lien of the insured mortgage, as insured.

(c) The Company shall not be liable for loss or damage to any insured for liability voluntarily assumed by the insured in settling any claim or suit without the prior written consent of the Company.

(d) The Company shall not be liable for (i) any indebtedness created subsequent to Date of Policy except for advances made to protect the lien of the insured mortgage and secured thereby and reasonable amounts expended to prevent deterioration of improvements; or (ii) construction loan advances made subsequent to Date of Policy, except construction loan advances made subsequent to Date of Policy for the purpose of financing in whole or in part the construction of an improvement to the land which at Date of Policy were secured by the insured mortgage and which the insured was and continued to be obligated to advance at and after Date of Policy.

# 9. REDUCTION OF INSURANCE; REDUCTION OR TERMINATION OF LIABILITY.

(a) All payments under this policy, except payments made for costs, attorneys' fees and expenses, shall reduce the amount of the insurance pro tanto. However, any payments made prior to the acquisition of title to the estate or interest as provided in Section 2(a) of these Conditions and Stipulations shall not reduce pro tanto the amount of the insurance afforded under this policy except to the extent that the payments reduce the amount of the indebtedness secured by the insured mortgage.

(b) Payment in part by any person of the principal of the indebtedness, or any other obligation secured by the insured mortgage, or any voluntary partial satisfaction or release of the insured mortgage, to the extent of the payment, satisfaction or release, shall reduce the amount of insurance pro tanto. The amount of insurance may thereafter be increased by accruing interest and advances made to protect the lien of the insured mortgage and secured thereby, with interest thereon, provided in no event shall the amount of insurance be greater than the Amount of Insurance stated in Schedule A.

(c) Payment in full by any person or the voluntary satisfaction or release of the insured mortgage shall terminate all liability of the Company except as provided in Section 2(a) of these Conditions and Stipulations.

# 10. LIABILITY NONCUMULATIVE.

If the insured acquires title to the estate or interest in satisfaction of the indebtedness secured by the insured mortgage, or any part thereof, it is expressly understood that the amount of insurance under this policy shall be reduced by any amount the Company may pay under any policy insuring a mortgage to which exception is taken in Schedule B or to which the insured has agreed, assumed, or taken subject, or which is hereafter executed by an insured and which is a charge or lien on the estate or interest described or referred to in Schedule A, and the amount so paid shall be deemed a payment under this policy.

# 11. PAYMENT OF LOSS.

(a) No payment shall be made without producing this policy for endorsement of the payment unless the policy has been lost or destroyed, in which case proof of loss or destruction shall be furnished to the satisfaction of the Company.

(b) When liability and the extent of loss or damage has been definitely fixed in accordance with these Conditions and Stipulations, the loss or damage shall be payable within 30 days thereafter.

# 12. SUBROGATION UPON PAYMENT OR SETTLEMENT.

(a) **The Company's Right of Subrogation.** Whenever the Company shall have settled and paid a claim under this policy, all right of subrogation shall vest in the Company unaffected by any act of the insured claimant. The Company shall be subrogated to and be entitled to all rights and remedies which the insured claimant would have had against any person or property in respect to the claim had this policy not been issued. If requested by the Company, the insured claimant shall transfer to the Company all rights and remedies against any person or property necessary in order to perfect this right of subrogation. The insured claimant shall permit the Company to sue, compromise or settle in the name of the insured claimant and to use the name of the insured claimant in any transaction or litigation involving these rights or remedies. If a payment on account of a claim does not fully cover the loss of the insured claimant, the Company shall be subrogated to all rights and remedies of the insured claimant after the insured claimant shall have recovered its principal, interest, and costs of collection.

(b) **The Insured's Rights and Limitations.** Notwithstanding the foregoing, the owner of the indebtedness secured by the insured mortgage, provided the priority of the lien of the insured mortgage or its enforceability is not affected, may release or substitute the personal liability of any debtor or guarantor, or extend or otherwise modify the terms of payment, or release a portion of the estate or interest from the lien of the insured mortgage, or release any collateral security for the indebtedness. When the permitted acts of the insured claimant occur and the insured has knowledge of any claim of title or interest adverse to the title to the estate or interest or the priority or enforceability of the lien of the insured mortgage, as insured, the Company shall be required to pay only that part of any losses insured against by this policy which shall exceed the amount, if any, lost to the Company by reason of the impairment by the insured claimant of the Company's right of subrogation.

(c) **The Company's Rights Against Non-insured Obligors.** The Company's right of subrogation against non-insured obligors shall exist and shall include, without limitation, the rights of the insured to indemnities, guaranties, other policies of insurance or bonds, notwithstanding any terms or conditions contained in those instruments which provide for subrogation rights by reason of this policy. The Company's right of subrogation shall not be avoided by acquisition of the insured mortgage by an obligor (except an obligor described in Section 1(a)(ii) of these Conditions and Stipulations) who acquires the insured mortgage as a result of an indemnity, guarantee, other policy of insurance, or bond and the obligor will not be an insured under this policy, notwithstanding Section 1(a)(i) of these Conditions and Stipulations.

# 13. ARBITRATION.

Unless prohibited by applicable law, either the Company or the insured may demand arbitration pursuant to the Title Insurance Arbitration Rules of the American Arbitration Association. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the insured arising out of or relating to this policy, any service of the Company in connection with its issuance or the breach of a policy provision or other obligation. All arbitrable matters when the Amount of Insurance is $1,000,000 or less shall be arbitrated at the option of either the Company or the insured. All arbitrable matters when the Amount of Insurance is in excess of $1,000,000 shall be arbitrated only when agreed to by both the Company and the insured. Arbitration pursuant to this policy and under the Rules in effect on the date the demand for arbitration is made or, at the option of the insured, the Rules in effect at Date of Policy shall be binding upon the parties. The award may include attorneys' fees only if the laws of the state in which the land is located permit a court to award attorneys' fees to a prevailing party. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court having jurisdiction thereof.

The law of the situs of the land shall apply to an arbitration under the Title Insurance Arbitration Rules.

A copy of the Rules may be obtained from the Company upon request.

# 14. LIABILITY LIMITED TO THIS POLICY; POLICY ENTIRE CONTRACT.

(a) This policy together with all endorsements, if any, attached hereto by the Company is the entire policy and contract between the insured and the Company. In interpreting any provision of this policy, this policy shall be construed as a whole.

(b) Any claim of loss or damage, whether or not based on negligence, and which arises out of the status of the lien of the insured mortgage or of the title to the estate or interest covered hereby or by any action asserting such claim, shall be restricted to this policy.

(c) No amendment of or endorsement to this policy can be made except by a writing endorsed hereon or attached hereto signed by either the President, a Vice President, the Secretary, an Assistant Secretary, or validating officer or authorized signatory of the Company.

# 15. SEVERABILITY.

In the event any provision of this policy is held invalid or unenforceable under applicable law, the policy shall be deemed not to include that provision and all other provisions shall remain in full force and effect.

# 16. NOTICES, WHERE SENT.

All notices required to be given the Company and any statement in writing required to be furnished the Company shall include the number of this policy and shall be addressed to the Company at 1 First American Way, Santa Ana, CA, 92707.

©1992 First American Title Insurance Company
All Rights Reserved

Case 1:07-cv-00024    Document 94-4    Filed 04/29/2008    Page 15 of 28

# SCHEDULE A

| POLICY NO.: 140182<br>G-22184 | DATE: APRIL 19, 2004<br>AT 2:09 P.M. |
|---|---|
| **AMOUNT OF INSURANCE:**<br>**$49,000.00** | **PREMIUM:**<br>**$100.00** |

1.    Name of Insured:

   **CYFRED, LTD.**

2.    The estate or interest in the land which is encumbered by the insured mortgage is:

   **IN FEE SIMPLE ESTATE.**

3.    Title to the estate or interest in the land is vested in:

   **ANGELA DABINON, a Single Woman, a one-third (1/3) interest, MAKOY DABINON, a Single Man, a one-third (1/3) interest, and JESSICA DABINON, a Single Man, a one-third (1/3) interest**

4.    The insured mortgage and assignments thereof, if any are described as follows:

   **MORTGAGE (WITH PRIVATE POWER OF SALE)** dated APRIL 16, 2004 executed by **ANGELA DABINON, a Single Woman, MAKOY DABINON, a Single Man, and JESSICA DABINON, a Single Woman,** in favor of **CYFRED, LTD.,** to secure the repayment of the sum of $49,000.00; as said MORTGAGE is recorded APRIL 16, 2004 at the Records Division, Department of Land Management, Government of Guam, under Document Number **691328.**

# ORIGINAL

# SCHEDULE B

## 140182

**Part I**

This policy does not insure against loss or damage by reason of the following:

1.  **Current Real Property Taxes not yet due and payable.**

-----------**END OF SCHEDULE B** ------------

# ORIGINAL

## 140182

# SCHEDULE B (Continued)

**Part II**

In addition to the matters set forth in Part I of this Schedule, the title to the estate or interest in the land described or referred to in Schedule C is subject to the following matters, if any be shown, but the Company insures that these matters are subordinate to the lien or charge of the insured mortgage upon the estate or interest:

## N I L

# ORIGINAL

# SCHEDULE C

## 140182

**The land referred to herein is described as follows:**

**LOT NUMBER 1, BLOCK NUMBER 3, TRACT NUMBER 94002,** (Subdivision of Lot No. 7094), **MUNICIPALITY OF YIGO,** TERRITORY OF GUAM, ESTATE NUMBER 55312, SUBURBAN, as said Lot is marked and designated on DRAWING NUMBER RRV99-15FG2, as L.M. CHECK NUMBER 258 FY 2000, as described AGRICULTURAL SUBDIVISION SURVEY MAP dated SEPTEMBER 20, 2000 and recorded SEPTEMBER 22, 2000, at the Records Division, Department of Land Management, Government of Guam, under Document Number 627349.

Registered Land, with the LAST REGISTERED OWNER being **ELIZA DE LEON MILLER, DOLORES PANGELINAN DE LEON, JULIA DE LEON TYDINGCO and ADELA DE LEON CORN, Share and Share alike,** and the OWNER OF RECORD being **ANGELA DABINON, a Single Woman, a one-third (1/3) interest, MAKOY DABINON, a Single Man, a one-third (1/3) interest, and JESSICA DABINON, a Single Man, a one-third (1/3) interest,** and the LAST CERTIFICATE OF TITLE REGISTRATION NUMBER being 73390 (Basic Lot 7094).

--------------- END OF SCHEDULE C ---------------

# ORIGINAL

# *Policy of Title Insurance*

### ISSUED BY



## The Talon Group
### TITLE AND SETTLEMENT SERVICES

*A Division of First American Title Insurance Company*

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B AND THE CONDITIONS AND STIPULATIONS, FIRST AMERICAN TITLE INSURANCE COMPANY, a California corporation, herein called the Company, insures, as of Date of Policy shown in Schedule A, against loss or damage, not exceeding the Amount of Insurance stated in Schedule A, sustained or incurred by the insured by reason of:

1. Title to the estate or interest described in Schedule A being vested other than as stated therein;

2. Any defect in or lien or encumbrance on the title;

3. Unmarketability of the title;

4. Lack of a right of access to and from the land;

5. The invalidity or unenforceability of the lien of the insured mortgage upon the title;

6. The priority of any lien or encumbrance over the lien of the insured mortgage;

7. Lack of priority of the lien of the insured mortgage over any statutory lien for services, labor or material:

   (a) arising from an improvement or work related to the land which is contracted for or commenced prior to Date of Policy; or

   (b) arising from an improvement or work related to the land which is contracted for or commenced subsequent to Date of Policy and which is financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at Date of Policy the insured has advanced or is obligated to advance;

8. The invalidity or unenforceability of any assignment of the insured mortgage, provided the assignment is shown in Schedule A, or the failure of the assignment shown in Schedule A to vest title to the insured mortgage in the named insured assignee free and clear of all liens.

The Company will also pay the costs, attorneys' fees and expenses incurred in defense of the title or the lien of the insured mortgage, as insured, but only to the extent provided in the Conditions and Stipulations.

*First American Title Insurance Company*

By: *[signature]*
President

By: *[signature]*
Secretary

110566

©1992 First American Title Insurance Company
All Rights Reserved

# EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1. (a) Any law, ordinance or governmental regulation (including but not limited to building and zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating to (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

   (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

2. Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.

3. Defects, liens, encumbrances, adverse claims or other matters:

   (a) created, suffered, assumed or agreed to by the insured claimant;

   (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;

   (c) resulting in no loss or damage to the insured claimant;

   (d) attaching or created subsequent to Date of Policy (except to the extent that this policy insures the priority of the lien of the insured mortgage over any statutory lien for services, labor or material); or

   (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage.

4. Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with applicable doing business laws of the state in which the land is situated.

5. Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.

6. Any statutory lien for services, labor or materials (or the claim of priority of any statutory lien for services, labor or materials) over the lien of the insured mortgage) arising from an improvement or work related to the land which is contracted for and commenced subsequent to Date of Policy and is not financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at Date of Policy the insured has advanced or is obligated to advance.

7. Any claim, which arises out of the transaction creating the interest of the mortgagee insured by this policy, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that is based on:

   (a) the transaction creating the interest of the insured mortgagee being deemed a fraudulent conveyance or fraudulent transfer;
   or

   (b) the subordination of the interest of the insured mortgagee as a result of the application of the doctrine of equitable subordination;
   or

   (c) the transaction creating the interest of the insured mortgagee being deemed a preferential transfer except where the preferential transfer results from the failure:

   (i)   to timely record the instrument of transfer; or

   (ii)  of such recordation to impart notice to a purchaser for value or a judgment or lien creditor.

# CONDITIONS AND STIPULATIONS

## 1. DEFINITION OF TERMS.

The following terms when used in this policy mean:

(a) **"insured"**: the insured named in Schedule A. The term "insured" also includes

   ( )   the owner of the indebtedness secured by the insured mortgage and each successor in ownership of the indebtedness except a successor who is an obligor under the

provisions of Section 12(c) of these Conditions and Stipulations (reserving, however, all rights and defenses as to any successor that the Company would have had against any predecessor insured, unless the successor acquired the indebtedness as a purchaser for value without knowledge of the asserted defect, lien, encumbrance, adverse claim or other matter insured against by this policy as affecting title to the estate or interest in the land);

   (ii)  any governmental agency or governmental instrumentality which is an insurer or guarantor under an insurance contract or guaranty insuring or guaranteeing the indebtedness secured by the insured mortgage, or any part thereof, whether named as an insured herein or not;

   (iii) the parties designated in Section 2(a) of these Conditions and Stipulations.

(b) **"insured claimant"**: an insured claiming loss or damage.

(c) **"knowledge" or "known"**: actual knowledge, not constructive knowledge or notice which may be imputed to an insured by reason of the public records as defined in this policy or any other records which impart constructive notice of matters affecting the land.

(d) **"land"**: the land described or referred to in Schedule A, and improvements affixed thereto which by law constitute real property. The term "land" does not include any property beyond the lines of the area described or referred to in Schedule A[i][C], nor any right, title, interest, estate or easement in abutting streets, roads, avenues, alleys, lanes, ways or waterways, but nothing herein shall modify or limit the extent to which a right of access to and from the land is insured by this policy.

(e) **"mortgage"**: mortgage, deed of trust, trust deed, or other security instrument.

(f) **"public records"**: records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without knowledge. With respect to Section 1(a)(iv) of the Exclusions From Coverage, "public records" shall also include environmental protection liens filed in the records of the clerk of the United States district court for the district in which the land is located.

(g) **"unmarketability of the title"**: an alleged or apparent matter affecting the title to the land, not excluded or excepted from coverage, which would entitle a purchaser of the estate or interest described in Schedule A or the insured mortgage to be released from the obligation to purchase by virtue of a contractual condition requiring the delivery of marketable title.

## 2. CONTINUATION OF INSURANCE.

(a) After Acquisition of Title. The coverage of this policy shall continue in force as of Date of Policy in favor of (i) an insured who acquires all or any part of the estate or interest in the land by foreclosure, trustee's sale, conveyance in lieu of foreclosure, or other legal manner which discharges the lien of the insured mortgage; (ii) a transferee of the estate or interest so acquired from an insured corporation, provided the transferee is the parent or wholly-owned subsidiary of the insured corporation, and their corporate successors by operation of law and not by purchase, subject to any rights or defenses the Company may have against any predecessor insureds; and (iii) any governmental agency or governmental instrumentality which acquires all or any part of the estate or interest pursuant to a contract of insurance or guaranty insuring or guaranteeing the indebtedness secured by the insured mortgage.

(b) After Conveyance of Title. The coverage of this policy shall continue in force as of Date of Policy in favor of an insured only so long as the insured retains an estate or interest in the land, or holds an indebtedness secured by a purchase money mortgage given by a purchaser from the insured, or only so long as the insured shall have liability by reason of covenants of warranty made by the insured in any transfer or conveyance of the estate or interest. This policy shall not continue in force in favor of any purchaser from the insured of either (i) an estate or interest in the land, or (ii) an indebtedness secured by a purchase money mortgage given to the insured.

(c) Amount of Insurance. The amount of insurance after the acquisition or after the conveyance shall in neither event exceed the least of:

   (i)   the Amount of Insurance stated in Schedule A,

   (ii)  the amount of the principal of the indebtedness secured by the insured mortgage as of Date of Policy, interest thereon, expenses of foreclosure, amounts advanced pursuant to the insured mortgage to assure compliance with laws or to protect the lien of the insured mortgage prior to the time of acquisition of the estate or interest in the land and secured thereby and reasonable amounts expended to prevent deterioration of improvements, but reduced by the amount of all payments made; or

   (iii) the amount paid by any governmental agency or governmental instrumentality, if the agency or instrumentality is the insured claimant, in the acquisition of the estate or interest in satisfaction of its insurance contract or guaranty.

©1992 First American Title Insurance Company
All Rights Reserved

Case 1:07-cv-00024    Document 94-4    Filed 04/29/2008    Page 21 of 28

**3. NOTICE OF CLAIM TO BE GIVEN BY INSURED CLAIMANT.**

The insured shall notify the Company promptly in writing (i) in case of any litigation as set forth in Section 4(a) below, (ii) in case knowledge shall come to an insured hereunder of any claim of title or interest which is adverse to the title to the estate or interest or the lien of the insured mortgage, as insured, and which might cause loss or damage for which the Company may be liable by virtue of this policy, or (iii) if title to the estate or interest or the lien of the insured mortgage, as insured, is rejected as unmarketable. If prompt notice shall not be given to the Company, then as to the insured all liability of the Company shall terminate with regard to the matter or matters for which prompt notice is required; provided, however, that failure to notify the Company shall in no case prejudice the rights of any insured under this policy unless the Company shall be prejudiced by the failure and then only to the extent of the prejudice.

**4. DEFENSE AND PROSECUTION OF ACTIONS; DUTY OF INSURED CLAIMANT TO COOPERATE.**

(a) Upon written request by the insured and subject to the options contained in Section 6 of these Conditions and Stipulations, the Company, at its own cost and without unreasonable delay, shall provide for the defense of an insured in litigation in which any third party asserts a claim adverse to the title or interest as insured, but only as to those stated causes of action alleging a defect, lien or encumbrance or other matter insured against by this policy. The Company shall have the right to select counsel of its choice (subject to the right of the insured to object for reasonable cause) to represent the insured as to those stated causes of action and shall not be liable for and will not pay the fees of any other counsel. The Company will not pay any fees, costs or expenses incurred by the insured in the defense of those causes of action which allege matters not insured against by this policy.

(b) The Company shall have the right, at its own cost, to institute and prosecute any action or proceeding or to do any other act which in its opinion may be necessary or desirable to establish the title to the estate or interest or the lien of the insured mortgage, as insured, or to prevent or reduce loss or damage to the insured. The Company may take any appropriate action under the terms of this policy, whether or not it shall be liable hereunder, and shall not thereby concede liability or waive any provision of this policy. If the Company shall exercise its rights under this paragraph, it shall do so diligently.

(c) Whenever the Company shall have brought an action or interposed a defense as required or permitted by the provisions of this policy, the Company may pursue any litigation to final determination by a court of competent jurisdiction and expressly reserves the right, in its sole discretion, to appeal from any adverse judgment or order.

(d) In all cases where this policy permits or requires the Company to prosecute or provide for the defense of any action or proceeding, the insured shall secure to the Company the right to so prosecute or provide defense in the action or proceeding, and all appeals therein, and permit the Company to use, at its option, the name of the insured for this purpose. Whenever requested by the Company, the insured, at the Company's expense, shall give the Company all reasonable aid (i) in any action or proceeding, securing evidence, obtaining witnesses, prosecuting or defending the action or proceeding, or effecting settlement, and (ii) in any other lawful act which in the opinion of the Company may be necessary or desirable to establish the title to the estate or interest or the lien of the insured mortgage, as insured. If the Company is prejudiced by the failure of the insured to furnish the required cooperation, the Company's obligations to the insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such cooperation.

**5. PROOF OF LOSS OR DAMAGE.**

In addition to and after the notices required under Section 3 of these Conditions and Stipulations have been provided the Company, a proof of loss or damage signed and sworn to by the insured claimant shall be furnished to the Company within 90 days after the insured claimant shall ascertain the facts giving rise to the loss or damage. The proof of loss or damage shall describe the defect in, or lien or encumbrance on the title, or other matter insured against by this policy which constitutes the basis of loss or damage and shall state, to the extent possible, the basis of calculating the amount of the loss or damage. If the Company is prejudiced by the failure of the insured claimant to provide the required proof of loss or damage, the Company's obligations to the insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such proof of loss or damage.

In addition, the insured claimant may reasonably be required to submit to examination under oath by any authorized representative of the Company and shall produce for examination, inspection and copying, at such reasonable times and places as may be designated by any authorized representative of the Company, all records, books, ledgers, checks, correspondence and memoranda, whether bearing a date before or after Date of Policy, which reasonably pertain to the loss or damage. Further, if requested by any authorized representative of the Company, the insured claimant shall grant its permission, in writing, for any authorized representative of the

Company to examine, inspect and copy all records, books, ledgers, checks, correspondence and memoranda in the custody or control of a third party, which reasonably pertain to the loss or damage. All information designated as confidential by the insured claimant provided to the Company pursuant to this Section shall not be disclosed to others unless, in the reasonable judgment of the Company, it is necessary in the administration of the claim. Failure of the insured claimant to submit for examination under oath, produce other reasonably requested information or grant permission to secure reasonably necessary information from third parties as required in this paragraph, unless prohibited by law or governmental regulation, shall terminate any liability of the Company under this policy as to that claim.

**6. OPTIONS TO PAY OR OTHERWISE SETTLE CLAIMS; TERMINATION OF LIABILITY.**

In case of a claim under this policy, the Company shall have the following additional options:

(a) To Pay or Tender Payment of the Amount of Insurance or to Purchase the Indebtedness.

(i) to pay or tender payment of the amount of insurance under this policy together with any costs, attorneys' fees and expenses incurred by the insured claimant, which were authorized by the Company, up to the time of payment or tender of payment and which the Company is obligated to pay; or

(ii) to purchase the indebtedness secured by the insured mortgage for the amount owing thereon together with any costs, attorneys' fees and expenses incurred by the insured claimant which were authorized by the Company up to the time of purchase and which the Company is obligated to pay.

If the Company offers to purchase the indebtedness as herein provided, the owner of the indebtedness shall transfer, assign, and convey the indebtedness and the insured mortgage, together with any collateral security, to the Company upon payment therefor.

Upon the exercise by the Company of either of the options provided for in paragraphs a(i) or (ii), all liability and obligations to the insured under this policy, other than to make the payment required in those paragraphs, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, and the policy shall be surrendered to the Company for cancellation.

(b) To Pay or Otherwise Settle With Parties Other than the Insured or With the Insured Claimant.

(i) to pay or otherwise settle with other parties for or in the name of an insured claimant any claim insured against under this policy, together with any costs, attorneys' fees and expenses incurred by the insured claimant which were authorized by the Company up to the time of payment and which the Company is obligated to pay; or

(ii) to pay or otherwise settle with the insured claimant the loss or damage provided for under this policy, together with any costs, attorneys' fees and expenses incurred by the insured claimant which were authorized by the Company up to the time of payment and which the Company is obligated to pay.

Upon the exercise by the Company of either of the options provided for in paragraphs b(i) or (ii), the Company's obligations to the insured under this policy for the claimed loss or damage, other than the payments required to be made, shall terminate, including any liability or obligation to defend, prosecute or continue any litigation.

**7. DETERMINATION AND EXTENT OF LIABILITY.**

This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the insured claimant who has suffered loss or damage by reason of matters insured against by this policy and only to the extent herein described.

(a) The liability of the Company under this policy shall not exceed the least of:

(i) the Amount of Insurance stated in Schedule A, or, if applicable, the amount of insurance as defined in Section 2 (c) of these Conditions and Stipulations;

(ii) the amount of the unpaid principal indebtedness secured by the insured mortgage as limited or provided under Section 8 of these Conditions and Stipulations or as reduced under Section 9 of these Conditions and Stipulations, at the time the loss or damage insured against by this policy occurs, together with interest thereon; or

(iii) the difference between the value of the insured estate or interest as insured and the value of the insured estate or interest subject to the defect, lien or encumbrance insured against by this policy.

(b) In the event the insured has acquired the estate or interest in the manner described in Section 2(a) of these Conditions and Stipulations or has conveyed the title, then the liability of the Company shall continue as set forth in Section 7(a) of these Conditions and Stipulations.

(c) The Company will pay only those costs, attorneys' fees and expenses incurred in accordance with Section 4 of these Conditions and Stipulations.

©1992 First American Title Insurance Company
All Rights Reserved

## 8. LIMITATION OF LIABILITY.

(a) If the Company establishes the title, or removes the alleged defect, lien or encumbrance, or cures the lack of a right of access to or from the land, or cures the claim of unmarketability of title, or otherwise establishes the lien of the insured mortgage, all as insured, in a reasonably diligent manner by any method, including litigation and the completion of any appeals therefrom, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused thereby.

(b) In the event of any litigation, including litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals therefrom, adverse to the title or to the lien of the insured mortgage, as insured.

(c) The Company shall not be liable for loss or damage to any insured for liability voluntarily assumed by the insured in settling any claim or suit without the prior written consent of the Company.

(d) The Company shall not be liable for: (i) any indebtedness created subsequent to Date of Policy except for advances made to protect the lien of the insured mortgage and secured thereby and reasonable amounts expended to prevent deterioration of improvements; or (ii) construction loan advances made subsequent to Date of Policy, except construction loan advances made subsequent to Date of Policy for the purpose of financing in whole or in part the construction of an improvement to the land which at Date of Policy were secured by the insured mortgage and which the insured was and continued to be obligated to advance at and after Date of Policy.

## 9. REDUCTION OF INSURANCE; REDUCTION OR TERMINATION OF LIABILITY.

(a) All payments under this policy, except payments made for costs, attorneys' fees and expenses, shall reduce the amount of the insurance pro tanto. However, any payments made prior to the acquisition of title to the estate or interest as provided in Section 2(a) of these Conditions and Stipulations shall not reduce pro tanto the amount of the insurance afforded under this policy except to the extent that the payments reduce the amount of the indebtedness secured by the insured mortgage.

(b) Payment in part by any person of the principal of the indebtedness, or any other obligation secured by the insured mortgage, or any voluntary partial satisfaction or release of the insured mortgage, to the extent of the payment, satisfaction or release, shall reduce the amount of insurance pro tanto. The amount of insurance may thereafter be increased by accruing interest and advances made to protect the lien of the insured mortgage and secured thereby, with interest thereon, provided in no event shall the amount of insurance be greater than the Amount of Insurance stated in Schedule A.

(c) Payment in full by any person or the voluntary satisfaction or release of the insured mortgage shall terminate all liability of the Company except as provided in Section 2(a) of these Conditions and Stipulations.

## 10. LIABILITY NONCUMULATIVE.

If the insured acquires title to the estate or interest in satisfaction of the indebtedness secured by the insured mortgage, or any part thereof, it is expressly understood that the amount of insurance under this policy shall be reduced by any amount the Company may pay under any policy insuring a mortgage to which exception is taken in Schedule B or to which the insured has agreed, assumed, or taken subject, or which is hereafter executed by an insured and which is a charge or lien on the estate or interest described or referred to in Schedule A, and the amount so paid shall be deemed a payment under this policy.

## 11. PAYMENT OF LOSS.

(a) No payment shall be made without producing this policy for endorsement of the payment unless the policy has been lost or destroyed, in which case proof of loss or destruction shall be furnished to the satisfaction of the Company.

(b) When liability and the extent of loss or damage has been definitely fixed in accordance with these Conditions and Stipulations, the loss or damage shall be payable within 30 days thereafter.

## 12. SUBROGATION UPON PAYMENT OR SETTLEMENT.

(a) The Company's Right of Subrogation. Whenever the Company shall have settled and paid a claim under this policy, all right of subrogation shall vest in the Company unaffected by any act of the insured claimant. The Company shall be subrogated to and be entitled to all rights and remedies which the insured claimant would have had against any person or property in respect to the claim had this policy not been issued. If requested by the Company, the insured claimant shall transfer to the Company all rights and remedies against any person or property necessary in order to perfect this right of subrogation. The insured claimant shall permit the Company to sue, compromise or settle in the name of the insured claimant and to use the name of the insured claimant in any transaction or litigation involving these rights or remedies. If a payment on account of a claim does not fully cover the loss of the insured claimant, the Company shall be subrogated to all rights and remedies of the insured claimant after the insured claimant shall have recovered its principal, interest, and costs of collection.

(b) The Insured's Rights and Limitations. Notwithstanding the foregoing, the owner of the indebtedness secured by the insured mortgage, provided the priority of the lien of the insured mortgage or its enforceability is not affected, may release or substitute the personal liability of any debtor or guarantor, or extend or otherwise modify the terms of payment, or release a portion of the estate or interest from the lien of the insured mortgage, or release any collateral security for the indebtedness. When the permitted acts of the insured claimant occur and the insured has knowledge of any claim of title or interest adverse to the title to the estate or interest or the priority or enforceability of the lien of the insured mortgage, as insured, the Company shall be required to pay only that part of any losses insured against by this policy which shall exceed the amount, if any, lost to the Company by reason of the impairment by the insured claimant of the Company's right of subrogation.

(c) The Company's Rights Against Non-Insured Obligors. The Company's right of subrogation against non-insured obligors shall exist and shall include, without limitation, the rights of the insured to indemnities, guaranties, other policies of insurance or bonds, notwithstanding any terms or conditions contained in those instruments which provide for subrogation rights by reason of this policy. The Company's right of subrogation shall not be avoided by acquisition of the insured mortgage by an obligor (except an obligor described in Section 1(a)(ii) of these Conditions and Stipulations) who acquires the insured mortgage as a result of an indemnity, guarantee, other policy of insurance, or bond and the obligor will not be an insured under this policy, notwithstanding Section 1(a)(i) of these Conditions and Stipulations.

## 13. ARBITRATION.

Unless prohibited by applicable law, either the Company or the insured may demand arbitration pursuant to the Title Insurance Arbitration Rules of the American Arbitration Association. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the insured arising out of or relating to this policy, any service of the Company in connection with its issuance or the breach of a policy provision or other obligation. All arbitrable matters when the Amount of Insurance is $1,000,000 or less shall be arbitrated at the option of either the Company or the insured. All arbitrable matters when the Amount of Insurance is in excess of $1,000,000 shall be arbitrated only when agreed to by both the Company and the insured. Arbitration pursuant to this policy and under the Rules in effect on the date the demand for arbitration is made or, at the option of the insured, the Rules in effect at Date of Policy shall be binding upon the parties. The award may include attorneys' fees only if the laws of the state in which the land is located permit a court to award attorneys' fees to a prevailing party. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court having jurisdiction thereof.

The law of the situs of the land shall apply to an arbitration under the Title Insurance Arbitration Rules.

A copy of the Rules may be obtained from the Company upon request.

## 14. LIABILITY LIMITED TO THIS POLICY; POLICY ENTIRE CONTRACT.

(a) This policy together with all endorsements, if any, attached hereto by the Company is the entire policy and contract between the insured and the Company. In interpreting any provision of this policy, this policy shall be construed as a whole.

(b) Any claim of loss or damage, whether or not based on negligence, and which arises out of the status of the lien of the insured mortgage or of the title to the estate or interest covered hereby or by any action asserting such claim, shall be restricted to this policy.

(c) No amendment of or endorsement to this policy can be made except by a writing endorsed hereon or attached hereto signed by either the President, a Vice President, the Secretary, an Assistant Secretary, or validating officer or authorized signatory of the Company.

## 15. SEVERABILITY.

In the event any provision of this policy is held invalid or unenforceable under applicable law, the policy shall be deemed not to include that provision and all other provisions shall remain in full force and effect.

## 16. NOTICES, WHERE SENT.

All notices required to be given the Company and any statement in writing required to be furnished the Company shall include the number of this policy and shall be addressed to the Company at 1 First American Way, Santa Ana, CA, 92707.

©1992 First American Title Insurance Company
All Rights Reserved

# SCHEDULE A

| POLICY NO.: 110566<br>G-22185 | DATE:   APRIL 19, 2004<br>3:32 P.M. |
|---|---|
| AMOUNT OF INSURANCE:<br>$29,500.00 | PREMIUM:<br>$100.00 |

1.    Name of Insured:

    **CYFRED, LTD.,**

2.    The estate or interest in the land which is encumbered by the insured mortgage is:

    **IN FEE SIMPLE**

3.    Title to the estate or interest in the land is vested in:

    **MARIA BOLYAN**

4.    The insured mortgage and assignments thereof, if any are described as follows:

**MORTGAGE (WITH PRIVATE POWER OF SALE)** dated APRIL 12, 2004 executed by **MARIA BOLYAN, an single woman,** in favor of **CYFRED, LTD.,** to secure the repayment of the sum of $29,500.00; as said Mortgage is recorded APRIL 19, 2004 at the Records Division, Department of Land Management, Government of Guam, under Document Number **691338.**

## ORIGINAL

# SCHEDULE B

## 110566

---

**Part I**

**This policy does not insure against loss or damage by reason of the following:**

1. Current Real Property Taxes not yet due and payable.

2. The inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with applicable business license laws.

3. Subject to any and all escaped assessment which are not listed on assessment roll at the Real Property Tax Division Office, Department of Revenue and Taxation.

4. DECLARATION OF EASEMENTS AND ACCESS
   Grantors:    FRANKLIN F. SABLAN, ANGELO F. SABLAN, ALFRED F. SABLAN and ANNIE S. ALDEGUER (owners of Lot 7097, Yigo)
   In favor of:   CYFRED, LTD. and the Grantors
   * That portion of Easement consisting of approximately 1.947 +/- Square Meters along the bullcart trail on the northern boundary of Lot 7097,    Yigo
   Purpose:    Public access and utilities right of way and incidental purposes in consideration of the benefits derived by the property by the Government of Guam and that agreement to provide Easement entered into with Cyfred, Ltd. so that Cyfred, Ltd. could subdivided Lots 7094 and Lots 7095, Yigo
   Note:  This declaration shall continue to be in force and effect until such time the public access and utilities rights of way is formally dedicated to the Government of Guam.
   dated 10/27/99 and recorded 11/26/99 under document number **613298**

---------------------------------CONTINUED ON NEXT PAGE---------------------------------

ORIGINAL

5.  **DECLARATION OF EASEMENT AND ACCESS**

Grantors: DIANA D. SABLAN and ANGELO F. SABLAN
                (owners of Lot 7050, Yigo)

In favor of: CYFRED, LTD., and the Grantors

* That the portion of easement consisting of approximately 1070 +/- Square Meters along the bullcart trail on the southern boundary of
   Lot 7050, Yigo

Purpose:        Public access and utilities right of way and incidental purposes for
                future subdivision of the owners property and
                that agreement to provide easement entered into with Cyfred, Ltd.
                so that Cyfred Ltd. could subdivide Lots 7094 and
                Lots 7095, Yigo

Note:  This Declaration shall continue to be in force and efect until such time the
          public access and utilities rights of way is formally dedicated to the
          Government of Guam.

dated 11/24/99 and recorded 11/26/99 under document number
**613299**

----------END OF SCHEDULE B ----------  /

ORIGINAL

Standard Coverage- ALTA Owner's Policy (10-17-92) ALTA Loan Policy (10-17-92)

## SCHEDULE B (Continued)

Part II

In addition to the matters set forth in Part I of this Schedule, the title to the estate or interest in the land described or referred to in Schedule C is subject to the following matters, if any be shown, but the Company insures that these matters are subordinate to the lien or charge of the insured mortgage upon the estate or interest:

N I L

ORIGINAL

# SCHEDULE C

**110566**

---

The land referred to herein is described as follows:

**LOT NUMBER 11-R1, BLOCK NUMBER 2, TRACT NUMBER 94002,** (Subdivision of Lot No. 11, Block No. 2, Tract No. 94002), **MUNICIPALITY OF YIGO,** TERRITORY OF GUAM ESTATE NUMBER 55312, SURBURBAN, as said Lot is marked and designated on Drawing Number CF-14, as L.M. CHECK NUMBER 323 FY 2002, as described in that Subdivision Survey Map, dated NOVEMBER 20, 2002 and recorded DECEMBER 6, 2002 at the Records Division, Department of Land Management, Government of Guam, under Document Number **666329.** Registered Land, with the LAST REGISTERED OWNER being **ELIZA DE LEON MILLER, DOLORES PANGELINAN DE LEON, JULIA DE LEON TYDINGCO, and ADELA DE LEON CORN,** and the OWNER OF RECORD being **MARIA BOLYAN,** and the LAST CERTIFICATE OF TITLE REGISTRATION NUMBER being 73390 (Basic Lot 7094).

---------------- END OF SCHEDULE C ----------------

ORIGINAL